1  CANDACE C. CARLYON, ESQ.
   Nevada Bar No. 2666
2  TRACY M. O'STEEN, ESQ.
   Nevada Bar No. 10949
3  CLARK HILL PLC
   3800 Howard Hughes Parkway, Suite 500
4  Las Vegas, NV 89169
   Telephone:    (702) 862-8300
5  Facsimile:    (702) 862-8400
   CCarlyon@ClarkHill.com
6  TOSteen@ClarkHill.com

   VAN C. DURRER, II, ESQ. (*pro hac pending*)
   California Bar No. 226693
   ANNIE LI, ESQ. (*pro hac vice pending*)
   California Bar No. 272243
   SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM LLP
   300 S. Grand Avenue, Suite 3400
   Los Angeles, CA 90071
   Telephone:    (213) 687-5000
   Facsimile:    (213) 687-5600
   Van.Durrer@Skadden.com
   Annie.Li@Skadden.com

7
   *[Proposed] Counsel for Debtors in Possession*        *[Proposed] Counsel for Debtors in Possession*
8

9                    **UNITED STATES BANKRUPTCY COURT**

10                        **DISTRICT OF NEVADA**

11  In re

12  DOUBLE JUMP, INC.

Lead Case No.: BK-19-50102-btb
Chapter 11

Proposed Joint Administration with:

| 19-50103-btb | Dora Dog Properties LLC |
|---|---|
| 19-50104-btb | Dog Blue Properties, LLC |
| 19-50105-btb | Brandy Boy Properties, LLC |
| 19-50106-btb | 475 Channel Road, LLC |
| 19-50108-btb | Park Road LLC |
| 19-50109-btb | 140 Mason Circle LLC |
| 19-50130-btb | DC Solar Solutions, Inc. |
| 19-50131-btb | DC Solar Distribution, Inc. |
| 19-50135-btb | DC Solar Freedom, Inc. |

15

   X   Affects ALL Debtors
16      Affects Double Jump, Inc.
        Affects Dora Dog Properties, LLC
17      Affects Dog Blue Properties, LLC
        Affects Brandy Boy Properties, LLC
18      Affects 475 Channel Road, LLC
        Affects Park Road, LLC
19      Affects 140 Mason Circle, LLC
        Affects DC Solar Solutions, Inc.
20      Affects DC Solar Distribution, Inc.
        Affects DC Solar Freedom, Inc.
21

**MOTION OF DEBTORS FOR ORDER
AUTHORIZING AND APPROVING
CERTAIN STALKING HORSE BIDDER
PROTECTIONS**

Hearing Date:  March 15, 2019
Hearing Time:  10:00 a.m.

22

23         Double Jump, Inc. ("Holdings") and certain of its affiliates, the debtors and debtors in

24  possession in the above-captioned cases (collectively, the "Debtors"), hereby move (this "Motion")

25  this Court for entry of an order under sections 105, 363, 503(b), and 507(a)(2) of title 11 of the

26  United States Code (the "Bankruptcy Code") authorizing and approving certain stalking horse bidder

27  protections.  In support of the Motion, the Debtors rely upon and incorporate by reference the

28  *Omnibus Declaration of Seth R. Freeman in Support of  First Day Motions* (the "First Day

1  Declaration"), filed with the Court On February 4, 2019.  In further support of the Motion, the

2  Debtors, by and through their undersigned proposed counsel, respectfully represent as follows:

3  **PRELIMINARY STATEMENT**[1]

4  The Debtors have commenced these Chapter 11 Cases with the goal of restarting their

5  business operations and focusing on revenue-generating initiatives involving their fleet of mobile

6  solar generators, which stand ready to be subleased to end-users and advertising partners.  However,

7  the Company has also determined that it will explore all options available to maximize recovery to

8  its creditors and all parties-in-interest, including a potential sale of the Company and the Company's

9  businesses through either a transaction (or series of transactions) pursuant to section 363 of the

10  Bankruptcy Code, or through a plan of reorganization.  The Company intends to explore these

11  options on a parallel timetable with its business re-start and, as a first step, seeks this Court's

12  approval of certain Stalking Horse Bid Protections.

13  As set forth in the First Day Declaration, the Company's operations have essentially ceased

14  since the government's seizure of Company assets on December 18, 2018.  The Company was

15  forced to lay off its workforce, and has been unable to pay its obligations since all available funds

16  were seized by the government.  The Company had little choice other than to pursue a bankruptcy

17  filing for the benefit of all creditors and stakeholders.

18  While a bankruptcy filing allows the Company much-needed breathing room and a chance

19  for a "fresh re-start," the Company believes that a longer-term solution is needed, particularly given

20  the Company's complex structure and ongoing relationships with various investment funds.  For the

21  benefit of its creditors and customers, as well as the investment funds, the Company has determined

22  to pursue a transaction involving all or substantially all of the Company's assets, under the

23  supervision of this Court.  The Company has likewise determined that having the ability to offer

24  Stalking Horse Bid Protections as described in this Motion will maximize the Debtors ability to

25

26

27
28  [1]  Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to them later in the Motion or in the First Day Declaration, as applicable.

2

1 attract an initial stalking horse bidder to set a minimum price within a prompt timeframe (a "Stalking

2 Horse Bidder").

**I.**
**JURISDICTION AND VENUE**

5   1.   This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.

6 This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this

7 District is proper under 28 U.S.C. §§ 1408 and 1409.

8   2.   The statutory predicates for relief requested herein are sections 105(a), 363(b),

9 503(b), and 507(a)(2) of the Bankruptcy Code.

10   3.   Pursuant to Rule 9014.2 of the Local Rules for the United States Bankruptcy Court

11 for the District of Nevada (the "Local Bankruptcy Rules"), the Debtors consent to the entry of a final

12 judgment or order with respect to this Motion if it is determined that this Court would lack Article III

13 jurisdiction to enter such final order or judgment absent the consent of the parties.

**II.**
**BACKGROUND**

16   4.   On January 30, 2019 (the "Petition Date"), Holdings and the Real Estate Debtors (as

17 defined below) each commenced a case by filing a petition for relief under chapter 11 of the

18 Bankruptcy Code, on February 3, 2019, DC Solar Solutions, Inc. and DC Solar Distribution, Inc.

19 each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code, and

20 on February 5, 2019, DC Solar Freedom, Inc. commenced a case by filing a petition for relief under

21 chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtors have

22 requested that the Chapter 11 Cases be jointly administered.

23   5.   The Debtors continue to operate their businesses and manage their properties as

24 debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

25   6.   To date, no creditors' committee has been appointed in these Chapter 11 Cases by the

26 Office of the United States Trustee for the District of Nevada (the "United States Trustee").  No

27 trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

28

3

7.      DC Solar Solutions, Inc., DC Solar Distribution, Inc., and DC Solar Freedom, Inc. (together, the "DC Solar" companies or the "Company") has become the largest manufacturer of mobile solar generators over the last decade.  The Company designs, manufactures, and distributes mobile solar generators, mobile solar electric vehicle chargers, mobile solar light towers, and mobile solar power stations to private enterprises, municipalities, and universities.  The Company was founded in 2009, and today has deployed its units across the United States.

8.      In addition to the Company, the Debtors are comprised of Double Jump, Inc., which holds 100% of the stock in DC Solar Solutions, Inc. and DC Solar Distribution, Inc., as well as six limited-liability companies which primarily hold real estate assets (both commercial and residential) for rent or lease, being Dog Blue Properties, LLC; Dora Dog Properties LLC; Brandy Boy Properties, LLC; 475 Channel Road, LLC; 140 Mason Circle LLC; and Park Road LLC (the "Real Estate Debtors").  The assets of the Real Estate Debtors will be pledged as collateral in connection with the proposed DIP Financing described in the First Day Declaration.

9.      As set forth in the First Day Declaration, on December 18, 2018, the federal government seized funds from and froze all bank accounts associated with the DC Solar companies, allegedly in connection with a purported "investment fraud" perpetrated by the Company.  On the same day, agents from the FBI and the IRS executed sweeping search and/or seizure warrants of the DC Solar business headquarters located in Benicia, California.  Agents seized hundreds of items essential for the Company to conduct and operate its ongoing businesses, including, but not limited to, computer servers, computers, and hard copy files containing corporate books and records, investment agreements, lease agreements, vendor agreements, communications with investors and customers, and invoices for insurance and utility providers.  Left without any liquid assets to fund the Company's business or basic communications and record-keeping infrastructure, the Company was forced to shut down and lay off its entire workforce the week before Christmas.  Approximately 100 employees were laid off, and the Company was unable to pay wages owed to those employees.  Following the seizure, the Company has continued to receive strong support from its employees, its customers, its partners, and its investors.  Buoyed by the support of its key constituencies, the Company is securing debtor-in-possession financing and commenced these Chapter 11 Cases in

1  order to reopen its business operations so that it may continue to serve its customers and other

2  stakeholders, compensate its employees, and continue to deliver and develop its best-in-class

3  products and services for the benefit of all constituencies.

4         10.    In order to alleviate any concerns with regard to prior management, the Debtors have

5  engaged an experienced independent restructuring advisor, Seth Freeman of GlassRatner, to act as

6  the Corporate Restructuring Officer and lead the Debtors through the reorganization process.  The

7  DC Solar companies and Double Jump, Inc. have also engaged new independent directors to aid

8  with the reorganization process.

9         11.    Additional factual background information regarding the Debtors, including their

10  business operations, their corporate and capital structure, and the events leading to these Chapter 11

11  Cases, is set forth in detail in the First Day Declaration.

12  **III.**
**RELIEF REQUESTED**

13

14         12.    By this Motion, pursuant to sections 105(a), 363(b), 503(b), and 507(a)(2) of the

15  Bankruptcy Code, the Debtors seek entry of the "Bid Protections Order," substantially in the form

16  attached hereto as Exhibit 1, authorizing and approving certain bid protections (the "Stalking Horse

17  Bid Protections"), including the Break-Up Fee and Expense Reimbursement, subject to the

18  occurrence of certain conditions described more fully below.

19         13.    In support of the relief requested herein, the Debtors submit the First Day

20  Declaration, filed contemporaneously herewith.

21         14.    As described in the First Day Declaration, the Debtors are in the early stages of

22  evaluating potential exit transactions from these Chapter 11 Cases, including certain milestones for a

23  potential sale of the Company or substantially all of the Company's assets.  Specifically, it is the

24  Debtors' intention to pursue a marketing process over the next ninety days.

25         15.    The Company is entering into these Chapter 11 Cases with limited financing designed

26  to support a quick negotiation of an exit transaction.  Given the compressed timetable, the Company

27  believes that attracting a Stalking Horse Bidder is key to achieving a timely exit.  The ability to offer

28  bid protections will assist the Company in identifying and securing a Stalking Horse Bidder, and

1    provide assurance to the Stalking Horse Bidder that its work will not inure to the benefit of a

2    competitor without any compensation to the Stalking Horse Bidder for its time and efforts.

3         16.    To incentivize a Stalking Horse Bidder to submit a binding offer for the Company or

4    substantially all of the Company's assets, the Debtors have determined that it is in the best interests

5    of the Debtors and all stakeholders to offer a total fee of up to 3% of the base purchase price offered

6    by such Stalking Horse Bidder, inclusive of (i) a break-up fee (the "Break-Up Fee"), and (ii) an

7    expense reimbursement for reasonable documented fees and expenses (including professional fees)

8    incurred by the Stalking Horse Bidder (the "Expense Reimbursement"), in each case as an

9    administrative expense.

10        17.    Each of the Break-Up Fee and Expense Reimbursement will only be earned upon

11   termination of any purchase agreement with a Stalking Horse Bidder (a "Stalking Horse

12   Agreement") based on the Company signing a definitive agreement with respect to a sale transaction

13   representing a higher or better bid for the sale assets (a "Competing Transaction").  Each of the

14   Break-Up Fee and Expense Reimbursement shall be payable in cash within two business days of

15   consummation of a Competing Transaction.  The Break-Up Fee and Expense Reimbursement are an

16   integral part of the overall Transaction, and the Debtors anticipate that any Stalking Horse Bidder

17   will expect these protections as a condition precedent to signing a Stalking Horse Agreement for the

18   purchase of the Company or the Company's assets.  Accordingly, the relief requested will expedite

19   the Debtors' anticipated sale process.

20                                          **IV.**
                                   **BASIS FOR RELIEF**
21

22   **A.    Break-Up Fee and Expense Reimbursement Are Reasonable and Appropriate and
             Represent a Sound Exercise of the Debtors' Business Judgment**
23

24        18.    To secure a Stalking Horse Bidder's commitment to submit a binding Stalking Horse

25   Bid and compensate the Stalking Horse Bidder for the considerable time and expense it will incur

26   during the Debtors' sale process, the Debtors seek approval of the Break-Up Fee and Expense

27   Reimbursement.   Agreeing to the Break-Up Fee and Expense Reimbursement is a reasonable

28   exercise of the Debtors' business judgment given (i) the significant benefit to the estates of having a

1  definitive agreement for a value-maximizing transaction, and (ii) the significant costs incurred by the

2  Stalking Horse Bidder during the sale process and negotiation of a definitive agreement under a

3  limited timetable. Under these circumstances, the Break-Up Fee and Expense Reimbursement are

4  reasonable in amount and necessary to maximize the value of the Debtors' estates.

5        19.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the [Debtor],

6  after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

7  property of the estate." 11 U.S.C. § 363(b)(1). In addition, section 105(a) of the Bankruptcy Code

8  provides that the "court may issue any order, process, or judgment that is necessary to carry out the

9  provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

10        20.     Courts in the Ninth Circuit have granted a debtor's request to use property of the

11  estate outside of the ordinary course of business where a valid business justification for doing so

12  exists. See In re 240 N. Brand Partners, Ltd., 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) ("debtors

13  who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such

14  disposition has a valid business justification"). As such, "the position of the trustee is afforded

15  deference, particularly where business judgment is entailed in the analysis." In re Lahijani, 325 B.R.

16  282, 289 (B.A.P. 9th Cir. 2005). Once a debtor has offered "sound business justification" for the use

17  of estate property, "[t]he bankruptcy court has considerable discretion in deciding whether to

18  approve or disapprove" such use. Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 17 (B.A.P. 9th

19  Cir. 1988). In weighing bidding incentives such as break-up fees, courts in the Ninth Circuit also

20  consider whether proposed sales satisfy the "best interests of the estate" rule. Such bidding

21  incentives must "further the diverse interests of the debtor, creditors and equity security holders

22  alike." In re America West Airlines, Inc., 166 B.R. 908, 912 (Bankr. D. Ariz. 1994). See also In re

23  Alaska Fishing Adventure LLC, 2018 WL 6584772, at *2 (Bankr. D. Alaska Dec. 11, 2018)

24  ("[p]roposed sales are reviewed to determine whether they are within the best interests of the estate

25  resulting from a fair and reasonable price, are supported by a valid business judgment and proposed

26  in good faith").

27        21.     The Company intends to engage in a thorough and robust marketing and sale process,

28  assisted by its professionals, and aims to choose a Stalking Horse Bidder no later than March 15,

2019.  Any Stalking Horse Bidder will be contributing a material benefit to the Debtors' estates by providing a floor and ensuring that the Debtors' estates will be able to achieve recoveries at or in excess of the recoveries available from the Stalking Horse Bid transaction.

22.    The expedited timetable will require any Stalking Horse Bidder to exert substantial efforts and costs on due diligence and negotiation of a binding agreement.  The Stalking Horse Bidder will likely require the services of lawyers, financial advisors, accountants, and other professionals to conduct financial and legal diligence and to negotiate binding transaction documents.  As set forth in the First Day Declaration, the Debtors are parties to complex financial arrangements with numerous investment funds, and any Stalking Horse Bidder will likely expend considerable resources in understanding and evaluating those arrangements.  The Break-Up Fee and Expense Reimbursement will help to reassure a Stalking Horse Bidder that those costs and efforts will not be lost opportunity costs.

23.    The Debtors anticipate that the Break-Up Fee and Expense Reimbursement are bargained-for and integral parts of any transaction and that, without such material inducements, a potential Stalking Horse Bidder may not agree to enter into binding transaction documents on the timetable that the Debtors will require.  The Break-Up Fee and Expense Reimbursement are reasonable in light of the magnitude of the transaction and the tangible benefit to the estates of having a committed purchaser.

24.    The Debtors submit that the Break-Up Fee and Expense Reimbursement, which, combined, shall not exceed 3% of the base purchase price, are reasonable and commensurate with the size and nature of the transaction.  Numerous bankruptcy courts, including those in this district, have approved protections similar to the proposed Break-Up Fee and Expense Reimbursement as reasonable.  See, e.g., In re Xpertese, LLC, Case No. 18-11824 (LEB) (Bankr. D. Nev. June 29, 2018) (approving 3% break-up fee); In re BTH Quitman Hickory LLC, Case No. 17-51375 (BTB) (Bankr. D. Nev. Aug. 10, 2018) (approving 2.5% break-up fee and reimbursement); In re SKG The Park at Spanish Ridge, LLC, Case No. 17-10955 (MKN) (Bankr. D. Nev. May 24, 2017) (approving set amounts for break-up fee and reimbursement); In re Edison Mission Energy, Case No. 12-49219 (Bankr. N.D. Ill. October 25, 2013) (approving 2.5% break-up fee and uncapped reimbursement for

1  all reasonable expenses); In re DBSD North America, Inc., Case No. 09-13061 (REG) (Bankr.

2  S.D.N.Y. March 15, 2011) (approving 2.5% break-up fee and uncapped reimbursement for all

3  reasonable expenses); In re Boston Generating, LLC, Case No. 10-14419 (SCC) (Bankr. S.D.N.Y.

4  November 24, 2010) (approving 2.7% break-up fee and expense reimbursement).[2]  Accordingly, the

5  Break-Up Fee and Expense Reimbursement are within the range of percentage fees paid in similar

6  transactions.

7       25.     Courts have likewise authorized debtors to offer break-up fees in advance of

8  identifying a specific stalking horse bidder, such as the Debtors are requesting here.  See, e.g., In re

9  Orexigen Therapeutics, Inc., Case No. 18-10518 (KG) (Bankr. D. Del. Apr. 23, 2018) (approving a

10  break-up fee of 2.67% of the cash purchase price payable by a stalking horse bidder identified on the

11  date of the hearing to approve the fee and bidding procedures); In re Violin Memory, Inc., Case No.

12  16-12782 (LSS) (Bankr. D. Del. Jan. 6, 2017) (authorizing the debtor to offer a break-up fee to a

13  qualified stalking horse bidder at the debtor's discretion); In re Tweeter Home Entertainment Group,

14  Inc., *et al.*, Case No. 07-10787 (KG) (Bankr. D. Del. June 27, 2007) (approving a termination fee of

15  3% of the cash purchase price payable by a stalking horse bidder identified the day before the

16  hearing on the motion to approve bid protections).

17       26.     Based upon the foregoing, the Debtors submit that sound business justification exists

18  to authorize the Debtors to provide a Stalking Horse Bidder with the Break-Up Fee and Expense

19  Reimbursement.

20  **B.     The Break-Up Fee and Expense Reimbursement Should Be Allowed as Administrative
           Expenses Pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code**

21

22       27.     Section 503(b)(1)(A) of the Bankruptcy Code provides that "[a]fter notice and a

23  hearing, there shall be allowed administrative expenses, other than claims allowed under section

24  502(f) of this title, including— (1)(A) the actual, necessary costs and expenses of preserving the

25

26

27  
    2   Because of the voluminous nature of the orders cited herein, they are not attached to this Motion.  Copies of these

28      orders, however, are available on request.

9

estate . . . ."    Further, section 507(a)(2) of the Bankruptcy Code provides that "administrative expenses allowed under section 503(b)" are entitled to priority.

28.    As detailed above, the Break-Up Fee and Expense Reimbursement will likely be a necessary and material inducement for any Stalking Horse Bidder to enter into a definitive agreement and consummate the transaction contemplated thereby, which will provide a material benefit to the Debtors' estates by providing the Debtors with the cash necessary to benefit creditors and other parties-in-interest.    Accordingly, in the event that the Break-Up Fee and Expense Reimbursement become payable, such expenses should be an allowed administrative expense of the Debtors' estates entitled to priority.

## V.
## NOTICE

29.    Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Nevada; (b) the parties listed in the consolidated list of twenty (20) largest unsecured creditors filed by the Debtors in these Chapter 11 Cases; (c) the United States Attorney for the Eastern District of California, Attn: McGregor W. Scott; and (d) any such other party entitled to notice pursuant to Bankruptcy Rule 2002.    The Debtors submit that no other or further notice need be provided.

## VI.
## NO PRIOR REQUEST

30.    No previous request for the relief sought herein has been made to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

10

**VII.**
**CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form annexed hereto, granting the relief sought herein and granting such other and further relief as may be just and proper.

Respectfully submitted this 6th day of February, 2019.

CLARK HILL PLC

/s/
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
CCarlyon@clarkhill.com
TOsteen@clarkhill.com

*[Proposed] Counsel for Debtors*

- AND –

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

*/s/ Van C. Durrer, II, Esq.*
VAN C. DURRER, II, ESQ. (*pro hac pending*)
California Bar No. 226693
ANNIE LI, ESQ. (*pro hac vice pending*)
California Bar No. 272243
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:     (213) 687-5000
Facsimile:      (213) 687-5600
van.durrer@skadden.com
annie.li@skadden.com

*[Proposed] Counsel for Debtors*

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
CLARK HILL PLC
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone:    (702) 862-8300
Facsimile:    (702) 862-8400
CCarlyon@ClarkHill.com
TOSteen@ClarkHill.com

VAN C. DURRER, II, ESQ. (*pro hac pending*)
California Bar No. 226693
ANNIE LI, ESQ. (*pro hac vice pending*)
California Bar No. 272243
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone:    (213) 687-5000
Facsimile:    (213) 687-5600
Van.Durrer@Skadden.com
Annie.Li@Skadden.com

*[Proposed] Counsel for Debtors in Possession*    *[Proposed] Counsel for Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

DOUBLE JUMP, INC.

X_Affects ALL Debtors
___Affects Double Jump, Inc.
___Affects Dora Dog Properties, LLC
___Affects Dog Blue Properties, LLC
___Affects Brandy Boy Properties, LLC
___Affects 475 Channel Road, LLC
___Affects Park Road, LLC
___Affects 140 Mason Circle, LLC
___Affects DC Solar Solutions, Inc.
___Affects DC Solar Distribution, Inc.
___Affects DC Solar Freedom, Inc.

Lead Case No.: BK-19-50102-btb
Chapter 11

Proposed Joint Administration with:

| 19-50103-btb | Dora Dog Properties, LLC |
|---|---|
| 19-50104-btb | Dog Blue Properties, LLC |
| 19-50105-btb | Brandy Boy Properties, LLC |
| 19-50106-btb | 475 Channel Road, LLC |
| 19-50108-btb | Park Road, LLC |
| 19-50109-btb | 140 Mason Circle, LLC |
| 19-50130-btb | DC Solar Solutions, Inc. |
| 19-50131-btb | DC Solar Distribution, Inc. |
| 19-50135-btb | DC Solar Freedom, Inc. |

Hearing Date: March 15, 2019
Hearing Time: 10:00 a.m.

**[PROPOSED] ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 503(b),
AND 507(a)(2) AUTHORIZING AND APPROVING CERTAIN PLAN INVESTOR
PROTECTIONS**

Upon the motion (the "<u>Motion</u>")[1] of the Debtors for entry of an order  (i) approving and authorizing the Debtors to pay a fee (the "<u>Break-Up Fee</u>") to a Stalking Horse Bidder when and if payable pursuant to the terms hereof; and (ii) approving and authorizing reimbursement in reasonable and documented fees and expenses (including fees and expenses of legal, tax, accounting, insurance, financial and other professionals) incurred by any Stalking Horse Bidder (the "<u>Expense Reimbursement</u>" and, together with the Break-Up Fee, the "<u>Stalking Horse Bid Protections</u>") when and if payable pursuant to the terms hereof; and upon consideration of the First Day Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby,

FOUND AND DETERMINED THAT

A.      The Break-Up Fee and Expense Reimbursement are: (1) actual and necessary costs of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code; (2) commensurate to the real and substantial benefits which will be conferred upon the Debtors' estates by the Stalking Horse Bidder; and (3) reasonable and appropriate in light of the size and nature of the transaction (the "<u>Transaction</u>") and the efforts that will be expended by the Stalking Horse Bidder in connection therewith.

B.      The Stalking Horse Bid Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.  To the extent any of the foregoing findings of fact constitute conclusions of

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the First Day Declaration.

law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Break-Up Fee and Expense Reimbursement each constitute, pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, an allowed administrative expense claim in these chapter 11 cases.  The Debtors are required to pay the Break-Up Fee and the Expense Reimbursement when and as set forth herein as administrative claims of the estates, which shall be binding and enforceable against each Debtor and its respective estate, and any trustee, examiner or other representative of the Debtors' estates.  Any Break-Up Fee and Expense Reimbursement payable pursuant to the terms hereof shall be payable without any further order of the Court.

3.      In the event the Company enters into a definitive agreement with respect to a Competing Transaction, the Debtors are authorized and directed to pay in cash the Break-Up Fee and the Expense Reimbursement no later than two (2) business days following closing of a Competing Transaction.

4.      The Debtors are authorized and empowered to take all actions as may be necessary or appropriate to implement and affect the terms and requirements of this Order, including, but not limited to, expending such funds or taking such other action as may be necessary or appropriate to the extent authorized by this Order.

5.      This Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

*[Remainder of Page intentionally left blank]*

1  **IT IS SO ORDERED.**

2

3  Submitted By:

4   CLARK HILL PLC

5   /s/
   _____
6   CANDACE C. CARLYON, ESQ.
   Nevada Bar No. 2666
7   TRACY M. O'STEEN, ESQ.
   Nevada Bar No. 10949
8   3800 Howard Hughes Parkway, Suite 500
   Las Vegas, Nevada 89169
9   CCarlyon@clarkhill.com
   TOsteen@clarkhill.com

10   *[Proposed] Counsel for Debtors*

11  - AND –

12  SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
13
   */s/*
14  _____
   VAN C. DURRER, II, ESQ. (*pro hac
   pending*)
15   California Bar No. 226693
   ANNIE LI, ESQ. (*pro hac vice pending*)
16   California Bar No. 272243
   300 South Grand Avenue, Suite 3400
17   Los Angeles, CA 90071
   Telephone:      (213) 687-5000
18   Facsimile:      (213) 687-5600
   van.durrer@skadden.com
19   annie.li@skadden.com

20   *[Proposed] Counsel for Debtors*

21

22

23

24

25

26

27

28