Timothy S. Laffredi, Assistant United States Trustee
State Bar No.: WI 1055133
Cameron Gulden, Trial Attorney
State Bar No.: MN 310931
Edward M. McDonald Jr., Trial Attorney
State Bar No.: NY 4126009
*edward.m.mcdonald@usdoj.gov*
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
300 Las Vegas Boulevard, So., Suite 4300
Las Vegas, Nevada 89101
Tel: (702) 388-6600
Fax: (702) 388-6658

**Attorneys for the United States Trustee for Region 17**
    **TRACY HOPE DAVIS**

E-Filed: February 7, 2019

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | |
| **DOUBLE JUMP, INC.**, | Case No.: BK-19-50102-BTB |
| **DORA DOG PROPERTIES, LLC,** | Case No.: BK-19-50103-BTB |
| **DOG BLUE PROPERTIES, LLC,** | Case No.: BK-19-50104-BTB |
| **BRANDY BOY PROPERTIES, LLC,** | Case No.: BK-19-50105-BTB |
| **475 CHANNEL ROAD, LLC,** | Case No.: BK-19-50106-BTB |
| **PARK ROAD, LLC,** | Case No.: BK-19-50108-BTB |
| **140 MASON CIRCLE, LLC,** | Case No.: BK-19-50109-BTB |
| **DC SOLAR SOLUTIONS, INC.,** | Case No.: BK-19-50130-BTB |
| **DC SOLAR DISTRIBUTION, INC.,** | Case No.: BK-19-50131-BTB |
| **IN RE DC SOLAR FREEDOM, INC.** | Case No.: BK-19-50135-BTB |
| Debtors. | Chapter 11<br>Date: February 8, 2019<br>Time: 10:00 a.m.<br>Location: Courtroom 2 |

1

**OBJECTION AND RESERVATION OF RIGHTS OF THE UNITED STATES TRUSTEE TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE RETENTION OF GLASSRATNER ADVISORY & CAPITAL GROUP LLC TO PROVIDE CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL (II) DESIGNATING SETH R. FREEMAN AS DEBTORS' CHIEF RESTRUCTURING OFFICER EFFECTIVE AS OF THE PETITION DATE, (III) SETTING A <u>FINAL HEARING, AND (IV) GRANTING RELATED RELIEF</u>**

To the Honorable Bruce T. Beesley, Chief United States Bankruptcy Judge:

Tracy Hope Davis, United States Trustee for Region 17, hereby files her objection (the "Objection") to the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Retention of GlassRatner Advisory & Capital Group LLC to Provide Chief Restructuring Officer and Certain Additional Personnel (II) Designating Seth R. Freeman as Debtors' Chief Restructuring Officer Effective as of the Petition Date, (III) Setting A Final Hearing, and (IV) Granting Related Relief* [ECF No. 17] (the "Motion") filed by captioned debtor Double Jump, Inc. ("Debtor").[1]

The Objection is supported by the following memorandum of points and authorities and any argument the Court may permit on the Objection.

---

[1] The above-captioned case is one of ten related cases filed recently in Reno: *In re Double Jump, Inc.*, Case No. 19-50102-BTB ("Double Jump"); *In re Dora Dog Properties LLC*, Case No. 19-50103-BTB ("Dora Dog"); *In re Dog Blue Properties, LLC*, Case No. 19-50104-BTB ("Dog Blue"); *In re Brandy Boy Properties, LLC*, Case No. 19-50105-BTB ("Brandy Boy"); *In re 475 Channel Road, LLC*, Case No. 19-50106-BTB ("475 Channel"); *In re Park Road, LLC*, Case No. 19-50108-BTB ("Park Road"); *In re 140 Mason Circle, LLC*, Case No. 19-50109-BTB ("140 Mason"); *In re DC Solar Solutions, Inc.*, Case No. 19-50130-BTB ("DC Solar Solutions"); *In re DC Solar Distribution, Inc.*, Case No. 19-50131-BTB ("DC Solar Distribution"); and, *In re DC Solar Freedom, Inc.*, Case No. 19-50135-BTB ("DC Solar Freedom") (Double Jump, DC Solar Solutions, DC Solar Distribution, and DC Solar Freedom are the "DC Solar Debtors"), (Dora Dog, Dog Blue, Brandy Boy, 475 Channel, and Park Road are the "Real Estate Debtors") (all debtors collectively, are the "Debtors").

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

1.      By the Debtors' own admission, prior to the filing of these cases, its offices were raided by federal agents. The Debtors' bank accounts were frozen and its equipment was taken. Also by the Debtors' own admission, it is the subject of a civil examination by the IRS. The Debtor purports to have put in new directors, though little to no related information is provided, and the Debtors now seek to have a CRO of its choosing take over these cases even before a committee has been appointed or before any party has time to examine whether other statutory relief may be appropriate. Against this backdrop, the Debtors seek court approval for the appointment of a CRO in these cases, which is no cure for addressing any alleged wrongdoings by prior management. The United States Trustee objects to the Motion for several additional reasons: (1) the Motion is deficient as currently proposed; (2) Section 327 prohibits the retention of parties that serve, or served prepetition, as officers of the Debtor and on its face the Motion demonstrates a failure to meet that standard; and (3) the Motion does not contain adequate and appropriate safeguards to allow the employment of the CRO under Section 363. The United States Trustee urges this Court to deny the motion for appoint of a CRO in its entirety.

## BACKGROUND FACTS

2.      Captioned debtor Double Jump, Inc. commenced this case by filing a voluntary petition under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") on January 30, 2019. [ECF No. 1].[2]

---

[2] The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in this case, as well as the other Debtor cases, pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that the Omnibus Objection contains factual assertions predicated upon statements made by Debtor, any of its current or former affiliates, agents, attorneys, professionals, officers, directors or employees, the United States Trustee submits that such factual assertions are supported by admissible evidence

3

3. The Real Estate Debtors each commenced Chapter 11 bankruptcy cases on January 30, 2019. DC Solar Solutions commenced its Chapter 11 bankruptcy case on February 3, 2019. DC Solar Distribution commenced its Chapter 11 bankruptcy case on February 4, 2019. DC Solar Freedom commenced its Chapter 11 bankruptcy case on February 5, 2019. [*See* ECF No. 1 in each of the Debtor cases].

4. The DC Solar debtors design, manufacture, sell and lease solar technology, including generators, light towers, and charging devices. [*See* ECF No. 12, pp. 5-11 of 32; ¶¶ 11-28]. The Real Estate Debtors hold real estate that is purportedly being pledged to aid in reorganizing the Debtors. [*See* ECF No. 12, p. 4 of 32; ¶ 7].

5. As set forth in the "Omnibus Declaration" supporting the Debtors' first day motions [ECF No. 12], in December 18, 2018, federal agents raided the offices of the DC Solar Debtors, seized their equipment and bank accounts on probable cause based on alleged violations of 26 U.S.C. §§ 7201 & 7206, and 18 U.S.C. §§ 1343, 371 & 1957. [*See* ECF No. 12, pp. 4-5 of 32; ¶ 9].

6. As set forth in the Omnibus Declaration, the IRS has conducted civil tax examination of the returns of the ultimate owners of the Debtors, Jeffrey and Paulette Carpoffs (the "Carpoffs), DC Solar Solutions and certain investments funds affiliated with the DC Solar Debtors and have taken positions with tax implications for these entities, including that the investment funds did not constitute "bona fide partnerships" and that the sales prices of solar

---

in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).

Unless otherwise noted: "Section" refers to a section of the Bankruptcy Code; "FRBP" refers to the Federal Rules of Bankruptcy Procedure; and, "ECF No." refers to the main bankruptcy docket for case number, BK-18-19-50102-BTB.

4

generator systems sold between the DC Solar Debtors and the investment funds were overstated. [*See* ECF No. 12, p. 13 of 32; ¶ 37].

7. In addition, the Omnibus Declaration discloses that a former employee of one of the DC Solar Debtors has alleged that such former employee was the victim of "fraudulent inducement" and has alleged the discovery of a "fraudulent financial scheme." [*See* ECF No. 12, p. 14 of 32; ¶ 40].

8. The Omnibus Declaration also discloses that the Carpoffs have "stepped back from day-to-day management and decision-making" of the Debtors. [*See* ECF No. 12, p. 17 of 32; ¶ 48].

9. Accordingly, on February 4, 2019, all of the Debtors filed the Motion, except for DC Solar Freedom, which filed it on February 5, 2019. [*See* ECF No. 17]. It is supported by the Declaration of Seth R. Freeman. [*See* ECF No. 18].

10. To date, no official committees or Chapter 11 trustees have been appointed in any of the Debtors' cases. [*See generally* Bankruptcy Court Docket for each Debtor Case].

11. Pursuant to an Engagement Agreement, dated January 24, 2019 ("Engagement Agreement"), between DC Solar Solars and its affiliates (*i.e.*, the Debtors) and GlassRatner Advisory & Capital Group, LLC ("GR"), GR agreed to act as Chief Restructuring Officer and Financial adviser to the Debtors, to provide Seth R. Freeman to act as the Chief Restructuring Officer ("CRO") of the Debtors, and to provide other unidentified GR employees to the Debtors. [*See* ECF No. 17, pp. 1-2 & 16-26 of 34]. The Engagement Agreement attached to the Motion is not signed by an authorized member of the Board of Directors of DC Solar Solutions and its "Affiliates."[3] [See ECF No. 17, p. 23 of 34].

---

[3] The "Additional Indemnity Provision" at the end of Engagement Agreement was signed by Mr. Dan Briggs as CEO of DC Solar Solutions. [*See* ECF No. 17, p. 25 of 34].

5

12. Debtor's petition attaches a unanimous consent of Board Members, dated January 28, 2019, authorizing certain unnamed Authorized Persons to file bankruptcy and to take all actions in connection therewith, which is signed by Paulette Carpoff. [See ECF No. 1, pp. 6-9 of 9]. The Real Estate Debtor petitions also have corporate authorizations attached that are signed by Paulette and/or Jeffrey Carpoffs. [See ECF No. 1 at each of the Real Estate Debtor petitions]. However, the DC Solar Debtor petition have corporation authorizations that are not signed by the directors, but instead are prefaced by a certificate signed by their secretary and CFO, Robert A. Karmann. [See DC Solar Solutions Case at ECF No. 7; DC Solar Distribution & DC Solar Freedom each at ECF No.1].

13. The Motion seeks to employ and retain GR to provide Seth Freeman as CRO and to provide "Certain Additional Personnel," and to designate Seth Freeman as CRO *nunc pro tunc* to the petition date (the CRO and the Certain Additional Personnel are the "Engagement Personnel"). [See ECF No. 17, p. 2 of 34]. The bases for relief as set forth in the Motion, in various places, are sections 105 and 363(b), and FRBP 2014(a) and 2016. [See ECF No. 17, p. 2 of 34. GR was retained by the Debtors on January 24, 2019. [See ECF No. 17, p. 8 of 34]. Seth Freeman is a Senior Managing Director of GR. [See ECF No. 17, p. 6 of 34].

14. The Engagement Personnel are purportedly to be tasked with numerous duties, including overseeing the Debtors' Chapter 11 process and assisting with maximizing the value of the Debtors' estates, as well as perform routine accounting, financial analysis, US Trustee reporting, preparing marketing and pricing analysis and projections, obtaining/negotiating DIP financing, performing valuations, working with official committees, developing plans of reorganization, and analyzing facts and generating reports, and other services requested by the Debtors. [See ECF No. 17, p. 7 of 34; ¶ 21].

15. "The CRO shall report to the Debtors' board of directors." [ECF No. 17, p. 7 and 18 of 34]. The Motion also provides that the DC Solar Debtors and Double Jump have engaged "new independent directors," who are not named, to aid with reorganization. [ECF No. 17, p. 5 of 34; ¶ 12].

16. The CRO is an officer of the DC Solar Debtors and Double Jump, and an independent manager of the Real Estate Debtors. [*See* ECF No. 17, p. 6 of 34; *see also* ECF No. 12, pp. 1-2 of 32].

17. The Motion seeks approval of certain compensation terms, with the CRO compensated at $450 an hour, and including a range of hourly rates for GR employees, with the ability to revise these rates periodically. [*See* ECF No. 17, pp. 8, 16 & 19 of 34]. The hourly rate range differs between the Motion and the Engagement Agreement, the range in the Motion is $195 to $ 625, while the range in the Engagement Agreement is $350 to $ 625. [*See* ECF No. 17, *compare* p. 8 *with* p. 19].

18. The Engagement Agreement provides that the CRO will be compensated monthly through interim fee applications or the submission to the Court of monthly invoices, and GR will provide weekly invoices to the Debtors. The Freeman Declaration in support of the Motion provides that the GR must apply to the Court for approval of its fees and expenses before payment. [*See* ECF No. 17, p. 9 & 19; ECF No. 18, p. 6 of 6].

19. Although the Engagement Agreement required payment of a $200,000 retainer, the Motion provides that GR received a total of $375,000 before the bankruptcies were filed, of which it drew $83,911.94, and holds $291,088.06 as a retainer, which it will draw on post-petition for fees and expense approved by the Court. [*See* ECF No. 17, p. 9 & 19 of 34].

20. The Motion does not specify which parties would receive notice of its fee applications or how long such parties would have to review and object to them. [*See generally*

ECF No. 17]. The Motion does not disclose the identity of the other GR employees working on these cases, their positions or billable rates, the billable rates for specific GR positions, when GR might increase its hourly rates. [*Id.*] The Motion does not provide a staffing report or for the periodic filing of staffing reports for these bankruptcy cases. [*Id.*]

21. Pursuant to the Freeman Declaration, GR has conducted a conflicts check and both the CRO and GR are disinterested claims it is disinterested and holds no adverse interest to the Debtors. [See ECF No. 17, p. 8 of 34; *see also* ECF No. 18]. However, the Freeman Declaration in support of the Motion lists numerous possible connections without specifying those connections. [See ECF No. 18, pp. 3-4; ¶¶ 10-13]. In addition, neither the Motion nor the Freeman Declaration provide a list of entity names used in conflicts searches. [*See* ECF Nos. 17 & 18].

22. The Motion seeks approval for the Debtors to indemnify the CRO and GR, as well as GR's shareholders, officers, employees, agents, representatives, and subcontractors against any and all losses, claims, damages, liabilities, penalties, obligations, and expenses, including reasonable legal fees and expenses, based upon or arising out of GR's performance of services in these Chapter 11 Cases, except where any claims or losses are due to willful misconduct or gross negligence. [See ECF No. 17, p. 8-9, 21 & 24 of 34]. The CRO shall be covered as an officer under the Debtors' D&O insurance. [*See* ECF No. 17]. GR will also be reimbursed for legal fees in connection with this engagement. [*See* ECF No. 19]. The Debtors must also have consent of the GR entities covered by the indemnification agreement, before Debtors can settle or compromise any matter impacting the indemnification. [*See* ECF No. 24].

23. The motion itself provides that it was served on certain entities:

> Notice of this Motion shall be given to (a) the Office of the United States Trustee; (b) the holders of the 20 largest unsecured claims against the Debtors in each of the Chapter 11 Cases; (c) the United

8

States Attorney for the Eastern District of California, Attn: McGregor W. Scott; (d) the Debtors' proposed post-petition debtor in possession lender; (e) the Internal Revenue Service; and (f) any such other party entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be provided.

[*See* ECF No. 17, p. 13 of 34; ¶ 45].

## ARGUMENT

24. The Motion should be denied because Debtor's application to retain a CRO and GR in this case under Sections 363(b) and 105 puts into direct conflict the distinction between corporate officers directly involved in the management of the Debtor and professional persons who represent or assist the debtor in possession in the performance of its duties.[4]

25. In *In re First Merchants Acceptance Corp.*, the Bankruptcy Court considered a number of factors in determining whether someone was a "professional":

> (1) whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization, (2) whether the employee is involved in negotiating the terms of a Plan of Reorganization, (3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate, i.e. the qualitative approach, (5) the extent of the employee's involvement in the administration of the debtor's estate, i.e. the quantitative approach; and (6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term.

*In re First Merchants Acceptance Corp.*, No. 97-1500 JF, 1997 WL 873551, 1997 Bankr. LEXIS 2245 at *9-10 (Bankr. D. Del. Dec. 15, 1997).

---

[4] If a financial firm seeks retention as a professional person, that retention must be approved under 11 U.S.C. § 327(a). A member of a professional firm cannot serve as a member of the debtor's top management (such as a CRO) or the board of the board of directors without disqualifying the professional firm from service as a professional; the firm will not be disinterested. *See* 11 U.S.C. § 101(14).

26. The CRO and GR meet all six criteria in the *First Merchants* test, so they are professionals that could only be employed, if at all, under Section 327(a). Their services are not provided to the Debtors in the ordinary course and require special skills. For example, the CRO and GR would be tasked with: overseeing the Debtors' Chapter 11 process and assisting with maximizing the value of the Debtors' estates, as well as perform routine accounting, financial analysis, US Trustee reporting, preparing marketing and pricing analysis and projections, obtaining/negotiating DIP financing, performing valuations, working with official committees, developing plans of reorganization, and analyzing facts and generating reports, and other services requested by the Debtors. [See ECF No. 17, p. 7 of 34; ¶ 21].

27. As professionals, the CRO and GR could only be employed, if at all, under Section 327(a) and would need to seek compensation under Section 330.

### A. AS AN OFFICER, MR. FREEMAN IS BY DEFINITION NOT DISINTERESTED

28. The Debtor is a "debtor in possession." *See* 11 U.S.C. § 1101(1).[5] Under 11 U.S.C. § 1107(a), the Debtor has the power to employ professionals under 11 U.S.C. § 327(a).

29. Under 11 U.S.C. § 327(a), a trustee may, subject to court approval, employ "one or more attorneys, accountants . . . or other professional persons," that (1) do not hold or represent an interest adverse to the estate and (2) that are disinterested persons. 11 U.S.C. § 327(a); *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney (In re Tevis)* 347 B.R. 679, 687 (B.A.P. 9th Cir. 2006) ("Section 327(a) requires the application of a two-pronged test for employment of professional persons."). The same standards that apply to trustees for the retention of professionals also apply to debtors-in-possession. 11 U.S.C. §1107(a); *In re Pillowtex, Inc.*, 304

---

[5] The term "trustee" also includes a debtor in possession in a chapter 11 bankruptcy case. See 11 U.S.C. § 1107(a); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U. S. 1, 6, 120 S. Ct. 1942, 1947 n.3 (2000).

10

F.3d 246, 251 (3rd Cir. 2002).

30. If an applicant for retention under section 327(a) possesses an adverse interest or fails to be disinterested, retention must be denied. *In re AFI Holding, Inc.*, 530 F.3d 832, 852 (9th Cir. 2008); *see also In re Keller Financial Services of Florida, Inc.*, 248 B.R. 859, 892 (Bankr. M.D. Fla. 2000).

31. A "disinterested person" is defined in 11 U.S.C. § 101(14) as being a person who

    (A)    is not a creditor, an equity security holder, or an <u>insider</u>;

    (B)    <u>is not</u> and was not, within 2 years before the date of the filing of the petition, a director, <u>officer, or employee of the debtor</u>;

    and

    (C)    does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14) (emphasis added).

32. A person who is not disinterested, as defined under section 101(14), cannot be employed under section 327(a). *See In re Capitol Metals Co., Inc.*, 228 B.R. 724, 726-27 (B.A.P. 9th Cir. 1998). Section 101(14) defines "disinterested person" to include an "insider." 11 U.S.C. § 101(14)(A).

33. In the case of a corporation, the term "insider" includes an officer. 11 U.S.C. § 101(31)(B)(ii). The statutory definition of "insider" is not exhaustive and may include individuals who have a certain degree of control over the debtor regardless of the title. *See In re Longview Aluminum, L.L.C.*, 657 F.3d 507, 509-10 (7th Cir. 2011).

34. Debtors are each a "corporation." [*See* Debtors Cases, each at ECF No. 1, p. 1; item #6]. *See also* 11 U.S.C. § 101(9).

11

35. A Restructuring Officer is not a creation of the Bankruptcy Code, and there are no Code provisions directed toward the retention of such a person. A Restructuring Officer is not a chapter 11 trustee and is not meant to have the powers of a chapter 11 trustee. A Restructuring Officer is generally an employee of a turnaround and crisis management firm, or an individual similarly qualified, who is retained as an officer of the debtor to manage the debtor's day-to-day operations during the chapter 11 case. The Restructuring Officer works under the supervision of the debtor's management, and that management, not the Restructuring Officer, has the powers of the debtor in possession.

36. Because the Restructuring Officer is by definition an officer of the debtor, from the moment of appointment the Restructuring Officer is an insider and not a disinterested person under Sections 327(a) and 101(14). Although the Motion and Mr. Freeman's Declaration state that he and GR are disinterested, Mr. Freeman is no longer disinterested now that he is a restructuring officer. In addition, Mr. Freeman's declaration in support of the first day pleadings do not provide sufficient transparency for parties to glean critical information regarding the debtors, their corporate governance, capital structure, financial affairs, business dealings and financial affairs. See, e.g., ECF No. 12 p. 9-10 ¶ 24.

37. Therefore, Mr. Freeman is not disinterested and cannot be retained under 11 U.S.C. § 327(a). Mr. Freeman's status as an "officer" and an "insider" (and, by extension, his lack of disinterestedness) is properly imputed to GR and its affiliates because his employment as CRO is an integral part of GR's engagement. *See In re Essential Therapeutics, Inc.*, 295 B.R. 203, 208-11 (Bankr. D. Del. 2003) (partner's status as pre-petition "officer" properly imputed to firm); *see also In re Capital Metals Co., Inc.*, 228 B.R. 724, 727 (B.A.P. 9th Cir. 1998); *but see In re S.S. Retail Stores Corp.*, 211 B.R. 699, 704 (B.A.P. 9th Cir. 1997). [*See also* ECF No. 111, pp. 6-9 of 16].

12

38.     Because the CRO is not disinterested and cannot be employed under Section 327(a), the Section 328 terms of compensation cannot be approved.  *See* 11 U.S.C. § 328(a).

### B.    IF THE COURT GRANTS THE MOTION, THE COURT SHOULD DECLINE TO PRE-APPROVE THE TERMS OF THE CRO'S COMPENSATION

39.     While Section 327 addresses employment of professionals, 11 U.S.C. §§ 328 and 330 address compensation of those professionals after they have been employed under Section 327.  Section 330 authorizes the bankruptcy court to award the retained professional reasonable compensation "based on an after-the-fact consideration of 'the nature, the extent, and the value of such services, taking into account all relevant factors.'" *In re Smart World Technologies, LLC*, 552 F.3d 228, 232 (2d Cir. 2009) (quoting Section 330(a)).

40.     Section 328 operates differently and "permits a professional to have the terms and conditions of its employment pre-approved by the bankruptcy court, such that the bankruptcy court may alter the agreed-upon compensation only 'if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.'" *In re Circle K Corp.*, 279 F.3d 669, 671 (9th Cir. 2002); *In re Smart World Technologies, LLC*, 552 F.3d at 232 (noting that "section 328(a) permits a bankruptcy court to forgo a full post-hoc reasonableness inquiry if it pre-approves the "employment of a professional person under section 327 ... on any reasonable terms and conditions of employment" (quoting Section 328(a)).

41.     As a threshold matter, Section 328 cannot be the basis for retention, but at most can only provide the possible basis for approval of terms of compensation.  *See generally In re Circle K Corp.*, 279 F.3d 669, 671 (9th Cir. 2002).

42.     "The differences between §§ 328 and 330 affect the timing and process of the court's review of fees." *In re Citation Corp.*, 493 F.3d 1313, 1318 (11th Cir. 2007).  Under

13

Section 328, "the bankruptcy court reviews the fee at the time of the agreement and departs from the agreed fee only if some unanticipated circumstance makes the terms of that agreement unfair. Under Section 330, the court reviews the fees after the work has been completed and looks specifically at what was earned, not necessarily at what was bargained for at the time of the agreement." *Id.*

43.     The burden of proof to establish that the terms and conditions of employment – including the imposition of Section 328(a) – is on the applicant. *Nischwitz v. Miskovic (In re Airspect Air, Inc.)*, 385 F.3d 915, 921 (6th Cir. 2004) (internal citations omitted).  To meet its burden, the firm must provide specific evidence to establish that "the terms and conditions are in the best interest of the estate." *In re Gillett Holdings, Inc.*, 137 B.R. 452, 455 (Bankr. D. Colo. 1991); *In re Thermadyne Holdings Corp.*, 283 B.R. 749, 756 (B.A.P. 8th Cir. 2002); *In re Potter*, 377 B.R. 305, 307-08 (Bankr. D.N.M. 2007) ("The trustee seeking to employ a professional under 11 U.S.C. § 328 bears the burden of showing that the provisions of the proposed employment are reasonable.").

44.     Pre-approval of a professional's fee rates or terms of compensation as reasonable should not be granted lightly given that the Court may not revisit the issue at the compensation stage unless such terms prove to have been improvident in light of developments not capable of being anticipated at the time the terms or rates were fixed.  *See* 11 U.S.C. § 328(a); *see also Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.)*, 229 F.3d 824, 829 (9th Cir. 2000) ("There is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under [ ] § 328.").

45.     Here, Debtors are seeking to have terms of compensation of the CRO and GR approved at the employment stage, pursuant to, inter alia, the terms of the Engagement

14

Agreement. Accordingly, Debtors and GR seek to narrow the Court's ability to review the CRO's and GR's fees under a "reasonableness" standard review by the terms of compensation set forth in the Motion.

46. The Court should decline to pre-approve any of the terms of compensation set forth in the Motion under Section 328 or some analogous theory, so that if and when the Court does review GR's and the CRO's compensation and expenses it can do so by assessing the reasonableness of the requested compensation at the end of the case and in light of events therein and APS's role in benefitting the estate.

### C. THE CRO INDEMNIFICATION PROVISION IS OVERLY BROAD

47. The CRO's and GR's liability under the Engagement Agreement and Motion is limited insofar as they shall be indemnified from claims unless based on "willful misconduct or gross negligence fraud". [*See* ECF No. 17, p. 9 of 34]. These limits on a CRO's liability are inconsistent with the established standards for personal liability of a trustee. *In re Metricom, Inc.*, 275 B.R. 364 (Bankr. N.D. Cal. 2002) (Court denied application to employ committee's financial advisor which sought broad indemnification provisions). *See e.g., U.S. ex rel. Willoughby v. Howard*, 302 U.S. 445, 449 – 454 (1938); *Mosser v. Darrow*, 341 U.S. 267, 274 (1951); *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1357 (9th Cir. 1983) (a trustee is subject to personal liability for "intentional [and] negligent violations of duties imposed upon him by law . . . ."); *U.S. v. Aldrich (In re Rigden)*, 795 F.2d 727, 730-731 (9th Cir. 1986); *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989); *Curry v. Castillo (In re Castillo)*, 297 F.3d 940 (9th Cir. 2002) (bankruptcy trustee is subject to personal liability for certain types of misconduct, including negligence); *In re WCI Cable, Inc.*, 282 B.R. 457, 479 (Bankr. D. Or. 2002); *In re Mortgage & Realty Trust*, 123 B.R. 626 (Bankr. C.D. Cal. 1991).

48. Limiting the CRO's and VPR's liability to only gross negligence and willful misconduct creates an unnecessary risk to the estate.

49. In addition, the broad indemnification and liability limiting provisions set forth in the Motion and Engagement Agreement with regard to GR should be denied. Debtor has not provided sufficient evidence to show that it is reasonable to approve such provisions at the beginning of the case.

50. In addition, some of these provisions involve compensating GR in disputes over the terms in the Engagement Agreement. [*See* ECF No. 17, p. 19 of 34]. Because the Engagement Agreement covers compensation it is in conflict with the decision in *Baker Botts L.L.P. v. ASARCO LLC*, 135 S.Ct. 2158 (2015), that prohibits professionals from being compensated by Bankruptcy Courts for defense of their fees. *See Baker Botts L.L.P. v. ASARCO LLC*, 135 S.Ct. 2158, 2170-73 (2015).

**D.   THE MOTION FAILS TO PROVIDE FOR SUFFICIENT OVERSIGHT AND TRANSPARENCY FOR REIMBURSEMENT OF EXPENSES TO GR**

51. The mechanism for parties to review compensation paid to GR and reimbursement of its expenses is not clear from the Motion.

52. Recognizing the conflict, Courts and the United States Trustee have approved the retention of financial advisors in a dual role with certain limitations and criteria to prevent conflicts of interests and to protect the estate and creditors. The United States Trustee objects to the instant Motion to retain GR pursuant to Sections 105 and 363(b), because the Motion fails to include the necessary safeguards outlined below to address the conflict issues inherent in the proposed employment arrangement.

16

53. The following protections, should be included in any order approving the motion, in order to protect the estate from risk:

- Given that GR will provide monthly invoices to the Debtor for review, it should also file with the Court, and provide notice to the United States Trustee and all official committees, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. All compensation shall be subject to review by the Court in the event an objection is filed.

- GR shall file with the Court with copies to the United States Trustee and all official committees a report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

- Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order. No success fee, transaction fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee.

- Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy.

- There shall be no indemnification of GR or its affiliates.

- GR and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned case.

- In the event the Debtors seek to have GR personnel assume executive officer positions that are different than the positions disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

- No principal, employee or independent contractor of GR and its affiliates shall serve

17

as a director of the above-captioned Debtors during the pendency of the above-captioned case.

- For a period of three years after the conclusion of the engagement, neither GR nor any of its affiliates shall make any investments in the Debtors or the Reorganized Debtors.

- GR shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this paragraph is a continuing obligation.

- Any limitation of liability pursuant to the terms and conditions set forth in the Engagement Agreement, Motion, Freeman Declarations, or otherwise, are hereby eliminated for the duration of this chapter 11 case.

54. Unless these additional limitations are included in the Motion, proposed order, and the engagement agreement, the Motion should be denied because the Motion fails to include necessary safeguards to address the conflict issues inherent in the proposed employment arrangement.

### E. SERVICE OF THE MOTION WAS DEFICIENT

55. The Omnibus Declaration discloses that the DC Solar Debtors have engaged in sale or lease transactions with at least 34 investment funds. [See ECF No. 12, p. 17 of 32]. However, only the Debtors' 20 largest unsecured creditors have been served with the Motion. [*See* ECF No. 17, p. 13 of 34].

56. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950) (internal citations omitted).

57. Given the facts of these cases, and the importance of the Motion, it should be served on all creditors and parties in interest in all of the Debtors' bankruptcy cases. They

should have the opportunity to review and respond to the Motion.

58. It is also important to note that the Motion was filed in these ten cases beginning in the late afternoon[6] of Monday, February 4, 2019, and the initial hearing on the Motion is set for Friday morning February 8, 2019. [*See* ECF No. 27, p. 2 of 3].

59. Four principles for Courts to consider with regard to first day motions are:

> First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can affect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties.
>
> Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.
>
> Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.
>
> Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

*In re The Colad Group, Inc.*, 324 B.R. 208, 213-14 (Bankr. W.D.N.Y. 2005).

60. Accordingly, the relief sought in the Motion, if granted at all, should only be granted on an interim basis, with a final hearing set so that any official committees, as well as governmental or regulatory agencies, and creditors and parties in interest can review and respond to the final relief sought, preferably after the schedules are filed and the 341 meeting of creditors is held.

61. For this, the Debtors' request to waive the stay imposed by FRBP 6004(h) should

---

[6] The first version of the Motion was filed in the Double Jump Case, at 5:52 p.m. [*See* ECF No. 17, time stamp].

also be denied. [*See* ECF No. p. 13 of 34].

### F. THE U.S. TRUSTEE RESERVES HER RIGHT TO MOVE FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR TRUSTEES

62. The Motion, the Omnibus Declaration and the Freeman Declaration in support of the Motion disclose very serious issues surrounding the operation and management of these Debtors, including: government raids and seizures of assets based on probable cause of alleged violations of a number of statutes in the Internal Revenue Code and under Title 18; concerns expressed during the course of IRS audits of certain of the DC Solar Debtors, their investments funds, and the Carpoffs; and, allegations by a former employee of the DC Solar Debtors of alleged fraudulent inducement and an alleged fraudulent financial scheme purportedly uncovered by this employee.

63. The CRO and GR will report to the Debtors' directors and/or management, which appear to be comprised of the Carpoffs. It is not clear from the Motion or the various declarations, how far the Carpoffs have stepped back from the Debtors, or how any 'independent' directors, managers or officers appointed in the run up to the filing of these bankruptcy cases were chosen and/or appointed.

64. Accordingly, the United States Trustee reserves her rights to move for the appointment of a Chapter 11 trustee in all of the Debtors' cases.

**WHEREFORE**, the United States Trustee respectfully requests that the Court deny the Motion in all of the Debtors' bankruptcy cases.

Dated: February 7, 2019            **TRACY HOPE DAVIS**
                                   **UNITED STATES TRUSTEE, REGION 17**

                        By:   */s/ Cameron M. Gulden*
                              Cameron M. Gulden
                              Attorney for the United States Trustee