Timothy S. Laffredi, Assistant United States Trustee
State Bar No.: WI 1055133
Edward M. McDonald Jr., Trial Attorney
State Bar No.: NY 4126009
Cameron M. Gulden, Trial Attorney
State Bar No.: MN 310931
cameron.m.gulden@usdoj.gov
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
300 Booth Street, Room 3009
Reno, Nevada 89509
Tel: (775) 784-5335
Fax: (775) 784-5331
**Attorneys for the Acting United States Trustee for Region 12[1]
JAMES L. SNYDER**

E-Filed: February 22, 2019

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>DOUBLE JUMP, INC.,<br><br>☒ Affects ALL Debtors.<br>☐ Affects Double Jump, Inc.<br>☐ Affects Dora Dog Properties, LLC<br>☐ Affects Dog Blue Properties, LLC<br>☐ Affects Brandy Boy Properties, LLC<br>☐ Affects 475 Channel Road, LLC<br>☐ Affects Park Road, LLC<br>☐ Affects 140 Mason Circle, LLC<br>☐ Affects DC Solar Solutions, Inc.<br>☐ Affects DC Solar Distribution, Inc.<br>☐ Affects DC Solar Freedom, Inc. | Lead Case No. BK-19-50102-BTB<br>Chapter 11<br><br>Jointly Administered with:<br><br>19-50103-BTB    Dora Dog Properties, LLC<br>19-50104-BTB    Dog Blue Properties, LLC<br>19-50105-BTB    Brandy Boy Properties, LLC<br>19-50106-BTB    475 Channel Road, LLC<br>19-50108-BTB    Park Road, LLC<br>19-50109-BTB    140 Mason Circle, LLC<br>19-50130-BTB    DC Solar Solutions, Inc.<br>19-50131-BTB    DC Solar Distribution, Inc.<br>19-50135-BTB    DC Solar Freedom, Inc.<br><br>Date:  March 8, 2019<br>Time:  10:00 a.m.<br>Location:  Young Courtroom #2 |

**OBJECTION AND RESERVATION OF RIGHTS OF THE UNITED STATES TRUSTEE TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF FINAL ORDER (I) AUTHORIZING THE RETENTION OF GLASSRATNER ADVISORY & CAPITAL GROUP LLC TO PROVIDE CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL (II) DESIGNATING SETH R. FREEMAN AS DEBTORS' CHIEF RESTRUCTURING OFFICER EFFECTIVE AS OF THE PETITION DATE, AND (III) GRANTING RELATED RELIEF**

---

[1] James L. Snyder, Acting United States Trustee for Region 12, is acting in this appointment for Tracy Hope Davis, United States Trustee for Region 17, who is recused from the above-captioned cases.

To the Honorable Bruce T. Beesley, Chief United States Bankruptcy Judge:

James L. Snyder, Acting United States Trustee for Region 12, hereby files his objection (the "Objection") to the *Debtors' Motion for Entry of Final Orders (I) Authorizing the Retention of GlassRatner Advisory & Capital Group LLC to Provide Chief Restructuring Officer and Certain Additional Personnel (II) Designating Seth R. Freeman as Debtors' Chief Restructuring Officer Effective as of the Petition Date, and (III) Granting Related Relief* [ECF No. 17] (the "Motion") filed by captioned jointly administered debtors ("Debtors").[2]

The Objection is supported by the following memorandum of points and authorities and any argument the Court may permit on the Objection.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

1. Although the Debtors' motion for an order approving their CRO was entered on an interim basis for 60 days, this matter is now before the court on a final basis three weeks before those 60 days expire. As of the date of this objection, no committee has yet been appointed, no schedules have been filed, and no section 341(a) meeting has been conducted.

---

[2] These cases are jointly administered, including: *In re Double Jump, Inc.*, Case No. 19-50102-BTB ("Double Jump"); *In re Dora Dog Properties LLC*, Case No. 19-50103-BTB ("Dora Dog"); *In re Dog Blue Properties, LLC*, Case No. 19-50104-BTB ("Dog Blue"); *In re Brandy Boy Properties, LLC*, Case No. 19-50105-BTB ("Brandy Boy"); *In re 475 Channel Road, LLC*, Case No. 19-50106-BTB ("475 Channel"); *In re Park Road, LLC*, Case No. 19-50108-BTB ("Park Road"); *In re 140 Mason Circle, LLC*, Case No. 19-50109-BTB ("140 Mason"); *In re DC Solar Solutions, Inc.*, Case No. 19-50130-BTB ("DC Solar Solutions"); *In re DC Solar Distribution, Inc.*, Case No. 19-50131-BTB ("DC Solar Distribution"); and, *In re DC Solar Freedom, Inc.*, Case No. 19-50135-BTB ("DC Solar Freedom") (Double Jump, DC Solar Solutions, DC Solar Distribution, and DC Solar Freedom are the "DC Solar Debtors"), (Dora Dog, Dog Blue, Brandy Boy, 475 Channel, and Park Road are the "Real Estate Debtors") (all debtors collectively, are the "Debtors"). [*See* ECF No. 97 (Order re Joint Administration)].

The proposed CRO is a "professional" who should be employed under 11 U.S.C. § 327(a), yet as an insider is not disinterested and thus not eligible to be employed under section 327(a). The motion, therefore, should be denied or, at most, continued to near the end of the 60-day interim period, so that it can be reviewed by any official committee appointed, and in light of the schedules and statements, and 341 testimony.

2. On February 8, this Court held a hearing on the Debtors' motion for an interim order authorizing the retention of GlassRatner Advisory & Capital Group LLC and designating Seth R. Freeman as the Debtors' Chief Restructuring Officer.

3. The United States Trustee objected to that motion. [ECF No. 72]. The court granted the motion on an interim basis for 60 days [ECF No. 128]. The United States Trustee hereby objects to the entry of a final order for the bases set forth herein.

4. By the Debtors' own admission, prior to the filing of these cases, its offices were raided by federal agents. The Debtors' bank accounts were frozen and its equipment was taken. Also by the Debtors' own admission, it is the subject of a civil examination by the IRS. In addition, the United States Attorney's Office for the Eastern District of California has filed a civil forfeiture complaint involving numerous debtors herein alleging "fraud and money laundering crimes." [*See* ECF No. 106.]

5. Although the Debtors purport to have put in new directors, little related information is provided, and the Debtors now seek to have a CRO of their choosing take over these cases even before a committee has been appointed. Against this backdrop, the Debtors seek court approval for the appointment of a CRO in these cases, which is no cure for addressing any alleged wrongdoings by prior management. The United States Trustee objects to the Motion for several additional reasons: (1) the Motion is deficient as currently proposed; (2) Section 327 prohibits the retention of parties that serve, or served prepetition, as officers or directors of the

Debtor and on its face the Motion demonstrates a failure to meet that standard; and (3) the Motion does not contain adequate and appropriate safeguards to allow the employment of the CRO under Section 363.

## BACKGROUND FACTS

6. Captioned debtor Double Jump, Inc. commenced this case by filing a voluntary petition under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") on January 30, 2019. [ECF No. 1].[3]

7. The Real Estate Debtors each commenced Chapter 11 bankruptcy cases on January 30, 2019. DC Solar Solutions commenced its Chapter 11 bankruptcy case on February 3, 2019. DC Solar Distribution commenced its Chapter 11 bankruptcy case on February 4, 2019. DC Solar Freedom commenced its Chapter 11 bankruptcy case on February 5, 2019. [*See* ECF No. 1 in each of the Debtor cases].

8. The DC Solar debtors design, manufacture, sell and lease solar technology, including generators, light towers, and charging devices. [*See* ECF No. 12, pp. 5-11 of 32; ¶¶ 11-28]. The Real Estate Debtors hold real estate that is purportedly being pledged to aid in reorganizing the Debtors. [*See* ECF No. 12, p. 4 of 32; ¶ 7].

---

[3] The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in this case, as well as the other Debtor cases, pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that the objection contains factual assertions predicated upon statements made by Debtor, any of its current or former affiliates, agents, attorneys, professionals, officers, directors or employees, the United States Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).

Unless otherwise noted: "Section" refers to a section of the Bankruptcy Code; "FRBP" refers to the Federal Rules of Bankruptcy Procedure; and, "ECF No." refers to the main bankruptcy docket for case number 19-50102-BTB.

9. As set forth in the "Omnibus Declaration" supporting the Debtors' first day motions [ECF No. 12], in December 18, 2018, federal agents raided the offices of the DC Solar Debtors, seized their equipment and bank accounts on probable cause based on alleged violations of 26 U.S.C. §§ 7201 & 7206, and 18 U.S.C. §§ 1343, 371 & 1957. [*See* ECF No. 12, pp. 4-5 of 32; ¶ 9].

10. As set forth in the Omnibus Declaration, the IRS has conducted civil tax examination of the returns of the ultimate owners of the Debtors, Jeffrey and Paulette Carpoffs (the "Carpoffs"), DC Solar Solutions and certain investments funds affiliated with the DC Solar Debtors and have taken positions with tax implications for these entities, including that the investment funds did not constitute "bona fide partnerships" and that the sales prices of solar generator systems sold between the DC Solar Debtors and the investment funds were overstated. [*See* ECF No. 12, p. 13 of 32; ¶ 37].

11. In addition, the Omnibus Declaration discloses that a former employee of one of the DC Solar Debtors has alleged that such former employee was the victim of "fraudulent inducement" and has alleged the discovery of a "fraudulent financial scheme." [*See* ECF No. 12, p. 14 of 32; ¶ 40].

12. The Omnibus Declaration also discloses that the Carpoffs have "stepped back from day-to-day management and decision-making" of the Debtors. [*See* ECF No. 12, p. 17 of 32; ¶ 48].

13. Accordingly, on February 4, 2019, all of the Debtors filed the Motion, except for DC Solar Freedom, which filed it on February 5, 2019. [*See* ECF No. 17]. It is supported by the Declaration of Seth R. Freeman. [*See* ECF No. 18].

14. To date, no official committees or Chapter 11 trustees have been appointed in any of the Debtors' cases. [*See generally* Bankruptcy Court Docket for each Debtor Case].

15. Pursuant to an Engagement Agreement, dated January 24, 2019 ("Engagement Agreement"), between DC Solar Solars and its affiliates (*i.e.*, the Debtors) and GlassRatner Advisory & Capital Group, LLC ("GR"), GR agreed to act as Chief Restructuring Officer and Financial adviser to the Debtors, to provide Seth R. Freeman to act as the Chief Restructuring Officer ("CRO") of the Debtors, and to provide other unidentified GR employees to the Debtors. [*See* ECF No. 17, pp. 1-2 & 16-26 of 34]. The Engagement Agreement attached to the Motion is not signed by an authorized member of the Board of Directors of DC Solar Solutions nor any of its "Affiliates."[4]  [See ECF No. 17, p. 23 of 34].

16. Debtor's petition attaches a unanimous consent of Board Members, dated January 28, 2019, authorizing certain unnamed Authorized Persons to file bankruptcy and to take all actions in connection therewith, which is signed by Paulette Carpoff. [See ECF No. 1, pp. 6-9 of 9]. The Real Estate Debtor petitions also have corporate authorizations attached that are signed by Paulette and/or Jeffrey Carpoffs. [*See* ECF No. 1 at each of the Real Estate Debtor petitions]. However, the DC Solar Debtor petitions have corporation authorizations that are not signed by the directors, but instead are prefaced by a certificate signed by their secretary and CFO, Robert A. Karmann. [*See* DC Solar Solutions Case at ECF No. 7; DC Solar Distribution & DC Solar Freedom each at ECF No.1].

17. The Motion seeks to employ and retain GR to provide Seth Freeman as CRO and to provide "Certain Additional Personnel," and to designate Seth Freeman as CRO *nunc pro tunc* to the petition date (the CRO and the Certain Additional Personnel are the "Engagement Personnel"). [*See* ECF No. 17, p. 2 of 34]. The bases for relief as set forth in the Motion, in various places, are sections 105 and 363(b), and FRBP 2014(a) and 2016. [*See* ECF No. 17, p. 2

---

[4] The "Additional Indemnity Provision" at the end of Engagement Agreement was signed by Mr. Dan Briggs as CEO of DC Solar Solutions. [*See* ECF No. 17, p. 25 of 34].

6

of 34. Debtors retained GR on January 24, 2019, which was prior to the filing of the Petitions. [*See* ECF No. 17, p. 8 of 34]. Seth Freeman is a Senior Managing Director of GR. [*See* ECF No. 17, p. 6 of 34].

18. The Engagement Personnel are purportedly to be tasked with numerous duties, including overseeing the Debtors' Chapter 11 process and assisting with maximizing the value of the Debtors' estates, as well as perform routine accounting, financial analysis, US Trustee reporting, preparing marketing and pricing analysis and projections, obtaining/negotiating DIP financing, performing valuations, working with official committees, developing plans of reorganization, and analyzing facts and generating reports, and other services requested by the Debtors. [*See* ECF No. 17, p. 7 of 34; ¶ 21].

19. "The CRO shall report to the Debtors' board of directors." [ECF No. 17, p. 7 and 18 of 34]. The Motion also provides that the DC Solar Debtors and Double Jump have engaged "new independent directors," who are not named, to aid with reorganization. [ECF No. 17, p. 5 of 34; ¶ 12]. According to the Motion, the CRO is an officer of the DC Solar Debtors and Double Jump, and an independent manager of the Real Estate Debtors. [*See* ECF No. 17, p. 6 of 34; *see also* ECF No. 12, pp. 1-2 of 32].

20. The Motion seeks approval of certain compensation terms, with the CRO compensated at $450 an hour, and including a range of hourly rates for GR employees, with the ability to revise these rates periodically. [*See* ECF No. 17, pp. 8, 16 & 19 of 34]. The hourly rate range differs between the Motion and the Engagement Agreement, the range in the Motion is $195 to $ 625, while the range in the Engagement Agreement is $350 to $ 625. [*See* ECF No. 17, *compare* p. 8 *with* p. 19].

21. The Engagement Agreement provides that the CRO will be compensated monthly through interim fee applications or the submission to the Court of monthly invoices, and GR will

provide weekly invoices to the Debtors. The Freeman Declaration in support of the Motion provides that the GR must apply to the Court for approval of its fees and expenses before payment. [*See* ECF No. 17, p. 9 & 19; ECF No. 18, p. 6 of 6].

22. Although the Engagement Agreement required payment of a $200,000 retainer, the Motion provides that GR received a total of $375,000 before the bankruptcies were filed, of which it drew $83,911.94, and holds $291,088.06 as a retainer, which it will draw on post-petition for fees and expense approved by the Court. [*See* ECF No. 17, p. 9 & 19 of 34].

23. The Motion does not specify which parties would receive notice of its fee applications or how long such parties would have to review and object to them. [*See generally* ECF No. 17]. The Motion does not disclose the identity of the other GR employees working on these cases, their positions or billable rates, the billable rates for specific GR positions, when GR might increase its hourly rates. [*Id.*] The Motion does not provide a staffing report or for the periodic filing of staffing reports for these bankruptcy cases. [*Id.*]

24. Pursuant to the Freeman Declaration, GR has conducted a conflicts check and claims both the CRO and GR are disinterested and hold no adverse interest to the Debtors. [*See* ECF No. 17, p. 8 of 34; *see also* ECF No. 18]. However, the Freeman Declaration in support of the Motion lists numerous possible connections without specifying those connections, or discussing why those connections do not present a conflict or interest adverse to the estate. [*See* ECF No. 18, pp. 3-4; ¶¶ 10-13]. In addition, neither the Motion nor the Freeman Declaration provide a list of entity names used in conflicts searches. [*See* ECF Nos. 17 & 18].

25. The Motion seeks approval for the Debtors to indemnify the CRO and GR, as well as GR's shareholders, officers, employees, agents, representatives, and subcontractors against any and all losses, claims, damages, liabilities, penalties, obligations, and expenses, including reasonable legal fees and expenses, based upon or arising out of GR's performance of

services in these Chapter 11 Cases, except where any claims or losses are due to willful misconduct or gross negligence. [*See* ECF No. 17, p. 8-9, 21 & 24 of 34]. The CRO shall be covered as an officer under the Debtors' D&O insurance. [*See* ECF No. 17]. GR will also be reimbursed for legal fees in connection with this engagement. [*See* ECF No. 19]. The Debtors must also have consent of the GR entities covered by the indemnification agreement, before Debtors can settle or compromise any matter impacting the indemnification. [*See* ECF No. 24].

26. On February 15, 2019, the Debtors filed an undated stipulation (the "CRO Stipulation"), that was drafted <u>after</u> the February 8, 2019[5] hearing in these cases, and provides, *inter alia*, that:

- The Carpoffs had resigned all of their former positions as directors, officer or managers as of "[February 9, 2019]";
- That as of February 1, 2019, Seth Freeman was appointed as: the CRO of Double Jump, DC Solar Solutions, and DC Distribution; the manager of the real estate debtors; and, the independent director and CRO of DC Solar Freedom;
- That as of February 1, 2019, Wyatt Wachtel was appointed as independent director of Double Jump. DC Solar Solutions and DC Solar Distribution, and as of February 4, 2019 was appointed independent director of DC Solar Freedom;
- That as of February 4, 2019, William Keenan was appointed as independent director of DC Solar Freedom;
- The Carpoffs shall not take action to remove Messrs. Freeman, Wachtel or Keenan, unless authorized by the Court

[*See* ECF No. 119].

---

[5] The CRO Stipulation referenced this Court's ruling at the February 8, 2019 hearing. [*See* ECF No. 119].

9

# ARGUMENT

27. The Motion should be denied because it puts into direct conflict the distinction between corporate officers directly involved in the management of the Debtor and professional persons who represent or assist the debtor in possession in the performance of its duties.[6]

28. In *In re First Merchants Acceptance Corp.*, the Bankruptcy Court considered a number of factors in determining whether someone was a "professional":

> (1) whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization, (2) whether the employee is involved in negotiating the terms of a Plan of Reorganization, (3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate, i.e. the qualitative approach, (5) the extent of the employee's involvement in the administration of the debtor's estate, i.e. the quantitative approach; and (6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term.

*In re First Merchants Acceptance Corp.*, No. 97-1500 JF, 1997 WL 873551, 1997 Bankr. LEXIS 2245 at *9-10 (Bankr. D. Del. Dec. 15, 1997).

29. The CRO and GR meet all six criteria in the *First Merchants* test, so they are professionals that could only be employed, if at all, under Section 327(a). Their services are not provided to the Debtors in the ordinary course and require special skills. For example, the CRO and GR are tasked with: overseeing the Debtors' Chapter 11 process and assisting with maximizing the value of the Debtors' estates, as well as perform routine accounting, financial analysis, US Trustee reporting, preparing marketing and pricing analysis and projections,

---

[6] If a financial firm seeks retention as a professional person, that retention must be approved under 11 U.S.C. § 327(a). A member of a professional firm cannot serve as a member of the debtor's top management (such as a CRO) or the board of the board of directors without disqualifying the professional firm from service as a professional; the firm will not be disinterested. *See* 11 U.S.C. § 101(14).

obtaining/negotiating DIP financing, performing valuations, working with official committees, developing plans of reorganization, and analyzing facts and generating reports, and other services requested by the Debtors. [See ECF No. 17, p. 7 of 34; ¶ 21].

30. As professionals, the CRO and GR could only be employed, if at all, under Section 327(a)[7] and would need to seek compensation under Section 330.

### A. AS AN OFFICER AND DIRECTOR, MR. FREEMAN IS BY DEFINITION NOT DISINTERESTED

31. The Debtor is a "debtor in possession." *See* 11 U.S.C. § 1101(1).[8] Under 11 U.S.C. § 1107(a), the Debtor has the power to employ professionals under 11 U.S.C. § 327(a).

32. Under 11 U.S.C. § 327(a), a trustee may, subject to court approval, employ "one or more attorneys, accountants . . . or other professional persons," that (1) do not hold or represent an interest adverse to the estate and (2) that are disinterested persons. 11 U.S.C. § 327(a); *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney (In re Tevis)* 347 B.R. 679, 687 (B.A.P. 9th Cir. 2006) ("Section 327(a) requires the application of a two-pronged test for employment of professional persons."). The same standards that apply to trustees for the retention of professionals also apply to debtors-in-possession. 11 U.S.C. §1107(a); *In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3rd Cir. 2002).

33. If an applicant for retention under section 327(a) possesses an adverse interest or fails to be disinterested, retention must be denied. *In re AFI Holding, Inc.*, 530 F.3d 832, 852 (9th Cir. 2008); *see also In re Keller Financial Services of Florida, Inc.*, 248 B.R. 859, 892 (Bankr. M.D. Fla. 2000).

---

[7] The Debtors' reply to the United States Trustee's original objection to the Motion stated that the employment is being sought under sections 363(b) and 105(a), not section 327(a). [ECF No. 76, pp. 3-4.]

[8] The term "trustee" also includes a debtor in possession in a chapter 11 bankruptcy case. *See* 11 U.S.C. § 1107(a); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U. S. 1, 6, 120 S. Ct. 1942, 1947 n.3 (2000).

11

34. A "disinterested person" is defined in 11 U.S.C. § 101(14) as being a person who

   (A) is not a creditor, an equity security holder, or an <u>insider</u>;

   (B) <u>is not</u> and was not, within 2 years before the date of the filing of the petition, <u>a director, officer, or employee of the debtor</u>;

   and

   (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14) (emphasis added).

35. A person who is not disinterested, as defined under section 101(14), cannot be employed under section 327(a). *See In re Capitol Metals Co., Inc.*, 228 B.R. 724, 726-27 (B.A.P. 9th Cir. 1998). Section 101(14) defines "disinterested person" to include an "insider" and "director." 11 U.S.C. § 101(14)(B).

36. Debtors are each a "corporation." [*See* Debtors Cases, each at ECF No. 1, p. 1; item #6]. *See also* 11 U.S.C. § 101(9). In the case of a corporation, the term "insider" includes an officer and/or director. 11 U.S.C. §§ 101(31)(B)(i) & (ii). The statutory definition of "insider" is not exhaustive and may include individuals who have a certain degree of control over the debtor regardless of the title. *See In re Longview Aluminum, L.L.C.*, 657 F.3d 507, 509-10 (7th Cir. 2011).

37. A Restructuring Officer is not a creation of the Bankruptcy Code, and there are no Code provisions directed toward the retention of such a person. A Restructuring Officer is not a chapter 11 trustee and is not meant to have the powers of a chapter 11 trustee. A Restructuring Officer is generally an employee of a turnaround and crisis management firm, or an individual similarly qualified, who is retained as an officer of the debtor to manage the debtor's day-to-day

12

operations during the chapter 11 case. The Restructuring Officer works under the supervision of the debtor's management, and that management, not the Restructuring Officer, has the powers of the debtor in possession.

38. Because the Restructuring Officer is by definition an officer of the debtor, from the moment of appointment the Restructuring Officer is an insider and not a disinterested person under Sections 327(a) and 101(14). Although the Motion and Mr. Freeman's Declaration state that he and GR are disinterested, Mr. Freeman is no longer disinterested now that he is a restructuring officer. In addition Mr. Freeman is the manager of the Real Estate Debtors and a director of DC Solar Freedom. Accordingly, he is ineligible to be retained as a "professional" under Section 327(a). Therefore, Mr. Freeman is not disinterested and cannot be retained under 11 U.S.C. § 327(a). Mr. Freeman's status as an "officer," "director" and an "insider" (and, by extension, his lack of disinterestedness) is properly imputed to GR and its affiliates because his employment as CRO is an integral part of GR's engagement. *See In re Essential Therapeutics, Inc.*, 295 B.R. 203, 208-11 (Bankr. D. Del. 2003) (partner's status as pre-petition "officer" properly imputed to firm); *see also In re Capital Metals Co., Inc.*, 228 B.R. 724, 727 (B.A.P. 9th Cir. 1998); *but see In re S.S. Retail Stores Corp.*, 211 B.R. 699, 704 (B.A.P. 9th Cir. 1997). [*See also* ECF No. 111, pp. 6-9 of 16].

39. Because the CRO is not disinterested and cannot be employed under Section 327(a), the Section 328 terms of compensation cannot be approved. *See* 11 U.S.C. § 328(a).

**B.    THE COURT SHOULD DECLINE TO PRE-APPROVE THE TERMS OF THE CRO'S COMPENSATION**

40. Although the Motion seeks to employ the CRO under Section 363(b), the CRO is clearly a professional and subject to Sections 327, 328 and 330. While Section 327 addresses employment of professionals, 11 U.S.C. §§ 328 and 330 address compensation of those

13

professionals after they have been employed. Section 330 authorizes the bankruptcy court to award the retained professional reasonable compensation "based on an after-the-fact consideration of 'the nature, the extent, and the value of such services, taking into account all relevant factors.'" *In re Smart World Technologies, LLC*, 552 F.3d 228, 232 (2d Cir. 2009) (quoting Section 330(a)).

41. Section 328 operates differently and "permits a professional to have the terms and conditions of its employment pre-approved by the bankruptcy court, such that the bankruptcy court may alter the agreed-upon compensation only 'if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.'" *In re Circle K Corp.*, 279 F.3d 669, 671 (9th Cir. 2002); *In re Smart World Technologies, LLC*, 552 F.3d at 232 (noting that "section 328(a) permits a bankruptcy court to forgo a full post-hoc reasonableness inquiry if it pre-approves the "employment of a professional person under section 327 ... on any reasonable terms and conditions of employment" (quoting Section 328(a)). As a threshold matter, Section 328 cannot be the basis for retention, but at most can only provide the possible basis for approval of terms of compensation. *See generally In re Circle K Corp.*, 279 F.3d 669, 671 (9th Cir. 2002).

42. "The differences between §§ 328 and 330 affect the timing and process of the court's review of fees." *In re Citation Corp.*, 493 F.3d 1313, 1318 (11th Cir. 2007). Under Section 328, "the bankruptcy court reviews the fee at the time of the agreement and departs from the agreed fee only if some unanticipated circumstance makes the terms of that agreement unfair. Under Section 330, the court reviews the fees after the work has been completed and looks specifically at what was earned, not necessarily at what was bargained for at the time of the agreement." *Id*.

43. The burden of proof to establish that the terms and conditions of employment –

14

including the imposition of Section 328(a) – is on the applicant. *Nischwitz v. Miskovic (In re Airspect Air, Inc.)*, 385 F.3d 915, 921 (6th Cir. 2004) (internal citations omitted). To meet its burden, the firm must provide specific evidence to establish that "the terms and conditions are in the best interest of the estate." *In re Gillett Holdings, Inc.*, 137 B.R. 452, 455 (Bankr. D. Colo. 1991); *In re Thermadyne Holdings Corp.*, 283 B.R. 749, 756 (B.A.P. 8th Cir. 2002); *In re Potter*, 377 B.R. 305, 307-08 (Bankr. D.N.M. 2007) ("The trustee seeking to employ a professional under 11 U.S.C. § 328 bears the burden of showing that the provisions of the proposed employment are reasonable.").

44. Pre-approval of a professional's fee rates or terms of compensation as reasonable should not be granted lightly given that the Court may not revisit the issue at the compensation stage unless such terms prove to have been improvident in light of developments not capable of being anticipated at the time the terms or rates were fixed. *See* 11 U.S.C. § 328(a); *see also Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.)*, 229 F.3d 824, 829 (9th Cir. 2000) ("There is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under [ ] § 328.").

45. Here, Debtors are seeking to have terms of compensation of the CRO and GR approved at the employment stage, pursuant to, *inter alia*, the terms of the Engagement Agreement. By the terms of compensation set forth in the Motion, Debtors and GR seek to narrow the Court's ability to review the CRO's and GR's fees under a "reasonableness" standard.

46. The Court should decline to pre-approve any of the terms of compensation set forth in the Motion under Section 328 or some analogous theory, so that if and when the Court does review GR's and the CRO's compensation and expenses it can do so by assessing the

reasonableness of the requested compensation at the end of these cases and in light of events therein and APS's role in benefitting the estates.

47. In addition, some of these provisions involve compensating GR in disputes over the terms in the Engagement Agreement. [*See* ECF No. 17, p. 19 of 34]. Because the Engagement Agreement covers compensation, it is in conflict with the decision in *Baker Botts L.L.P. v. ASARCO LLC*, 135 S.Ct. 2158 (2015), that prohibits professionals from being compensated by Bankruptcy Courts for defense of their fees. *See Baker Botts L.L.P. v. ASARCO LLC*, 135 S.Ct. 2158, 2170-73 (2015).

### C. THE CRO INDEMNIFICATION PROVISION IS OVERLY BROAD

48. The CRO's and GR's liability under the Engagement Agreement and Motion is limited insofar as they shall be indemnified from claims unless based on "willful misconduct or gross negligence fraud". [*See* ECF No. 17, p. 9 of 34]. These limits on a CRO's liability are inconsistent with the established standards for personal liability of a trustee. *In re Metricom, Inc.*, 275 B.R. 364 (Bankr. N.D. Cal. 2002) (Court denied application to employ committee's financial advisor which sought broad indemnification provisions). *See e.g., U.S. ex rel. Willoughby v. Howard*, 302 U.S. 445, 449 – 454 (1938); *Mosser v. Darrow*, 341 U.S. 267, 274 (1951); *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1357 (9th Cir. 1983) (a trustee is subject to personal liability for "intentional [and] negligent violations of duties imposed upon him by law . . . ."); *U.S. v. Aldrich (In re Rigden)*, 795 F.2d 727, 730-731 (9th Cir. 1986); *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989); *Curry v. Castillo (In re Castillo)*, 297 F.3d 940 (9th Cir. 2002) (bankruptcy trustee is subject to personal liability for certain types of misconduct, including negligence); *In re WCI Cable, Inc.*, 282 B.R. 457, 479 (Bankr. D. Or. 2002); *In re Mortgage & Realty Trust*, 123 B.R. 626 (Bankr. C.D. Cal. 1991).

49. Limiting the CRO's and VPR's liability to only gross negligence and willful misconduct creates an unnecessary risk to the estates.

50. The broad indemnification and liability limiting provisions set forth in the Motion and Engagement Agreement with regard to GR should be denied. Debtors have not provided sufficient evidence to show that it is reasonable to approve such provisions at the beginning of the case.

### D. THE MOTION FAILS TO PROVIDE FOR SUFFICIENT OVERSIGHT AND TRANSPARENCY FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

51. The mechanism for parties to review compensation paid to GR and reimbursement of its expenses is not clear from the Motion.

52. Recognizing the conflict, in certain cases, Courts and the United States Trustee have approved the retention of in a dual role in certain instances with certain limitations and criteria to prevent conflicts of interests and to protect the estate and creditors. The United States Trustee objects to the instant Motion to retain GR pursuant to Sections 105 and 363(b), because, *inter alia*, the Motion fails to include the necessary safeguards outlined below to address the conflict issues inherent in the proposed employment arrangement.

53. The United States Trustee objects to the employment of the CRO, but if the Court approves the CRO's employment, the following protections, should be included in any order approving the motion, in order to protect the estates from risk:

- Given that GR will provide monthly invoices to the Debtor for review, it should also file with the Court, and provide notice to the United States Trustee and all official committees, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing

17

services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. All compensation shall be subject to review by the Court in the event an objection is filed.

- GR shall file with the Court with copies to the United States Trustee and all official committees a report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

- Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order. No success fee, transaction fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee.

- Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy.

- There shall be no indemnification of GR or its affiliates.

- GR and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned case.

- In the event the Debtors seek to have GR personnel assume executive officer positions that are different than the positions disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

- No principal, employee or independent contractor of GR and its affiliates shall serve as a director of the above-captioned Debtors during the pendency of the above-captioned case.

- For a period of three years after the conclusion of the engagement, neither GR nor any of its affiliates shall make any investments in the Debtors or the Reorganized Debtors.

- GR shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this paragraph is a continuing obligation.

- Any limitation of liability pursuant to the terms and conditions set forth in the Engagement Agreement, Motion, Freeman Declarations, or otherwise, are hereby eliminated for the duration of these chapter 11 cases.

54. Unless these additional limitations are included in the Motion, proposed order, and the engagement agreement, the Motion should be denied because the Motion fails to include necessary safeguards to address the conflict issues inherent in the proposed employment arrangement.

### E. THE U.S. TRUSTEE RESERVES HIS RIGHT TO MOVE FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR TRUSTEES

55. The Motion, the Omnibus Declaration and the Freeman Declaration in support of the Motion disclose very serious issues surrounding the operation and management of these Debtors, including: government raids and seizures of assets based on probable cause of alleged violations of a number of statutes in the Internal Revenue Code and under Title 18; concerns expressed during the course of IRS audits of certain of the DC Solar Debtors, their investments funds, and the Carpoffs; and, allegations by a former employee of the DC Solar Debtors of alleged fraudulent inducement and an alleged fraudulent financial scheme purportedly uncovered by this employee.

56. The CRO and GR will report to the Debtors' directors and/or management, which appear to have been comprised of the Carpoffs until very recently. It is not clear from the Motion, the various declarations, or the CRO Stipulation, how or when the Carpoffs 'stepped back' from the Debtors, or how any purportedly independent directors, managers or officers appointed through the CRO Stipulation, were chosen and/or appointed.

57. Accordingly, the United States Trustee reserves his rights to move for the appointment of a Chapter 11 trustee in all of the Debtors' cases.

**WHEREFORE**, the United States Trustee respectfully requests that the Court deny the Motion in these jointly administered cases.

Dated: February 22, 2019

**JAMES L. SNYDER**
**ACTING UNITED STATES TRUSTEE, REGION 12**

By: */s/ Edward M. McDonald Jr.*
Edward M. McDonald Jr., Esq.
Attorney for the United States Trustee