CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
CLARK HILL PLC
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone:    (702) 862-8300
Facsimile:    (702) 862-8400
CCarlyon@ClarkHill.com
TOSteen@ClarkHill.com
*[Proposed] Counsel for Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re | Lead Case No.: BK-19-50102-btb |
| | Chapter 11 |
| DOUBLE JUMP, INC. | |
| | Jointly Administered with: |
| Debtor. | |

| | |
|---|---|
| 19-50103-btb | Dora Dog Properties, LLC |
| 19-50104-btb | Dog Blue Properties, LLC |
| 19-50105-btb | Brandy Boy Properties, LLC |
| 19-50106-btb | 475 Channel Road, LLC |
| 19-50108-btb | Park Road, LLC |
| 19-50109-btb | 140 Mason Circle, LLC |
| 19-50130-btb | DC Solar Solutions, Inc. |
| 19-50131-btb | DC Solar Distribution, Inc. |
| 19-50135-btb | DC Solar Freedom, Inc. |

_____ Affects ALL Debtors
_____ Affects Double Jump, Inc.
_____ Affects Dora Dog Properties, LLC
_____ Affects Dog Blue Properties, LLC
_____ Affects Brandy Boy Properties, LLC
_____ Affects 475 Channel Road, LLC
_____ Affects Park Road, LLC
_____ Affects 140 Mason Circle, LLC
__X__ Affects DC Solar Solutions, Inc.
__X__ Affects DC Solar Distribution, Inc.
__X__ Affects DC Solar Freedom, Inc.

**DEBTORS' OPPOSITION TO MOTION OF METABANK PURSUANT TO 11 U.S.C. § 362(d) FOR RELIEF FROM THE AUTOMATIC STAY AND FOR OTHER RELIEF**

Hearing Date: March 8, 2019
Hearing Time: 10:00 a.m.

Double Jump, Inc., et al., the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned, jointly administered chapter 11 bankruptcy cases (the "Chapter 11 Cases"), by and through their proposed counsel of record, Clark Hill PLC, submit their opposition (the "Opposition") to the *Motion of Metabank Pursuant to 11 U.S.C. § 362(d) for Relief from the Automatic Stay and for Other Relief* [ECF No. 193](the "Motion").

This Opposition is made and based upon the following memorandum of points and

authorities, Section 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), the *Declaration of Seth R. Freeman in Support of the Debtors' Oppositions to Motions for Relief From Stay* (the "<u>Freeman Declaration</u>") filed concurrently herewith, all papers and pleadings filed in the above-captioned, jointly administered Chapter 11 Cases, judicial notice of which is requested pursuant to Rule 201 of the Federal Rules of Evidence, and any arguments of counsel offered in support of the Opposition at any hearing held on the Motion.

Respectfully submitted this 4th day of March, 2019.

CLARK HILL PLC

/s/: Tracy M. O'Steen
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
TRACY M. O'STEEN, ESQ.
Nevada Bar No. 10949
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone:    (702) 862-8300
Facsimile:    (702) 862-8400
CCarlyon@ClarkHill.com
TOSteen@ClarkHill.com

*[Proposed] Counsel for Debtors and Debtors in Possession*

## POINTS AND AUTHORITIES

### I.

### <u>INTRODUCTION</u>

Debtors initially note that they have been afforded the protections of the Bankruptcy Code for only approximately thirty days. Section 365(d)(5) of the Bankruptcy Code expressly provides that it is the debtor's obligation under personal property leases to timely perform all of the obligations arising from or after 60 days after the order for relief, until such lease is assumed or rejected. Debtors may ultimately reject the lease with MetaBank, and fully reserve their claims against MetaBank. However, the Debtors are not yet required to make that determination, nor can the Debtors be compelled to make that decision by an equipment lessor such as MetaBank. The Debtors request that the Court deny the Motion seeking relief from the automatic stay as it is contrary to the specific provisions of Section 365(d)(5), to continue the matter for hearing following

2

the expiration of the 60-day period afforded the Debtors by the Bankruptcy Code, and issue an interim order allowing the Debtors (at their sole discretion and option) to permit MetaBank to pick up the leased units (and not any additional equipment) at its own expense and risk.

## II.

## JURISDICTION AND VENUE

1.      Pursuant to Local Rule 9014.2, the Debtors consent to the entry of a final order by the Bankruptcy Judge on the Motion.

## III.

## FACTUAL BACKGROUND

2.      On January 30, 2019 (the "Petition Date"), Holdings and the Real Estate Debtors (as defined below) each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code, and on or about February 3, 2019, DC Solar Solutions, Inc. and DC Solar Distribution, Inc. each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code, and on or about February 5, 2019, DC Solar Freedom, Inc. commenced its case by filing a petition for relief under chapter 11 of the Bankruptcy Code.  The Court has granted the Debtors' request that the Chapter 11 Cases be jointly administered.

3.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      To date, no creditors' committee has been appointed in these Chapter 11 Cases by the Office of the United States Trustee for the District of Nevada (the "United States Trustee").  No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

5.      Prior to December 18, 2018, DC Solar Solutions, Inc. ("Solutions" and, together with DC Solar Distribution, Inc. ("Distribution") and DC Solar Freedom, Inc. ("Freedom") the "DC Solar" companies or the "Company") were in the business of designing, manufacturing, and distributing mobile solar generators, mobile solar electric vehicle chargers, mobile solar light towers, and mobile solar power stations to private enterprises, municipalities, and universities.  The Company was founded in 2009.

6.      In addition to the Company, the Debtors are comprised of (a) Double Jump, Inc.,

which holds 100% of the stock in Solutions and Distribution, as well as (b) six limited-liability companies which primarily hold real estate assets (both commercial and residential) for rent or lease, being Dog Blue Properties, LLC, Dora Dog Properties LLC, Brandy Boy Properties, LLC, 475 Channel Road, LLC, 140 Mason Circle LLC, and Park Road LLC (the "Real Estate Debtors").

7.      As set forth in the *Omnibus Declaration of Seth R. Freeman in Support of First Day Motions* [ECF No. 12], on December 18, 2018, the federal government (the "United States") seized funds from and froze all bank accounts associated with the DC Solar companies, allegedly in connection with a purported "investment fraud" perpetrated by the Company.  On the same day, agents from the FBI and the IRS executed sweeping search and/or seizure warrants of the DC Solar business headquarters located in Benicia, California.  Agents seized hundreds of items essential for the Company to conduct and operate its ongoing businesses, including, but not limited to, computer servers, computers, and hard copy files containing corporate books and records, investment agreements, lease agreements, vendor agreements, communications with investors and customers, and invoices for insurance and utility providers.  Left without any liquid assets to fund the Company's business or basic communications and record-keeping infrastructure, the Company was forced to shut down and lay off its entire workforce the week before Christmas.  Approximately 100 employees were laid off, and the Company was unable to pay wages owed to those employees. Following the seizure, the Company has continued to receive strong support from its employees, its customers, its partners, and its investors.

8.      In order to alleviate any concerns with regard to prior management, the Debtors have engaged Seth R. Freeman to act as the Corporate Restructuring Officer (the "CRO") and lead the Debtors through the reorganization process. The DC Solar companies and Double Jump, Inc. have also engaged new independent directors to aid with reorganization process.  On February 9, 2019, Debtors' owners agreed to remove themselves from management of the Debtors pursuant to a Stipulation Regarding Corporate Governance filed on February 15, 2019 as Docket #119.

9.      The Motion is supported by the Declaration of Larry Pearce filed on February 25, 2019, as Dkt. #195 (the "Pearce Declaration").  As set forth in the Pearce Declaration, in June and December of 2017,  MetaBank and Distribution entered into two equipment leases (collectively, the

4

"Lease"), for the lease of 176 mobile solar units (the "Units").

10.    The Debtors, through their independent CRO, have seen what appear to be hundreds of the mobile solar generator units ("MSGs") manufactured by Solutions and Distribution at the Debtors' warehouses in Benicia, California (including at the 4901 Park Road location and the separate warehouse spaces located at 597, 631 and 635 Indiana Street in Benicia), and have seen what appear to be more than a hundred MSGs located at the Company's Sunset location in Las Vegas, Nevada.  The CRO has been informed by certain of the Debtors' counterparties that more than 1,000 units are located at the Las Vegas Motor Speedway.  The CRO also believes that there are MSG units at multiple additional locations, including locations in California, Nevada, Georgia, and approximately twenty other states.  In cooperation with Hancock Whitney Equipment Finance and Leasing, LLC ("Hancock Whitney"), the Debtors arranged for representatives of Hancock Whitney to inspect the MSGs at the Sunset and Las Vegas Speedway locations and conduct an inventory of MSGs at those locations.  Hancock Whitney  has promised to share the inventory with the Debtors, but as of the date of the filing of this Opposition, have not yet seen such report.  The CRO has also obtained the most recent report of inventory locations in Southern Nevada, although he has been informed that no such report has been located for other states.  The Debtors, through their CRO, are attempting to determine the location and extent of the MSGs, and have collected quotes from various third-party appraisal firms to conduct a full inventory of the MSGs in cooperation with their owners.

11.    As described in the Freeman Declaration, there are essentially three categories of MSGs: (a) those owned by Solutions (generally because the sale of new units was interrupted by the government raid); (b) those owned by investment funds subject to a secured lien in favor of Solutions and leased by the funds to Distribution (the "Investment Fund Owned MSGs"), which must remain in service and available for lease during the first five years of the investment fund ownership in order to avoid the risk to the funds of tax credit recapture, but which may be sold after five years, with the resulting economic benefit of such sale generally flowing to Solutions via its secured lien on the MSGs; and (c) units owned by third parties, such as MetaBank.  There is also additional inventory and materials utilized for work in progress which may have substantial value.

12.     Since filing the Chapter 11 Cases, Debtors, through their independent CRO, have been working diligently to acquire funds necessary to undertake a reorganization effort, including efforts to obtain DIP financing, negotiations with respect to third party claims, and negotiations for potential asset sales, including the inventory, materials relating to work in progress, and Solutions-owned MSGs.  The Debtors have received a proposal for financing against those assets in the multiple million dollar range.  Such financing would enable the Debtors to make immediate payment for insurance, utilities, leases, and payroll, as well as to pay the costs of conducting a full inventory of the units (which is expected to cost less than $1,000,000); to scan or copy the books and records which are being held by the United States (which is likely to have a similar cost, based on information received by the Debtors that the documents comprise approximately 600 boxes of papers); and to fund the reorganization effort.

13.     Simultaneously, Debtors are working to provide documents requested by the Office of the United States Trustee, to produce Bankruptcy Schedules and Statements of Financial Affairs, and to analyze assets of the estate with a variety of parties in interest, including the location of the MSG purportedly owned by MetaBank and the thousands of other MSGs which are the core of the Debtors' historical operations.

14.     However, Debtors presently have no paid employees, no liability insurance with respect to the DC Solar Companies, and no workmen's compensation insurance.  Pending a source of funding, Debtors have been attempting to work cooperatively with the owners of the MSGs to identify the MSGs and their locations, and arrange for payment of storage and insurance costs.  If the Debtors are unable to provide for the safe housing and continue efforts for leasing of the Investment Fund Owned MSGs, those entities will likely suffer losses in the hundreds of millions of dollars.  If Debtors are able to do so, substantial income from leasing and post-recapture period sales would flow to the Debtors via the secured lien of Solutions.

15.     The Debtors are hopeful of being able to work with the United States to cooperatively find a way to preserve and utilize the assets of the estate in order to provide the highest possible return to those and other creditors of the estates.  In order to have a reasonable chance to do so, the Debtors needs at least the first 60 days of these cases to be able to obtain

financing, preserve and identify the assets and their location, and attempt to determine the ownership of the MSGs.

## IV.

## LEGAL AUTHORITY AND ARGUMENT

**A.      The Court Should Deny the Motion as it is Inconsistent with Section 365 of the Bankruptcy Code.**

16.      First and foremost, the Debtors' relationship with MetaBank is accurately characterized as one of lessor and lessee, with the parties' respective rights and obligations set forth in the Lease.    This lessor/lessee relationship clearly implicates Section 365 of the Bankruptcy Code, analysis of which is noticeably absent from the Motion.  A debtor in possession may assume or reject an unexpired equipment lease at any time prior to confirmation of the plan, subject only to the court's power, on request of any party to the lease, to order the assumption or rejection within a specified period of time. 11 U.S.C. § 365(d)(2).   In a Chapter 11 case, a trustee or debtor in possession is entitled to a reasonable time to make a careful and informed decision whether to assume or reject an executory contract or unexpired lease. This period of time is meant to give the debtor "breathing room" under the automatic stay so that it may accurately determine what contracts are most advantageous to the debtor's future operations.  *In re LPM Corp.*, 300 F.3d 1134, 1137 (9th Cir. 2002).  The debtor's right to take time to evaluate the estate must be respected, and "the Code jealously protects the process by which a creditor proceeds against property of the estate as fundamental and absolute." *Id.*

17.      More importantly, Section 365(d)(5) expressly provides a Chapter 11 debtor a period of 60 days to make an informed decision on whether to accept or reject unexpired leases involving personal property.  Section 365(d)(5) states as follows:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof. This subsection shall not be deemed to

affect the trustee's obligations under the provisions of subsection (b) or (f). Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

18.    It is submitted that the request for "relief from stay" is not appropriate where the debtor's rights under the lease are determined by Section 365, and the time for first performance (i.e., 60 days after the petition date) has not yet expired.  Significantly, the Motion cites no case law for the proposition that relief from the stay is appropriate during this 60 day period, and merely recites the statutory provisions of Section 362(d)(1) as the legal basis for the requested relief.  As many bankruptcy courts have noted, Section 365(d)(5) "certainly obligates the [debtor] to actually pay the equipment lessor the agreed upon rent as it comes due under the lease for whatever interval *follows the first sixty days*. Similarly, Section 365(d)(5) clearly entitles the equipment lessor to have the stay immediately lifted 'notwithstanding § 503(b)(1)' in <u>the event the trustee does not perform as that subsection requires</u>."  *In re Sturgis Iron & Metal Co., Inc.*, 420 B.R. 716, 744 (Bankr. W.D. Mich. 2009) (emphasis added).  The corollary is that Section 365 and the Bankruptcy Code implicitly prohibit a termination of the automatic stay in favor of the equipment lessor, such as MetaBank prior to the expiration of the first 60 days of these Chapter 11 Cases.

19.    The "factual" bases cited in support of the Motion, that the equipment is subject to wear and tear pending assumption or rejection of the Lease, are present in every case involving personal property leases, and the 60-day breathing spell provided by Section 365(d)(5) represents the decision of Congress to balance those interests in the Debtors' favor during this brief period of time.  Terminating the stay in favor of MetaBank before the Debtors have the benefit of the 60-day period is contrary to the theory and the history that underlies the Bankruptcy Code's treatment of executory contracts and unexpired leases.

**B.    MetaBank's Efforts to Compel Assumption or Rejection of the Lease Through its Motion are Premature.**

20.    Even if the Motion could be construed as one compelling the Debtors to either assume or reject the Lease, MetaBank's efforts to litigate its claims at this early stage of the Chapter 11 Cases must be rejected based upon the express provisions of the Bankruptcy Code.  To the extent that the Debtors have in fact breached the Lease as argued in the Motion, such claims will be

addressed if and when the Debtors decide to either assume or reject the Lease at the expiration of the 60-day period.  In fact, courts have held that *until* an executory contract is assumed, the debtor is incapable of breaching that executory contract.  *U.S. on Behalf of Postal Service v. Dewey Freight*, 31 F.3d 620, 624 (8th Cir. 1994) ("[a]fter a debtor commences a Chapter 11 proceeding, but before executory contracts are assumed or rejected under 365(a), those contracts remain in existence, *enforceable by the debtor but not against the debtor*") (emphasis in original.)  *See also In re FBI Distribution Corp.*, 330 F.3d 36, 43 (1st Cir. 2003).  Here, the Debtors have not elected to assume or reject the MetaBank Lease and the Bankruptcy Code provides them with a period of 60 days to carefully consider that decision.  Therefore, the Debtors are incapable of standing in breach of the Lease as MetaBank argues.  As such, MetaBank's arguments concerning any alleged breach of the Lease are irrelevant and inapplicable to the decision the Court is required to make.   Any purported failure by Debtors to comply with the terms of the Lease are relevant to lifting the stay for cause following the expiration of the 60 day period afforded by 365(d)(5), but not before.

**C.    Alternatively, "Cause" Does Not Exist to Lift the Automatic Stay in Favor of MetaBank at this Stage of the Chapter 11 Cases.**

21.    Assuming that the Motion could be properly considered on its merits under Section 362, it must still be denied.  In order to be entitled to relief from the automatic stay, MetaBank must demonstrate that "cause" exists.  11 U.S.C. § 362(d)(1).  Whether "cause" exists to justify relief from the automatic stay is "determined on a case-by-case basis" in the bankruptcy court's discretion.  *In re Conejo Enterprises, Inc.*, 96 F.3d 346, 352 (9th Cir. 1996).

22.    Importantly, because the Debtors have not assumed the Lease, MetaBank cannot rely upon the Lease's termination or default provisions as "cause" for relief to terminate the contract.  The United States Supreme Court's decision in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) forecloses such a result.  In *Bildisco*, the Supreme Court held that as to the debtor, "the filing of the petition in bankruptcy means that [the contract] is no longer immediately enforceable, and may never be enforceable again."  *Id.* at 531.  The Supreme Court concluded that permitting the enforcement of such contracts against the debtor prior to assumption would be contrary to the "fundamental purpose of reorganization . . . to prevent a debtor from going into liquidation," and

"would largely, if not completely, undermine whatever benefit the debtor-in-possession otherwise obtains by its authority to request rejection of the agreement." *Id.* Therefore, MetaBank's attempt to supersede the Bankruptcy Code on the basis of its claimed contract rights must fail, and any enforcement of the Lease terms must continue to be stayed until the Debtors assume or reject the Lease in manner provided by Section 365.

23.     Furthermore, as noted above, the factual bases cited by Hancock in support of its request do not constitute "cause" to lift the automatic stay. Wear and tear on equipment occurs in the ordinary course and does not rise to the level of "cause" that would support the extraordinary relief of lifting the stay at this early point in these Chapter 11 Cases, to the detriment of the Debtors and their estates. MetaBank has not identified any harm or detriment that it would suffer in absence of the requested relief which would outweigh the Debtors' clear entitlements to the protections of sections 362 and 365(d)(5) of the Bankruptcy Code.

**D.      There is No Basis to Waive Bankruptcy Rule 4001(a)(3) if the Court Grants the Motion.**

24.     Although MetaBank's Motion does not specifically request a waiver of Bankruptcy Rule 4001(a) in connection with any order entered granting its Motion, the Debtors wish to make clear that they fully oppose any such waiver in the event the same is requested at the time of the hearing on the Motion. Bankruptcy Rule 4001(a)(3) provides that an order granting a motion for relief from an automatic stay is stayed until the expiration of 14 days after the order is entered, unless the court orders otherwise. *In re A Partners, LLC*, 344 B.R. 114, (Bankr. E.D. Cal. 2006). Bankruptcy Rule 4001(a)(3), which was added by the 1999 amendments to the Federal Rules of Bankruptcy Procedure, recognizes that motions granting relief from the stay can have enormous consequences for the parties involved and can often dictate the success or failure of the entire bankruptcy case. *Id.*

25.     When contested, the rule should be waived only when there is a clear showing by the movant of equitable reasons that would warrant the waiver of the presumptive stay afforded to a debtor by the rule. *See In re Thomas*, 364 B.R. 207, 210 (Bankr. E.D.Va. 2007) (finding "[to] remain faithful to the rule, it should only be waived when there is a good reason to waive it"); *see*

*also In re Henderson*, 395 B.R. 893, 904 (Bankr. D.S.C. 2008).  There, the court found that the movant had shown "subjective bad faith" in the debtor's filing of a second bankruptcy petition on the eve of foreclosure, that grounds for relief from stay were proven under both 362(d)(2) and (d)(2), and that *in rem* relief was appropriate given the debtor's bad faith.  However, the court denied the request to waive the protection of the 14-day stay.  The court stated:

> First Citizens moved to waive Fed. R. Bankr. P. 4001(a)(3), which provides a temporary stay of an order lifting the automatic stay similar to that available under Fed. R. Bankr. P. 8005. This rule was added by the 1999 amendments to the Federal Rules of Bankruptcy Procedure and provides a temporary breathing spell for a debtor to appeal and obtain a stay pending appeal thereby avoiding the potential devastating consequences that stay relief can have on the success of the bankruptcy case. *See In re A Partners, LLC,* 344 B.R. 114 (Bankr. E.D. Cal. 2006) (discussing the policy reasons behind Fed. R. Bankr. P. 4001(a)(3)).

> …Considering the requirements necessary to obtain a stay pending appeal, it follows that First Citizens, as the movant, must demonstrate countervailing factors that would mitigate against such a stay to obtain a waiver of the temporary stay of Fed. R. Bankr. P. 4001(a)(3). *See* 9 *Collier on Bankruptcy* ¶ 4001.04A, at pp. 4001–20–4001–21 (Lawrence P. King et al. eds., 15th ed. Revised 2007) (stating that the bankruptcy court should rarely grant a request to waive 4001(a)(3), if contested, unless there is a showing of "strong countervailing factors" that would not warrant a stay pending appeal).

*Henderson*, 395 B.R. at 904.

26.    Here, there is no evidentiary showing of such extreme circumstances and impending danger that would justify the waiver of the 14-day stay of Bankruptcy Rule 4001(a)(3).

## V.

## CONCLUSION

Based upon the above argument, the Debtors respectfully request that the Court enter an order denying the Motion in its entirety, or alternatively, continuing the hearing on the Motion to a date that falls after 60-days from the Petition Date, and granting such other and further relief as the

. . .

. . .

. . .

. . .

. . .

11

1  Court deems just and appropriate under the circumstances of these Chapter 11 Cases.

2        Respectfully submitted this 4th day of March 2019.

3

4                         CLARK HILL PLC

                       /s/: Tracy M. O'Steen

5                         CANDACE C. CARLYON, ESQ. (NV Bar 2666)

6                         TRACY M. O'STEEN, ESQ. (NV Bar 10949)
                       3800 Howard Hughes Parkway, Suite 500

7                         Las Vegas, NV 89169
                       *[Proposed] Counsel for Debtors*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28