# EXHIBIT 2

# EXHIBIT 2



Scanned

# TRANS LEASE, INC.

## LOAN AND SECURITY AGREEMENT

Borrower Loan Number: 11612068-001

| (Secured Party) | (Borrower) |
|---|---|
| TRANS LEASE, INC. DBA TRANS LEASE, INC.; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC; SUMMIT FINANCE CO. MERCEDES-BENZ FINANCIAL SERVICES USA LLC PO Box 16464 Denver, CO 80216-0464 | DC SOLAR SOLUTIONS, INC. 4901 PARK ROAD BENICIA, CA 94510 |
| | (Lien Address) PO BOX 279319 Sacramento, CA 95827 |

THIS LOAN AND SECURITY AGREEMENT ("Agreement") dated as of the date set forth below by and between the party referred to above as Borrower (hereinafter the "Borrower") and TRANS LEASE, INC. DBA TRANS LEASE, INC.; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC. ("Secured Party"), 4475 E 74th Avenue, Suite 103, Commerce City, Colorado 80022, and MERCEDES-BENZ FINANCIAL SERVICES USA LLC, PO BOX 279319 Sacramento, CA 95827.

1. **LOAN**

    (a) FOR VALUE RECEIVED, Borrower hereby promises to pay to the order of Secured Party at its main office in Commerce City, Colorado the principal sum of $1,170,395.00, One Million One Hundred Seventy Thousand Three Hundred Ninety-Five And Xx / 100 Dollars together with interest on the unpaid principal balance from time to time outstanding (computed on the basis of the actual number of days elapsed and a year of 365 days), payable monthly at the rate of 6.35% per annum (the "Loan").

    (b) The Loan is payable in 60 consecutive monthly installments of principal and interest in the amount of $22,850.18, with the first such installment payable February 05, 2017. Subsequent installments shall be due and payable on the 5th day of each month until January 05, 2022, when the final payment of $22,850.18 will be due and payable. Payment as provided herein shall cause the entire balance hereof and all accrued and unpaid interest to be paid in full. If any installment is more than ten (10) days late, Borrower agrees to pay a late charge of 5% of such payment but nothing in this Agreement shall require Borrower to pay more than the maximum late charge permitted by law. Each monthly installment shall be applied, first, to the accrued interest, then to principal and thereafter to any late charges or other costs then due.

    (c) If the Loan is prepaid, unearned interest will be computed with simple interest.

| Principal Balance | $1,170,395.00 | First Payment Date | 02/05/2017 |
|---|---|---|---|
| Payment Amount | $22,850.18 | Balloon Payment | |
| Number of Payments | 60 | Interest Rate | 6.35% |

2. **SECURITY INTEREST**

    (a) As security for the payment of the Loan and also to secure any other indebtedness or liability of Borrower to Secured Party hereunder and under any other agreement, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, joint or several, however created, arising or evidenced (all hereinafter called "Secured Obligation"), Borrower hereby grants and conveys to Secured Party a security interest in the equipment, motor vehicles, fixtures, inventory, and other goods, general intangibles, documents, instruments and chattel paper, accounts and securities and all attachments, accessories, additions, replacements and substitutions, whether now owned or hereafter acquired and all proceeds thereof (the "Collateral"), described below:

| 2PCV33492EC712503 | 2016 OUTLAW PREVOST H3-45 VIP RV |
|---|---|

(b) All items of Collateral shall remain personal property and shall not in any way be allowed to become part of or to be affixed to any real property without first assuring the Secured Party's reasonable satisfaction that Secured Party's security interest in the Collateral is prior and senior to any interest or lien then held or thereafter acquired by any mortgagee of such real property or the owner or purchaser of any interest therein. With the exception of any of the motor vehicles included in the Collateral, the Collateral shall be kept at the Borrower's place of business set forth above and will not be removed from such location or locations unless, prior to such removal, Borrower has given written notice to Secured Party of the location or locations to which Borrower desires to remove the same and Secured Party has given its consent to such removal. Any motor vehicles included in the Collateral will not be used outside the This chattel paper has been assigned to use any motor vehicles included in the Collateral only in the course of Borrower's own business and shall permit any Mercedes-Benz Financial Services USA LLC or Daimler Trust ("Secured Party") and the purchaser or assignment of this chattel paper would violate the rights of the Secured Party.

1

Scanned

operated only by Borrower's agents or employees or members of Borrower's immediate family who in such case are legally licensed to operate such Vehicles

(c) Borrower represents and warrants that Borrower has or will acquire title to the Collateral free and clear of all liens, security interests and encumbrances, except for the security interest granted herein. Such security interest will at all times constitute a valid, perfected and enforceable first priority security interest in favor of Secured Party, subject to no other security interest, mortgage, lien or encumbrance.

(d) To the extent permitted by law, Borrower hereby appoints Secured Party as Borrower's agent and attorney in fact, with full power of substitution, for an on behalf of Borrower, (1) to prepare, execute, sign, file and record on its own behalf without the signature of Borrower, (a) any and all necessary UCC-1 financing statements and other documents required to perfect Secured Party's interest in the Collateral and (b) if the Collateral includes motor vehicles. All instruments and documents, applications, and certificates of title related to the application for certificate of title, registration, license and/or renewal and transfer of license plates with respect to the motor vehicles; (2) to execute, file and record any and all documents necessary to protect and perfect Secured Party's interest in the Collateral; and (3) to assign the name of the Borrower with the same force and effect as if signed by Borrower. Without limiting the foregoing Borrower further agrees, if Secured Party so requests, to execute any instrument or financing statement necessary to protect or reflect Secured Party's interest in the Collateral and to pay the cost of filing or recording such instruments or documents.

(e) The Security interest in the Collateral granted hereunder shall not be terminated in whole or in part until and unless all of the Secured Obligations are fully paid and satisfied.

### 3. REPRESENTATIONS AND WARRANTIES OF BORROWER

(a) The Borrower is a (Corp-Private), whose location is 4901 PARK ROAD, BENICIA, CA. If Borrower is a registered organization it is incorporated, registered, formed or organized under the laws of the State of California (Borrower's State) and has been registered in the Borrower's State as its location for purposes of this Loan and Security Agreement. If Borrower is not a registered organization, its location is as set forth above (the individual's residence if Borrower is an individual, the chief executive office of any other debtor that is not a registered organization).

(b) If Borrower is a registered organization, is in good standing and qualified to do business in the State of California

(c) Borrower's legal name is the name set forth above in this Loan and Security Agreement. Borrower also does business under the name(s) of .

(d) Borrower's State ID Number is C3109784.

4. **AGREEMENTS OF BORROWER.** Borrower hereby agrees that, so long as any Secured Obligations remain outstanding and unpaid, Borrower shall:

(a) Pay and perform all of the Secured Obligations according to their terms.

(b) Execute any written agreement to do any other acts necessary to effectuate the purposes and provisions of the Agreement and execute any instrument or statement required by law or otherwise in order to perfect the security interest of Secured Party in the Collateral, including but not limited to delivering certificates of title for any motor vehicles included in the Collateral and executing and delivering UCC-1 financial statements.

(c) Retain possession of the Collateral and not sell, exchange, assign, loan, deliver, lease, mortgage or otherwise dispose of the Collateral, except the Borrower shall be entitled to sell inventory in the ordinary course of business.

(d) Obtain Secured Party's written consent prior to changing the location or use of the Collateral.

(e) Pay, when due, all license fees, assessments and sales, use, property and other taxes now or hereafter imposed by governmental body or agency in connection with the Collateral or this transaction, and keep the Collateral free from all liens arising therefrom.

(f) Keep the Collateral free and clear of all liens, charges and encumbrances, and not permit the Collateral to be attached or replevined.

(g) Keep the Collateral at all times insured against risks of loss or damage fire (including so-called extended coverage), theft and such other casualties as the Secured Party may reasonably require, including collision in the case of any motor vehicle, all in such companies or underwriters as the Secured Party may approve, losses in all cases to be payable to the Secured Party and Borrower, as their interest may appear. All policies of insurance shall provide for at least ten (10) days' prior written notice of cancellation to the Secured Party; and the Debtor shall furnish the Secured Party with certificates of such insurance of other evidence satisfactory to the Secured Party, as to compliance with the provisions of this paragraph. The Secured Party may act as attorney for the Debtor in making, adjusting and settling claims under or canceling such insurance and endorsing the Debtor's name on any drafts drawn by insurers or the Collateral.

(h) Keep the Collateral, at Borrower's own cost and expense, in good repair and condition and available, together with the records relative thereto, for inspection by Secured Party.

(i) Not change or discontinue, without prior written notice by Secured Party. Borrower's place or places of business, Borrower's State ID number, any of Borrower's names, any ownership of Borrower, or the State of Borrower's registration, including by merger, consolidation, reorganization or dissolution and reformation.

(j) Indemnify and hold harmless Secured Party, its successors and assigns from and against any and all claims or suits for any loss, damage or injury sustained by any person whatsoever by reason of use of the Collateral.

(k) Furnish Secured Party with annual financial statements within one hundred twenty (120) days after the end of Borrower's fiscal year and such other financial information as Secured Party may from time to time request, which such info

This chattel paper has been assigned to Mercedes-Benz Financial Services USA LLC or Daimler Trust ("Secured Party") and the purchase or assignment of this chattel paper would violate the rights of the Secured Party.

2

Scanned

and represents shall be true, correct and fairly present the financial condition of Borrower for the periods involved.

    (l) Not use the Collateral in violation of any applicable statues, regulations, or ordinances.

    (m) Upon request of Secured Party, provide Secured Party with a certificate of good standing, authority, or status of Borrower

    (n) Promptly give notice to Secured Party of

        i. the occurrence of any default or event of default under Section 5 below, and

        ii. the occurrence of any event which causes any representation or warranty of the Borrower to be untrue or a breach of any covenant of the Borrower set forth in the Agreement, and

        iii. any material adverse change in the business, operations, property, condition (financial or otherwise) or prospects of the Borrower whole or any development or event which could reasonably be expected to have a material adverse effect on Borrower's business or on Borrower's ability to satisfy the Secured Obligations.

    (o) Bear all risk of damage, loss, theft, destruction, condemnation or seizure with respect to the Collateral, and no damage, loss, theft, destruction of, condemnation or seizure with respect to the Collateral or any part thereof shall affect any obligation of Borrower under the Agreement, which shall continue in full force and effect. Borrower shall advise Secured Party in writing within ten (10) days of the occurrence of any damage, loss, theft, destruction or governmental commandeering of any item of Collateral (an "Event of Loss") and of the circumstances and extent of such Event of Loss. Borrower shall at Secured Party's option either (a) replace such item of Collateral with collateral acceptable to Secured Party within 30 days after the Event of Loss and such replacement collateral shall automatically become Collateral subject to Secured Party's security interest under the Agreement or (b) pay down the Secured Obligations by an amount representing the unpaid portion of the Secured Obligations funded in reliance of the affected items as reasonably determined by Secured Party. Any insurance or condemnation proceeds received shall be paid to Secured Party and credited to Borrower's obligation under this paragraph. Whenever the Collateral is damaged and such damage can be repaired, Borrower shall, at its expense, promptly effect such repairs as Secured Party shall deem necessary for compliance with this Agreement. Proceeds of insurance shall be paid to Secured Party with respect to such reparable damage to the Collateral and shall at the election of Secured Party, be applied either to the repair of the Collateral by payment by Secured Party directly to the party completing the repairs, or to the reimbursement of Borrower for the cost of such repairs, provided, however, that Secured Party shall have no obligation to make such payment or any part thereof until receipt of such evidence as Secured Party shall deem satisfactory that such repairs have been completed and further provided that Secured Party may apply such proceeds to the payment of any installment or other sum due or to become due under the Agreement if at the time such proceeds are received by Secured Party there shall have occurred and be continuing any Event of Default or any event which with lapse of time or notice, or both, would become an Event of Default

### 5. PREPAYMENT FEE

To the extent permitted by applicable law, it is understood that if Borrower prepays any Secured Obligations or if Secured Party accelerates payment of any Secured Obligations as a result of Borrower's default, Secured Party has the right, in addition to any other right provided for in this Agreement or by law, to charge Borrower, and Borrower hereby agrees to pay to Secured Party, fees in an amount equal to three percent (3%) of the then unpaid principal balance of the Secured Obligations from the start date through 50% of the term of this Agreement ("Prepayment Fees"). The parties intend that the Prepayment Fees constitute compensation, and not a penalty, and that the Prepayment Fees are reasonable fees in the event of Borrower's prepayment of the Secured Obligations or an acceleration of payment of any Secured Obligations as a result of Borrower's default.

### 6. DEFAULT AND REMEDIES

    (a) The occurrence of any of the following events shall constitute a default by Borrower (i) failure to pay, when due, any of the Secured Obligations, (ii) failure of Borrower to comply with any agreement or undertaking or perform any of the obligations arising under this Agreement or under any other documents and agreements relating hereto (iii) any representations or warranties made or given by Borrower in connection with the Agreement or any other document related hereto were false or untrue when made (iv) subjection of the Collateral to levy or execution or any other judicial process or loss, substantial damage to, destruction, theft, or encumbrance to or of any portion of the Collateral; (v) Borrower shall admit in writing its inability or fail generally to pay its debts as they become due or the commencement of any insolvency, bankruptcy or similar proceeding by or against Borrower or any guarantor of the Secured Obligations under the provisions of the United States Bankruptcy Code or any insolvency law; (vi) the liquidation or dissolution of Borrower or any sale or other disposition of all or substantially all of the assets of Borrower including any merger or consolidation of Borrower (vii) any judgment, writ or warranty of attachment or of any similar process against Borrower or its property, (viii) Borrower's suspension or cessation of the conduct of its business (ix) a material change in Borrower's financial condition (x) impairment of Borrower's ability to satisfy the Secured Obligations (xi) Borrower's default under the terms of any other agreement between Borrower and Secured Party (xii) a significant change is the management, ownership or control of Borrower without Secured Party's consent, or (xiii) Borrower's default under the terms of any other agreement including any other lease or loan agreement, with Secured Party or an affiliate of Secured Partyr; or (xii) Secured Party deems itself insecure for any reason whatsoever.

    (b) All rights and remedies of Secured Party pursuant to the provisions of the Agreement are cumulative and may be exercised concurrently or separately without waiver of any other rights or remedies.

    (c) Upon default and at any time thereafter, Secured Party may declare all Secured Obligations secured hereby immediately due and payable and shall have the remedies of a secured party, under Article 9 of the Colorado Uniform Commercial Code, as now or hereafter in effect ("UCC") Secured Party may require Borrower to assemble the Collateral and deliver the Collateral at Borrower's expense or make it available to Secured Party at a place to be designated by Secured Party. Borrower authorizes Secured Party to enter onto the premises on which any Collateral is located and to take possession of, remove and render unusable by Borrower any or all of the Collateral, wherever it may be located without any court order or other process of law (but without breaching the peace and otherwise in accordance with applicable law) and without liability for any damages occasioned by such taking of possession. Secured Party may sell or otherwise dispose of the Collateral or any part thereof in such manner as Secured Party in its sole discretion may choose, provided that any such sale complies with the UCC. Borrower hereby grants to Secured Party the right, for this purpose, to enter into or on any premises where such Collateral may be located, and such taking of possession shall not prohibit Secured Party from exercising its other

*This contract has been assigned to Mercedes-Benz Financial Services USA LLC or Daimler Trust ("Secured Party") and the purchase or assignment of this chattel paper would violate the rights of the Secured Party.*

Scanned

requirement imposed by law for reasonable notification of any intended disposition of the Collateral shall be deemed reasonably and properly made if given in accordance with the provisions of this Section 5 hereof at least ten (10) days prior to any public sale of the Collateral or the time at which any private or other intended disposition of the Collateral is to be made; provided, however, no notice shall be required with respect to any Collateral which is perishable, threatens to decline speedily in value or is sold in or on a recognized market. The Borrower hereby appoints Secured Party as Borrower's agent and attorney in fact, with full power of substitution, for an on behalf of Borrower, to sign and execute in the name of the Borrower any intended transfer, conveyance or instrument in writing that may be necessary or desirable to effect any disposition of the Collateral. No disposition of any Collateral shall extinguish any of the Secured Obligations except to the extent that the net proceeds are applied thereto.

(d) The proceeds from the sale of or other realization on the Collateral pursuant to this Section 5 shall be applied as follows, (i) first, to the payment of all costs and expenses incurred by Secured Party in connection with such a sale or other realization including, without limitation, attorneys' fees and all court costs, and to the repayment of all advances by Secured Party hereunder for the account of the Borrower and the payment of all costs and expenses paid or incurred by Secured Party in connection with this Agreement or in the exercise of any right or remedy hereunder, including the costs described in Section 6(e), to the extent that such advances, costs and expenses shall not have been previously paid to Secured Party upon its demand to the Borrower therefore; (ii) second, to the payment in full of the interest on the Loan; (iii) third, to the payment in full of the principal on the Loan, (iv) fourth, to Secured Party in payment in full of the remaining Secured Obligations of the Borrower; and (v) fifth, to the Borrower or as a court of competent jurisdiction may direct.

(e) Borrower acknowledges that Borrower shall be liable for all reasonable legal fees and other enforcement costs and expenses incurred by reason of any default or the exercise of Secured Party's rights or remedies, including all expenses incurred in the connection with the return or other recovery of any of the Collateral in accordance with the terms of paragraph 6(c) or in placing the Collateral in the condition required to sell or otherwise dispose of the Collateral (including but not limited to costs of transportation, possession, storage, refurbishing advertising and brokers' and commission fees) and all other prejudgment and postjudgment enforcement-related actions taken by Secured Party and/or any actions taken by Secured Party in any bankruptcy case involving Borrower or the Collateral.

(f) Borrower acknowledges that Secured Party may specifically disclaim any warranties of title or the like with respect to the disposition of the Collateral.

7.  MISCELLANEOUS

(a) This Agreement and all of the provisions hereof shall inure to the benefit of the parties hereto and their respective legal representatives, successors and assigns provided that Borrower may not assign this Agreement or any provision thereof without the prior written consent of Secured Party and provided further that Borrower acknowledges that Secured Party has a lien on the Collateral, has pledged the Collateral and this Agreement to its lender MERCEDES-BENZ FINANCIAL SERVICES USA LLC  at PO BOX 279319, Sacramento, CA  95827, and in the event of the default of Borrower or otherwise MERCEDES-BENZ FINANCIAL SERVICES USA LLC at PO BOX 279319, Sacramento, CA  95827 will have a lien on the Collateral and this Agreement. If there is more than one Borrower, their liabilities hereunder shall be joint and several.

(b) Notices, requests and other communications required under this Agreement to be sent to either party shall be in writing and shall be by mail, postage prepaid, hand delivery, or facsimile transmission, and addressed to the other party at the address set forth in the first paragraph hereof. Notice shall be deemed given when so mailed, delivered, or transmitted.

(c) GOVERNING LAW AND JURISDICTION, Any and all disputes and claims of any kind and nature whatsoever arising under this Agreement shall be handled as provided in this Section.  This Agreement shall be deemed to have been made in the State of Colorado and shall be governed by and construed and interpreted in accordance with the internal laws of the State of Colorado (without regard to the conflict of law principals of the State), including all matters of construction, validity and performance regardless of the location of the truck supplied hereunder. Secured Party and Borrower agree that this Agreement was entered into at Secured Party address set forth above. Borrower expressly waives any and all right to a jury trial regarding any dispute hereunder. Borrower hereby irrevocably submits to the exclusive jurisdiction and venue of courts sitting in Adams County, Colorado.  Borrower hereby irrevocably waives, and hereby agrees not to assert by way of motion, defense, or otherwise, any claim that Borrower is not subject personally to the jurisdiction of such courts, that the truck or other vehicle or equipment to be supplied hereunder or any other property of Borrower is exempt or immune from attachment or execution, that any action brought under this Agreement is brought in an inconvenient forum, that the venue of the action is improper or that this Agreement cannot be enforced by any such courts.  Notwithstanding the foregoing Secured Party may bring an action in replevin, trespass, detinue, trover or any similar action in any jurisdiction in which the property subject to such action is located.

(d) Neither this Agreement nor any terms hereof may be amended, supplemented or modified except in an instrument executed by Secured Party and the Borrower.

(e) No failure to exercise and no delay in exercising, on the part of Secured Party, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.  Secured Party may, from time to time, waive, on such terms and conditions as Secured Party may specify in such instrument, any of the requirements of this Agreement or any default or event of default and its consequences.  Any such waiver and any such amendment, supplement or modification shall be binding upon the Borrower and Secured Party.  In the case of any waiver, the Borrower and Secured Party shall be restored to their former position and rights hereunder and any default or event of default waived shall be deemed to be cured and not continuing; but no such waiver shall extend to any subsequent or other default or even of default, or impair any right consequent thereon.

(f) Borrower acknowledges and agrees that this Agreement is between Borrower and Secured Party only. Borrower agrees that if this Agreement is marketed, promoted, advertised or presented by any third party authorized by Secured Party ("Program Partner"), whether pursuant to any leasing or financing program between Secured Party and Program Partner or otherwise, Borrower will defend and hold Program Partner, its affiliates, its and their officers, directors, employees, agents and its and their respective successors and assigns, harmless from and against any claims, liability, losses, costs and expenses relates to this Agreement or the Vehicle(s) of any nature whatsoever.  BORROWER AGREES THAT PROGRAM PARTNER SHALL HAVE NO LIABILITY TO BORROWER OF ANY NATURE WHATSOEVER, INCLUDING, WITHOUT LIMITATION, LIABILITY FOR ANY AND ALL INCIDENTAL, CONSEQUENTIAL, INDIRECT OR SPECIAL DAMAGES.

This chattel paper has been assigned to Mercedes-Benz Financial Services USA LLC or Daimler Trust ("Secured Party") and the purchase or assignment of this chattel paper would violate the rights of the Secured Party.

4

Scanned

IN WITNESS HEREOF. The parties hereto have duly executed this Agreement as of the date first set below

BORROWER:

By: X _____  By: X _____

Title: CEO                    Title: COO

Secured  TRANS LEASE, INC. DBA TRANS LEASE, INC.;
Party:   TRANS LEASE, INC. OF COLORADO;
         GEP LEASING, INC.
         4475 E 74th Avenue, Suite 103
         Commerce City, CO 80022

By: _____

Title: Vice President

December 28, 2016

5

This chattel paper has been assigned to
Mercedes-Benz Financial Services USA LLC
or Daimler Trust ("Secured Party")
and the purchase or assignment
of this chattel paper
would violate the rights of the Secured Party

Scanned



## LOAN FACTS
11612068   Schedule No: 001

**Payments:**  Most first payments are due at the same time your documents are signed, followed by the second payment due within 30 days. Your first payment is due on February 05, 2017. Payments received after 3:00 p.m. MST will be credited to the next business day.

**Billing Statements:**  Statements are mailed out 17 days prior to payment due date. Electronic billing is also available.

**Late charges:**  A late fee will be charged after a 10 day grace period. A 5 % fee on the total amount of your payment will be assessed if not received by the end of the grace period. It will be billed in the next billing cycle.

**Insurance:**  A certificate evidencing proper coverage is required before any equipment is picked up or delivered. If you change companies, you must have your new agent contact us to add the correct lienholder and loss payee information. For exact limits see the Loan Agreement to Provide Insurance.

**Remittances:**  Rentals / Payments should be mailed to

> TRANS LEASE, INC.
> PO Box 16464
> Denver, CO 80216-0464

**Pre-Authorized Checking (PAC):**  Payments can be automatically deducted from your checking account at any bank. Please contact our office for the paperwork. Payments are deducted on your due date. A set-up fee of $15.00 will be billed to your account.

**Equipment damage:**  Any accidents or damage to the equipment you have leased or financed should be reported immediately to your insurance company and our office.

Dated:   December 28, 2016

Borrower:   DC SOLAR SOLUTIONS, INC.

By: X _____          By: X _____
Title:   CEO                                          Title:   COO

Scanned



# TRANS LEASE, INC.

## ASSIGNMENT AND ACKNOWLEDGMENT OF ASSIGNMENT OF CONTRACT
(PledgeLine Program)

Borrower Loan Number: 11612068-001

| | | |
|---|---|---|
| Contract Date | December 28, 2016 | Vehicle  See Attached Schedule A |
| Purchaser | DC SOLAR SOLUTIONS, INC.<br>4901 PARK ROAD<br>BENICIA CA 94510 | Vehicle ID  See Attached Schedule A |

THIS ASSIGNMENT AND ACKNOWLEDGMENT OF ASSIGNMENT OF CONTRACT ("Assignment and Acknowledgment") is entered into as of the 28 day of December, 2016 by and between the above named Purchaser and TRANS LEASE, INC. DBA TRANS LEASE, INC. TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC. ("Borrower") with regard to MERCEDES-BENZ FINANCIAL SERVICES USA LLC dba DAIMLER TRUCK FINANCIAL ("Lender"). Purchaser and Borrower are sometimes collectively referred to herein as the "Parties."

1. **Assignment.** Borrower hereby collaterally assigns to Lender in accordance with the terms of that certain Master Funding Agreement and Blanket Collateral Assignment, Borrower's rights under the Contract, including without limitation Borrower's lien on the Vehicle(s) identified above, together with all rights which may have arisen before the date of this Assignment and Acknowledgment. Purchaser and Borrower acknowledge and agree that Lender, in its sole discretion may direct Purchaser to make the payments directly to Lender.

2. **Acknowledgment of Encumbrance.** The Parties acknowledge that the Vehicle(s) is encumbered by the lien of Lender, pursuant to that certain Master Funding Agreement and Blanket Collateral Assignment between Borrower and Lender; which lien is, and shall be, superior to the rights of Borrower and Purchaser under the Contract. Purchaser acknowledges and agrees that its rights under the Contract and its rights to the Vehicle(s) identified above are in all respects subordinate, inferior and subject to the lien of Lender in the Contract and the Vehicle(s). The Parties acknowledge that, (i) such lien shall continue to attach to such Vehicle(s) until the sums due and owing for such Vehicle(s) to Lender have been fully repaid and a release of lien has been delivered to Borrower and/or the Purchaser by Lender, (ii) upon notice from Lender, Purchaser will make installment payments directly to Lender: (iii) Purchaser will not make more than one installment payment in advance, and (iv) Purchaser will not hold Lender liable for the performance or non-performance of any of Borrower's obligations under the Contract, or otherwise nor will it withhold payments from Lender on account of Borrower's performance or non-performance. Purchaser hereby agrees not to sell, lease, sublease or assign any interest in the Vehicle(s) without the prior written consent of Borrower and Lender. Furthermore the Parties acknowledge and agree that they shall provide notice of Lender's lien to any subsequent purchaser or lessee of the vehicle, and shall further indemnify Lender from any liabilities or damages which may arise as a result of the failure to provide  (i) notice of Lender's lien  or (ii) notice to Lender of any transaction relating to the Vehicle.  It is acknowledged by the Parties that Lender is intended to be a third-party beneficiary of this Assignment and Acknowledgment.

3. **Binding Effect.** This Assignment and Acknowledgment shall be binding upon the successors and assigns of each of the Parties.

IN WITNESS WHEREOF this Assignment and Acknowledgment has been duly executed by and on behalf of the undersigned as of the date first above written

Please sign the original and a copy of this letter indicating your acknowledgment and agreement to this letter

Date: December 28, 2016

ACKNOWLEDGED BY:

| Purchaser: DC SOLAR SOLUTIONS, INC. | Borrower: TRANS LEASE, INC. DBA TRANS LEASE, INC.; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC. |
|---|---|
| By: X _____<br>Title: CEO<br>By: X _____<br>Title: CFO | By: _____<br>Title: Vice President |

TRANS LEASE, INC.

Scanned

# AFFIDAVIT OF SIGNATURE AUTHORITY

DC SOLAR SOLUTIONS, INC.

The undersigned certifies that undersigned is the Corporate Secretary, Partner Member, Officer or other authorized signor of DC SOLAR SOLUTIONS, INC. and that, as such, undersigned is authorized to execute this Affidavit on behalf of Entity

WHEREAS, an officer of this Entity has executed or is about to execute one or more Lease Agreements ("Leases") or Loan and Security Agreements ("Loan Agreements") and/or other related documents ("Other Documents") with Trans Lease Inc., pursuant to which the Entity may lease or finance certain vehicles, equipment and/or other personal property including without limitation automobiles, trucks, tractors, trailers and semi-trailers from time to time as described therein, and

WHEREAS the Directors, Partners, Members or other authorized personnel of the Entity have examined the Lease(s) or Loan and Security Agreements and/or Other Documents and approved the terms and conditions thereof;

NOW, THEREFORE, the undersigned certifies that the Entity requires _____ signature(s) (if left blank, any one signature) to execute the Leases Loan Agreements and/or other Documents on behalf of the Entity, of which, the following officers whose signatures appears below be, and hereby are authorized to execute the Leases or Loan Agreements and/or Other Documents on behalf of the Entity and to perform all acts and execute all instruments and documents as are, in the opinion of such officer, necessary, desirable or proper to carry into effect the purpose of the foregoing resolution and to effect the performance by this Entity of its obligations under the Leases or Loan Agreements and/or other documents.

The undersigned does further certify that the Entity is in good standing in all jurisdictions in which it is required to be qualified to do business and the execution of the Lease(s) or Loan and Security Agreement(s) and/or other documents and any other instruments and documents authorized hereunder are not in violation of the charter, bylaws or any agreements made by this Entity

| Name | Title | Signature |
| --- | --- | --- |
| JEFFREY PAUL CARPOFF | CEO | X [signature] |
| Paulette Carpoff | COO | [signature] |
| | | |
| | | |

IN WITNESS WHEREOF

Date December 15, 2016

DC SOLAR SOLUTIONS, INC.

By X [signature]

Title X President

Authorized Signer