Timothy S. Laffredi, Assistant United States Trustee
State Bar No.: WI 1055133
Edward M. McDonald Jr., Trial Attorney
State Bar No.: NY 4126009
Cameron M. Gulden, Trial Attorney
State Bar No.: MN 310931
cameron.m.gulden@usdoj.gov
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
300 Booth Street, Room 3009
Reno, Nevada 89509
Tel: (775) 784-5335
Fax: (775) 784-5331
**Attorneys for the Acting United States Trustee for Region 12[1]
        JAMES L. SNYDER**

E-Filed:  April 1, 2019

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re:<br><br>DOUBLE JUMP, INC.,<br><br>☒ Affects ALL Debtors.<br>☐ Affects Double Jump, Inc.<br>☐ Affects Dora Dog Properties, LLC<br>☐ Affects Dog Blue Properties, LLC<br>☐ Affects Brandy Boy Properties, LLC<br>☐ Affects 475 Channel Road, LLC<br>☐ Affects Park Road, LLC<br>☐ Affects 140 Mason Circle, LLC<br>☐ Affects DC Solar Solutions, Inc.<br>☐ Affects DC Solar Distribution, Inc.<br>☐ Affects DC Solar Freedom, Inc. | Lead Case No. BK-19-50102-BTB<br>Chapter 7<br><br>Jointly Administered with:<br><br>19-50103-BTB  Dora Dog Properties, LLC<br>19-50104-BTB  Dog Blue Properties, LLC<br>19-50105-BTB  Brandy Boy Properties, LLC<br>19-50106-BTB  475 Channel Road, LLC<br>19-50108-BTB  Park Road, LLC<br>19-50109-BTB  140 Mason Circle, LLC<br>19-50130-BTB  DC Solar Solutions, Inc.<br>19-50131-BTB  DC Solar Distribution, Inc.<br>19-50135-BTB  DC Solar Freedom, Inc.<br><br>Date:  April 16, 2019<br>Time:  2:00 p.m.<br>Location:  Young Courtroom #2 |
|---|---|

**OBJECTION AND RESERVATION OF RIGHTS OF THE UNITED STATES TRUSTEE TO DEBTORS' APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AS SPECIAL COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

To the Honorable Bruce T. Beesley, Chief United States Bankruptcy Judge:

James L. Snyder, Acting United States Trustee for Region 12, hereby files his objection (the "Objection") to the *Objection and Reservation of Rights of the United States Trustee to Debtors'*

---

[1] James L. Snyder, Acting U.S. Trustee for Region 12, is acting in this appointment for Tracy Hope Davis, U.S. Trustee for Region 17, who is recused from the above-captioned cases.

*Application for Order Authorizing the Employment of Skadden, Arps, Slate, Meagher & Flom LLP as Special Counsel to the Debtors Nunc Pro Tunc to the Petition Date* [ECF Nos. 326 & 341] ("Application"). The Application was filed by the jointly administered debtors listed in the caption above ("Debtors"), which seeks to employ Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden") as Debtors' special counsel pursuant to, *inter alia*, 11 U.S.C. § 327(e).[2]

The Objection is supported by the following memorandum of points and authorities and any argument the Court may permit on the Objection.

## MEMORANDUM OF POINTS AND AUTHORITIES

## BACKGROUND FACTS

1. Double Jump and the Real Estate Debtors cases each by filing a voluntary petition under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") on January 30, 2019. [*See* each separate case at ECF No. 1].[3] Debtors DC

---

[2] These cases are jointly administered, including: *In re Double Jump, Inc.*, Case No. 19-50102-BTB ("Double Jump"); *In re Dora Dog Properties LLC*, Case No. 19-50103-BTB ("Dora Dog"); *In re Dog Blue Properties, LLC*, Case No. 19-50104-BTB ("Dog Blue"); *In re Brandy Boy Properties, LLC*, Case No. 19-50105-BTB ("Brandy Boy"); *In re 475 Channel Road, LLC*, Case No. 19-50106-BTB ("475 Channel"); *In re Park Road, LLC*, Case No. 19-50108-BTB ("Park Road"); *In re 140 Mason Circle, LLC*, Case No. 19-50109-BTB ("140 Mason"); *In re DC Solar Solutions, Inc.*, Case No. 19-50130-BTB ("DC Solar Solutions"); *In re DC Solar Distribution, Inc.*, Case No. 19-50131-BTB ("DC Solar Distribution"); and, *In re DC Solar Freedom, Inc.*, Case No. 19-50135-BTB ("DC Solar Freedom") (Double Jump, DC Solar Solutions, DC Solar Distribution, and DC Solar Freedom are the "DC Solar Debtors"), (Dora Dog, Dog Blue, Brandy Boy, 475 Channel, and Park Road are the "Real Estate Debtors") (all debtors collectively, are the "Debtors"). [*See* ECF No. 97 (Order re Joint Administration)].

[3] The United States Trustee requests that the Court take judicial notice of the pleadings and documents filed in this case pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201. To the extent that the Objection contains factual assertions predicated upon statements made by Debtors, any of their current or former affiliates, agents, attorneys, professionals, officers, directors or employees, the United States Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 801(d)(2).

Solar Solutions, DC Solar Distribution, and DC Solar Freedom commenced cases by filing voluntary petitions under Chapter 11 of the Bankruptcy Code on February 3, February 4, and February 5, 2019. [*See* DC Solar Solutions, DC Solar Distribution, and DC Solar Freedom cases, each at ECF No. 1].

2. The DC Solar Debtors design, manufacture, sell and lease solar generators and other solar products, while the Real Estate Debtors own and lease real estate. Debtor Double Jump holds 100% of the stock in DC Solar Solutions and DC Solar Distribution. [*See* ECF No. 51, p. 3 of 30; ¶¶ 7-8].

3. The IRS has conducted tax examinations of DC Solar Solutions, and of Jeffrey and Paulette Carpoff (the "Carpoffs"), the owners of Double Jump and the Real Estate Debtors, and majority owners of DC Solar Freedom. [*See* ECF No. 12, pp. 13-14 & 30 of 32]. In December 2019, the FBI and IRS Criminal Investigation Division conducted simultaneous raids of the DC Solar headquarters and the Carpoffs' residence, seizing funds from DC Solar, the Carpoffs' accounts, as well as certain of DC Solar's servers and books and records, and precipitating these bankruptcy cases. [*See* ECF No. 12, pp. 13-17 of 32; *see also* ECF No. 51, pp. 3-4 of 30]. The U.S. Attorney for the Eastern District of California has filed a forfeiture action covering the assets of and/or the Real Estate Debtors themselves and alleging that the assets held by the Real Estate Debtors are traceable to an investment fraud and money laundering scheme. [*See* ECF No. 106].

4. On February 25, 2019, Debtors filed a motion seeking, *inter alia*, to extend the schedule filing deadline for DC Solar Debtors to April 22, 2019. [*See* ECF Nos. 197 & 198].

---

Unless otherwise noted: "Section" refers to a section of the Bankruptcy Code; "FRBP" refers to the Federal Rules of Bankruptcy Procedure; and, "ECF No." refers to the main bankruptcy docket for case number, BK-19-50102-BTB.

3

Double Jump and the Real Estate Debtors filed their schedules and statements of financial affairs ("SOFA") between March 4 and March 8, 2019.  As of the date this Objection was filed, save Double Jump, the DC Solar Debtors have not yet filed their schedules or SOFAs.  [*See* Double Jump Case, ECF Nos. 261-262 & 288-299; *see generally* Double Jump Case docket].

5. It does not appear from a review of the various dockets that Skadden has filed a "Disclosure of Compensation of Attorney for Debtor," ("2016 Statement") pursuant to FRBP 2016(b) for any of Debtors' cases.  [*See generally* Debtors' case dockets].

6. On March 22, 2019, the Court converted these cases to ones under Chapter 7. [*See* ECF No. 438].  On March 22, 2019, Christina A. Lovato was appointed Chapter 7 trustee for Double Jump and the DC Solar Debtors, and W. Donald Gieseke was appointed Chapter 7 trustee for the Real Estate Debtors.  [*See* Double Jump Case, ECF No. 440; Dora Dog Case, ECF No. 56; Dog Blue Case, ECF No. 57; Brandy Boy Case, ECF No. 56;  475 Channel Case, ECF No. 57;  Park Road Case, ECF No. 56; 140 Mason Case, ECF No. 55;  DC Solar Solutions Case, ECF No. 83;  DC Solar Distribution Case, ECF No. 76;  and,. DC Solar Freedom Case, ECF No. 60].

**The Application**

7. On February 6, 2019, the Debtors filed an application to employ Clark Hill PLC as Debtors' counsel pursuant to Section 327(a), which was granted by an order entered on March 20, 2019.  [*See* ECF Nos. 51 & 328].  It is important to note that the Clark Hill PLC application stated that, "[t]he Debtors also intend to submit a separate application to retain Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden") <u>to act as bankruptcy co-counsel</u> and special litigation counsel, along with Clark Hill, to the Debtors in these Chapter 11 Cases." [*See* ECF No. 51, p. 4 of 30; lines 15-17 (emphasis added)].

8.  More than a month later, on March 12, 2019, the Debtors filed the Application, which is supported by the Declaration of Van C. Durrer II ("Durrer Declaration").[4] [*See* ECF Nos. 326, 327 & 341]. An engagement agreement is attached to the Durrer Declaration (the "Engagement Agreement"). [*See* ECF No. 327, pp. 19-31 of 48].

9.  The Application seeks to employ Skadden as Debtors' special counsel pursuant to Sections 105(a), 327(e), 328, 330, and 1107, and FRBP 2014(a) and 2016. [*See* ECF No. 341, pp. 1-2 of 26].

10. The specified special purpose[5] that Skadden seeks to perform is:

- to "continue its prepetition representations of the Debtors in the ongoing governmental investigations and tax matters" [*see* ECF No. 341, p. 5 of 26; ¶15; *see also* ECF No. 341, pp. 6-8 of 26; ¶18];

- "to consult with and assist General Bankruptcy Counsel on certain corporate and financing transactions, including among other things financing and similar capital raising efforts, the potential sales of assets, and the formulation of a plan of reorganization and accompanying disclosure statement" [*see* ECF No. 341, p. 5 of 26; ¶15];

- "to perform the additional specific legal services described below" [*see* ECF No. 341, p. 5 of 26; ¶15];

- "to advise the Debtors and assist General Bankruptcy Counsel in connection with the Debtors' post-petition financing and cash collateral arrangements and negotiating and drafting documents relating thereto" [*see* ECF No. 341, pp. 6-8 of 26; ¶18];

- "to advise the Debtors and assist General Bankruptcy Counsel in connection with any sales of assets contemplated by the Debtors, including the negotiation of asset or stock purchase agreements, the formulation and implementation of bidding procedures, the evaluation of competing offers, the drafting of appropriate corporate documents with respect to such sales, and counseling the Debtors in connection with the closing of such sales, including the evaluation of the assumption, rejection or assignment of unexpired leases and executory contracts" [*see* ECF No. 341, pp. 6-8 of 26; ¶18];

---

[4] The Application was filed as ECF Nos. 326 and 341. [*See* Double Jump Case docket].
[5] [*See also* ECF No. 327, pp. 19-20].

- "to advise the Debtors and assist General Bankruptcy Counsel in connection with the Debtors' disclosure obligations, including advising the Debtors and assisting General Bankruptcy Counsel with respect to continuing disclosure and reporting obligations, if any, under securities laws and drafting a disclosure statement to accompany a plan of reorganization" [*see* ECF No. 341, pp. 6-8 of 26; ¶18];

- "to advise the Debtors and assist General Bankruptcy Counsel with respect to general corporate legal issues arising in the Debtors' ordinary course of business, including attendance at senior management meetings and meetings of the board of directors and advising on tax, employee, environmental, insurance, securities and regulatory matters" [*see* ECF No. 341, pp. 6-8 of 26; ¶18];

- "to attend meetings and participate in negotiations with respect to the above matters" [*see* ECF No. 341, pp. 6-8 of 26; ¶18];

- "to appear before this Court, any district or appellate courts, and the United States Trustee with respect to the matters referred to above" [*see* ECF No. 341, pp. 6-8 of 26; ¶18];

- "to perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with the matters referred to above, including matters in which the General Bankruptcy Counsel is conflicted and cannot represent the Debtors, and the subject categories attached to the Durrer Declaration as Exhibit 2 thereto" [*see* ECF No. 341, pp. 6-8 of 26; ¶18; ECF No. 327, p. 6 of 48] which include the subject matter categories below:

    o   General Corporate Advice [ECF No. 327, p. 33 of 48];

    o   Asset Dispositions (General) [ECF No. 327, p. 33 of 48];

    o   Asset Dispositions (Lease) [ECF No. 327, p. 33 of 48];

    o   Asset Dispositions (Sale) [ECF No. 327, p. 33 of 48];

    o   Business Operations / Strategic Planning [ECF No. 327, p. 33 of 48];

    o   Claims Admin. (General) [ECF No. 327, p. 33 of 48];

    o   Creditor Meetings / Statutory Committees [ECF No. 327, p. 33 of 48];

    o   Disclosure Statement / Voting Issues [ECF No. 327, p. 33 of 48];

    o   Employee Matters (General) [ECF No. 327, p. 33 of 48];

    o   Executory Contracts (Personalty) [ECF No. 327, p. 33 of 48];

- o   Financing (DIP and Emergence) [ECF No. 327, p. 33 of 48];
- o   Investigations and Reviews [ECF No. 327, p. 33 of 48];
- o   Leases (Real Property) [ECF No. 327, p. 33 of 48];
- o   Litigation (General) [ECF No. 327, p. 33 of 48];
- o   Liquidation / Feasibility [ECF No. 327, p. 33 of 48];
- o   Nonworking Travel Time [ECF No. 327, p. 33 of 48];
- o   Real Estate (Owned) [ECF No. 327, p. 33 of 48];
- o   Regulatory and SEC Matters [ECF No. 327, p. 33 of 48];
- o   Reorganization Plan / Plan Sponsors [ECF No. 327, p. 33 of 48];
- o   Retention / Fee Matters (SASM&F) [ECF No. 327, p. 33 of 48];
- o   Retention/ Fee Matters / Objections (Others) [ECF No. 327, p. 33 of 48];
- o   Tax Matters [ECF No. 327, p. 33 of 48];
- o   U.S. Trustee Matters [ECF No. 327, p. 33 of 48]; and,

- "given the relationships among the Debtors (including, for example, landlord and tenant relationships), as well as the possibility that General Bankruptcy Counsel and/or Skadden may have potential conflicts relative to certain parties in interest in the Debtors' cases, both General Bankruptcy Counsel and Skadden have agreed to serve as counsel with respect to matters in which one or the other determine a potential conflict may exist" [*see* ECF No. 341, p. 6 of 26; ¶17].[6]

11.   Through the Application Debtors to employ Skadden *nunc pro tunc* to January 30, 2019.  [*See* ECF No. 341, p. 24 of 26; line 23].

12.   The Application seeks to have the terms of Skadden's compensation pre-approved under Section 328(a).  [*See* ECF No. 341, p. 24 of 26; ¶3; ECF No. 341, p. 15 of 26; ¶39].

---

[6] The Application does provide a somewhat vague qualification to Skadden's list of duties: "Skadden will not represent the Debtors on the matters described above for General Bankruptcy Counsel unless necessary in connection with the performance by Skadden of the specific services described below."  [*See* ECF No. 341, p. 6; ¶16].

13. The Application and the Durrer Declaration disclose that Skadden is a creditor of the Debtors for $1,155,301.93. [*See* ECF No. 341, p. 17 of 26; ¶ 44; ECF No. 341, p. 10 of 26; ¶ 26; ECF No. 327, p. 10 of 48; ¶ 24].

14. The Application and the Durrer Declaration provide that Skadden began representing Jeffrey Carpoff and DC Solar Solutions pursuant to an engagement letter dated December 26, 2018. Skadden's representation of Jeffrey Carpoff was terminated on January 28, 2019. [*See* ECF No. 327, p. 3 of 48; ¶ 4; *see also* ECF No. 341, p. 10 of 26; ¶ 26]. Pursuant to the December 26, 2018 retention agreement with Jeffrey Carpoff and DC Solar Solutions, Skadden was paid a $2,000,000 retainer that it still holds. [*See* ECF No. 327, p. 10 of 48; ¶24]. It is not clear from either the Application or the Durrer Declaration whether DC Solar or Jeffrey Carpoff provided Skadden with the $2,000,000 retainer, because the transaction is described using the passive voice, "an initial retainer … was paid to Skadden." [*See* ECF No. 327, pp. 10 (¶24) & 22 of 48; ECF No. 341, p. 10 (¶26) & 16 (¶42) of 26]. Nor can the identity of the payor be ascertained from Skadden's 2016 Statements because Skadden has not yet filed them. [*See generally* Debtors' case dockets].

15. The Application discloses that Skadden entered an appearance for both Jeffrey and Paulette Carpoff in United States Tax Court with respect to certain investments funds connected to the DC Solar Debtors, which are currently stayed, and that it also represents certain investment funds in this tax matter, including Solar Eclipse Investment Fund XVI LLC, which is listed on the creditors matrix for DC Solar Distribution. [*See* ECF No. 341, p. 13 of 48; ¶ 38; *see also* DC Solar Distribution Case, ECF No. 5, p. 4 of 5].

16. The Application provides that "Skadden is intimately familiar with the issues and facts involved in the matters being handled by Skadden." [*See* ECF No. 341, p. 18 of 26; ¶47].

8

**The Engagement Agreement**

17. The Engagement Agreement is dated January 28, 2019, is signed by Jeffrey P. Carpoff as the "Authorized Signatory, " and provides for Skadden attorneys to be compensated at hourly rates between $475 and $1,695.  [*See* ECF No. 327, pp. 21 & 27 of 48].

18. It should be noted that the engagement agreement for Clark Hill PLC provides:

> [I]t is specifically understood and agreed that the law firm of <u>Skadden</u>, Arps, Slate, Meagher & Flom, LLP ("Skadden") will be <u>principally responsible</u> for representation of Clients as to the following matters: <u>Debtor in Possession financing</u>, tax matters, litigation with the United States as well as investigation by the United States, <u>negotiation and preparation of chapter 11 plan(s) and disclosure statement(s), and negotiation and preparation of bidding procedures, asset sale agreements, and related transaction documents for all or substantially all of the assets of the Clients</u>.

[*See* ECF No. 51, p. 23 of 30 (emphasis added)].

## ARGUMENT

**A.    Skadden Cannot Be Employed Under Section 327(e) Because Its "Specified Special Purpose" Includes Representing the Debtors in the Bankruptcy Cases**

19. Section 327(e) allows employment of 'special counsel' "for a specified special purpose, other than to represent the trustee in conducting the case … if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."  11 U.S.C. § 327(e).

20. Here, the Application seeks to employ Skadden to work on, or advise Clark Hill as to, the disclosure statement and plan; DIP financing; cash collateral issues; general corporate issues; sales of estate assets; assumption and rejection of unexpired leases and executory contracts; claims administration; liquidation; regulatory, reporting and tax matters; government investigations; U.S. Trustee matters, and as conflicts counsel to Clark Hill PLC. [*See supra* ¶10].

21. "The debtor has the burden of proof to show that the proposed employment is

9

proper." *In re Running Horse, L.L.C.*, 371 B.R. 446, 451 (Bankr. E.D. Ca. 2007), citing *In re Big Mac Marine*, 326 B.R. 150, 154 (B.A.P. 8th Cir. 2005). "The 'special purpose' must be unrelated to the debtor's reorganization and must be 'explicitly defined or described in the application seeking approval of the attorney's employment.'" *Id.*, citing 3 Collier on Bankruptcy (15th Ed. Rev.) P 327.04[9][d] (2006). The scope of Skadden's proposed employment is far too expansive to be appropriate for consideration under Section 327(e). *See id.* at 452, citing *Century Indemnity Company v. Congoleum Corporation (In re Congoleum Corp.)*, 426 F.3d 675, 692 (3rd Cir. 2005). When the allegedly specialized, specified purpose is insufficiently disconnected "from the Debtor's general duty of conducting the case," then the proposed counsel cannot be employed under Section 327(e). *Id.* "Any attorney retained to advise and assist the debtor's general counsel is necessarily involved in 'conducting the case' and therefore must be 'disinterested.'" *See id.* at 452, citing *In re Neuman*, 138 B.R. 683, 686 (S.D.N.Y. 1992).

22. Accordingly, Skadden can only be employed, if at all, under Section 327(a).

**B. Skadden Cannot Employed Under Section 327(a) Because Skadden Is Not Disinterested**

23. The requirements for employment of a professional person seeking authorization to represent the bankruptcy estate under Section 327(a) are that:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, <u>that do not hold or represent an interest adverse to the estate, and that are disinterested persons</u>, to represent or assist the trustee in carrying out the trustee's duties under this title.

*See* 11 U.S.C. § 327(a) (emphasis added).

24. At a minimum, a professional desiring to serve in a bankruptcy case must meet three criteria. First, the professional must "not hold or represent an interest adverse to the estate." 11 U.S.C. § 327(a). A generally accepted definition of "adverse interest" is the (1) possession or

10

assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate. *In re AFI Holding, Inc.*, 355 B.R. 139, 148-49 (B.A.P. 9th Cir. 2006), *aff'd* 530 F.3d 832 (9th Cir. 2008) (citation omitted).

25. Second, the applicant seeking to serve as a professional in a bankruptcy case must be "disinterested." The Code defines "disinterested person" as one who "is not a creditor, an equity security holder, or an insider" and who "does not have an interest materially adverse to the interest of the estate ... [because of] any direct or indirect relationship to, connection with, or interest in the debtor ... or for any other reason." 11 U.S.C. §§ 101 (14) (A) & (C).

26. While there is substantial overlap between the two prongs of the test set forth in Section 327(a), both prongs must be satisfied. *In re Tevis*, 347 B.R. 679, 687-88 (B.A.P. 9th Cir. 2006), citing *In re Mehdipour*, 202 B.R. 474, 478 (B.A.P. 9th Cir. 1996). The disinterestedness provision of § 327(a) is mandatory. It is stricter than the conflict of interest provisions in the Nevada and California Rules of Professional Conduct, because § 327(a) does not allow for the waiver of conflicts of interest. *See S.S. Retail Stores Corp.*, 211 B.R. 699, 703 (B.A.P. 9th Cir. 1997); *compare* Nevada Rules of Professional Conduct, Rule 1.7(b)(4).

27. "Together, the statutory requirements of disinterestedness and no adverse interest to the estate 'serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *In re Crivello*, 134 F.3d 831, 836 (7th Cir.1998), (quoting in part *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir.1994)).

28. Third, the statute provides that a trustee, with the "approval" of the bankruptcy court "may" appoint counsel who are disinterested and have no adverse interest, creating a third

11

criterion, namely that the bankruptcy judge approve the person seeking appointment. The permissive language in the statute makes clear that courts can deny appointment on additional grounds. The Code's language is broad enough that a bankruptcy court may exclude a professional with any connection that "would even faintly color the independence and impartial attitude required by the Code." *In re AFI Holding*, 530 F.3d 832, 838 (9th Cir. 2008) (citation omitted).

29. Section 327(a) establishes a comprehensive scheme designed to ensure impartiality in bankruptcy representation. *In re Prince*, 40 F.3d 356, 360 (11th Cir. 1994).

30. Even a potential conflict provides sufficient grounds for a court to decline to appoint an attorney. *In re AFI Holding, Inc.*, 530 F.3d 832, 838 (9th Cir. 2008) (potential for materially adverse effect sufficient grounds to deny appointment); *Chugach Elec. Ass'n v. United States District Court*, 370 F.2d 441, 442-43 (9th Cir. 1966). In fact, doubt as to whether a particular set of facts gives rise to a disqualifying conflict of interest should normally be resolved in favor of disqualification. *In re Wheatfield Business Park LLC*, 286 B.R. 412, 418 (Bankr. C.D. Cal. 2002).

31. When proposed counsel represents another entity that has an interest adverse to the debtor's estate, which permeates the case, and is the most significate factor to be dealt with in the reorganization, then proposed counsel is not disinterested, represents an adverse interest, and cannot be employed as counsel for the estate. *See In re Amdura Corp.*, 121 B.R. 862, 866-67 (Bankr. D. Colo. 1990).

32. "If it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate." *In re Git-N-Go, Inc.*, 321 B.R. 54, 58 (Bankr. N.D. Okla. 2004) (citing *In re The Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994)).

33. "An actual conflict exists if there is 'an active competition between two interests, in which one interest can only be served at the expense of the other.'" *In re Git-N-Go, Inc.*, 321 B.R. 54, 58 (Bankr. N.D. Okla. 2004) (citing *In re BH&P, Inc.*, 103 B.R. 556, 563 (Bankr. D.N.J. 1989), *aff'd in pertinent part*. 119 B.R. 35 (D.N.J. 1990)).

34. When proposed counsel is unable or unwilling to represent the debtor in a dispute with another entity that counsel also represents an actual disqualifying conflict arises. *See In re Git-N-Go, Inc.*, 321 B.R. 54, 61 (Bankr. N.D. Okla. 2004).

35. Skadden is a creditor and is owed over $1 million by the Debtors, and/or the Carpoffs. [*See* ECF No. 341, p. 17 of 26; ¶ 44; ECF No. 341, p. 10 of 26; ¶ 26; ECF No. 327, p. 10 of 48; ¶ 24]. Therefore Skadden cannot be employed under Section 327(a). 11 U.S.C. §§ 101 (14) (A) & (C), and 327(a). Skadden also represented Jeffrey Carpoff up until two days before the Debtors began filing Chapter 11. [*See* ECF No. 327, p. 3 of 48; ¶ 4; *see also* ECF No. 341, p. 10 of 26; ¶ 26]. Skadden has an intimate knowledge of the core facts involved in these cases, namely the government investigations of the Carpoffs and DC Solar, which in part appears to flow from its representation of Jeffrey Carpoff. [*See* ECF No. 341, p. 18 of 26; lines 10-11].

36. The Nevada Rules of Professional Conduct ("NRPC") provide that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." NRPC 1.9(a), https://www.leg.state.nv.us/CourtRules/RPC.html.

37. In addition, the NRPC provide that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if….There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to … a former client…." NRPC 1.7,

https://www.leg.state.nv.us/CourtRules/RPC.html. Skadden attorneys owe ethical duties to their former clients, like Jeffrey Carpoff, and current clients, like Solar Eclipse Investment Fund XVI LLC—both of whom are parties in tax and/or other government actions related to the DC Solar Debtors and their bankruptcy cases. In addition, it is unclear what claims the DC Solar Debtors, other than Double Jump, have against each other because they have not yet filed schedules.

38. The Application and Engagement Agreement contain a number of "waivers" of conflicts or potential conflicts. [*See* ECF No. 341, pp. 10-11 (¶27), 13 (¶32) of 26; ECF No. 327, pp. 11-12 (¶30), 15(¶41), 22-23 of 48]. Although the NRPC may allow for the waiver of certain conflicts, failure to be a "disinterested person" is not matter that can be waived under the Bankruptcy Code. *See In re S.S. Retail Stores Corp.*, 211 B.R. 699, 703 (B.A.P. 9th Cir. 1997). Skadden has represented Jeffrey Carpoff with regard to the government actions that precipitated these bankruptcies. Such representation may impact Skadden attorneys based on their duties to former clients, will color Skadden's objectivity and notwithstanding the language in the Application, cannot be waived.

39. To the extent that the Carpoffs, the Debtors, and/or the investment funds represented by Skadden are co-defendants and co-liable with respect to the government or tax actions, or if the Debtors have claims against each other, then Skadden represents an interest adverse to each of them to the extent it still represents them. Or Skadden has a conflict because of its duties to a former client. These connections are additional reasons why Skadden should not be employed. Accordingly, Skadden cannot employed under Section 327(a).

C.  **The Application Fails to Make Necessary Disclosures.**

40. The burden is on the debtor in possession to come forward with facts pertinent to the proposed professional's eligibility and to make full, candid, and complete disclosures. *See*

Fed. R. Bankr. P. 2014(a); *In re B.E.S. Concrete Products, Inc.,* 93 B.R. 228, 237 (Bankr. E.D. Cal. 1988).

41. Bankruptcy Rule 2014(a) requires the debtor in possession and the proposed professional to disclose "all of the [professional's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants …." Fed R. Bankr. P. 2014(a). *See also Neben & Starrett, Inc. v. Chartwell Financial Corp.* (*In re Park-Helena Corp.*), 63 F.3d 877, 880-81 (9th Cir. 1995); *Mehdipour v. Marcus & Millichap (In re Mehdipour),* 202 B.R. 474, 480 (B.A.P. 9th Cir. 1996) ("a professional has a duty to make full, candid and complete disclosure of all facts concerning his transactions with the debtor" and "must disclose all connections with the debtor, creditors, and parties in interest, no matter how irrelevant or trivial those connections may seem.").

42. Bankruptcy Rule 2014(a) also requires disclosure of the "specific facts showing … the *reasons for the selection*" of the professional person. Fed. R. Bankr. 2014(a) (emphasis added). *See also In re Danner*, 2012 WL 3205242, at *4 (B.A.P. 9th Cir. July 31, 2012) ("Additionally, § 328 contemplates that employment of professionals under § 327 will be based on reasonable terms and conditions. 11 U.S.C. § 328(a). Thus, a bankruptcy court may properly review an employment application for the reasonableness of the compensation agreement at the outset of a case.").

43. These disclosures should be contained in the employment application itself, clearly and concisely, with evidence in support referenced so that parties are not required to attempt to discover the disclosures from other documents. *See In re Begun*, 162 B.R. 168, 177 (Bankr. N.D. Ill. 1993) ("Neither the Court nor anyone else has a duty to search the record or beyond it for existence of conflicts of interest of professionals sought to be employed or relationships required to be disclosed by Rule 2014(a).").

44. Here, the Application omits information that is relevant under 11 U.S.C. § 327 and Fed. R. Bankr. P. 2014(a). Among other things, the Application and supporting declarations fail to disclose:

    a) Whether Skadden has agreed to any variations from its customary billing arrangements;

    b) Whether the professionals included in the engagement have varied their rates based on the geographic location of the case; and,

    c) Whether Skadden's billing rates or the financial terms of the engagement have changed since the commencement of the case.

[*See* ECF Nos. 327 & 341].

**D. The Court Should Decline to Pre-Approve the Terms of Skadden's Compensation**

45. While Section 327 addresses employment of professionals, 11 U.S.C. §§ 328 and 330 address compensation of those professionals after they have been employed under Section 327. Section 330 authorizes the bankruptcy court to award the retained professional reasonable compensation "based on an after-the-fact consideration of 'the nature, the extent, and the value of such services, taking into account all relevant factors.'" *In re Smart World Technologies, LLC*, 552 F.3d 228, 232 (2d Cir. 2009) (quoting Section 330(a)).

46. Section 328 operates differently and "permits a professional to have the terms and conditions of its employment pre-approved by the bankruptcy court, such that the bankruptcy court may alter the agreed-upon compensation only 'if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.'" *In re Circle K. Corp. v. Houlihan, Lokey, Howard & Zukin, Inc. (In re Circle K. Corp.)*, 279 F.3d 669, 671 (9th Cir. 2002); *In re Smart World Technologies, LLC*, 552 F.3d at 232 (noting that "section 328(a) permits a bankruptcy court to forgo a full post-hoc reasonableness inquiry if it pre-approves the "employment of a professional

person under section 327 ... on any reasonable terms and conditions of employment" (quoting Section 328(a)).  As a threshold matter, Section 328 cannot be the basis for retention, but at most can only provide the possible basis for approval of terms of compensation.  *See generally In re Circle K Corp.*, 279 F.3d 669, 671 (9th Cir. 2002).

47. "The differences between §§ 328 and 330 affect the timing and process of the court's review of fees." *In re Citation Corp.*, 493 F.3d 1313, 1318 (11th Cir. 2007).  Under Section 328, "the bankruptcy court reviews the fee at the time of the agreement and departs from the agreed fee only if some unanticipated circumstance makes the terms of that agreement unfair. Under Section 330, the court reviews the fees after the work has been completed and looks specifically at what was earned, not necessarily at what was bargained for at the time of the agreement." *Id*.

48. However, unless a retention application unambiguously specifies that 11 U.S.C. § 328 governs, professional's applications for compensation are reviewed under 11 U.S.C. § 330. *See In re Circle K. Corp.*, 279 F.3d 669, 674 (9th Cir. 2002) (stating, "In this Circuit, unless a professional is unambiguously employed pursuant to § 328, its professional fees will be reviewed for reasonableness under § 330.  To ensure that § 328 governs the review of a professional's fees, a professional must invoke the section explicitly in the retention application.").

49. The burden of proof to establish that the terms and conditions of employment – including the imposition of Section 328(a) – is on the applicant. *Nischwitz v. Miskovic (In re Airspect Air, Inc.)*, 385 F.3d 915, 921 (6th Cir. 2004) (internal citations omitted).  To meet its burden, the firm must provide specific evidence to establish that "the terms and conditions are in the best interest of the estate." *In re Gillett Holdings, Inc.*, 137 B.R. 452, 455 (Bankr. D. Colo. 1991); *In re Thermadyne Holdings Corp.*, 283 B.R. 749, 756 (B.A.P. 8th Cir. 2002); *In re Potter*, 377 B.R. 305, 307-08 (Bankr. D.N.M. 2007) ("The trustee seeking to employ a professional

under 11 U.S.C. § 328 bears the burden of showing that the provisions of the proposed employment are reasonable.").

50. Pre-approval of an attorney's fee rates or terms of compensation as reasonable should not be granted lightly given that the Court may not revisit the issue at the compensation stage unless such terms prove to have been improvident in light of developments not capable of being anticipated at the time the terms or rates were fixed. *See* 11 U.S.C. § 328(a); *see also Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.)*, 229 F.3d 824, 829 (9th Cir. 2000) ("There is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under [ ] § 328."). Debtors are seeking to have terms of compensation approved with respect to Skadden, including hourly fees as high as $1,695. However, the Application fails to establish the reasonableness of the terms and conditions of compensation for which Skadden seeks Court approval.

E. **The Court Should Decline to Grant the Application *Nunc Pro Tunc***

51. "[I]n this Circuit, the correct standard to be applied in determining whether to grant a *nunc pro tunc* employment application is 'extraordinary circumstances.'" *In re Gutterman*, 239 B.R. 828, 830 (Bankr. N. D. Cal.1999) (citation omitted). *Nunc pro tunc* awards should be limited to "exceptional circumstances where an applicant can show both a satisfactory explanation for the failure to receive prior judicial approval and that he or she has benefited the bankrupt estate in some significant manner." *In re THC Financial Corp.*, 837 F.2d 389, 392 (9th Cir. 1988)(citations omitted).

52. Accordingly, "[t]o establish the presence of exceptional circumstances, professionals seeking retroactive approval must satisfy two requirements: they must (1) satisfactorily explain their failure to receive prior judicial approval; and (2) demonstrate that

18

their services benefitted the bankrupt estate in a significant manner." *In re Atkins*, 69 F.3d 970, 974 (9th Cir. 1995)(citations omitted).

53. The Application provides that the tardiness of the Application was due to prioritization and the lack of access to books and records. [*See* ECF No. 341, p. 19 of 26]. Yet these factors did not prevent Clark Hill from filing its application on February 6, 2019, the day after DC Solar Freedom filed its Chapter 11 case. [*See* ECF No. 51, *see also* DC Solar Freedon Case at ECF No. 1]. Therefore Skadden's explanation is inadequate because it does not meet the first prong of the *Atkins* test. In addition, Skadden cannot be employed because it is not disinterested. *See In re Mehdipour*, 202 B.R. 474, 479 (B.A.P. 9th Cir. 1996) ("Applying for nunc pro tunc approval does not alleviate the professional from meeting the requirements of § 327; the professional still must show that it was disinterested.") (citations omitted). Therefore Skadden's request for *nunc pro tunc* employment should be denied.

54. In addition, if Skadden is somehow employed, it should not be employed past March 22, 2019, the conversion date, because the Debtors are no longer in possession. *See* 11 U.S.C. §§ 327, 348 & 1107.

55. For the reasons set forth herein, the Application should not be granted.

**WHEREFORE**, the United States Trustee respectfully requests that the Court deny the Application.

Dated: April 1, 2019

        **JAMES L. SNYDER**
        **ACTING UNITED STATES TRUSTEE, REGION 12**

     By: */s/ Edward M. McDonald Jr.*
        Edward M. McDonald Jr., Esq.
        Attorney for the United States Trustee