E-filed: April 2, 2019

Nathan G. Kanute (NV Bar No. 12413)
SNELL & WILMER L.L.P.
50 West Liberty Street, Suite 510
Reno, NV 89501
Telephone: (775) 785-5440
Facsimile: (775) 785-5441
Email: nkanute@swlaw.com

Donald L. Gaffney (*admitted pro hac vice*)
(AZ Bar No. 005717)
SNELL & WILMER L.L.P.
One Arizona Center, Suite 1900
400 East Van Buren Street
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
Email: dgaffney@swlaw.com

*Attorneys for Solarmore Management Services, Inc.*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| In Re: | Case No. 19-50102-btb – LEAD CASE |
|---|---|
| DOUBLE JUMP, INC., | Chapter 7 |
| Affects: | Jointly administered |
| ☒ All Debtors ☐ Double Jump, Inc. (19-50102-btb) ☐ Dora Dog Properties, LLC (19-50103-btb) ☐ Dog Blue Properties, LLC (19-50104-btb) ☐ Brandy Boy Properties, LLC (19-50105-btb) ☐ 475 Channel Road, LLC (19-50106-btb) ☐ Park Road, LLC (19-50108-btb) ☐ 140 Mason Circle, LLC (19-50109-btb) ☐ DC Solar Solutions, Inc. (19-50130-btb) ☐ DC Solar Distribution, Inc. (19-50131-btb) ☐ DC Solar Freedom, Inc. (19-50135-btb) | **OPPOSITION TO DEBTORS' APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AS SPECIAL COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE** |
| Debtors. | **Hearing Date: April 16, 2019** **Hearing Time: 2:00 p.m.** **Hearing Location:**  United States Bankruptcy Court  Clifton Young Federal Bldg., 5th Floor  Bankruptcy Courtroom No. 2  300 Booth Street  Reno, Nevada 89509 |

4841-8299-7648

Solarmore Management Services, Inc.[1] ("Solarmore"), by and through its undersigned counsel, hereby files this Opposition ("Opposition") to the *Debtors' Application for Order Authorizing the Employment of Skadden, Arps, Slate, Meagher & Flom LLP as Special Counsel to the Debtors Nunc Pro Tunc to the Petition Date* [ECF No. 341] ("Application").

## I.   INTRODUCTION

This Court should deny Debtors' Application.  First, the Application seeks employment of Skadden, Arps, Slate, Meagher & Flom LLP's ("Skadden") solely under Section 327(e) as special counsel.  Skadden did not act as "special counsel" in these cases.  Skadden was involved from the very beginning of these cases in nearly every aspect of financing, general reorganization, and setting of strategy for the Chapter 11 cases.  Second, the disclosures with respect to Skadden's apparent prior representation as to DC Solar Distribution, Inc. ("DC Solar"), certain investment funds (collectively, the "Debtor-Affiliated Funds"), and Jeffrey and Paulette Carpoff (the "Carpoffs") are fatally inadequate and disqualifying.  Third, Skadden impermissibly holds an adverse interest to the Debtors' estates as it is a creditor of the Debtors' estates, a problem perhaps made worse by Skadden's pre-petition decision not to apply a portion of its Retainer (as that term is defined in the Debtors' Application).  Finally, Solarmore and the Funds have concerns regarding Skadden's role in the Debtors' attempts to raise capital from investors' in the Funds on an emergency basis when the Debtors' debtor-in-possession accounts contained approximately $500,000.  Accordingly, Solarmore respectfully requests that this Court deny the Application.

///

///

///

---

[1] Solarmore is the managing member of Solar Eclipse Investment Fund V, LLC; Solar Eclipse Investment Fund VI, LLC; Solar Eclipse Investment Fund VII, LLC; Solar Eclipse Investment Fund VIII, LLC; Solar Eclipse Investment Fund X, LLC; Solar Eclipse Investment Fund XI, LLC; Solar Eclipse Investment Fund XII, LLC; Solar Eclipse Investment Fund XIV, LLC; Solar Eclipse Investment Fund XV, LLC; Solar Eclipse Investment Fund XVI, LLC; Solar Eclipse Investment Fund XVII, LLC; Solar Eclipse Investment Fund XVIII, LLC; Solar Eclipse Investment Fund XIX, LLC; Solar Eclipse Investment Fund XXI, LLC; Solar Eclipse Investment Fund XXII, LLC; Solar Eclipse Investment Fund XXIII, LLC; Solar Eclipse Investment Fund XXIV, LLC; Solar Eclipse Investment Fund XXVI, LLC; Solar Eclipse Investment Fund XXVIII, LLC; and Solar Eclipse Investment Fund XXXI, LLC (collectively, the "Funds").

## II. LEGAL ARGUMENT

### A. Skadden did not Act as "Special Counsel" to Debtors.

Section 327(e) permits the employment, with the Court's approval, of an attorney that has previously represented the debtor "for a specified special purpose, *other than to represent the trustee in conducting the case*" provided that such employment is in the best interest of the estate and the attorney does not hold any interest adverse to the debtor with respect to the matter for which the attorney is employed. 11 U.S.C. § 327(e) (emphasis added). "A professional whose services may be vital to the debtors' reorganization effort, but who is not 'disinterested' and eligible for employment under § 327(a), cannot circumvent that requirement by trying to characterize the employment as 'special counsel' under § 327(e)." *In re Running Horse, L.L.C.*, 371 B.R. 446, 452 (Bankr. E.D. Cal. 2007) (citing *In re Tidewater Memorial Hospital, Inc.*, 110 B.R. 221, 228 (Bankr. E.D. Va. 1989)). The burden of proof to show that the employment is proper is squarely on the Debtors. *Id.* at 451 (citing *In re Big Mac Marine*, 326 B.R. 150, 154 (8th Cir. B.A.P. 2005)). The Debtors cannot meet this burden here.

The Debtors applied for and obtained retention of the Clark Hill firm to serve as general counsel for the Debtors and the financial advisory firm of Glass Ratner, through Mr. Freeman, to act as the chief restructuring officer of the Debtors. The applications for retention of the two firms met with the little opposition. Despite the employment of these two professional groups who have broad experience in Chapter 11 proceedings, the Application seeks approval for Skadden to act as "special" counsel with respect to general matters such as post-petition financing, cash collateral arrangements, sales of assets, disclosure and reporting obligations, general corporate legal issues, and assisting general counsel on these matters. Application at pg. 7. Any assistance that Skadden may have provided with regard to the issues in the Chapter 11 case were clearly related to the comprehensive assignment of "conducting the case." *See In re Running Horse, L.L.C.*, 371 B.R. at 452 (stating that "[a]ny attorney retained to advise and assist the debtor's general counsel is necessarily involved in 'conducting the case' and therefore must

4841-8299-7648

be 'disinterested'). Accordingly, these matters are not the type for which Skadden could be employed under § 327(e).[2]

During Debtors' Chapter 11 cases, Skadden effectively conducted itself as general counsel for the Debtors. The meetings held relating to the status of the cases and the proposed strategies for moving the Chapter 11 cases forward were conducted by Skadden. Conversations on these same topics were held almost exclusively between Skadden and the other interested parties. Accordingly, if the Application is to be approved, it must be under § 327(a). Even if the Court is inclined to consider approval under that provision— despite there being no request in the Application to do so— the Application would still need to be denied.

B.  **The Debtors' Disclosures Regarding Their Prior Representation of DC Solar, the Debtor-Affiliated Funds, and the Carpoffs are Inadequate.**

Pursuant to Fed. R. Bankr. P. 2014(a), a professional that seeks employment under 11 U.S.C. § 327 must state, among other things, "specific facts . . . to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, [and] any other party in interest." *See also In re Love*, 163 B.R. 164, 167 (Bankr. D. Mont. 1993) (citations omitted) ("An applicant for employment as a professional is required to disclose all of the applicant's connections with the debtor, creditor, and any other party in interest."); *In re Granite Sheet Metal Works, Inc.*, 159 B.R. 840, 845 (Bankr. S.D. Ill. 1993) ("The purpose of Rule 2014(a) is to ensure that all facts that may be relevant to the determination of attorney qualification are before the Court[.]"); *In re Azevedo*, 92 B.R. 910, 911 (Bankr. E.D. Cal. 1988) (explaining that Rule 2014(a) "disclosure[s] must be factual rather than conclusory").

Although Skadden discloses that it previously represented the Debtor-Affiliated Funds, DC Solar, and the Carpoffs with respect to the Tax Engagement (as that term is defined in the Application) and DC Solar and the Carpoffs in the Seizure Engagement (as that term is defined in

---

[2] Skadden may offer that it can be employed for the Debtors under § 327(e) for the criminal and tax related matters. However, the Application states that the tax matters have all been stayed pending the criminal proceedings. Additionally, there is likely little for Debtors' counsel to do in the criminal proceedings other than cooperate with the Government's request for information. Further, now that the cases have been converted, the Chapter 7 Trustees will make the decision who they want to employ for these matters in the event that any such employment is necessary for the estates. Accordingly, approval of the Application, even along those limited lines, is not appropriate.

- 4 -

4841-8299-7648

the Application), Skadden's disclosures are vague and conclusory.  Indeed, the scope of the work Skadden previously performed for DC Solar, the Debtor-Affiliated Funds, and the Carpoffs is unclear from the Application.  Further, Skadden has not explained its continued representation of the Debtor-Affiliated Funds, despite seeking to be employed in these matters.  Finally, the Application does not mention that Skadden has acted as counsel for some of the Funds relating to tax issues or that Skadden had not withdrawn from that representation.

The Application and accompanying declaration [ECF No. 327] provide no explanation of how Skadden's proposed representation of the Debtors affects the current and former clients of Skadden.  The list of current and former clients of Skadden that will be affected by Debtors' bankruptcies is extensive.  *See* ECF No. 327, Ex. 3.  There is no explanation provided, though, regarding the conflict analysis or waiver of conflicts by those current or former clients. Instead, the Application and declaration simply seek to pass off the conflict issue by stating that Skadden has represented numerous creditors and interested parties previously.  Application at pg. 10-11. The only parties that were asked to weigh in on those conflicts, at least according to the Application, were the Debtors.  There is no indication that the other parties to this potentially adverse representation were consulted or had provided conflict waivers at any point. Accordingly, this Court should deny the Application.

C. **Skadden Holds an Adverse Interest to the Debtors' Estates as it is a Creditor of the Debtors' Estates and as a Result of its Retainer.**

As the Debtors and Skadden acknowledge in the Application, 11 U.S.C. § 327(e) "requires that the attorney cannot represent or hold any interest adverse to the debtor." *Lennear v. Diamond Pet Food Processors of California, LLC*, 147 F.Supp.3d 1037, 1051 (E.D. Cal. 2015) (internal quotation marks omitted).  An adverse interest "is the (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate." *In re AFI Holding, Inc.*, 355 B.R. 139, 148-49 (B.A.P. 9th Cir. 2006) (citing *Rome v. Braunstein*, 19 F.3d 54, 58, n. 1 (1st Cir. 1994); *In re Roberts*, 46 B.R. 815,

826-27 (Bankr. D. Utah 1985)). If "the law firm is owed by a petitioning client, on the date of filing, a pre-petition debt for legal fees for services not rendered in contemplation of or in connection with the bankruptcy case, then the law firm would be a creditor of the debtor . . . and, therefore, would run afoul of the no adverse interest" requirement. *In re Roberts*, 46 B.R. at 849, *aff'd in part, rev'd and remanded in part on other grounds*, 75 B.R. 402 (D. Utah 1987); *see also In re Crisp*, 92 B.R. 885, 894 (Bankr. W.D. Mo. 1988) (holding that counsel "had an adverse interest to the estate" where "he purported to be a prepetition creditor of the debtor with a security interest in property which he claimed to prevail over the interests of the estate").

Quite clearly, Skadden holds an "adverse interest" to the Debtors' estates and is not disinterested. In the Application, the Debtors disclose that "Skadden is a creditor of the Debtors' estates pursuant to the accrued and unpaid prepetition amounts, and Skadden holds a possessory interest in the Retainer[.]"[3] Application at pg. 17. Importantly, the accrued and unpaid prepetition amounts total over $1.1 million. That includes fees and expenses that relate to the Seizure Engagement.[4] By Skadden's own admission, none of those fees and expenses for pre-petition work were paid and the Retainer remains unapplied. Application at pg. 17. As a result of the Debtors' pre-petition debt owed to Skadden and Skadden's interest in the Retainer — *i.e.*, possession "of an economic interest that would tend to lessen the value of the bankruptcy estate[s]" — Skadden holds an "adverse interest" to the Debtors' estates and is not disinterested. Therefore, Skadden cannot be employed under 11 U.S.C. §§ 327(a) or 327(e). *See In re AFI Holding, Inc.*, 355 B.R. at 148-49 (citing *Rome*, 19 F.3d at 58, n. 1; *In re Roberts*, 46 B.R. at 826-27). As such, this Court should deny the Application.

///

///

---

[3] The source of the Retainer is uncertain from the Debtors' Application, but the timing of the retainer is interesting. The Application states that the retainer was paid on December 20, 2018. Application at pg. 16. The Government has alleged that Mrs. Carpoff withdrew $5 million on December 19, 2018 from a bank account that was unknown to the Government on December 18, 2018, the date of the federal government's raid and seizure. ECF No. 106, Ex. 1, ¶ 37.

[4] The Debtors and Skadden also disclose that an additional $13,628.43 in unpaid fees and costs accrued pursuant to the Tax Engagement, but that Skadden has agreed to waive such fees and costs. *See* Application at pg. 10.

**D.  The Debtors' Emergency Fund Demands, Despite Significant Funds in the Debtors' Debtor-in-Possession Accounts, Underscores the Issue with the Application.**

Throughout the Chapter 11 cases, Debtors and Skadden repeatedly requested the Funds' assistance in funding the cases on an emergency basis.  Recently, however, the Funds learned that the Debtors had approximately $500,000 in their debtor-in-possession accounts.  Such funds would have been sufficient to fund all, or at least a substantial part, of immediate needs of these estates for insurance and payments toward rents.  The Debtors may have needed additional permissions in order to use some of these funds, but even if some sort of restriction applied, permission to use some of the funds apparently were never sought.  Instead, the Debtors' attempted to shift the burden of funding these bankruptcy cases, including continued requests to fund professional fees for Skadden, to the Funds.  When the emergency funding demands were not met the cases were converted to Chapter 7.  Solarmore believes these facts support the conclusions above that Skadden is not disinterested and has acted in a way that may be considered adverse to Debtors.  The lack of any attempt to access these available funds to pay for Debtors' immediate needs is troubling to the Funds.  It is simply one more reason that this Court could point to in denying the Application.

### III.  CONCLUSION

For the foregoing reasons, Solarmore respectfully requests that this Court deny the Application.

DATED this 2nd day of April 2019.

SNELL & WILMER L.L.P.

By:     /s/ Nathan G. Kanute
Nathan G. Kanute (NV Bar No. 12413)
50 West Liberty Street, Suite 510
Reno, NV  89501
Telephone:  (775) 785-5440

Donald L. Gaffney (*admitted pro hac vice*)
(AZ Bar No.005717)
One Arizona Center, Suite 1900
400 East Van Buren Street
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000

*Attorneys for Solarmore Management Services, Inc.*

4841-8299-7648