Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com
Attorney for Christina Lovato, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

DOUBLE JUMP, INC.

    Debtor.

__X__ Affects DC Solar Solutions, Inc.
____ Affects DC Solar Distribution, Inc.
____ Affects DC Solar Freedom, Inc.
____ Affects Double Jump, Inc.

Lead Case No.: BK-19-50102-gs
(Chapter 7)

Jointly Administered with:

| 19-50130-gs | DC Solar Solutions, Inc. |
| 19-50131-gs | DC Solar Distribution, Inc. |
| 19-50135-gs | DC Solar Freedom, Inc. |

**MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT AGREEMENT [GREEN ENERGY CONCEPTS, INC.]**

Hearing Date: October 21, 2019
Hearing Time: 9:30 a.m.

Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com
Attorney for Christina Lovato, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

DOUBLE JUMP, INC.

  Debtor.

_X_ Affects DC Solar Solutions, Inc.
___ Affects DC Solar Distribution, Inc.
___ Affects DC Solar Freedom, Inc.
___ Affects Double Jump, Inc.

GREEN ENERGY CONCEPTS, INC.,

  Plaintiff,

v.

DC SOLAR SOLUTIONS, INC.,

  Defendant.

Lead Case No.: BK-19-50102-gs
(Chapter 7)

Jointly Administered with:

| 19-50130-gs | DC Solar Solutions, Inc. |
| 19-50131-gs | DC Solar Distribution, Inc. |
| 19-50135-gs | DC Solar Freedom, Inc. |

Adversary No.: 19-05004-gs

**MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT AGREEMENT**

Hearing Date: October 21, 2019
Hearing Time: 9:30 a.m.

  Christina Lovato, chapter 7 trustee ("Trustee"), for DC Solar Solutions, Inc. ("Solutions"), requests an order approving the compromise and settlement of a disputed claim with Green Energy Concepts, Inc. ("GECI"). The Motion is made in accordance with F.R.Bankr.P. 9014 and 9019, is supported by the separately filed Declaration of Christina Lovato and is based upon the following discussion of facts and law.

1

**RELEVANT FACTS**

1. Solutions filed its chapter 11 petition on February 3, 2019.

2. On February 22, 2019, GECI filed its Complaint To Recover Property From Debtor Pursuant To §541(d) And Emergency Request For Immediate Turnover Of Property And Motion For A Temporary Restraining Order And Injunction ("Complaint"), with Supporting Declaration of Thomas Valentini. **Adv. ECF no. 1 and 2**, respectively.

3. The Complaint includes claims for fraudulent inducement, unilateral mistake, failure of consideration, legal or equitable lien, emergency motion for immediate turnover, motion for temporary restraining order and motion for preliminary injunction.

4. On March 25, 2019, Solutions filed its Motion To Dismiss Or, In The Alternative, For Summary Judgment Re Complaint To Recover Property From The Debtor Pursuant To §541(d) And Emergency Request For Immediate Turnover Of Property And Motion For Temporary Restraining Order And Injunction ("Solutions' Motion"). **Adv. ECF no. 43**.

5. The basic allegations in the Complaint center around a contract for the purchase by Solutions of 5,000 batteries to be supplied by GECI for use in construction and assembly of mobile solar generators ("MSGs"). The total purchase price was to be $20,945,000. The batteries were to be manufactured to Solutions' specifications.

6. At the request and direction of Jeffrey Carpoff, the principal of Solutions, the purchase order to GECI was issued in the name of Panda Bear International, Limited ("Panda Bear"). There was a separate Panda Bear entity established by Jeff and Paulette Carpoff, however, the batteries were to be utilized by Solutions for the MSGs.

7. The Purchase Orders included Terms and Conditions, among which was a provision that the buyer granted a security interest in the goods purchased to GECI and that it had the authority to file financing statements to perfect the security interest granted. **Adv. ECF no. 4-4, pages 1 through 59.**

8. According to the Complaint, a total of 1,283 batteries, some of which were eventually incorporated into MSGs, were shipped by GECI to three of Solutions' locations. The final shipment of batteries was delivered in late December, 2018.

9. In the Solutions' Motion, it asserted that GECI did not have a perfected security interest in batteries delivered to Panda Bear. In fact, on January 22, 2019 GECI filed a UCC-1 financing statement with the California Secretary of State showing Solutions as the debtor party. **Adv. ECF no. 4-5.** The financing statement covered 63 batteries. **Adv. ECF no. 4-4, pages 54 and 56 of 59.**

10. On March 6, 2019, the Court denied GECI's request for a temporary restraining order and denied the request for turnover. **Adv. ECF no. 46**.

11. Hearing on the Solutions' Motion was scheduled for April 25, 2019; however, by that time, the Solutions case had been converted to chapter 7 and the Trustee had been appointed. Thereafter, the Trustee and GECI entered into several stipulations, each of which was presented to the Court, continuing the time for GECI to oppose the remaining portions of the Solutions Motion, or otherwise to answer the Complaint.

12. Shortly after the Trustee was appointed, GECI proposed to purchase the remaining batteries for approximately $170 per battery. This proposal was for substantially less money than the contract purchase price of $4,189 per battery. GECI asserted that the batteries were perishable if not properly stored and maintained.

13. The Trustee conferred with her auctioneer, CA Global and determined that the market for the GECI batteries was likely in the range of $1,200 to $1,800 per battery. In fact, during the first auction in Benicia, California, that was the range of prices received, some sold for less than $1,200 and some for more than $1,800.

14. Ultimately, the Trustee and GECI agreed to resolve the dispute with the Trustee recognizing the perfected security interest in 63 batteries and proposing to pay GECI the proceeds from the first 63 batteries sold at the Woodlake, California auction held in August 2019. There were only 60 GECI batteries remaining to be sold at the Woodlake auction which generated $68,300. Accordingly, the Trustee utilized the last GECI batteries sold in the Las Vegas auction and added $2,300 for a total of $70,600.

15. By this Motion, the Trustee requests an order approving the compromise of the dispute with the payment of $70,600 to GECI following which the Complaint will be dismissed

with prejudice. GECI will be entitled to file and be allowed an unsecured claim for the 1,220 batteries delivered but not paid for.

## LEGAL DISCUSSION

In the Ninth Circuit, motions to approve a compromise and settlement agreement are reviewed under the four criteria set forth in Martin v. Kane (In re A&C Properties, Inc.), 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986). Those criteria are: 1) likelihood of success on the merits of the claims in the underlying litigation; 2) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; 3) the difficulties, if any, to be encountered in the matter of collection, and 4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Compromises are favored under the Bankruptcy Code and approval of a compromise rests in the sound discretion of the Court. Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc., v. Anderson, 390 U.S. 414, 424 (1968). The bankruptcy court is afforded wide latitude in approving compromise agreements which it determines to be fair, reasonable and adequate. In re Woodson, 839 F.2d 610 (9th Cir. 1988). The court need not conduct an exhaustive investigation into the claim sought to be compromised. In re Walsh Construction, Inc., 699 F.2d 1325, 1328 (9th Cir. 1982).

**Likelihood of success on the merits of the claims in the underlying litigation;**

The facts of this dispute are relatively well settled. Although there is an argument that it was fraudulently induced to enter into an agreement with Panda Bear, GECI was, nevertheless, able to perfect an interest in 63 batteries shipped in late December 2018. As to the remainder of the batteries shipped, no financing statement was filed with the California Secretary of State. There is also an argument that Solutions did not execute a financing statement granting a security interest in the batteries.[1] The outcome of litigation is never certain and litigating this matter further

---

[1] The Official Comments to California Commercial Code 9203(b)(3), provides, in part: **Error! Main Document Only.**Under subsection (b)(3), enforceability requires the detor's security agreement

4

1  would only diminish the estate as a result of additional attorney's fees and costs.

3  **The complexity of the litigation involved, and the expense, inconvenience and delay
4  necessarily attending it;**

5  This is not particularly complex litigation and the issue is straightforward, i.e., whether GECI held a perfected security interest in the batteries in question and whether they were subject to operation of § 542, the turnover statute, or properly analyzed under §541(d). As to § 542, that section is entitled 'Turnover of property to the estate'. The Complaint requests turnover from the estate. Accordingly, turnover was not properly invoked. Under the timing of shipment and delivery of the batteries, reclamation under § 546(c) was possibly available; however, reclamation was not plead. Finally, as to § 541(d), the contractual arrangement between GECI and Panda Bear/Solutions was no different than the vast majority of disappointed creditor/debtor relationships where goods are delivered and unpaid-for at the time of the bankruptcy filing.

**The difficulties, if any, to be encountered in the matter of collection, and**

This is not a factor because the estate is not seeking a judgment or recovery against GECI.

**The paramount interest of the creditors and a proper deference to their reasonable views in the premises**

This factor may only be considered once the matter is set for hearing and whether creditors are opposed to the resolution.

///

///

---

and compliance with an evidentiary requirement in the nature of a Statute of Frauds. Paragraph (3)(A) represents the most basic of the evidentiary alternatives, under which the debtor must authenticate a security agreement that provides a description of the collateral. Under Section 9–102, a "security agreement" is "an agreement that creates or provides for a security interest." Neither that definition nor the requirement of paragraph (3)(A) rejects the deeply rooted doctrine that a bill of sale, although absolute in form, may be shown in fact to have been given as security. In re Amex-Protein Development Corp. (9th Cir. Cal. Sept. 19, 1974), 504 F.2d 1056, 1974 U.S. App. LEXIS 6818, citing California Commercial Code 9110.

5

## CONCLUSION

Based upon the foregoing, the Trustee requests an order approving the settlement with GECI for $70,600 and authorizing GECI to file and be allowed an unsecured claim for the invoice price of $4,189 for 1,220 batteries.

DATED: September 11, 2019.

**HARTMAN & HARTMAN**

*/s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq., for Trustee Lovato