Jeffrey R. Hall (9572)
HUTCHISON & STEFFEN, PLLC
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145
Tel:   (702) 385-2500
Fax:   (702) 385-2086
jhall@hutchlegal.com

My Chi To
Erica S. Weisgerber
Danielle Thorne
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone:  (212) 909-6000
Fax: (212) 909-6836
mcto@debevoise.com
eweisgerber@debevoise.com
dethorne@debevoise.com

*Attorneys for chargeIT Mobility GmbH, Germany*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re<br><br>DOUBLE JUMP, INC.<br><br>Debtor.<br><br>___ Affects ALL Debtors<br>___ Affects Double Jump, Inc.<br>___ Affects Dora Dog Properties, LLC<br>___ Affects Dog Blue Properties, LLC<br>___ Affects Brandy Boy Properties, LLC<br>___ Affects 475 Channel Road, LLC<br>___ Affects Park Road, LLC<br>___ Affects 140 Mason Circle, LLC<br>_X_ Affects DC Solar Solutions, Inc.<br>___ Affects DC Solar Distribution, Inc.<br>___ Affects DC Solar Freedom, Inc. | Lead Case No.:  BK-19-50102-btb<br>Chapter 7<br><br>In Joint Administration with:<br><br>\| 19-50103-btb \| Dora Dog Properties, LLC \|<br>\| 19-50104-btb \| Dog Blue Properties, LLC \|<br>\| 19-50105-btb \| Brandy Boy Properties, LLC \|<br>\| 19-50106-btb \| 475 Channel Road, LLC \|<br>\| 19-50108-btb \| Park Road, LLC \|<br>\| 19-50109-btb \| 140 Mason Circle, LLC \|<br>\| 19-50130-btb \| DC Solar Solutions, Inc. \|<br>\| 19-50131-btb \| DC Solar Distribution, Inc. \|<br>\| 19-50135-btb \| DC Solar Freedom, Inc. \|<br><br>**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO FRBP 9019**<br><br>**Hearing Date: December 9, 2019**<br><br>**Hearing Time: 9:30 a.m.** |
|---|---|

Christina W. Lovato, in her capacity as Chapter 7 Trustee in the above-captioned cases, on behalf of DC Solar Solutions, Inc. and its affiliated entities (the "Trustee"), and chargeIT Mobility, Gmbh ("chargeIT"), by and through their respective undersigned counsel, hereby respectfully submit this motion (the "Motion") requesting entry of an order in the form attached hereto as **Exhibit "1"** approving that certain Settlement Agreement (the "Settlement Agreement") attached hereto as **Exhibit "2,"**[1] entered into by and among the Trustee, the Debtors, and chargeIT (collectively, the "Parties") pursuant to Bankruptcy Rule 9019[2] and authorizing the Parties to take any and all actions necessary to effectuate the terms of the Settlement Agreement.

The Motion is made and based on the memorandum of points and authorities provided herein, the pleadings, papers, and other records on file with the clerk of the Court, judicial notice of which is hereby requested, and the argument of counsel entertained by the Court at the time of the hearing of the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION, VENUE, AND BASIS FOR RELIEF

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The basis for the relief sought herein arises from Bankruptcy Rules 1017 and 9019 and 11 U.S.C. § 1112.

3. Pursuant to Local Rule 9014.2, the Parties consent to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

---

[1] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Settlement Agreement.

[2] All references to "Chapter" and "Section" hereinafter are to title 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); all references to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada.

**II.     FACTS**

1. In 2017, Solutions and chargeIT, a company incorporated in Germany, entered into an agreement for Solutions to purchase certain technology hardware relating to a Supervisory Control Access Data Analysis ("SCADA") system (such hardware, collectively, the "SCADA Units") from chargeIT. Purchase orders (the "Purchase Orders") and invoices (the "Invoices") were prepared detailing the items, quantity, rate and amount charged in connection with the purchase. *See* **Exhibit 3**, June 26, 2017 Purchase Order; **Exhibit 4**, August 31, 2017 Purchase Order; Exhibit 1, Settlement Agreement at Exhibit A, Invoices.

2. The Invoices indicate that chargeIT's general terms and conditions of business (the "General Terms & Conditions") applied to and governed the sale. A copy of the General Terms & Conditions is attached hereto as **Exhibit 5**.[3] The Invoices further indicate that the place of fulfillment of deliveries and payments is Kitzingen, Germany. *See* Exhibit 1, Settlement Agreement, at Exhibit A, Invoices. The General Terms & Conditions provide for jurisdiction over disputes in Kitzingen, Germany and further provide that German law governs the relationship between chargeIT and its customer. *See* Exhibit 5 at 11.

3. Consistent with the provisions of the General Terms & Conditions and the Invoices, Solutions made a 50% down payment at the time of order, to confirm its purchases. *See* Exhibit 1, Settlement Agreement, at Exhibit A, Invoices. The balance was due upon delivery. The Invoices indicate that the delivery dates for the SCADA Units ranged from October 2017 through December 2018. *See id.* Solutions did not pay the balance due under the Invoices upon delivery of the SCADA Units.

4. After the SCADA Units were delivered, chargeIT requested payment from Solutions but did not receive such payment.

5. On January 30, 2019 (the "Petition Date"), Double Jump, Inc. filed a Chapter 11 petition and on February 3, 4 and 5, 2019, respectively, DC Solar Solutions, Inc., DC Solar Distributions, Inc. and DC Solar Freedom, Inc., each filed Chapter 11 petitions. On January 30, 2019,

---

[3] Although the General Terms & Conditions are in German, a certified translation of the General Terms & Conditions are attached for reference. *See* Exhibit 5.

3

six related entities also filed Chapter 11 petitions: Dora Dog Properties, LLC, Dog Blue Properties, LLC, Brandy Boy Properties, LLC, 475 Channel Road LLC, Park Road, LLC and Mason Circle LLC. The ten chapter 11 cases are being jointly administered by Order entered February 12, 2019. *See* ECF No. 97.

6. On March 22, 2019, the Chapter 11 cases of all debtors were converted to cases under Chapter 7 of the Bankruptcy Code. *See* ECF No. 438. Christina W. Lovato was appointed as the Trustee. *See* ECF Nos. 439, 440.

7. On May 2, 2019, the Trustee filed a *Motion for (1) Order Authorizing Employment of CA Global Partners, Inc. as Consultant for the Purpose of Conducting an Auction of Personal Property Inventory; and (2) Order Authorizing Sale Free and Clear of Liens and Encumbrances by Auction* (the "Sale Motion"). The Sale Motion sought court permission to auction certain "unencumbered personal property owned by the chapter 7 estates of Solutions, Distribution and Freedom" and an order authorizing the sale "by auction, free and clear of liens and encumbrances of personal property inventory owned by Solutions, Distribution and Freedom located at a variety of locations at which those entities conducted business activities." *See* ECF No. 666, at 2. The Sale Motion further acknowledged that Schedules of Assets and Liabilities and Statements of Financial Affairs for Solutions, Distributions and Freedom were not yet filed, but sought to conduct an auction in short term to "gain maximum market exposure." *Id.* The Trustee simultaneously filed an *Ex Parte Motion for Order Shortening Time for Hearing on the Sale Motion*. *See* ECF No. 672.

8. On May 17, 2019, the Court entered the requested auction order. *See* ECF No. 773.

9. Thereafter, chargeIT learned that the SCADA Units were being sold at the auction, through an online auction site. *See* https://www.industrialbid.com/auctions/3648-huge-2-day-auction-new-mobile-solar-generator-parts-inventory-over-50-million-cost-day-2-auction/. Upon learning of the sale, chargeIT contacted U.S. counsel, who liaised with Trustee's counsel. The Parties disputed the ownership of title to the property and were unable to reach a resolution regarding the disputed property.

10. On June 10, 2019, counsel for the Trustee informed chargeIT's counsel that because chargeIT had not "perfected" its lien, he had authorized the auction of the SCADA Units to proceed.

4

1  On June 12, 2019, chargeIT filed the *Emergency Motion to Exclude Certain Property from Auction* (ECF No. 845) to request that the Court order that the SCADA Units be segregated from the auction.

11. That day, the Court granted chargeIT's emergency motion and entered an *Order on Emergency Motion to Exclude Certain Property from Auction* (the "Exclusion Order") (ECF No. 847) to exclude the SCADA Units from the auction. Following entry of the Exclusion Order, the Trustee pulled the SCADA Units from the auction, but several units had already been sold.

12. A status hearing was held on June 17, 2019 before the Court. The Parties indicated that they would engage in further discussions and, if unsuccessful, would set a briefing schedule for the dispute.

13. Following arms' length negotiations, and in order to avoid the protracted litigation that would likely ensue as a result of the Parties' dispute, the Parties have agreed to a settlement, as memorialized in the Settlement Agreement.

14. Upon review of the Settlement Agreement, the Trustee believes that the settlement is in the best interests of the creditors and respectfully requests that this Motion be granted.

### III. TERMS OF SETTLEMENT

1. The Trustee, on behalf of Solutions, and chargeIT have entered into a settlement under which chargeIT can retake possession of the 1719 SCADA Units remaining in Solutions' possession (the "Reclaimed SCADA Units") and the attendant cable harnesses and Power Converters (48V-24V) remaining in Solutions' possession (the "Reclaimed Power Converters"), to the extent available at 4901 Park Road, Benicia, California 94510, the location of the SCADA Units. chargeIT has agreed to prepare an inventory specifying the number of Reclaimed Power Converters (the "Inventory") that it recovers, and provide such Inventory to the Trustee.

2. chargeIT will also be permitted to assert an allowed, unsecured claim for 50% of the total value of the 281 SCADA Units that it delivered to Solutions that are not among the Reclaimed SCADA Units in the amount of $195,716.50 (such SCADA Units, the "Remaining SCADA Units," and such claim, "Allowed Claim 1"). chargeIT also will be permitted to assert an allowed, unsecured claim for 50% of the total value of any Power Converters that it delivered to Solutions that are not Reclaimed Power Converters (such Power Converters, the "Remaining Power Converters," and such

claim, "Allowed Claim 2," and together with Allowed Claim 1, the "Allowed Claims."). chargeIT has informed the Trustee that it has recovered 1719 Power Converters, and thus maintains a claim for 281 Remaining Power Converters totaling $7,587.00. If any of the Remaining SCADA Units or Remaining Power Converters are returned to chargeIT following their later identification by Solutions, chargeIT will not be permitted to assert a claim for those items. chargeIT also shall not need to file a new proof of claim with respect to the Allowed Claims.

3. chargeIT will withdraw the proof of claim it executed and submitted in these cases on February 28, 2019. The Settlement Agreement further contains standard mutual releases. Except for the Allowed Claims, chargeIT will not be allowed to assert any other claims against Solutions, including claims for costs and expenses, lost profits, or other damages resulting from Solutions' bankruptcy or the instant dispute.

## IV. LEGAL ARGUMENT

### A. The Settlement Agreement Should Be Approved Pursuant to Fed. R. Bank. P. 9019.

1. Compromise and settlement agreements have long been an inherent component of the bankruptcy process. *See Protective Comm. for Index Stockholders of TMT Trailer Ferry v. Anderson,* 390 U.S. 414, 424 (1958) (citing *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130 (1939)). The approval of compromises or settlements in bankruptcy proceedings is generally governed by Bankruptcy Rule 9019(a), which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

2. Compromises are favored in bankruptcy; thus, the decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in his or her sound discretion. *See In re Stein,* 236 B.R. 34, 37 (Bankr. D. Or. 1999). The law prefers compromise "as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise." *Martin v. Kane (In re A & C Properties),* 784 F.2d 1377, 1381 (9th Cir. 1986). Public policy supports pretrial compromises because litigation "can occupy a court's docket for years on end, depleting

resources of the parties and the taxpayers while rendering meaningful relief elusive." *In re Grau,* 267 B.R. 896, 899 (Bankr. S.D. Fla. 2001) (quoting *Matter of Munford, Inc.,* 97 F.3d 449, 455 (11th Cir. 1996)).

3. The United States Supreme Court has expressed that a bankruptcy settlement must be fair and equitable. *See Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414 (1968). The Ninth Circuit Court of Appeals has enunciated that "in order to determine whether a proposed settlement is fair and equitable, the bankruptcy court must consider four factors: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *See In re Stein,* 236 B.R. at 37; *see also In re A & C Properties,* 784 F.2d at 1381; *Schmitt v. Ulrich,* 215 B.R. 417, 421 (B.A.P. 9th Cir. 1997). A trustee is not necessarily required to satisfy each of these factors as long as the factors as a whole favor approving the settlement. *See In re Pacific Gas and Electric Co.,* 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004); *In re WCI Cable, Inc.,* 282 B.R. 457, 473-74 (Bankr. D. Or. 2002). Further, the settlement does *not* have to be the best the trustee could have possibly obtained; rather, the settlement must only fall "within the reasonable range of litigation possibilities." *See In re Adelphia Comm. Corp.,* 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (citing *In re Penn Cent. Transp. Co.,* 596 F.2d 1102, 1114 (3d Cir. 1979) ("Indeed, a court may approve a settlement even if it believes that the Trustee ultimately would be successful.")).

4. There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion—and the bankruptcy court will not be reversed if the appellate court concludes that the settlement lies within that range. *See id.* (citing *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)). The bankruptcy court "need not conduct an independent investigation into the reasonableness of the settlement but must only 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *See id.* (citing *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983)); *see also Ars Brook, LLC v. Jalbert*

*(In re Servisense.com, Inc.),* 382 F.3d 68, 71-72 (1st Cir. 2004); *In re Energy Cooperative, Inc.,* 886 F.2d 921, 929 (7th Cir. 1989); *New Concept Housing, Inc. v. Poindexter et al. (In re New Concept Housing, Inc.)*, 951 F.2d 932, 938 (8th Cir. 1991).

5. For the reasons set forth below, the *A & C Properties* factors support a finding that the Settlement Agreement is fair and reasonable and in the best interest of the estate. Accordingly, this Court should grant this Motion and approve the Settlement Agreement.

**B.     The Probability of Success in Litigation.**

1. The Trustee and chargeIT dispute title to the SCADA Units and Power Converters. In order to establish that the SCADA Units and Power Converters are property of the estate, the Trustee is required to show that the German retention of title provision in the contract between chargeIT and Solutions does not apply.

2. It is chargeIT's position that the Trustee will be unable to establish that the SCADA Units and Power Converters do not remain chargeIT's property.

3. Under the contractual arrangement between chargeIT and Solutions, title to the SCADA Units remains with chargeIT. Specifically, the General Terms & Conditions include a retention of title provision that provides that the property remains the property of chargeIT until Solutions has paid in full and that Solutions may not sell the goods or otherwise dispose of the ownership thereof:

> The **Seller shall retain title to the delivered goods until the purchase price for these goods has been paid in full**. During the existence of the retention of title, the **Buyer may not sell the goods** (hereinafter also referred to as "Reserved Goods") **or otherwise dispose of the ownership thereof**.

Exhibit 5, General Terms & Conditions § 9 (emphases added).

4. The contractual relationship between the Parties is governed by German law. *See* Exhibit 5, General Terms & Conditions § 14 ("The relations between the Seller and the Customer shall be subject exclusively to the law of the Federal Republic of Germany."). Under German law, retention of title provisions are common. chargeIT alleges that such provisions allow a seller to reclaim its property if it has not been paid in full, even if a company has filed for bankruptcy. Further, under

1  German law, a party that sells property to which it does not possess title will be liable for damages to
2  the true title holder.

3      5.    Moreover, to the extent that the Trustee seeks to recharacterize the nature of chargeIT's
4  interest, i.e., title in the SCADA Units, to a secured interest, or lien, in the SCADA Units, the Trustee
5  would have to file an adversary proceeding in this Court, which would incur additional time and
6  expense to the estate, without any guarantee of success.

7      6.    It is chargeIT's position that the Trustee's claims have a low probability of success
8  given the above arguments. Due to the risk involved in pursuing extensive title litigation, the Trustee
9  believes that this factor weighs strongly in favor of approval of the Settlement Agreement.

10  **C.**    **Collection Difficulties.**

11      7.    In the event that the Trustee prevailed in the dispute over title of the SCADA Units and
12  Power Converters, the Trustee believes that chargeIT has the means and willingness to appeal and
13  resist any unfavorable result and extend the timeline of this litigation indefinitely. In addition, even if
14  the Trustee were successful on appeal, she would still need to shoulder the administrative burden of
15  liquidating these assets. As indicated by the results of the auction of the SCADA Units that were sold
16  prior to the entry of the Exclusion Order, the SCADA Units were auctioned for roughly 3% of their
17  original sale value.[4] Meanwhile, chargeIT would retain a claim against Solutions for each unit that
18  would far exceed the sale value of the sold property. While the SCADA Units sold to Solutions were
19  bespoke and are not immediately suitable for resale, their value is maximized by their return to
20  chargeIT, to the benefit of the estate and all creditors.

21      8.    Overall, litigation regarding and collection through liquidation of these assets will be a
22  substantial undertaking; therefore, this factor weighs in favor of approval of the Settlement
23  Agreement.

24  **D.**    **The Complexity of the Litigation Involved and the Expense, Inconvenience, and Delay Attending It.**
25

26

---

27  [4]    Specifically, each SCADA Unit cost upwards of $1000. At the auction, each lot (constituting
28  16 SCADA Units) was priced for roughly $700 for the entire lot.

9

9.      As indicated above, upon learning that its property was to be auctioned, chargeIT immediately filed a motion overnight in this Court. chargeIT has at all times stood ready to assert and defend its rights to what it contends is its rightful property, including through litigation.

10.     Such litigation presents complex issues of German law and property rights and would require expert witnesses on issues of foreign law and choice of law issues. Such further litigation would require significant additional cost, including possible discovery, briefing, and trial, and possibly an appeal filed by the losing party. This could delay administration of the bankruptcy estate.

11.     In addition to the immediate expense saved by the estate through the Settlement Agreement and resolving the contested matters, the Settlement Agreement is also certain to eliminate any delay. Accordingly, the proposed compromise will result in a favorable resolution for the estate without the attendant expense, risk, and delay of further litigation.

**E.     The Paramount Interest of the Creditors.**

12.     Under the fourth *A & C Properties* factor, the Court must consider whether approving a settlement generally "reflects not only the desire of creditors to obtain the maximum possible recovery but also their competing desire that that recovery occur in the least amount of time." *In re Marples,* 266 B.R. 202, 207 (Bankr. D. Idaho 2001). As explained above, even assuming the Trustee were successful in asserting property rights over the SCADA Units, the SCADA Units that were previously sold at auction were sold for an infinitesimal fraction of their original sale price. Meanwhile, chargeIT would retain a claim against Solutions for each unit that would far exceed the sale value of the sold property. Value is maximized by return of the Reclaimed SCADA Units and Reclaimed Power Converters to chargeIT, to the benefit of the estate and all creditors.

13.     As the foregoing analysis illustrates, the four *A&C Properties* factors favor approval of the Settlement Agreement as it is fair and reasonable and in the best interest of Solutions and its creditors.

////

////

////

## II. CONCLUSION

1. Based on the foregoing, the Trustee on behalf of Solutions and chargeIT respectfully request that the Court enter the order attached hereto as Exhibit "2," thereby granting the *Joint Motion To Approve Settlement Agreement Pursuant To FRBP 9019*.

DATED this 16th day of October, 2019.

**Christina W. Lovato, Chapter 7 Trustee**

HARTMAN & HARTMAN

*/s/ Jeffrey L. Hartman*
_____
Jeffrey L. Hartman (1607)
510 West Plumb Lane, Suite B
Reno, NV  89509
Tel:  (775) 324-2800
Fax:  (775) 324-1818
jlh@bankruptcyreno.com

**chargeIT Mobility GmbH, Germany**

HUTCHISON & STEFFEN, PLLC

*/s/ Jeffrey R. Hall*
_____
Jeffrey R. Hall (9572)
HUTCHISON & STEFFEN, PLLC Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, NV 89145
Tel:     (702) 385-2500
Fax:    (702) 385-2086
jhall@hutchlegal.com

and

My Chi To
Erica S. Weisgerber
Danielle Thorne
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone:  (212) 909-6000
Fax: (212) 909-6836
mcto@debevoise.com
eweisgerber@debevoise.com

11

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 16th day of October, 2019, a copy of the foregoing document entitled: ***JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO FRBP 9019*** by transmitting a copy of same via the Court's CM/ECF Internet system to their respective registered email site.

*/s/ Bobbie Benitez*
_____
An Employee of Hutchison & Steffen, PLLC