**E-filed:  October 24, 2019**

1   Nathan G. Kanute (NV Bar No. 12413)
    SNELL & WILMER L.L.P.
2   50 West Liberty Street, Suite 510
    Reno, NV 89501
3   Telephone: (775) 785-5440
    Facsimile: (775) 785-5441
4   Email: nkanute@swlaw.com

5   Donald L. Gaffney (*admitted pro hac vice*)
    (AZ Bar No. 005717)
6   SNELL & WILMER L.L.P.
    One Arizona Center, Suite 1900
7   400 East Van Buren Street
    Phoenix, AZ 85004-2202
8   Telephone: (602) 382-6000
    Facsimile:  (602) 382-6070
9   Email: dgaffney@swlaw.com

10  *Attorneys for Solarmore Management Services, Inc.*

11              **UNITED STATES BANKRUPTCY COURT**

12              **DISTRICT OF NEVADA**

13  In Re:                                    Case No. 19-50102-gs – LEAD CASE

14  DOUBLE JUMP, INC.,                        Chapter 7

15  Affects:                                  Jointly administered
    ☒ All Debtors
16  ☐ Double Jump, Inc. (19-50102-gs)
    ☐ DC Solar Solutions, Inc. (19-50130-gs)   **OBJECTION TO MOTION TO**
17  ☐ DC Solar Distribution, Inc. (19-50131-gs) **QUASH NOTICE OF DEPOSITIONS**
    ☐ DC Solar Freedom, Inc. (19-50135-gs)     **AND/OR FOR PROTECTIVE**
18                                             **ORDERS RE DEPOSITIONS OF JEFF**
                                               **AND PAULETTE CARPOFF**
19              Debtors.
                                               **Hearing Date: October 25, 2019**
20                                             **Hearing Time: 9:30 a.m.**

21

22       Solarmore Management Services, Inc.[1] ("Solarmore"), by and through its undersigned

23  counsel, hereby objects to the *Motion to Quash Notice of Depositions and/or for Protective*

24

25  [1] Solarmore is the managing member of and acting on behalf of itself and Solar Eclipse Investment Fund
    V, LLC; Solar Eclipse Investment Fund VI, LLC; Solar Eclipse Investment Fund VII, LLC; Solar Eclipse
26  Investment Fund VIII, LLC; Solar Eclipse Investment Fund X, LLC; Solar Eclipse Investment Fund XI,
    LLC; Solar Eclipse Investment Fund XII, LLC; Solar Eclipse Investment Fund XIV, LLC; Solar Eclipse
27  Investment Fund XV, LLC; Solar Eclipse Investment Fund XVI, LLC; Solar Eclipse Investment Fund
    XVII, LLC; Solar Eclipse Investment Fund XVIII, LLC; Solar Eclipse Investment Fund XIX, LLC; Solar
28  Eclipse Investment Fund XXI, LLC; Solar Eclipse Investment Fund XXII, LLC; Solar Eclipse Investment
    Fund XXIII, LLC; Solar Eclipse Investment Fund XXIV, LLC; Solar Eclipse Investment Fund XXVI,

4820-4282-1290

1   *Orders re Depositions of Jeff and Paulette Carpoff* [ECF No. 1336] (the "Motion") filed by Jeff

2   and Paulette Carpoff (the "Carpoffs").   This Objection is supported by the following

3   memorandum of points and authorities, the pleadings and filings on file in these cases, and any

4   arguments the Court will hear on this matter.

5                              **MEMORANDUM OF POINTS AND AUTHORITIES**

6           To the extent the Motion argues that Solarmore is seeking to prevent the Carpoffs from

7   asserting or maintaining their Fifth Amendment privilege against self-incrimination, that is not

8   the case.  Solarmore understands that the Carpoffs may choose to assert their Fifth Amendment

9   privilege to certain questions.  Contrary to the Carpoffs' assertion, though, there is not a right to

10  not be asked the questions.  In fact, the case law says that an assertion of the Fifth Amendment

11  privilege must be made on a question by question basis.  Accordingly, the attempt to wholly

12  avoid depositions in these contested matters is inappropriate.

13          The Carpoffs have inserted themselves into these proceedings by filing: (1) *Opposition to*

14  *Trustee's Motion for Order for Substantive Consolidation of the Chapter 7 Estates of Double*

15  *Jump, Inc., DC Solar Solutions, Inc., DC Solar Distribution, Inc., and DC Solar Freedom, Inc.*

16  [ECF No. 1162] (the Consolidation Opposition"); (2) *Motion for Disclosure of Server and*

17  *QuickBooks Information to Comply with Tax Requirements and Locate Estate Assets* [ECF No.

18  1158] (the "QuickBooks Motion"); and (3) *Motion for Disclosure of Audit List of Mobile Solar*

19  *Generators to Assist in Locating Estate Assets* [ECF No. 1160] (the "Audit Motion").  In each of

20  the foregoing, the Carpoffs have put forward factual assertions relating to the Debtors and their

21  business operations, the assets of the bankruptcy estates, the claims against the estates, the assets

22  of the Funds, and the need for certain information.  The Carpoffs, however, ask this Court to

23  allow their Consolidation Opposition, QuickBooks Motion, and Audit Motion to go forward

24  untested.  Solarmore, through the deposition notices, simply seeks to gain further information

25  regarding the foregoing from the Carpoffs.  The Carpoffs should not be permitted to seek redress

26  from this Court without being subject to the Federal Rules of Bankruptcy Procedure.

27  _____

28  LLC; Solar Eclipse Investment Fund XXVIII, LLC; and Solar Eclipse Investment Fund XXXI, LLC
    (collectively, the "Funds").

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775 785-5440

4820-4282-1290

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775785-5440

**ARGUMENT**

1.      **The Carpoffs Cannot Refuse to Attend the Deposition Based on their Potential Assertion of the Fifth Amendment Privilege.**

The Motion, along with the letter from Carpoffs' counsel, asks that the Carpoffs be exempted from the Federal Rules of Bankruptcy Procedure.    The Carpoffs, without knowing what questions Solarmore intends to ask, claim that they do not believe that there is a line of questioning to which they would not assert their Fifth Amendment privilege.  Therefore, they ask this Court order that they not be required to attend the properly noticed depositions in these contested matters.  The Carpoffs, however, are "not exonerated from answering merely because [they declare] that, in so doing [they] would incriminate [themselves] – [their] say-so does not itself establish the hazard of incrimination." *Hoffman v. U.S.*, 341 U.S. 479, 486 (1951).

Instead, the case law has laid out a clear procedure for the Carpoffs to protect their Fifth Amendment privilege.  The privilege against self-incrimination cannot be asserted in a blanket manner and it cannot be asserted to avoid attending a deposition.  The U.S. Supreme Court set out the road map in *Hoffman*, 341 U.S. at 486-87 when it stated that "[t]o sustain the privilege, it need only be evident from the *implications of the question, in the setting in which it is asked*, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."  Emphasis added.  It is clear from the language used in *Hoffman* that the questions must be allowed to be asked before it can even be understood whether the Fifth Amendment privilege applies.

Circuit Courts of Appeals, including the Ninth Circuit, District Courts, and Bankruptcy Courts have agreed that a blanket assertion of the Fifth Amendment privilege and attempts to block discovery through preemptive assertions of the Fifth Amendment privilege are improper. *See e.g., U.S. v. Pierce*, 561 F.2d 735, 741 (9th Cir. 1977) ("A proper application of this standard requires that the Fifth Amendment claim be raised in response to specific questions propounded by the investigating body" and "a blanket refusal to answer any question is unacceptable."); *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir. 1969) ("The scales of justice would hardly remain equal, in these respects, if a party can assert a claim against another and then be able to block all

4820-4282-1290

1    discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation

2    whatsoever upon his claim."); *Securities and Exchange Commission v. First Financial Group of*

3    *Texas, Inc.*, 659 F.2d 660, 668-69 (5th Cir. 1981) (stating that "a blanket invocation of the Fifth

4    Amendment privilege is insufficient to relieve a civil litigant of the responsibility to answer

5    questions put to him during the civil discovery process and to claim the privilege with respect to

6    each inquiry"); *National Life Insurance Co. v. Hartford Accident and Indemnity Co.*, 615 F.2d

7    595, 598 (3rd Cir. 1980) ("a witness cannot relieve himself of the duty to answer questions that

8    may be put to him by a mere blanket invocation of the privilege"); *U.S. v. Hansen*, 233 F.R.D.

9    665, 668 (S.D. Cal. 2005) (granting a motion to compel a party to attend a deposition finding that

10    a deponent "cannot refuse to attend a deposition under a blanket claim of Fifth Amendment

11    privilege"); *In re Hulon*, 92 B.R. 670, 675 (Bankr. N.D. Tex. 1988) (noting, in a case where a

12    Debtor sought to assert her Fifth Amendment privilege in response to a 2004 examination, that,

13    other than a criminal defendant's right not to take the witness stand at a criminal trial, "the

14    privilege does not permit a person to avoid being sworn as a witness or being asked questions").

15    Accordingly, the case law is clear that the Carpoffs must "attend the deposition, be sworn under

16    oath, and respond to those questions [they] can answer without running a risk of self-

17    incrimination." *Hansen*, 233 F.R.D. at 668.

18          **2.**      **The Carpoffs' Filings have Placed Numerous Facts in Issue.**

19          The Carpoffs' Consolidation Opposition, QuickBooks Motion, and Audit Motion assert

20    factual allegations and raise additional issues that Solarmore must be permitted to test through

21    discovery.  By way of example, the Carpoffs have asserted the following:

22    Consolidation Opposition:

23        -   "[T]he Debtors kept separate books and records and had different missions, goals and

24           tasks and different assets and creditors unique to each of their functions."  At p. 7.

25        -   "Here the four Debtors were operated separately, with separate functions and separate

26           accounting."  At p. 10.

27        -   "While the Carpoffs are not creditors of the Debtors, they desire to make the Investor

28           LLCs and creditors of the Debtors whole."  At p. 11.

- 4 -

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

1    - "[The Carpoffs] also seek to use their own resources to assist the estate in locating all

2    of the not yet located MSGs . . ." At p. 11.

3    - "Similarly, [the Carpoffs] have filed a motion seeking a copy of the server and the

4    financial books and records of the Debtors in order to determine whether there are

5    assets in the hands of third parties that were not properly recorded because of the

6    unavailability of documents or staff during the period after the searches or which

7    should otherwise be in the estates of the individual Debtors. *All of that can be*

8    *accomplished without cost to the estate or placing the Carpoffs in legal jeopardy and*

9    *permit the Court to make its determinations based upon evidence and not the opinions*

10    *of Freeman or the probable cause assertions in the disputed forfeiture actions.*" At

11    pp. 11-12. Emphasis added.

12    QuickBooks Motion:

13    - "[The Carpoffs] are uniquely situated to assist the Trustee in locating estate assets,

14    which the Trustee contends cannot be found. Disclosure of the records on the Server

15    will assist the Carpoffs, their counsel, and investigators in locating those assets,

16    particularly in transactions that were in progress but had not been fully documented at

17    the time of the seizure of the Server by the government." At pp. 2-3.

18    - "[H]aving a mirror image of the Server will enable [the Carpoffs] to reconstruct

19    emails, receipts, purchase orders, and other critical information for locating the MSGs

20    and raw materials inventory that the Trustee alleges are 'missing.'" At p. 7.

21    - "Mr. Carpoff is the person most likely to be able, through his counsel, to assist in

22    locating the MSGs and inventory, but he cannot be expected to do so purely from

23    memory." At p. 7.

24    Audit Motion

25    - "[T]he fact that on a limited budget, without personal knowledge of the deployment

26    and redeployment of the units and in a very limited timeframe GA Global was unable

27    to locate all of the units does not mean that they don't exist." At p. 2.

28    - "The Carpoffs have requested a copy of the Audit List from the Trustee for the

- 5 -

4820-4282-1290

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

1    purpose of assisting the estate and the investor groups in locating and recovering the

2    remaining MSGs." At p. 2.

3    -    "By their very nature, the MSGs were deployed in many varying ways, by themselves

4        or in numbers, to one user who deployed them in various locations in a geographic

5        location or scattered across working locations as needed." At p. 4.

6    -    "There are thousands of unlocated MSGs in existence at various locations." At p. 6.

7    All of the foregoing are areas that are ripe for further inquiry. By specifically authorizing these

8    statements to be made, the Carpoffs have opened the door to Solarmore's use of applicable

9    discovery rules to inquire further on these topics. The Carpoffs cannot be permitted to continue

10   prosecuting their Consolidation Objection, Server Motion, and Audit Motion while refusing to

11   appear for depositions.[2]

12        Additionally, since the Carpoffs have filed their Consolidation Objection, Solarmore

13   should be able to question the Carpoffs regarding the various matters that will be relevant to the

14   Court's substantive consolidation decision. As the Court is aware, a number of factors must be

15   looked at when assessing substantive consolidation. Solarmore will need to have a better picture

16   of, among other things, the assets and claims against these estates, the intercompany obligations,

17   the corporate formalities, how the entities interacted with investors and creditors, etc. As the

18   Carpoffs have said, they would be uniquely positioned to provide that information. Given the

19   Carpoffs' insinuation that the Trustee and former CRO do not have the full story on the Debtors'

20   operations and finances, it would comport with the Carpoffs' stated intent of helping the investors

21   and creditors to provide that information.

22   ///

23   ///

24   ///

25   ///

26

27   [2] Counsel for Solarmore has asked counsel for the Carpoffs on multiple occasions whether the
     Consolidation Opposition, Server Motion, and Audit Motion were being withdrawn in light of the

28   Carpoffs' desire not to participate in depositions. The response back each time is that the Carpoffs' filings
     would not be withdrawn.

- 6 -

4820-4282-1290

Snell & Wilmer
L.L.P.
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775-785-5440

1

**CONCLUSION**

2       Based on the arguments set forth above, Solarmore requests that the Motion be denied and

3   that the Carpoffs be required to comply with the properly noticed depositions currently set to

4   begin on November 6, 2019 at 9:30 a.m.

5       DATED this 24th day of October 2019.

6                                   SNELL & WILMER L.L.P.

7

8                                   By:      /s/ Nathan G. Kanute
                                        Nathan G. Kanute (NV Bar No. 12413)
9                                       50 West Liberty Street, Suite 510
                                        Reno, NV  89501
10                                      Telephone:  (775) 785-5440
                                        Facsimile:  (775) 785-5441

11                                      Donald L. Gaffney (*admitted pro hac vice)*
                                        (AZ Bar No.005717)
12                                      One Arizona Center, Suite 1900
                                        400 East Van Buren Street
13                                      Phoenix, AZ 85004-2202
                                        Telephone: (602) 382-6000
14                                      Facsimile:  (602) 382-6070
                                        *Attorneys for Solarmore Management Services, Inc.*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 7 -

4820-4282-1290

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
50 West Liberty Street, Suite 510
Reno, Nevada 89501
775 785-5440