HOLLEY DRIGGS WALCH
FINE PUZEY STEIN & THOMPSON
Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@nevadafirm.com
Mary Langsner, Ph.D. (NV Bar No. 13707)
Email: mlangsner@nevadafirm.com
400 South Fourth Floor, Third Floor
Las Vegas, Nevada 89101
Telephone:    702/791-0308
Facsimile:    702/791-1912
*Attorneys for SolarSense DCS I, LLC*

STEVENS & LEE, P.C.
Robert Lapowsky (Admitted *Pro Hac Vice*)
Email: rl@stevenslee.com
620 Freedom Business Center, Suite 200
King of Prussia, Pennsylvania 19406
Telephone:    215-751-2866
Facsimile:    610-371-7958

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re:

DOUBLE JUMP, INC.

    Debtor.

☑  Affects All Debtors
☐  Affects Double Jump, Inc.
☐  Affects DC Solar Solutions, Inc.
☐  Affects DC Solar Distribution, Inc.
☐  Affects DC Solar Freedom, Inc.

Case No. BK-N-19-50102-GS
Chapter 7

Jointly Administered with:

| 19-50130-gs | DC Solar Solutions, Inc. |
| 19-50131-gs | DC Solar Distribution, Inc. |
| 19-50135-gs | DC Solar Freedom, Inc. |

Date of Hearing:    December 9, 2019
Time of Hearing:    9:30 a.m.

Judge: Hon. Gary Spraker

**SOLARSENSE DCS I LLC'S OPPOSITION TO MOTION FOR ORDER APPROVING CONSENSUAL LIQUIDATION OF ESTATE'S INTEREST IN PROPERTY AND APPROVING COMPROMISE OF DISPUTED CLAIMS**

SolarSense DCS 1, LLC ("SolarSense"), by and through its counsel of record Richard F.

Holley, Esq. and Mary Langsner, Ph.D. of the law firm Holley Driggs Walch Fine Puzey Stein &

Thompson, and Robert Lapowsky, Esq. of the law firm Stevens & Lee, P.C., hereby files its

opposition (the "Opposition) to the Motion for Order Approving Consensual Liquidation of

Estate's Interest in Property and Approving Compromise of Disputed Claims ("Motion")[1] [ECF

No. 1391],[2] filed by chapter 7 trustee Christina Lovato (the "Trustee"), trustee of the bankruptcy

estates (collectively, the "Estate") of debtors Double Jump, Inc. ("Double Jump"), DC Solar

---

[1] Capitalized terms used but not defined herein have the meaning stated in the Motion.

[2] Unless otherwise noted, all references to "ECF No." are to the numbers assigned to the documents filed in the lead jointly administered bankruptcy case, Bankr. D. Nev. Case No. 19-50102-GS ("Lead Case"), as they appear on the docket ("Docket") maintained by the Clerk of Court of the United States Bankruptcy Court for the District of Nevada.

Solutions, Inc. ("Solutions"), DC Solar Distribution, Inc. ("Distribution"), and DC Solar Freedom, Inc. ("Freedom") (with Double Jump, Solutions, and Distribution the "Debtors").

This Objection is brought on the following grounds and for the following reasons: (i) the Court lacks jurisdiction to approve the Trustee's requested sale of the Subject Assets (as defined in the Memorandum of Points and Authorities supporting this Opposition, the "Memorandum") free and clear of interests, including the SolarSense right of first refusal (the "ROFR"), because the Subject Assets are not property of the estate of any of the Debtors, (ii) this Court lacks jurisdiction to determine the enforceability of the ROFR because it is an agreement between non-debtor entities to which the Debtors are not parties[3]; (iii) to the extent this Court has jurisdiction to determine the enforceability of the ROFR, it is enforceable and the sale proposed by the Trustee violates its terms; and (iv) the Trustee has offered nothing beyond conclusory statements to justify the Settlement (as defined in the Memorandum) nor has the Trustee explained the precedential significance of the Settlement on the Trustee's claims against numerous other funds which owe Solutions hundreds of millions of dollars.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

---

[3] To the extent the Court determines that it has related to but not core jurisdiction over issues related to the Motion, including enforceability of the ROFR, SolarSense does not consent to the jurisdiction of the Court to enter a final judgment on such dispute.

This Opposition is supported by the Memorandum; the Omnibus Declaration of Christopher Fraga ("Fraga Decl.") filed concurrently herewith pursuant to Local Rule of Bankruptcy Practice of the United States District Court for the District of Nevada ("LR") 9014(c); the papers and pleadings on file in the Lead Case and in the Debtors' bankruptcy cases,[4] judicial notice of which is respectfully requested pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b); any oral argument the Court may entertain at hearing on the Motion; and any further evidence and argument the Court may take in the event the Court sets an evidentiary hearing on the Motion.

Dated this 27th day of November, 2019.

**HOLLEY DRIGGS WALCH
FINE PUZEY STEIN & THOMPSON**

Richard F. Holley, Esq. (Nevada Bar No. 3077)
Mary Langsner, Ph.D. (Nevada Bar No. 13707)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

STEVENS & LEE, P.C.
Robert Lapowsky (Admitted *Pro Hac Vice*)
620 Freedom Business Center, Suite 200
King of Prussia, Pennsylvania 19406

*Attorneys for SolarSense DCS I, LLC*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Trustee has filed a motion (the "Motion")[5] [ECF No. 1391] which seeks approval pursuant to Federal Rule of Bankruptcy Procedure 9019 of a settlement (the "Settlement") between the Trustee, in her capacity as trustee of debtor DC Solar Solutions, Inc. ("Solutions") and DC Solar Distribution, Inc. ("Distribution"), on the one hand, and Solarmore Management Services, Inc. ("Solarmore Management") as managing member of two funds (the "Subject Funds"), on the

---

[4] The Debtors' bankruptcy cases, jointly administered under the Lead Case, are referenced collectively as the "Bankruptcy Cases".

[5] Capitalized terms used but not defined herein have the meaning stated in the Motion.

13430-01/2324330_2.docx
11/27/2019 SL1 1616988v2 108952.00050

other hand.[6] The Settlement significantly compromises hundreds of millions of dollars of claims that the Trustee has against the Subject Funds.

The Motion also seeks approval pursuant to Section 363 of the Bankruptcy Code of the sale of 478 mobile solar generators and 194 trailers (collectively, the "Subject Assets") that are allegedly owned by the Subject Funds free and clear of all interests, including a right of first refusal (the "ROFR") in favor of the objector, SolarSense. A copy of the ROFR is attached to the Fraga Declaration as **Exhibit "1"** and made part hereof.

The Trustee does not assert that any Debtor has an ownership interest in the Subject Assets and, in fact, they do not. To the contrary, the Debtors' sole interest in the Subject Assets are liens in the Subject Assets held by Solutions (the "Solutions Liens"), Motion at ¶ 16, Lovato Decl. at ¶ 18, which interests the Trustee is not seeking approval to sell.

Approval of the sale of the Subject Assets is not possible under the Bankruptcy Code because Sections 363(b) and (f) only permit the Trustee to sell *property of the estate*. 11 U.S.C §363(b)(f). And, while this Court clearly has jurisdiction to approve the Settlement, the Settlement cannot require that this Court exceed its subject matter jurisdiction by approving a sale under Section 363 of the Bankruptcy Code of property that the Trustee concedes is not property of the estate of any Debtor.

Similarly, this Court lacks subject matter jurisdiction to determine the validity of the ROFR, since none of the Debtors is a party to that agreement. Rather, it is an agreement exclusively between non-debtor parties.

Finally, even ignoring the obvious jurisdictional bars to the relief sought in the Motion, the Trustee has not provided evidence which would support the Settlement.

In addition to its interest in the relief sought in the Motion by reason of its impact on the rights of SolarSense under the ROFR, SolarSense has an independent interest in the relief sought

---

[6] According to the Motion, Solarmore Management is the manager of the Subject Funds and certain other funds. *See* Motion at fn 2. Curiously, the Motion does not purport to approve a settlement between the Trustee and the Subject Funds (as opposed to Solarmore Management) notwithstanding that, according to the Motion, the Subject Assets (defined below) are owned by the Subject Funds. *See* Motion at ¶ 16. Since the Trustee did not attach a copy of the settlement with the Motion it is impossible for SolarSense or the Court to understand this inconsistency.

- 4 -

by reason of very substantial claims it has against Solutions and the fact that, if approved, the Settlement would deprive the Solutions estate of millions of dollars.

## II.    STATEMENT OF FACTS

1.      On January 30, 2019, Double Jump and certain real estate debtor affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      On February 3, 4, and 5, 2019, respectively, Solutions, Distribution, and Freedom filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

3.      On March 20, 2019, the Court entered its Order Granting Debtors' Motion to Convert Cases to Chapter 7 [ECF No. 438], which converted the Bankruptcy Cases, as well as the bankruptcy cases of the Debtors' real estate debtor affiliates, to cases under chapter 7 of the Bankruptcy Code.

4.      On November 8, 2019, the Trustee filed the Motion, which seeks to sell the Subject Assets free and clear of liens and interests, including the ROFR. The ROFR is an agreement between SolarSense, on the one hand, and Solarmore Management and Solarmore Investments, on the other hand.  The Debtors are not parties to the ROFR.  The Motion also seeks approval of the Settlement.

5.      None of the Debtors own any of the Subject Assets but rather the Trustee asserts that Debtor Solutions has a lien on the Subject Assets.  *See, e.g.*, Lovato Decl. at ¶ 18.

## III.    ANALYSIS

**A.      The Motion Must be Denied Because the Court Lacks Jurisdiction to Approve the Sale of Property that is not Property of the Estate**

   **1.      Section 363 Only Authorizes Sale of Property of the Estate, and the Subject Assets Are Not Property of the Estate.**

11 U.S.C. § 363(b)(1) provides, in pertinent part:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, **property of the estate**, except [in circumstances which are inapplicable here].

(emphasis added).

"Section 363(b) states the general rule that only "property of the estate" may be sold pursuant thereto." *In re Interiors of Yesterday, LLC*, 2007 WL 419646, *5 (Bankr. D. Conn. Feb.

- 5 -

HOLLEY DRIGGS
WALCH | FINE | PUZEY | STEIN | THOMPSON

2, 2007) (citation omitted). "Implicit within the statutory grant of authority to sell property under section 363(b), is the requirement that the estate actually have an interest in the property to be sold." *In re Silver Beach, LLC*, 2009 WL 7809002, *6 (B.A.P. 9th Cir. Nov. 3, 2009). *Cf. Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172-73 (B.A.P. 9th Cir. 2001) (holding that property which is not part of the estate (in that instance, by way of exemptions) "may not be sold by the Trustee[.]")).

The Trustee does not assert that any Debtor has an ownership interest in the Subject Assets. To the contrary, the Debtor's sole interest in the Subject Assets are the Solutions Liens. *See* Motion at ¶ 16; *see also* Lovato Decl. at 4:3-5 (in part, "I claim an interest in the MSGs pursuant to a purchase money lien on behalf of Solutions . . ."); *see also* additional Lovato declaration ECF No. 1389 at 3:2-5 ("Likely the largest 'asset' owned by the [Debtors' estates] is the portfolio of non-recourse notes receivable . . ., repayment of which is secured by liens on the Certificates of Title . . .").

However, the Trustee is not asking this Court to approve sale of the Solutions Liens (i.e. the interest that is held by a Debtor in the Subject Assets). Rather, the Motion seeks approval to sell the Subject Assets themselves, which are alleged to be owned by the Funds LLCs. This is not permitted by Section 363. And, while this Court clearly does have jurisdiction to approve the Settlement, the Settlement cannot require that this Court exceed its subject matter jurisdiction by approving a sale under Section 363 of the Bankruptcy Code of property that the Trustee concedes is not property of the estate of any of the Debtors.

> **a.      The Lone Exception to Section 363(b)'s General Rule Regarding Property of the Estate Is Inapplicable Here.**

"Section 363(b) states the general rule that only 'property of the estate' may be sold pursuant to its authority. The single statutory exception to the rule is section 363(h), which authorizes the sale of specified co-owned property." *In re Silver Beach*, 2009 WL 7809002 at *6 (emphasis added). Thus, the lone exception to Section 363(b)'s general rule is Section 363(h).

> There is only one exception to that rule: Section 363(h) which permits the Trustee to sell both the estate's interest in property "and the interest of any co-owner in property in which the debtor had, at

- 6 -

> the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety." . . .

*In re Interiors of Yesterday*, 2007 WL 419646 at *5.

Section 363(h) provides that the Trustee may sell both the estate's interest and the interest of any co-owner in property in which the debtor had an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, if certain (enumerated) conditions are met. *See* 11 U.S.C. § 363(h). However, the scope of the Section 363(h) exception is narrowly construed. *See, e.g.*, *In re Interiors of Yesterday, LLC*, 2007 WL 419646 at *5 (citing and quoting *Geddes v. Livingston (In re Livingston)*, 804 F.2d 1219, 1222-23 (11th Cir. 1986), for the tenet that "the three cotenancies are the only three in which the co-owner's interest may be sold without his consent.")

This Section is generally used to address the sale of real property in which the Debtor asserts a co-interest. SolarSense has not found a single case where co-ownership of personal property is the subject of a Section 363(h) motion. Regardless, Section 363(h) is inapplicable here, because the Subject Assets are not held in any of the Section 363(h) co-tenancies. The Trustee does not contend that the Debtors have co-ownership interest in the Subject Assets. Rather, the Trustee asserts that Solutions has a security interest in the Subject Assets. Under applicable California law, a security interest does not constitute an ownership interest in personal property; a security interest only secures repayment of an obligation. *See, e.g.*, Cal. Comm. Code § 1201(b)(35).[7]

> **b.    Because the Motion Seeks to Sell Property That Is Not Property of the Estate, Section 363(f) is Inapplicable.**

Section 363(f) of the Bankruptcy Code provides that a free and clear sale of property of the estate may be conducted subject to certain conditions:

> The trustee **may sell property under subsection (b)** or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

---

[7] Which begins with, "'Security interest' means an interest in personal property or fixtures which **secures payment or performance of an obligation**. . . ." (emphasis added).

- 7 -

HOLLEY DRIGGS
WALCH | FINE | PUZEY | STEIN | THOMPSON

(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See* 11 U.S.C. § 363(f) (emphasis added).

"[E]ven before one gets to Section 363(f), Section 363(b), as interpreted by *Rodeo*, requires that the estate demonstrate that the property it proposes to sell is 'property of the estate.'" *In re Barstad*, 2017 WL 6033414, *4 (Bankr. D. Mont. Dec. 1, 2017) (quoting and citing from *Darby v. Zimmerman (In re Popp)*, 323 B.R. 260, 268 (B.A.P. 9th Cir. 2005)[8] (internal quotation and citation marks omitted).[9]  *See also In re Wilson*, 2011 WL 2784289 (Bankr. N.D. Cal. Jul. 8, 2011) (finding that "the law is clear" a sale of consigned personal property may not be conducted free and clear of the interests of consignors "until the property has been adjudicated property of the estate." (citations omitted)).  Further, section 363(f) may only be used to sell property of the estate.[10]  Section 363(f) begins with, "The trustee may sell property **under subsection (b)** or (c) of this section . . ., only if . . . ." (emphasis added).  "A section 363(f) sale cannot be used to transform property of others into property of the estate." *In re Silver Beach*, 2009 WL 7809002 at *6.

Here, because  the Subject Assets are not property of the estate of any of the Debtors, the Court lacks jurisdiction to grant the Motion.

---

[8] *In re Popp* was *distinguished on other grounds as noted in In re Wrightwood Guest Ranch, LLC*, 2016 WL 7156450, *6 (C.D. Cal. Dec. 7, 2016).

[9] As noted by the Bankruptcy Appellate Panel for the Ninth Circuit in a subsequent opinion:

> *In re Popp* was primarily based on *In re Rodeo Canon Dev. Corp.*, 362 F.3d 603 (9th Cir. 2005), which held that a bankruptcy court could not authorize a sale under section 363 until the court determined whether the estate had an ownership interest in the property to be sold. However, the Ninth Circuit withdrew that opinion on March 8, 2005.  *See In re Rodeo Canon Dev. Corp.*, 2005 WL 663421, Nos. 02–56999, 02–57203 (9th Cir. March 8, 2005).

*In re Global Reach Inv. Corp.*, 2012 WL 933594, *4 n.9 (B.A.P. 9th Cir. Mar. 20, 2012).  *See also In re Barstad*, 2017 WL 6033414 at *4 and n.8.

[10] Section 363(f) may only be applicable here *if the Trustee is selling property of the estate* under Section 363(b).

- 8 -

**B.** **The Court Lacks Jurisdiction to Determine the Validity of the ROFR, Which Arises Pursuant to an Agreement Between Non-debtor Entities and to Which the Debtors Are Not Parties.**

In addition to arguing that this Court has jurisdiction to approve the sale of the Subject Assets (even though she concedes they are not property of the estate of any Debtor), the Trustee argues that the sale can be free and clear of the ROFR because the ROFR is subject to bona fide dispute. Of course, whether the ROFR is subject to bona fide dispute is irrelevant if, as is the case, the Court lacks jurisdiction to approve the requested sale in the first place. However, even if the Court somehow has jurisdiction to approve the sale of the Subject Assets, the Court clearly does not have jurisdiction to determine disputes regarding the enforceability of the ROFR.

Where, as here, there is an alleged dispute between non-debtors over property in which the estate has no interest and the outcome of which does not affect the bankruptcy estate, the bankruptcy Court lacks jurisdiction to resolve the dispute. *See Vacation Village, Inc. v. Clark County, Nev. (In re CEH Props., Ltd.)*, 497 F.3d 902, 911 (9th Cir. 2007) (citations omitted).[11] *See also In re Gardner*, 813 F.2d 1515, 1518-19 (10th Cir. 1990) ("The conflict between the [non-debtors] is irrelevant to the bankruptcy estate, . . . . Since the dispute is not otherwise related and would not affect the distribution of assets and administration of the bankruptcy estate, we hold the bankruptcy court lacked jurisdiction to resolve the dispute between [non-debtors]." (citations omitted)).

A ROFR is a binding agreement under California law. *See Arden Grp, Inc. v. Burk*, 45 Cal. App. 4th 1409 (Cal. Ct. App. 1996). The Debtors are not parties to the ROFR. The ROFR does not impact property of the estate. The Debtor's only interest in the Subject Assets is the Solutions Liens. The ROFR does not impact the validity or value of the Solutions Liens. Nor does the ROFR affect the ability of the Trustee to enforce the Solutions Liens or transfer, sell or assign

---

[11] Also, "Bankruptcy jurisdiction, . . . is principally in rem jurisdiction. . . . In bankruptcy, 'the court's jurisdiction is premised on the debtor and his estate, and not on the creditors.'" *Central Virginia Comm. College v. Katz*, 546 U.S. 356, 369-70 (2006) (citations omitted). "The jurisdiction of bankruptcy courts is grounded in, and limited by, statute." *Stokes v. Duncan (In re Stokes)*, 2013 WL 5313412, *2 (B.A.P. 9th Cir. Sept. 23, 2013), citing *Kirton v. Valley Health Syst. (In re Valley Health Syst.)*, 471 B.R. 555, 563 (B.A.P. 9th Cir. 2012); *see also In re Wilshire Courtyard*, 729 F.3d 1279, 1284-85 (9th Cir. 2013), citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995), and *In re Ray*, 624 F.3d 1124, 1130 (9th Cir. 2010).

the Solutions Liens to third parties.  The ROFR is only an agreed upon limitation of a voluntary sale of the Subject Assets binding Solarmore Management and the Subject Funds.  Any purported dispute regarding the validity of the ROFR must be brought under applicable law in a court of competent jurisdiction. The Bankruptcy Court cannot adjudicate the dispute between SolarSense and Solarmore, two non-debtors, under the ROFR to which the Debtors are not parties.[12]

Further, even if the Court has jurisdiction to determine the alleged dispute regarding the ROFR between Solarmore Management and SolarSense, the sale of the Subject Assets pursuant to Section 363 of the Bankruptcy Code free and clear of the ROFR could not be approved because the alleged dispute is not "bona fide."

The only basis cited by the Trustee in support of her contention that the ROFR is subject to bona fide dispute is that SolarSense allegedly gave no consideration to Solarmore Management. *See* Motion at pp. 7-8 of 11.[13]  However, that allegation is untrue.

As noted in Background section of the ROFR, the ROFR was executed concurrently with agreements (the "SolarSense Purchase Agreements") between SolarSense and Solar Eclipse Investment Fund, LLC ("Fund I") and SolarSense and Solar Eclipse Investment Fund III, LLC ("Fund III").  *See* ROFR at ¶¶ A and B.  Pursuant to the SolarSense Purchase Agreements, among other things, SolarSense paid $34,320,000, in the aggregate, to Fund I and Fund III in return for 416 mobile solar generators (the "SolarSense MSGs") and the ROFR.  *See* Fraga Decl. at ¶¶ 9, 10, 16, 17.  The ROFR was an important element of the SolarSense Purchase Agreements.  *See* Fraga Decl. at ¶ 26.

---

[12] To the extent the Court determines that it has related to but not core jurisdiction over issues related to the enforceability of the ROFR, SolarSense does not consent to the jurisdiction of the Court to enter a final judgment on such dispute

[13] The Trustee also asserts, in a footnote, that the parties to the ROFR did not contemplate that it would be applicable for five years after the purchase by the Subject Funds of the Subject Assets.  *See* Motion at p. 8 fn 6.  However, the Trustee offers no evidentiary support for such claim and, regardless, paragraph 4 of the ROFR includes an integration clause and no such limitation appears in the ROFR. As a result, for good reason, it does not appear that the Trustee is arguing the alleged contemplation of the parties creates a bona fide dispute as to the current enforceability of the ROFR.

Fund I and Fund III were managed by Solarmore Investments, LLC ("Solarmore Investments"). *See* ROFR at ¶ C. Upon information and belief, Solarmore Investments, Fund I, Fund III and Solarmore Management were affiliated entities. *See* Fraga Decl. at ¶ 22.

"Consideration is simply the conferring of a benefit upon the promisor **or some other person** or the suffering of a detriment by the promisee or some other person." *See California Sch. Employees Assn. v. Sunnyvale Elementary*, 111 Cal Rptr. 433, 441 (1973) (emphasis added).[14] So, even if Solarmore Management did not receive consideration in connection with the ROFR (which, for reasons discussed below, is not the case) Fund I and Fund III, who received over $34,000,000 in return for the SolarSense MSGs and the ROFR, clearly did get consideration. Further, even if Fund I and Fund III had not gotten consideration, SolarSense, the promisee under the ROFR, parted with over $34,000,000 in reliance, in part, on the ROFR, which clearly constitutes a detriment to SolarSense. Either the benefit to Fund I and Fund III or the detriment to SolarSense is sufficient consideration, alone, to support the enforceability of the ROFR.

Next, even if benefit to Solarmore Management and the Subject Funds were relevant, they very likely received a benefit. As noted, upon information and belief, Solarmore Investments, Fund I and Fund III were affiliates of Solarmore Management and the Subject Funds and part of an integrated business. Further, the purchase by SolarSense of the SolarSense MSGs was the first acquisition of mobile solar generators sold by Solutions to a fund after the expiration of the five year tax credit holding period. *See* Fraga Decl. at ¶ 27. As such, the SolarSense purchase was important not only to Fund I, Fund III and Solarmore Investments but, also, to Solarmore Management and all of the other funds (including the Subject Funds). Such is the case because the SolarSense purchase demonstrated the existence of a market for mobile solar generators at the end of the tax holding period which was important to the continuing sales of new units to newly created funds. *See* Fraga Decl. at ¶ 27. In fact, in the ROFR, Solarmore Management expressly acknowledges that it will realize a benefit. *See* ROFR at ¶ D.

---

[14] The ROFR is governed by the laws of the State of California. *See* ROFR at ¶ 4.

- 11 -

1   Last, the Trustee argues that, even if the ROFR is enforceable, the proposed sale process

2   satisfies the ROFR requirements. That is not even close to being true.

3   Pursuant to the ROFR, among other things, if any investment fund that owns mobile solar

4   generators managed by Solarmore Management (which would include the Subject Funds) receives

5   an offer to purchase a mobile solar generator or otherwise intends to sell an mobile solar generator,

6   it must give SolarSense a written notice (the "ROFR Notice") of its intention to sell, which ROFR

7   Notice must include among other things the sales price of the unit to be sold. SolarSense then has

8   thirty (30) days after receiving the ROFR Notice (the "ROFR Exercise Period") to exercise its

9   option to match the offer and buy the unit.  *See* ROFR at ¶¶ 1 and 2.

10   The thirty-day ROFR Exercise Period was a critical element of the ROFR because, by

11   definition, SolarSense anticipated purchasing used mobile solar generators that would have

12   differing features and be in varying condition. As a result, SolarSense needed time to perform

13   inspections before deciding whether to match any offer.  *See* Fraga Decl. at ¶ 24.

14   Being advised of the sale price before the ROFR Exercise Period started to run was also a

15   critical element of the ROFR because, if the price was above a certain level, SolarSense would

16   likely have no interest in matching the offer and, so, would not incur the inspection costs.  *See*

17   Fraga Decl. at ¶ 25.

18   The ROFR was a condition to SolarSense's agreement to pay over $34,000,000 for the

19   SolarSense MSGs and was very important to SolarSense.  *See* Fraga Decl. at ¶ 26.  The Motion, if

20   granted, would gut SolarSense's bargained-for rights under the ROFR. Instead of giving

21   SolarSense thirty (30) days to decide whether to match an offer after being notified of a proposed

22   sale (including the sale price), Solarmore proposes to give SolarSense twenty-four hours.

23   Given the number of Subject Assets, it is impossible for SolarSense to perform inspections

24   in twenty-four hours. So, from a practical perspective, since the Motion requests that the auction

25   of the Subject MSGs take place on December 9, 2019, immediately following the hearing on the

26   Motion, the Trustee and Solarmore Management are requiring that SolarSense inspect 478 mobile

27   solar generators and 194 trailers now, before knowing if the Motion will be granted and before

28   knowing the sales price for any unit. Each inspection takes approximately two (2) hours and costs

- 12 -

HOLLEY DRIGGS
WALCH | FINE | PUZEY | STEIN | THOMPSON

between \$100-\$200 per unit. *See* Fraga Decl. at ¶ 45. As a result, even assuming the inspections could be completed before the contemplated sale on December 9 (which is unlikely), it would cost SolarSense between \$47,800-\$95,600 to inspect the 478 mobile solar generators that are part of the Subject Assets. And that is a cost that SolarSense would have to incur even though the Motion may not be granted and, even if it is granted, depending on the purchase price generated at the auction, SolarSense may ultimately not be interested in purchasing any of the Subject Assets. No basis exists to trample the rights of SolarSense in the manner requested by the Trustee.

**C.** **The Compromise With Solarmore Must Be Denied: the Trustee Has Offered Nothing Beyond Conclusory Statements to Justify the Settlement, Nor Has the Trustee Explained the Precedential Significance of the Settlement on the Trustee's Claims Against Numerous Other Funds Which Owe Solutions Hundreds of Millions of Dollars.**

Even if the Court had jurisdiction to approve the sale of non-estate property and, in connection with that approval, to determine a dispute between non-debtors (which it does not), the proposed Settlement could not be approved.

FED. R. BANKR. P. 9019(a) begins with, "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." In approving a proposed settlement, the Ninth Circuit has identified four factors a Court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views . . . .

*See Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986) (citations omitted), *cert. denied, Martin v. Robinson*, 479 U.S. 854 (1986).

Here, the Motion does not provide sufficient justification for the Settlement.

**1.** **The "probability of success in the litigation" does not favor approval of the settlement.**

The first factor in the *A&C Properties* test is probability of success in the litigation. The Motion contains virtually no information regarding the probability of success in the dispute/litigation between Solutions, on the one hand, and Solarmore Management and the Subject Funds, on the other hand. Instead, the Trustee relies almost exclusively on bare conclusory

- 13 -

statements. The Trustee does not even attach a copy of the proposed settlement agreement to the Motion. Instead, the Trustee simply provides a cursory overview of the settlement terms. This dearth of information makes it impossible for this Court, creditors and parties-in-interest to evaluate the merits of the settlement and the likelihood of success on the merits in potential litigation.

In any litigation between the Trustee and Solarmore Management and the Subject Funds over entitlement to proceeds of sale of the Subject Assets, the first issue would be whether the Subject Funds even own the Subject Assets. Unfortunately, the Trustee has not provided the Court or creditors with sufficient information upon which that question can be answered.

While lists of the Subject Assets with VIN numbers and purported owners are attached to the Motion, the Trustee has not provided any information establishing what she did to confirm the information in the attached lists is accurate. At a bare minimum, the Trustee should produce the agreements (the "Subject Funds Agreements of Sale") by which the Subject Assets were allegedly sold to the Subject Funds. If the Subject Fund Agreements of Sale do not identify the Subject Assets by VIN numbers that match the lists attached to the Motion, the Trustee should produce whatever other documentation she has (acceptance certificates, etc.) that would tie the Subject Assets to the Subject Funds Agreements of Sale.

Further, even if the Subject Assets can be tied to the Subject Funds Agreements of Sale by reference to VIN numbers, given SolarSense's experience in this case, more is required to determine ownership. SolarSense has verified and recovered 316 of the SolarSense MSGs, but 100 units are still missing. *See* Fraga Decl. at ¶ 36.

In the course of its efforts to recover the SolarSense MSGs, SolarSense (and all of the other unit owners, including Solarmore Management) discovered VIN numbers had been removed, altered, were illegible, or had been duplicated and placed on more than one of the MSG trailers. *See* Fraga Decl. at ¶ 35. As a result, it is clear that simply matching VIN numbers to agreements of sale is not a sufficient basis to establish ownership. [15]

---

[15] In discussions with SolarSense, counsel to Solarmore Management has acknowledged that use of the manufacture's forward frame number and the corresponding VIN applied by the manufacturer is the most appropriate, consistent,

- 14 -

In order to verify its ownership of its units, SolarSense has employed a procedure involving an inspection of the forward frame number welded on to each trailer by the manufacturer; a cross check with the VIN applied by the manufacturer; a further cross check with tag placed by GA Global based on its inventory of mobile solar generators; and a final cross check where possible of license plates affixed to trailers where available.  *See* Fraga Decl. at ¶¶ 36 and 38.  Finally and importantly, SolarSense has original titles for each and every one of its units.  *See* Fraga Decl. at ¶ 39.

There is no indication in the Motion and supporting declaration that either Solarmore Management or the Trustee has undertaken any similar verification process. As a result, SolarSense is concerned that some of the Subject Assets may not belong to either of the Subject Funds and may actually belong to SolarSense.  But, in any event, before any conclusions can be reached regarding the Trustee's likelihood of success in litigation, the Trustee and Solarmore Management must provide evidence of their efforts to verify ownership of the Subject Assets similar to the verification process employed by SolarSense.

Ignoring the ownership issue, , the Trustee advises that the Subject Funds will allege that they were defrauded by Solutions in defense of any claims Solutions asserts. *See* Motion at p. 9 of 11.  However, the Motion fails to describe the basis for any such fraud based defenses. Are the Subject Funds asserting that any of the mobile solar generators that they purchased were, in fact, never manufactured and, if so, how many and what evidence have they provided to support that claim? Clearly, even if Solutions defrauded funds other than the Subject Funds by selling mobile solar generators that never existed, that would not mean that the Subject Funds have a defense to their obligations to Solutions to pay for units that were manufactured. In any event, to the extent the Trustee seeks to justify the Settlement because she believes the Subject Funds have valid fraud claims, she should state what those claims are and why she thinks they have potential validity.

reliable, truthful, and effective verification process. Counsel to Solarmore Management has also agreed that SolarSense's verification process is the most effective, appropriate, reliable, and effective verification protocol  *See* Fraga Decl. at ¶ 43.

- 15 -

The Trustee also alleges that Solutions and Distribution have obligations to the Subject Funds on account of the availability and preservation of tax credits. *See* Motion at ¶ 7.[16] However, the Trustee provides no evidence supporting the existence of such obligations. In addition, even if such obligations exist, the Trustee provides no evidence to support the conclusion that such obligations have been breached or the likely damages suffered by the Subject Funds as a result. To the extent the Trustee seeks to support the Settlement by reason of breach of tax credit preservation obligations, she should provide the Court and creditors with the relevant agreements and with whatever evidence she has that the obligations have been breached and the Subject Funds have suffered damages (i.e., lost their tax credits).

The Trustee also alleges that Distribution was contractually obligated to sublease the Subject Assets to end users. *See* Motion at ¶ 6. However, the Trustee does not identify the document that created that alleged obligation nor, assuming that obligation existed, any facts to support the conclusion that it was breached or that Solarmore Management or either of the Subject Funds suffered damages.

The Trustee has failed to satisfy her burden of proving that probability of success in litigation with Solarmore Management weighs in favor of approval of a Settlement.

> **2.  The "difficulties, if any, to be encountered in the matter of collection" does not weigh in favor of approving the settlement.**

Regarding alleged difficulties in collection, the Trustee asserts that the notes evidencing the obligations of the Subject Funds to Solutions (the "Notes") are non-recourse and, as a result, the ability to realize on them will be limited to the value of the Subject Assets and the other mobile solar generators that secure the Notes. *See* Motion at pp. 9-10 of 11. Initially, SolarSense points out that the Notes are not attached to the Motion. If the Trustee is relying on limitations stated in the Notes to justify the Settlement, she should be required to produce the Notes. Further, it is the understanding of SolarSense that the Notes are not, as alleged by the Trustee, non-recourse ***to the***

---

[16] Any obligations of Distribution would be irrelevant unless the Trustee can establish why claims against Distribution can be offset against claims asserted by Solutions.

- 16 -

*maker*—*i.e.*, the Subject Funds. Rather, they were only non-recourse to the members of the Subject Funds. But, in any event, it is hard to understand the relevance of this purported justification for the Settlement. Even if recourse for the Notes is limited to the value of the mobile solar generators, that would not support allowing the Subject Funds to retain 60% of that value. If anything, if recourse for the Notes is limited to the mobile solar generators, that would cut against allowing the makers (*i.e.*, the Subject Funds) to retain anything from the sale of those generators.

The Trustee also alleges that the Notes include provisions which prohibit foreclosure prior to expiration of the tax recapture periods, which the Trustee asserts will occur at the end of 2020 (presumably for Fund XVIII) and the end of 2021 (presumably for Fund XXIII). *See* Motion at pp. 9-10 of 11. However, as stated, the Trustee has not produced the Notes and, even if such a prohibition does exist, waiting another year or two to collect on the Notes ***does not justify a 60% discount to the estate***.

The Trustee has failed to satisfy her burden of proving that difficulty of collection weighs in favor of approval of the Settlement.

**3.    The "complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it" does not favor approval of the settlement.**

The next factor in the *A&C Properties* test concerns the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it. As discussed above and without belaboring the point, the Trustee does not provide any meaningful information regarding the dispute with Solarmore Management and the Subject Funds. There is reference to allegations of fraud, but no discussion regarding the nature of the alleged fraud, or defenses. There is reference to tax credit preservation obligations, but no meaningful discussion concerning this issue including the source of this alleged obligation, alleged breaches by the Debtors, purported damages, or information regarding whether the Subject Funds have impaired any such tax credits by their own conduct.

Given the lack of information regarding this factor it is impossible for the Court, creditors or parties-in-interest to determine the complexity of the dispute between the Trustee and Solarmore

- 17 -

Management and the Fund LLC, or any of the related factors. As such, the Trustee has not satisfied her burden of proof on this factor.

### 4. The paramount interests of creditors, and deference to their reasonable views, also does not weigh in favor of settlement.

Regarding this last factor, the Trustee does not provide any explanation or information regarding the consequences of the Settlement. For example, the Trustee fails to state the amount currently due to Solutions by each of the Subject Funds. However, according to the schedules filed by Solutions, Fund XVIII owes Solutions in excess of $12,000,000, and Fund XXIII owes Solutions in excess of $230,000,000. *See* Solutions ECF No. 88. Yet, from the proceeds of sale of the Subject Assets, after reimbursement to the Trustee of about $300,000 in advanced costs, the Settlement would result in the Subject Funds receiving about $660,000 on account of advanced costs[17] and 60% of the proceeds of sale. Assuming the 478 mobile solar generators included in the Subject Assets each sell for no more than the $3,500 reserve price, the Settlement will result in the Subject Funds receiving about $1,600,000 notwithstanding that they likely owe the Solutions estate something in excess of $240,000,000. And, if the sale prices exceed the reserve price, the Subject Funds will realize 60% of each incremental dollar.

It is also important to consider the impact of the Settlement on the collection by the Trustee of amounts owed by the Subject Funds and other funds on account of the Solutions liens in the thousands of mobile solar generators not included in the Subject Assets. According to the schedules prepared on behalf of Solutions, the funds (including the Subject Funds) that purchased mobile solar generators from Solutions owe Solutions as much as $1,600,000,000 for those purchases. *See* Solutions ECF No. 88.

If the Settlement is approved, it is difficult to see how the Trustee could distinguish treatment of her claims on account of her liens on the Subject Assets from her claims on account of her liens in the other mobile solar generators, particularly given that the Motion requests that the Settlement includes an agreement by the Trustee that the "Notes will be treated as having been

---

[17] There is no information regarding the alleged advance including source and use of funds.

procured by Solutions by fraud . . . ." *See* Motion at ¶ 18(xiv).  Absent any basis to distinguish the Notes issued by the Subject Funds to Solutions from notes issued by other funds to Solutions (and the Trustee offers no such basis), the Trustee's argument that the Notes issued to the Subject Funds were procured by fraud could preclude the Trustee from enforcing any of the other notes issued to Solutions, totaling hundreds of millions of dollars.[18]  At best, it seems likely that, if the Settlement is approved, for all practical purposes, the Solutions estate's economic interest in the thousands of mobile solar generators subject to liens in favor of Solutions, but not included among the Subject Assets, would be capped at 40% of the value of those generators.

Given the substantial immediate and potential future impact of the Settlement on the Solutions estate, one would expect that the Motion would include a robust justification for the Settlement. However, not only does the Motion fail to include a robust justification but, in fact, as noted it includes no justification beyond a number of conclusory statements unsupported by any real analysis and lacking critical supporting documentation.

The Trustee has failed to demonstrate that the Solarmore Motion should be approved, after taking into account the ***paramount interests of creditors*** and affording deference to creditors' reasonable views, as guided by the *A&C Properties* analysis.  As such, the Motion should be denied.

**D.    If the Motion Is Not Denied on Jurisdictional Grounds, the Hearing Should Be Continued to Give SolarSense and Other Creditors an Opportunity to Take Discovery Regarding the Impact of the Proposed Settlement.**

As is apparent, many fact issues exist regarding the impact of the proposed Settlement on the Debtors' estates. In the event the Motion is not denied on jurisdictional grounds, the hearing on the merits of the Settlement should be continued so that SolarSense and other creditors have a fair opportunity to take discovery and reach informed decisions regarding the Settlement.

---

[18] Oddly and simultaneously the Trustee states in support of its Motion for Order Approving Coordination Agreement with the United States (the "Coordination Motion")[ECF No. 1388] that "[l]ikely the largest "asset" owned by the DC Solar Entities estates is the portfolio of non-recourse notes receivable due in connection with the sale of the MSGs, repayment of which is secured by liens on the Certificates of Title to those MSGs." *See* Coordination Motion at p. 3, ll. 2-4.

**E.      Relief Under FED. R. BANKR. P. 6004(h) Is Unwarranted and Should Be Denied.**

The Trustee requests that the Court waive enforcement of Fed. R. Bankr. P. 6004(h). Rule 6004(h) reads in relevant part as follows: "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Trustee does not explain the reason or grounds for this request.

The Trustee, without any purported justification, proposes a sale mechanism that not only tramples on SolarSense's rights under the ROFR, but also seeks to have any order approving the Motion effective upon entry, essentially stripping SolarSense and all other creditors and parties in interest the opportunity to digest the Order and its implications and consider appeal, which opportunity is expressly afforded under the FED. R. BANKR. P. Further, the sale procedures *drafted by the Trustee* contemplate an online auction *apparently currently ongoing* and running through December 10, 2019. These procedures afford SolarSense a mere twenty-four hours to then inspect, assess, and determine whether to exercise its contractual right of first refusal on a (seemingly arbitrary) extremely abbreviated timeline after the bid period closes. It would be difficult under such circumstances to imagine how any sale could be approved, but when one adds to that the Trustee's unjustified request to further shorten any period for recourse by an aggrieved party, such a request is not justified under the circumstances.

The Court should deny any request to abate the 14-day stay afforded by the FED. R. BANKR. P. 6004(h).

**IV.      CONCLUSION**

For these reasons, SolarSense respectfully requests that the Motion be denied in its entirety.

Dated this 27th day of November, 2019.

HOLLEY DRIGGS WALCH
FINE PUZEY STEIN & THOMPSON

Richard F. Holley, Esq. (Nevada Bar No. 3077)
Mary Langsner, Ph.D. (Nevada Bar No. 13707)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

and

- 20 -

STEVENS & LEE, P.C.
Robert Lapowsky (Admitted *Pro Hac Vice*)
620 Freedom Business Center, Suite 200
King of Prussia, Pennsylvania 19406

*Attorneys for SolarSense DCS I, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Holley Driggs Walch Fine Puzey Stein & Thompson, and that on the 27th day of November 2019, I caused to be served a true and correct copy of SOLARSENSE DCS I LLC'S OPPOSITION TO MOTION FOR ORDER APPROVING CONSENSUAL LIQUIDATION OF ESTATE'S INTEREST IN PROPERTY AND APPROVING COMPROMISE OF DISPUTED CLAIMS in the following manner:

☒        (ELECTRONIC SERVICE)    Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐        (UNITED STATES MAIL)    By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

☐        (OVERNIGHT COURIER)    By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐        (FACSIMILE)    That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

An employee of Holley Driggs Walch
Fine Puzey Stein & Thompson

13430-01/2324330.docx
11/27/2019 SL1 1616988v2 108952.00050