# EXHIBIT "1"

# RIGHT OF FIRST REFUSAL AGREEMENT

This RIGHT OF FIRST REFUSAL AGREEMENT (this "Agreement") made as of July 31, 2017, is by and among SOLARMORE INVESTMENTS, INC., a California corporation ("Investments"), SOLARMORE MANAGEMENT SERVICES, INC., a California corporation ("Management"), and SOLARSENSE DCS I, LLC, a Delaware limited liability company ("SolarSense").

## BACKGROUND

A.  Concurrently herewith, Solar Eclipse Investment Fund, LLC, a California limited liability company ("Fund"), and SolarSense are entering into an Asset Purchase Agreement dated as of the date hereof (the "Fund Asset Purchase Agreement") pursuant to which SolarSense will acquire certain mobile solar generators from Fund.

B.  Concurrently herewith, Solar Eclipse Investment Fund III, LLC, a California limited liability company ("Fund III"), and SolarSense are entering into an Asset Purchase Agreement dated as of the date hereof (collectively with the Fund Asset Purchase Agreement, the "Asset Purchase Agreements") pursuant to which SolarSense will acquire certain mobile solar generators from Fund III.

C.  Investments is the Managing Member of Fund and Fund III.  Investments and Management are the managing members of numerous other investment funds set up to own similar mobile solar generators, as set forth on the attached Schedule 1. For purposes of this Agreement, each Fund listed on Schedule 1 is termed a "Solar Eclipse Investment Fund".

D.  Investments will benefit from SolarSense entering into (i) the Asset Purchase Agreements; and (ii) similar asset purchase agreements with other Solar Eclipse Investment Funds of which Investments is the Managing Member.   Management will benefit from SolarSense entering into similar asset purchase agreements with other Solar Eclipse Investment Funds of which Management is the Managing Member.   In consideration of the foregoing, Investments and Management desire to provide SolarSense and its Affiliates a right of first refusal for any subsequent transaction in which any Solar Eclipse Investment Fund of which either Investments or Management is the Managing Member intends to sell mobile solar generators to a third party

NOW THEREFORE, in consideration of the mutual agreements set forth herein, and intending to be legally bound hereby, the parties agree as follows:

1.  <u>Right of First Refusal Notice</u>.  If a Solar Eclipse Investment Fund (the "Selling Party") receives from any individual, partnership, LLC or other legal entity (" Person") a written offer for the Selling Party to sell mobile solar generators owned or controlled by such Solar Eclipse Investment Fund to such Person and such Selling Party desires to accept such offer, or if a Selling Party otherwise intends to transfer mobile solar generators to any Person other than DC Solar Solutions, Inc. or any other Person by means of a loan foreclosure, prior to such transfer the Selling Party shall give written notice (a "ROFR Notice") to SolarSense of such Selling Party's intention to transfer such mobile solar generators.  The ROFR Notice, in addition

to stating the Selling Party's intention to transfer mobile solar generators, shall state (i) the amount and the transfer price of the mobile solar generators proposed to be transferred; (ii) the name and business address of the proposed transferee (unless such disclosure is prohibited by confidentiality provisions in place between the parties); and (iii) a true and correct copy of the offer (redacted if required to comply with confidentiality provisions), which offer and the terms thereof and all other terms of the proposed transfer, including without limitation any obligation of the proposed transferee to lease such mobile solar generators back to a Solar Eclipse Investment Fund, will be incorporated into, and made a part of, the ROFR Notice.

        2. <u>Exercise of Right of First Refusal</u>.  Within thirty (30) days after SolarSense's receipt of the ROFR Notice (the "<u>ROFR Exercise Period</u>"), SolarSense and its Affiliates (each, a "<u>Buying Party</u>") shall have and may exercise an option to require the Selling Party to transfer to a Buying Party all of the mobile solar generators proposed to be transferred by the Selling Party at the transfer price and upon the other terms stated in the ROFR Notice.  To exercise this option, a Buying Party shall deliver to the Selling Party a written notice of such Buying Party's exercise of its option within the ROFR Exercise Period. If a Buying Party exercises its option within the ROFR Exercise Period, Selling Party will be obligated to transfer such mobile solar generators to such Buying Party at the transfer price and on the other terms stated in the ROFR Notice.

        3. <u>Failure to Exercise Right of First Refusal</u>.  If no Buying Party exercises its option as provided in <u>Section 2</u> or exercises the ROFR and the transaction fails to close for any reason, the Selling Party shall thereafter be permitted to complete the transfer of the mobile solar generators on the terms and conditions specified in the ROFR Notice.  If the Selling Party does not consummate the transfer, the transfer price is modified, or any other terms of the ROFR Notice are materially modified from those set forth in the ROFR Notice, the mobile solar generators that were the subject of the ROFR Notice shall again become subject to all of the conditions and restrictions set forth in this Agreement and the Selling Party shall be prohibited from transferring such mobile solar generators to any Person other than a Buying Party (including the proposed transferee identified in the ROFR Notice) without again giving each Buying Party the opportunity to exercise its transfer option in accordance with this Agreement.

        4. <u>Miscellaneous</u>.  This Agreement and the respective rights, duties and obligations of each party hereunder shall not be assignable, including by the sale of all or substantially all of the assets or equity interests of a party or by way of merger, consolidation or otherwise, without the written consent of the other parties hereto. This Agreement shall bind and inure to the benefit of the parties and their respective successors and permitted assigns.  This Agreement constitutes the entire agreement between the parties with regard to the subject matter hereof, and there are no other understandings, representations or warranties between the parties, whether oral or written, relating to the subject matter hereof that are not set forth herein.  Unless the context otherwise clearly indicates, words used in this Agreement in the singular include the plural and the plural includes the singular. This Agreement may be executed in counterparts.  This Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of California without regard to its conflict of laws provisions.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

SOLARMORE INVESTMENTS, INC.

By: _____
Name: Jeff Carpoff
Title: President

SOLARMORE MANAGEMENT SERVICES, INC.

By: _____
Name:
Title:

SOLARSENSE DCS I, LLC
By: Alternative Energy Infrastructure Projects Fund I, LP, its member
By: AEIP I GP, LLC, its general partner
By: Alternative Energy Development Group, LLC, its manager
By: SolarSense LLC, its member

By: _____
Name: Christopher D. Fraga
Title: Managing Member

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

SOLARMORE INVESTMENTS, INC.

By:_____
Name:
Title:

SOLARMORE MANAGEMENT SERVICES, INC.

By: _____
Name:
Title:

SOLARSENSE DCS I, LLC
By: Alternative Energy Infrastructure Projects Fund I, LP, its member
By: AEIP I GP, LLC, its general partner
By: Alternative Energy Development Group, LLC, its manager
By: SolarSense LLC, its member

By:_____
Name:
Title:

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

SOLARMORE INVESTMENTS, INC.

By:_____
Name: Jeff Carpoff
Title:   President

SOLARMORE MANAGEMENT SERVICES, INC.

By:_____
Name:
Title:

SOLARSENSE DCS I, LLC
By: Alternative Energy Infrastructure Projects Fund I, LP, its member
By: AEIP I GP, LLC, its general partner
By: Alternative Energy Development Group, LLC, its manager
By: SolarSense LLC, its member

By:_____
Name: Christopher D. Fraga
Title:   Managing Member

*Signature Page to Right of First Refusal Agreement*

SCHEDULE 1

Funds for which Solarmore Investments, Inc. is the Managing Member:

Solar Eclipse Investment Fund IV, LLC
USB DC Solar Fund I, LLC
USB DC Solar Fund II, LLC


Funds for which Solarmore Management Services, Inc. is the Managing Member:

Solar Eclipse Investment Fund V, LLC
Solar Eclipse Investment Fund VI, LLC
Solar Eclipse Investment Fund VII, LLC
Solar Eclipse Investment Fund VIII, LLC
Solar Eclipse Investment Fund X, LLC
Solar Eclipse Investment Fund XI, LLC
Solar Eclipse Investment Fund XII, LLC
Solar Eclipse Investment Fund XIV, LLC
Solar Eclipse Investment Fund XV, LLC
Solar Eclipse Investment Fund XVI, LLC
Solar Eclipse Investment Fund XVII, LLC
Solar Eclipse Investment Fund XVIII, LLC
Solar Eclipse Investment Fund XIX, LLC
Solar Eclipse Investment Fund XXI, LLC
Solar Eclipse Investment Fund XXII, LLC
Solar Eclipse Investment Fund XXIII, LLC
Solar Eclipse Investment Fund XXIV, LLC
Solar Eclipse Investment Fund XXVI, LLC


   * All Funds listed above are California limited liability companies.

# EXHIBIT "2"

# Quality Control Checklist

| |
|---|
| Trailer ID |
| Trailer Type |
| Trailer Owner |
| SCT20 Hybrid |
| All checks are mandatory for standard Hybrid. If Dual Mast, please check the box next to SCT20 Dual Mast Tower. |
|     Fuel tank secure to trailer bed |
|     Generator is secure to trailer |
|     Fuel lines are secure and checked for leaks |
|     Fuel filter is in the ON position |
|     Generator Circuit Breaker is in the ON position (OFF, if Dual Mast) |
|     Generator oil level has been checked |
|     GSCM standard checked for faults |
|     Rewiring signed off by installer |
|     Generator programming signed off by Programmer |
|     Generator start/stop through inverter |
|     Generator set to Auto |
|     Maintenance log is attached |
| |
|  SCT20 Dual Mast Light Tower |
|     All lights and masts are secured properly |
|     Light bar fully rotates back and fourth |
|     Locking pins for Mast and light bars work properly |
|     Both Mast properly raised, lowered and rotated |
|     Toggles turn lights ON/OFF |
|     Timers are tested to verify lights turn ON/OFF manually and automatically |
|     Front and real labels are on lights and timers |
|     T-handles with chain installed |
|     Wiring signed |
| |
|     Panels are tightly secured to frame. |
|     Panels rotate and lock in all positions. |
|     Panel wiring is long enough for full rotation. |
|     Panel zip-ties are tight and cut from the inside. |
|     All four panel latches work correctly and have been lubed. |
|     Compression fittings tightly secured and sealed properly. |
|     Battery harnesses are tightly secured. |
|     Enclosure is secured to frame. |
|     Inverters are secured to Enclosure. |
|     100 Amp Breaker Box is secured to Enclosure. |
|     PV Combiner Box is secured to Enclosure. |
|     50 amp plug housing are secured to Enclosure. |
|     Charge control is secured to Enclosure. |

**Exhibit "2"**

# Quality Control Checklist

| |
|---|
| Shunt is secured to Enclosure. |
| Wiring for shunt is correct and properly torqued. |
| Wiring in PV Combiner is correct and properly torqued. |
| Wiring in inverters is correct and properly torqued. |
| Wiring in Charge Controller is correct and properly torqued. |
| Wiring in 100 amp breaker box is correct and properly torqued. |
| SD Cards are installed in Inverters and security tape is in place. |
| Panel corners are padded and marked with D.O.T tape. |
| Hazard stickers and Warning stickers are in place. |
| License plate is mounted with registration and quick guide place in Enclosure. |
| Tires have been torqued to 85 lbs. |
| Tire pressure has been checked. PSI _____ |
| Make sure pintle hitch is tight. |
| All lights on trailer are fully functional. |
| All flex runs to top of the battery and is secured to face of battery. |
| Piercing connector is secured. |
| Inverters have been programmed to Plus-Minus specifications. |
| Charge controller has been programmed and functions to Plus-Minus specifications. |
| Arrays have been tested in the sun to verify operation. |
| Test 110 Receptacles for correct wiring. |
| Test 50 AMP receptacles for correct wiring. |
| 3 or 4 way assembled correctly and hooked to batteries. |
| GPS activated |
| Batteries water levels topped off. |
| Battery is fully charged at 100% capacity. |
| Electric brake system on trailer is functional. |
| Generator hours |
| Fuel level |
| Notes |