Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com
*Attorney for Christina Lovato, Chapter 7 Trustee*

Michael S. Budwick, Esq.
Florida Bar No. 938777 (admitted *pro hac*)
mbudwick@melandbudwick.com
Solomon B. Genet, Esq.
Florida Bar No. 617911(admitted *pro hac*)
sgenet@melandbudwick.com
Gil Ben-Ezra, Esq.
Florida Bar No. 118089 (admitted *pro hac*)
gbenezra@melandbudwick.com
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
*Attorneys for Christina Lovato, Chapter 7 Trustee*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.<br><br>    Debtor.<br>_____<br> X Affects DC Solar Solutions, Inc.<br> X Affects DC Solar Distribution, Inc.<br> X Affects DC Solar Freedom, Inc.<br> X Affects Double Jump, Inc. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Jointly Administered with:<br><br>| 19-50130-gs | DC Solar Solutions, Inc. |<br>\| 19-50131-gs \| DC Solar Distribution, Inc. \|<br>\| 19-50135-gs \| DC Solar Freedom, Inc. \|<br><br>**MOTION FOR ORDER APPROVING COMPROMISE AND SETTLEMENT AGREEMENT WITH KEYBANK AND SOLARSENSE PARTIES AND AWARD OF CONTINGENCY FEE**<br><br>Hearing Date: February 4, 2021<br>Hearing Time: 9:30 a.m. |

Christina Lovato, the duly appointed and acting trustee ("**Trustee**") for the chapter 7 estates of DC Solar Solutions, Inc. ("**Solutions**"), DC Solar Distribution, Inc. ("**Distribution**"), DC Solar Freedom, Inc. ("**Freedom**, and together with Solutions and Distribution, "**DC Solar**")

1

and Double Jump, Inc. ("**DJ**," and together with DC Solar, the "**DC Solar Estates**" or "**Debtors**") files this motion to approve the compromise and settlement with KeyBank National Association ("**KeyBank**"); SolarSense DCS I, LLC ("**SolarSense**"); and Alternative Energy Infrastructure Projects Fund I, LP ("**AEIP**," and together with SolarSense, the "**SolarSense Parties**") pursuant to Fed.R.Bank.Proc. 9014 and 9019 ("**Motion**"). The Motion is supported by the separately filed Declaration of Christina Lovato and is based upon the following discussion of facts and law. As permitted by F.R.Evid. 201, the Trustee also requests the Court take judicial notice of the papers on file in these jointly administered cases.

## I. Factual Background

### A. Procedural Background

1. Prepetition, DC Solar was engaged in a business related to manufacturing, marketing, selling, and leasing mobile solar generators ("**MSGs**").

2. However, certain of DC Solar's insiders, including Jeff Carpoff and Paulette Carpoff ("**Carpoffs**"), were also perpetrating a Ponzi scheme ("**Carpoff Ponzi Scheme**").

3. On December 18, 2018, federal law enforcement raided DC Solar's business locations, effectively closing down DC Solar's operations.

4. In late January and early February 2019, the Debtors filed for chapter 11 relief before this Court, commencing these bankruptcy cases ("**Bankruptcy Cases**").

5. On March 22, 2019, this Court converted the Bankruptcy Cases to cases under chapter 7 and appointed the Trustee as chapter 7 trustee of the Debtors' estates.[1] The Bankruptcy Cases are being jointly administered.[2]

### B. Trustee's Claims

6. In July 2017, SolarSense purchased 416 mobile solar generators ("**MSGs**") from Solutions for $34,320,000. KeyBank financed approximately $27.4 million of this purchase price. SolarSense leased the MSGs to Distribution, which in turn was to sublease them to T-Mobile USA, Inc. ("**T-Mobile**"). KeyBank expected the income stream from the T-Mobile sublease to be its

---

[1] ECF Nos. 439-40.
[2] ECF Nos. 97 & 889.

primary collateral and source of repayment. However, the T-Mobile sublease was fake. Jeff Carpoff had bribed a T-Mobile employee with $1 million to sign the lease.[3]

7. Based on the Trustee's investigation, it appears that around April 2018 KeyBank became suspicious of the T-Mobile sublease and sought for the Debtors to repay KeyBank in full. Over the ensuing months, through August 2018, Jeff Carpoff caused the Debtors to pay KeyBank approximately $27 million. This consisted of: (i) five monthly lease payments from Distribution in the amount of $403,520 each; (ii) $20,036,271.12 in four payments from Distribution (collectively, the "**Distribution Transfers**"); and (iii) $4,940,254.93 from Solutions ("**Solutions Transfer**").

8. Jeff Carpoff provided SolarSense the option to be repaid the balance of the purchase price as well, and SolarSense declined, claiming that it believed Mr. Carpoff to be wholly legitimate. Post-petition and as a result, SolarSense filed Claim No. 63-1 in the Distribution bankruptcy case and Claim No. 110-1 in the Solutions bankruptcy case, claiming substantial unliquidated damages.

9. The Trustee has reviewed tens of thousands of documents and examined (per R. 2004) representatives of each of KeyBank and SolarSense, as well as a representative of T-Mobile. The Trustee conducted these examinations only after seeking and obtaining this Court's approval on a contested basis for the implementation of protocols to conduct these examinations in light of challenges presented by COVID-19.[4]

10. The Trustee has also engaged in motion practice seeking production of documents KeyBank withheld under various claims of privilege.[5]

11. The Trustee has asserted potential claims against KeyBank and the SolarSense Parties, including fraudulent transfer claims pursuant to Section 548(a)(1)(A) of the Bankruptcy Code. The Trustee has not asserted claims under Section 548(a)(1)(B). The Trustee has asserted a potential claim that AEIP, a SolarSense affiliate, is a party for whose benefit the transfers were

---

[3] *See U.S.A. v. Hansen*, Case No 2:20-cr-00016-JAM (E.D.Ca.) [ECF No. 16, Plea Agreement at A-7].
[4] *See e.g.,* ECF Nos. 1734, 1770, 1771, 1778, 1781, 1781, 1795 and 1831.
[5] *See* ECF Nos. 2181, 2217, 2222, 2313, 2365, and 2400.

made pursuant to Section 550(a)(1). KeyBank and the SolarSense Parties have asserted various defenses including under Sections 548(c) and 550 of the Code.

12. Subject to Court approval, the Trustee, KeyBank, and the SolarSense Parties have reached an agreement on the terms of a settlement of their claims and have executed the Settlement Agreement attached to Trustee Lovato's Declaration as **Exhibit 1** ("**Settlement Agreement**"). The Trustee believes that the Settlement Agreement is in the best interests of the Debtors' estates and should be approved.

## II. Settlement Terms

13. The key aspects of the Settlement Agreement, as more particularly described therein, are the following:

- KeyBank shall pay to the Trustee $11,625,000 ("**KeyBank Payment**") five days after the entry of a final non-appealable order approving this Settlement Agreement ("**Effective Date**").

- KeyBank shall have an allowed unsecured claim against the DC Solar Estates ("**KeyBank Claim**") in the amount of $11,625,000, pursuant to Section 502(h). KeyBank may not take any position adverse to the Trustee in the Bankruptcy Court including that it may not file any objections to claims filed by the Trustee or other creditors, except as necessary to (1) enforce its rights under this Settlement Agreement; and (2) ensure pro rata distribution of monies from the Trustee to all creditors, upon the Trustee making a distribution.

- The SolarSense Parties shall be jointly and severally responsible for paying, and will pay, the Trustee $3,500,000 as set forth below:

    a. $700,000 on the Effective Date;
    b. $800,000 seven months after the Effective Date;
    c. $800,000 twelve months after the Effective Date;
    d. $500,000 fifteen months after the Effective Date;
    e. $350,000 twenty-four months after the Effective Date; and
    f. $350,000 thirty months after the Effective Date.

(together, the "**SolarSense Payments**").

- The SolarSense Parties will not be entitled to a grace period. In the event any payment is not made timely the Trustee shall be entitled to the entry of an executable final judgment in the amount of the remaining payments jointly and severally as to the SolarSense Parties.

4

- SolarSense shall have an unsecured claim against the DC Solar Estates ("**SolarSense Claim**") in the amount of $12,500,000, based on its financial loss and Section 502(h). All distributions from the Trustee to SolarSense on account of the SolarSense Claim shall be made by the Trustee to the DC Solar Estates to reduce any unsatisfied SolarSense Payments until the Trustee is paid in full. SolarSense shall not take any position adverse to the Trustee in the Bankruptcy Court including that it shall not file any objections to claims filed by the Trustee or other creditors, except as necessary to (1) enforce its rights under this Settlement Agreement; and (2) ensure pro rata distribution of monies from the Trustee to all creditors, upon the Trustee making a distribution.

- As collateral to ensure payment in full by the SolarSense Parties, SolarSense shall pledge to the Trustee (i) the SolarSense Claim; and (ii) any payment rights of any type related to any restitution, remission or forfeiture process related to Jeffrey or Paulette Carpoff or any individuals who acted in concert with them. And AEIP shall pledge to the Trustee a first position lien on its membership interests in SolarSense and a second position membership interest (junior and subordinated to the first position holder) in other entities owned by AEIP.

- Subject to and except for their obligations in this Settlement Agreement, the Trustee shall release and waive all claims against KeyBank and the SolarSense Parties. Other than the KeyBank Claim and the SolarSense Claim, KeyBank, SolarSense, and AEIP waive all claims against the DC Solar Estates or the Trustee.

14. The Settlement Agreement also provides for certain rights as between KeyBank and SolarSense that do not impact the estates.

### III.    Legal Discussion

15. Fed. R. Bank. P. 9019(a) provides in relevant part that "[o]n motion ... and after notice and a hearing, the court may approve a compromise or settlement."

16. In the Ninth Circuit, motions to approve a compromise and settlement agreement are reviewed under the four criteria set forth in <u>In re A&C Properties, Inc.</u>, 784 F. 2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986). Those criteria are: (1) likelihood of success on merits of the claims in the underlying litigation; (2) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (3) the difficulties, if any, to be encountered in the matter of collection; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

17. Compromises are favored under the Bankruptcy Code, and approval of a compromise rests in the sound discretion of the Court. <u>Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc., v. Anderson</u>, 390 U.S. 414, 424 (1968). The bankruptcy court is afforded wide latitude in approving compromise agreements which it determines to be fair, reasonable, and adequate. <u>In re Woodson</u>, 839 F.2d 610 (9th Cir. 1988). The court need not conduct an exhaustive investigation into the claim sought to be compromised. <u>In re Walsh Construction, Inc.</u>, 699 F.2d 1325, 1328 (9th Cir. 1982).

18. The Trustee, in her informed business judgment, submits that approval of the Settlement Agreement is in the best interests of the Debtors' estates.

**A. The Settlement Should Be Approved**

19. Based upon these principles, the Trustee submits that the Settlement Agreement falls well above the lowest point of the range of reasonableness and should be approved.

**Probability of success in litigation**

20. This is a significant consideration that militates in favor of approval of the Settlement Agreement.

21. While the Trustee believes her potential claims are meritorious, all litigation presents risks. Here, among other potential defenses, KeyBank and the SolarSense Parties have asserted they received the transfers in good faith. SolarSense claims its good faith is evidenced by the fact that it declined Mr. Carpoff's invitation to repay SolarSense's investment. While the payments were paid to a limited control account at KeyBank in the name of SolarSense, KeyBank asserts that SolarSense was the initial transferee and that as a subsequent transferee it is insulated unless the Trustee prevails in negating SolarSense's good faith.

**Complexity of litigation and attendant expense, inconvenience and delay**

22. This is a significant consideration that also militates in favor of approval of the Settlement Agreement.

23. In sum, although many of the claims outlined above are typical claims litigated before this Court, they still require retention of (at least) a banking expert as it relates to KeyBank's actions and inactions, and possibly for the "initial transferee" analysis. Moreover, while the

Trustee conducted three Rule 2004 examinations, she would need to conduct depositions of SolarSense, KeyBank and AEIP representatives and/or employees (as well as other persons, such as former insiders of the Debtors). In addition, KeyBank and the SolarSense Parties would conduct their own depositions and KeyBank presumably would retain its own expert(s). Although the Trustee's counsel is compensated on a contingency fee basis, prosecution of this proceeding would result in substantial expert fees and other typical litigation-related expenses. Here, the Trustee expects those costs would have been meaningful and substantial. The settlement avoids the estate incurring those expenses.

24. While SolarSense has filed a claim and submitted itself to the jurisdiction of the Court, KeyBank has not and would be entitled to a jury trial which would potentially cause additional delays and expense (such as a jury consultant) and the case to be tried (at least in part) in District Court.

25. The Settlement Agreement addresses these concerns. The parties avoid litigating fact-specific claims with the associated expense and delay of doing so. Here, there is meaningful benefit to the estates in resolving this matter pre-suit, without further risk, and before substantial expenses are incurred.

### Collectability

26. This consideration militates in favor of approval of the Settlement Agreement.

27. Collectability is an issue with respect to the SolarSense Parties. In response to the Trustee's request, the SolarSense Parties provided the Trustee with confidential materials regarding its financial capacity. From review of these materials, the Trustee believes that there is meaningful risk of non-payment by the SolarSense Parties if the Trustee were to obtain a judgment materially in excess of the amounts SolarSense has agreed to pay under the Settlement Agreement.

28. Collectability is not an issue with respect to KeyBank.

### Paramount interest of creditors

29. This is a significant consideration that militates in favor of approval of the Settlement Agreement.

30. The Settlement Agreement provides a $15.125 million payment, representing disgorgement of the majority of the transfers the Trustee would seek to avoid and recover. This is an excellent outcome when measured against potential defenses and litigation risks, as well as the professional costs associated therewith. As a pre-suit resolution, the Trustee is eliminating any delay in monetizing these claims and efficiently administering the estates for the benefit of creditors. The settlement also enables the Trustee and her counsel to focus on other substantial litigation claims against other third parties in these bankruptcy cases, which is a meaningful consideration given the Trustee expects litigation recoveries to provide the bulk of the recoveries to creditors.

31. While the SolarSense Parties will make payments over time, there is a meaningful initial payment (by both KeyBank and the SolarSense Parties) and adequate collateral and incentive for the SolarSense Parties to make the remaining payments. Their failure to do so would jeopardize their future business prospects.

32. For all the reasons discussed in this Motion, the Settlement Agreement favorably and immediately avoids complex litigation claims with meaningful litigation risk. Thus, approval of the Settlement Agreement is in the paramount interest of creditors.

### IV. Payment of Contingency Fee

33. Meland Budwick, P.A., as special litigation counsel, is to be compensated on a pure contingency fee basis of 25% of any recovery obtained.[6] Since its retention in December 2019, while the firm has been reimbursed certain out-of-pocket costs, it has not received any compensation. The Trustee seeks allowance of, and authority to pay, a 25% contingency fee as the Trustee receives each of the KeyBank and SolarSense Payments, without the need for further Order of the Court.

34. Pursuant to 11 U.S.C. § 330(a), the bankruptcy court reviews the services the professional provided, and decides whether the requested compensation is reasonable. The Trustee submits that the requested contingency fee satisfies this standard given, among other things, (1)

---

[6] ECF Nos. 1490 and 1502.

25% is a materially lower percentage than often charged by contingency counsel;[7] (2) the contingent terms of payment were pre-approved by the Court one year ago upon notice to all parties in interest; (3) with the limited assets of the estates, counsel's contingency arrangement provided benefit to the estate at the forefront, with risk shifted from the estates to counsel (no fees unless and until recovery); (4) counsel performed significant work (including formal and informal discovery) on this claim and the surrounding facts, in investigating (including formal motion practice), analyzing, and asserting (informally) the potential claim, in a high-quality manner; plus (5) all other factors which support the award.[8]

35. Moreover, in a financial fraud case much of special counsel's investigatory function is to analyze the facts and circumstances related to numerous potential targets to determine where claims do or do not exist. Here, counsel has invested substantial efforts and resources confirming the estate likely does not hold claims against certain potential targets. Under the fee agreement, counsel receives no compensation for those efforts, even though they provide substantial benefit to the estate. The Trustee submits that these efforts, for which counsel receives no compensation, should be considered as well.

### V. Conclusion

36. Based upon the foregoing, the Trustee requests an order approving the Settlement Agreement, as well as the contingency fee, and granting such other and further relief as this Court deems just and proper.

37. The Trustee has filed a motion seeking to consolidate the Debtors' estates.[9] Pending a ruling on that motion, the Trustee requests that the KeyBank Payment and SolarSense

---

[7] See In re Private Asset Grp., Inc., 579 B.R. 534, 544-45 (Bankr. C.D. Cal. 2017); see also In re Pearlman, 2014 WL 1100223, *3 (Bankr. M.D. Fla. Mar. 20, 2014) ("Resting again on its independent judgment, the Court finds the 35% contingency fee to be reasonable and in line with similar non-bankruptcy rates.").

[8] Special counsel: (1) performed a significant amount of high-quality work; (2) addressed difficult factual and (albeit to a lesser extent) legal questions, including in the investigation-phase; (3) employed significant skill, which was required; (4) obtained the result, both substantively and the timing, which is an excellent result for the estates; (5) performed its work efficiently; (6) has a high level of experience, reputation, and ability; and (7) was met with significant opposition.

[9] ECF No. 2324.

Payments be allocated *pro-rata* as between Distribution and Solutions based on the amounts of the Distribution Transfers and the Solution Transfer (81.7% to Distribution and 18.3% to Solutions).

DATED: December 30, 2020.

**MELAND BUDWICK, P.A.**

*/s/ Michael S. Budwick*
Michael S. Budwick, Esq.
Attorney for Christina Lovato, Trustee

**HARTMAN & HARTMAN**

*/s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq.
Attorney for Christina Lovato, Trustee