Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, Nevada 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*
Kevin Paule, Esq. #125276 – Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
gbenezra@melandbudwick.com
kpaule@melandbudwick.com

Attorneys for Christina W. Lovato, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.<br><br>Debtor.<br><br>SEE ATTACHED. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantively consolidated with:<br><br>19-50130-gs \| DC Solar Solutions, Inc.<br>19-50131-gs \| DC Solar Distribution, Inc.<br>19-50135-gs \| DC Solar Freedom, Inc.<br><br>**MOTION FOR ORDER (1) APPROVING COMPROMISE AND SETTLEMENT AGREEMENT WITH LV STADIUM EVENTS COMPANY, LCC; AND (2) FOR AWARD OF CONTINGENCY FEE**<br><br>Hearing Date:  May 27, 2021<br>Hearing Time:  9:30 a.m. |

| | |
|---|---|
| Jeffrey L. Hartman, Esq.<br>Nevada Bar No. 1607<br>**HARTMAN & HARTMAN**<br>510 W. Plumb Lane, Suite B<br>Reno, Nevada 89509<br>T: (775) 324-2800<br>F: (775) 324-1818<br>notices@bankruptcyreno.com | Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*<br>Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*<br>Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*<br>Kevin Paule, Esq. #125276 – Admitted *Pro Hac Vice*<br>**MELAND BUDWICK, P.A.**<br>3200 Southeast Financial Center<br>200 South Biscayne Boulevard<br>Miami, Florida 33131<br>T: (305) 358-6363<br>F: (305) 358-1221<br>mbudwick@melandbudwick.com<br>sgenet@melandbudwick.com<br>gbenezra@melandbudwick.com<br>kpaule@melandbudwick.com |

Attorneys for Christina W. Lovato, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.<br><br>Debtor.<br><br>———————————————<br>CHRISTINA W. LOVATO,<br><br>Plaintiff,<br><br>v.<br><br>LV STADIUM EVENTS COMPANY, LLC,<br><br>Defendant. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantively consolidated with:<br><br>\| 19-50130-gs \| DC Solar Solutions, Inc. \|<br>\| 19-50131-gs \| DC Solar Distribution, Inc. \|<br>\| 19-50135-gs \| DC Solar Freedom, Inc. \|<br><br>Adversary No.: 21-05042-gs<br><br>**MOTION FOR ORDER (1) APPROVING COMPROMISE AND SETTLEMENT AGREEMENT WITH LV STADIUM EVENTS COMPANY, LCC; AND (2) FOR AWARD OF CONTINGENCY FEE**<br><br>Hearing Date:  May 27, 2021<br>Hearing Time:  9:30 a.m. |

Christina Lovato, the duly appointed and acting trustee ("*Trustee*") for the substantively consolidated chapter 7 estates of DC Solar Solutions, Inc. ("*Solutions*"), DC Solar Distribution, Inc. ("*Distribution*"), DC Solar Freedom, Inc. ("*Freedom*, and together with Solutions and Distribution, "*DC Solar*") and Double Jump, Inc. ("*DJ*," and together with DC Solar, the "*DC*

1

*Solar Estate*") files this motion to approve a compromise and settlement with LV Stadium Events Company, LLC ("*LV*" or "*Defendant*") pursuant to Fed.R.Bank.Proc. 9014 and 9019 and payment of a contingency fee to special litigation counsel ("*Motion*"). The Motion is supported by the separately filed Declaration of Christina Lovato and is based upon the following discussion of facts and law. As permitted by F.R.Evid. 201, the Trustee requests the Court take judicial notice of the papers and pleadings on file in these substantively consolidated cases.

## I.  Factual Background

### A. Procedural Background

1. Prepetition, DC Solar was engaged in a business related to manufacturing, marketing, selling, and leasing mobile solar generators.

2. However, certain of DC Solar's insiders, including Jeff Carpoff and Paulette Carpoff ("*Carpoffs*"), were also perpetrating a Ponzi scheme ("*Carpoff Ponzi Scheme*").

3. On December 18, 2018, federal law enforcement raided DC Solar's business locations, effectively closing down DC Solar's operations.

4. In late January and early February 2019, the Debtors filed for chapter 11 relief before this Court, commencing these bankruptcy cases ("*Bankruptcy Cases*").

5. On March 22, 2019, this Court converted the Bankruptcy Cases to cases under chapter 7 and appointed the Trustee as chapter 7 trustee of the Debtors' estates.[1] The Bankruptcy Cases have been substantively consolidated.[2]

### B. Trustee's Claims

6. On July 3, 2018, Solutions transferred $782,949 to the Defendant ("*Transfer*").

7. On February 25, 2021, the Trustee filed her complaint ("*Complaint*") commencing Adversary Case No. 21-05042-GS (Bankr. D. Nev.) against the Defendant ("*Adversary*").

---

[1] ECF Nos. 439 & 440.
[2] ECF No. 2613.

2

8. In her Complaint, the Trustee asserted that the Debtors neither received "value" nor "reasonably equivalent value" in exchange for the Transfer. And thus, the Transfer is avoidable and recoverable under Section 548 of the Code.

9. In her Complaint, the Trustee alleged that Solutions made the Transfer to satisfy an obligation of DC Solar Entertainment LLC ("**Licensee**"), an entity distinct from DC Solar although affiliated with the Carpoffs. The Trustee further alleged that the Licensee's obligation arose in connection with the Carpoffs' efforts to obtain access to a suite at the home stadium for the Las Vegas Raiders.

10. Prior to commencing the Adversary, the Trustee reviewed and considered numerous documents. These documents included those relating to (1) the Transfer, the Defendant, and the Licensee; and (2) the Carpoff Ponzi Scheme more generally, and the Carpoffs' efforts to loot DC Solar for their own personal benefit.

11. Prior to commencing the Adversary, the Trustee also communicated with the Defendant regarding the possibility of a consensual resolution.

12. After commencing the Adversary, the Trustee continued her communications with the Defendant regarding the possibility of a consensual resolution, and the Parties' differing positions of facts and law.

13. Among other things and in connection with those communications, the Defendant provided the Trustee with documents evincing that Solutions was always intended to be the beneficiary of the Transfer, even if the Licensee eventually was the Defendant's contract counterparty.

14. Following these settlement negotiations, and subject to this Court's approval, the Trustee and the Defendant reached an agreement on the terms of a settlement of their claims and have executed the Stipulation of Settlement attached as **Exhibit 1** to the Trustee's Declaration ("**Settlement Agreement**"). The Trustee believes that the Settlement Agreement is in the best interests of the Debtors' estates and should be approved.

## II. Settlement Terms

15. The key aspects of the Settlement Agreement, as more particularly described therein, are the following:

- The Defendant shall pay the Trustee $240,000 ("**Settlement Payment**") within fifteen days after the entry of a final non-appealable order approving this Settlement Agreement ("**Effective Date**").

- The Defendant shall have an allowed unsecured claim against the DC Solar Estates ("**LV Claim**") in the amount of $240,000 pursuant to Section 502(h) of the Bankruptcy Code.

- Subject to and except for their obligations in this Settlement Agreement, the Trustee and the Defendant shall each release and waive all claims against the other.

## III. Legal Discussion

16. Fed. R. Bank. P. 9019(a) provides in relevant part that "[o]n motion ... and after notice and a hearing, the court may approve a compromise or settlement."

17. In the Ninth Circuit, motions to approve a compromise and settlement agreement are reviewed under the four criteria set forth in In re A&C Properties, Inc., 784 F. 2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986). Those criteria are: (1) likelihood of success on merits of the claims in the underlying litigation; (2) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (3) the difficulties, if any, to be encountered in the matter of collection; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

18. Compromises are favored under the Bankruptcy Code, and approval of a compromise rests in the sound discretion of the Court. Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc., v. Anderson, 390 U.S. 414, 424 (1968). The bankruptcy court is afforded wide latitude in approving compromise agreements which it determines to be fair, reasonable, and adequate. In re Woodson, 839 F.2d 610 (9th Cir. 1988). The court need not conduct an exhaustive investigation into the claim sought to be compromised. In re Walsh Construction, Inc., 699 F.2d 1325, 1328 (9th Cir. 1982).

19. The Trustee, in her informed business judgment, submits that approval of the Settlement Agreement is in the best interests of the Debtors' estates.

### A. The Settlement Should Be Approved

20. Based upon these principles, the Trustee submits that the Settlement Agreement falls well above the lowest point of the range of reasonableness and should be approved.

### IV. Probability Of Success In Litigation

21. This is a significant consideration that militates in favor of approval of the Settlement Agreement.

22. While the Trustee believes her potential claims are meritorious, all litigation presents risks. Here, among other potential defenses, the Defendant asserts that the Transfer was not intended to benefit the Carpoffs, individually, but rather was always intended to benefit the Debtors. Moreover, the Defendant provided the Trustee with evidence that this was the case.

23. If this were proven to be true, the Defendant would arguably have a complete defense to the Trustee's claims given that, based on the Trustee's investigation, the Trustee does not challenge that the Defendant received the Transfer in good faith.

### V. Complexity Of Litigation And Attendant Expense, Inconvenience And Delay

24. This is a significant consideration that also militates in favor of approval of the Settlement Agreement.

25. While the Trustee's claims are typical claims litigated before this Court, the Defendant did not file a claim in these Bankruptcy Cases and thus would have the right to a jury trial. Moreover, while the Trustee's special counsel is compensated on a contingency-fee basis, the Trustee's prosecution of these claims would be accompanied by significant costs. These costs include those necessary to probe of the intent of the Carpoffs – the Debtors' former insiders who have pled guilty to crimes – such as arranging for and attending prison-depositions (among other things).

26. The Settlement Agreement addresses these concerns. The parties avoid litigating fact-specific claims with the associated expense and delay of doing so. Here, there is meaningful benefit to the estates in resolving this matter pre-suit, without further risk, and before meaningful expenses are incurred.

### VI. Collectability

27. Collectability is not an issue with the Defendant.

### VII. Paramount Interest Of Creditors

28. This is a significant consideration that militates in favor of approval of the Settlement Agreement.

29. The Settlement Agreement provides for a $240,000 payment, representing a material portion of the Transfer. This is a very good outcome when measured against potential defenses and litigation risks, as well as the costs and delay associated therewith. As a pre-Answer resolution, the Trustee is eliminating delay in monetizing her claims and efficiently administering the estates for the benefit of creditors. The settlement also enables the Trustee and her counsel to focus on other substantial litigation claims against other third parties in these Bankruptcy Cases, which is a meaningful consideration given the Trustee expects litigation recoveries to provide the bulk of the recoveries to creditors.

30. For all the reasons discussed in this Motion, the Settlement Agreement favorably and immediately avoids litigation claims with meaningful risk. Thus, approval of the Settlement Agreement is in the paramount interest of creditors.

### VIII. Payment Of Contingency Fee

31. Meland Budwick, P.A. ("*MB*"), as special litigation counsel, is to be compensated on a pure contingency fee basis of 25% of any recovery obtained.[3] The Trustee seeks allowance of, and authority to pay MB, a 25% contingency fee equal to $60,000 at the time the Trustee receives the Settlement Payment, without the need for further Court Order.

---

[3] ECF Nos. 1490 and 1502.

32. Pursuant to 11 U.S.C. § 330(a), the bankruptcy court reviews the services the professional provided, and decides whether the requested compensation is reasonable. The Trustee submits that the requested contingency fee satisfies this standard.[4]

33. First, 25% is a materially lower percentage than often charged by commercial contingency counsel.[5] Second, the Court pre-approved the contingency fee arrangement one year ago after notice to all parties-in-interest. Third, given the limited assets of the estates when MB was retained, the contingency fee arrangement benefitted the estate by shifting material risk from the estates onto MB and ensures that MB's compensation is directly tied to performance and results achieved.[6] Fourth, MB has performed significant work (including formal and informal discovery) investigating and pursuing this and other claims in a high-quality and expeditious manner given the complexities of these cases and despite the limitations imposed by COVID-19.

34. Moreover, in a financial fraud case much of special counsel's investigatory function is to analyze the facts and circumstances related to an enormous number of potential targets to determine if claims do or do not exist. Here, counsel has invested substantial efforts and resources confirming the estate likely does not hold meritorious claims against many otherwise potential targets. Under the fee agreement, counsel receives no compensation for those efforts, even though they benefit the estate. The Trustee notes these efforts, for which counsel receives no compensation.

---

[4] Special counsel: (1) performed high-quality work; (2) addressed somewhat challenging factual and legal questions; (3) employed significant skill; (4) obtained a timely result; (5) performed its work efficiently; (6) drew upon a high level of capabilities and experience; and (7) was met with significant opposition by sophisticated counsel.

[5] See In re Private Asset Grp., Inc., 579 B.R. 534, 544-45 (Bankr. C.D. Cal. 2017); see also In re Pearlman, 2014 WL 1100223, *3 (Bankr. M.D. Fla. Mar. 20, 2014) ("Resting again on its independent judgment, the Court finds the 35% contingency fee to be reasonable and in line with similar non-bankruptcy rates.").

[6] Fann Contracting, Inc. v. Garman Turner Gordon LLP, 620 B.R. 141, 147 (D. Nev. 2020); see also, generally, In re Smart World Techs., LLC, 423 F.3d 166, 180 (2d Cir. 2005) ("Here, Smart World's counsel was retained on a contingency basis, meaning that Smart World's pursuit of its adversary claims would have subjected the bankruptcy estate to no risk, while allowing the estate to reap any potential award.").

### IX.  Conclusion

35. Based upon the foregoing, the Trustee requests an order approving the Settlement Agreement as well as the contingency fee, and granting such other and further relief as this Court deems just and proper.

DATED: April 20, 2021.

                      **MELAND BUDWICK, P.A.**

                      */s/ Michael S. Budwick*
                      Michael S. Budwick, Esq.
                      Solomon B. Genet, Esq.
                      Gil Ben-Ezra, Esq.
                      Kevin Paule, Esq.
                      Attorneys for Christina W. Lovato, Trustee

                      **HARTMAN & HARTMAN**

                      */s/ Jeffrey L. Hartman*
                      Jeffrey L. Hartman, Esq.
                      Attorney for Christina W. Lovato, Trustee