Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*
Kevin Paule, Esq. #125276 – Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
gbenezra@melandbudwick.com
kpaule@melandbudwick.com

Attorneys for Christina W. Lovato, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.<br><br>Debtor. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantively consolidated with:<br><br>　19-50130-gs　DC Solar Solutions, Inc.　<br>　19-50131-gs　DC Solar Distribution, Inc.　<br>　19-50135-gs　DC Solar Freedom, Inc.　<br><br>**MOTION FOR ORDER (1) APPROVING COMPROMISE AND SETTLMENT AGREEMENT WITH ELECTRIFICATION COALITION; AND  (2) FOR AWARD OF CONTINGENCY FEE**<br><br>**Hearing Date:  May 27, 2021**<br>**Hearing Time:  9:30 a.m.** |

Christina Lovato, in her capacity as the chapter 7 trustee ("*Trustee*") for the substantively consolidated bankruptcy estates of DC Solar Solutions, Inc. ("*DCSS*"), DC Solar Distribution, Inc. ("*DCSD*"), DC Solar Freedom, Inc. ("*DCSF*", and with DCSD and DCSS, "*DC Solar*") and Double Jump, Inc. (the "*DC Solar Estate*"), requests an Order approving the compromise of a disputed claim with Electrification Coalition, a 26 U.S.C. § 501(c)(3) tax exempt entity ("*Target*"). This request is made under F.R.Bankr.P. 9019 and is supported by the separately filed Declaration

of Christina Lovato, which attaches the settlement agreement between the parties ("**Settlement Agreement**"). As permitted by F.R.Evid. 201, Plaintiff also requests the Court take judicial notice of the pleadings on file in this adversary proceeding as well as the papers on file in these cases.

### RELEVANT FACTS

These substantively consolidated cases were initially filed under chapter 11 on or about February 4, 2019. The cases were converted to chapter 7 on March 22, 2019 and the Trustee was appointed to administer the Debtors' estates.

On November 13, 2020, the Trustee sent a demand letter to Target, relating to a transfer to Target in the amount of $25,000.00 in the years preceding the filing of the chapter 7 petition by DCSS. In order to avoid the risk and expense of litigation, counsel for the Target transmitted a settlement proposal to the Trustee, offering payment of $5,000.00.

Subject to Court approval, the Trustee has agreed to accept the offer, as more fully set forth in the Settlement Agreement.

### LEGAL DISCUSSION

F.R.Bankr.P. 9019(a) provides in relevant part that "[o]n motion ... and after notice and a hearing, the court may approve a compromise or settlement." In the Ninth Circuit, motions to approve a compromise and settlement agreement are reviewed under the four criteria set forth in In re A&C Properties, Inc., 784 F. 2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986). Those criteria are: (1) likelihood of success on merits of the claims in the underlying litigation; (2) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (3) the difficulties, if any, to be encountered in the matter of collection; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Compromises are favored under the Bankruptcy Code, and approval of a compromise rests in the sound discretion of the Court. Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). The bankruptcy court is afforded wide latitude in approving compromise agreements which it determines to be fair, reasonable, and adequate. In re Woodson, 839 F.2d 610 (9th Cir. 1988). The court need not conduct an exhaustive

investigation into the claim sought to be compromised. <u>In re Walsh Construction, Inc.</u>, 699 F.2d 1325, 1328 (9th Cir. 1982).

**Likelihood of success on merits of the claims in the underlying litigation, and the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it.**

In the case of a transfer to a charitable organization, the Religious Liberty and Charitable Donation Protection Act of 1998 lead to the language in § 548 (a)(2) which provides:

> A transfer of a charitable contribution to a qualified religious or charitable entity or organization shall not be considered to be a transfer covered under paragraph (1)(B) in any case in which—
>
> (A) the amount of that contribution does not exceed 15 percent of the gross annual income of the debtor for the year in which the transfer of the contribution is made; or
>
> (B) the contribution made by a debtor exceeded the percentage amount of gross annual income specified in subparagraph (A), if the transfer was consistent with the practices of the debtor in making charitable contributions.

Here, applying the constraints of § 548(a)(2), DCSD transferred $25,000.00 to the Target in 2017. In that year, the Target had gross receipts not greater than $25,000. The transfer to the Target did not exceed 15% of the Target's gross receipts in 2017.

This is not particularly complex or expensive litigation, but all litigation can be expensive and difficult at times. Moreover, attorney's fees would not be recoverable and there is the possibility of delay, including associated with any potential appeals.

**Difficulties, if any, to be encountered in the matter of collection.**

Because Target is a § 501(c)(3) tax exempt entity, and upon review of certain financial information, the Trustee believes there is material risk and difficulty in collecting any judgment that the Trustee may be able to obtain. On balance, the Trustee believes that $5,000.00, the amount the Trustee will obtain through this compromise, is well within the range of what could be collected even post-judgment.

**The paramount interest of the creditors and a proper deference to their reasonable views in the premises.**

For all the reasons stated above, and in the interests of prompt and efficient administration of the Debtors' estates, the Trustee submits that approval of the compromise is in the paramount

interest of creditors. However, proper deference to the creditors' views can only be considered following notice to creditors and parties in interest.

### PAYMENT OF CONTINGENCY FEE

Meland Budwick, P.A. ("**MB**"), as special litigation counsel, is to be compensated on a pure contingency fee basis of 25% of any recovery obtained.[1] The Trustee seeks allowance of, and authority to pay MB, a 25% contingency fee at the time the Trustee receives each of the payments under the Settlement Agreement, without the need for further Court Order.

The total amount of the requested contingency fee is **$1,250.00** ("***Requested Contingency Fee***").

Pursuant to 11 U.S.C. § 330(a), the bankruptcy court reviews the services the professional provided, and decides whether the requested compensation is reasonable. The Trustee submits that the Requested Contingency Fee satisfies this standard. First, 25% is a materially lower percentage than often charged by commercial contingency counsel.[2] Second, the Court pre-approved the contingency fee arrangement more than one year ago after notice to all parties in interest. Third, given the limited assets of the estates when MB was retained, the contingency fee arrangement benefitted the estate by shifting material risk from the estates onto MB and ensures that MB's compensation is directly tied to performance and results achieved. Fourth, MB has performed significant work investigating and pursuing this and other claims in a high-quality and expeditious manner given the complexities of these cases and despite the limitations imposed by COVID-19. Fifth, much of special counsel's work is in an investigatory function, which sometimes leads to the conclusion that the estate likely does not hold meritorious claims against certain potential targets - under the fee agreement, special counsel receives no compensation for those efforts, even though they benefit the estate.

---

[1] ECF Nos. 1490 and 1502.

[2] *See* In re Private Asset Grp*., Inc.*, 579 B.R. 534, 544-45 (Bankr. C.D. Cal. 2017); *see also* In re Pearlman, 2014 WL 1100223, *3 (Bankr. M.D. Fla. Mar. 20, 2014) ("Resting again on its independent judgment, the Court finds the 35% contingency fee to be reasonable and in line with similar non-bankruptcy rates.").

4

**WHEREFORE**, the Trustee respectfully requests an Order: (1) granting the Motion; (2) approving and authorizing the Trustee to compromise this dispute as set forth in the Settlement Agreement; (3) approving and authorizing payment of the Requested Contingency Fee, as and when the settlement payments are received; and (4) all other relief this Court deems just and proper.

DATED: April 21, 2021.

**HARTMAN & HARTMAN**

*/s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq.,
Attorney for Trustee Christina W. Lovato

**MELAND BUDWICK, P.A.**

*/s/ Solomon B. Genet*
Michael S. Budwick, Esq., Admitted Pro Hac Vice
Solomon B. Genet, Esq., Admitted Pro Hac Vice
Gil Ben-Ezra, Esq., Admitted Pro Hac Vice
Kevin Paule, Esq., Admitted Pro Hac Vice
Attorneys for Trustee Christina W. Lovato