Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*
Kevin Paule, Esq. #125276 – Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
gbenezra@melandbudwick.com
kpaule@melandbudwick.com

Attorneys for Christina W. Lovato, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re<br><br>DOUBLE JUMP, INC.<br><br>Debtor. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantively Consolidated with:<br><br>{{table}}<br><br>**TRUSTEE'S MOTION TO EXTEND DEADLINES UNDER 11 U.S.C. §§ 108 AND 546**<br><br>Hearing Date: July 19, 2021<br>Hearing Time: 9:30 a.m. |
|---|---|

| 19-50130-gs | DC Solar Solutions, Inc. |
|---|---|
| 19-50131-gs | DC Solar Distribution, Inc. |
| 19-50135-gs | DC Solar Freedom, Inc. |

Christina Lovato, the duly appointed chapter 7 trustee (*"Trustee"*) for the above-captioned Debtors' estate DC Solar Solutions, Inc. (*"Solutions"*), DC Solar Distribution, Inc. (*"Distribution"*), DC Solar Freedom, Inc. (*"Freedom"*), and Double Jump, Inc. (*"DJ,"* and together with Solutions, Distribution and Freedom, the *"DC Solar Estate"*), files this motion (*"Motion"*) seeking the extension of the deadlines under (1) 11 U.S.C. § 546(a); and (2) 11 U.S.C. § 108(a).

1

The Motion is based upon the Memorandum of Points and Authorities below, and the Declaration of Christina Lovato (contemporaneously filed), and other items which the Court may consider including those matters referenced below, and those admissible under F.R.E. 201.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Requested Relief

Each of the Debtors filed voluntary chapter 11 bankruptcy petitions on different dates between January 30, 2019 and February 5, 2019. The four estates have been substantively consolidated.[1] On February 3, 2021, the Court extended the §§ 108 and 546 deadlines through July 30, 2021.[2] For purposes of this Motion, July 30, 2021 is referred to as the **"Present Deadline."**

The Trustee seeks an extension of 90 days from the Present Deadline through and including October 28, 2021 (**"Proposed New Deadline"**).

### Background, Facts and Basis for Requested Relief

This Court has the power and authority to extend the Present Deadline and grant the modified requested relief (a) for cause under Bankruptcy Rule 9006; (b) under principles of equitable tolling; and (c) per this Court's inherent, equitable and otherwise power and authority.

On December 18, 2018, law enforcement executed a raid on the Debtors' offices and other locations.[3] Since then, some of the Debtors' former insiders have pled guilty to crimes, with their plea agreements describing their pre-petition wrongdoing; moreover, federal law enforcement has filed a declaration in this Case.[4] These court papers describe the Debtors' pre-petition business operations as well as a massive and complex Ponzi scheme perpetrated by Jeffrey and Paulette Carpoff and others (**"Carpoff Ponzi Scheme"**) through the Debtors and other entities. According to federal law enforcement, the Carpoff Ponzi Scheme began by no later than 2011 and involved

---

[1] ECF No. 2613.
[2] ECF No. 2527.
[3] *See* ECF No. 2613 at ¶ 16.
[4] *See e.g., U.S.A. v. Jeff Carpoff*, Case No. 20-00017-JAM (E.D. Ca.) [ECF No. 10]; *see also* Declaration of Special Agent Christopher Phillips [Main Case, ECF No. 106-2].

2

the movement of many hundreds of millions of dollars.[5] The U.S.A.'s criminal investigation is ongoing.

In late January and early February 2019, the Debtors filed for chapter 11 relief before this Court, commencing these bankruptcy cases (***"Bankruptcy Case(s)"***). On March 22, 2019, this Court converted the Bankruptcy Cases to cases under chapter 7 and appointed the Trustee as chapter 7 trustee of the Debtors' estates.[6] The Bankruptcy Cases have been substantively consolidated.[7]

Previously, the Court entered an Order granting the Trustee's request to extend the §§ 108 and 546 deadlines through July 30, 2021.[8] Through this Motion, the Trustee seeks additional time to consider and investigate potential claims.

The Trustee is an after-the-fact appointed fiduciary, who must investigate and determine events long after they occurred. In the instant circumstances, the requested relief should be granted.

I. **The Trustee's Investigation and Diligent Efforts**

1. Pursuant to her statutory duties to identify and recover assets for the benefit of the Debtors' estates and their creditors, the Trustee[9] is continuing to diligently investigate the facts, and investigate, analyze and evaluate potential causes of action owned by the Debtors' estates.

2. The Trustee was appointed on March 22, 2019.[10]

3. The Trustee has retained general counsel, forensic accountants, and special litigation counsel.[11]

---

[5] *See, e.g.,* ECF No. 2613.
[6] ECF Nos. 439-40.
[7] ECF No. 2613.
[8] ECF No. 2527.
[9] When referring to the Trustee's actions, this includes her directly and by and through her professionals, but always with her involvement and under her supervision and direction.
[10] ECF No. 439.
[11] ECF Nos. 518 & 689, 611 & 665, 1490 & 1502.

3

4. The Trustee has gathered and reviewed documents: (1) in the Debtors' possession; (2) produced informally by third parties; and (3) produced formally in response to Rule 2004 document subpoenas.[12]

5. The Trustee has (1) interviewed witnesses; and (2) conducted sworn oral Rule 2004 examinations pursuant to her Omnibus Motion to Establish Protocols to Safely, Fairly and Efficiently Conduct F.R.B.P. 2004 Oral Examinations as a Result of Covid-19 and this Court's Order granting same.[13]

6. The Trustee has performed financial analyses as to the Debtors' money-transfers, including the debtor-transferor and transferees.

7. The Trustee has engaged numerous potential targets in pre-suit discussions regarding potential claims and possible consensual resolution. In certain circumstances, she has entered into tolling agreements typically to facilitate a settlement dialogue.

8. Additionally, the Trustee has resolved certain potential claims.[14]

9. The Trustee has engaged with numerous parties who have filed proofs of claim regarding their filed claims as well as potential actions the Trustee may hold against those parties (including per 11 U.S.C. §547).

10. The Trustee monitors numerous ongoing civil and criminal matters related to the Debtors' estates in multiple State and Federal courts across the country.

11. The Trustee has administered the collection and sale of MSGs in which the Debtors' estates assert an interest.[15]

12. Additionally, the Trustee has filed dozens of adversary proceedings, several of which have been set for judicial settlement conferences.[16]

---

[12] *See generally* docket.
[13] *See generally* docket; *see also* ECF Nos. 1781 & 1831.
[14] *See e.g.,* ECF Nos. 2444 and 2537, 2481 and 2614, 2661, 2665, 2670, 2673.
[15] *See generally*, docket.
[16] *See generally* docket.

## II. The Trustee has Faced Extraordinary Challenges

13. The Trustee has faced extraordinary challenges.

### Lack of Access to Certain Key Witnesses Due to Criminal Prosecutions

14. Pre-petition, the United States of America began investigating certain of the Debtors' former insiders for criminal wrongdoing.[17] Law enforcement raided the Debtors' offices (and other locations) on or about December 18, 2018.

15. The USA has prosecuted and reached plea agreements with certain former insiders of the Debtors.[18]

16. The Trustee has been unable to interview certain former insiders who have pled guilty to crimes. And the ongoing nature of the USA's investigation has impacted the Trustee's access to certain witnesses. Inherent in any significant financial fraud is the effort by the perpetrators to conceal the fraud as well as their roles. Thus, the Trustee is challenged in acting as after-the-fact investigator to discern the role of all responsible parties. The lack of access to certain key players impairs the Trustee's investigation, particularly as to at least certain supporting participants in the fraud.

17. While some of the former insiders who have pled guilty may become accessible, particularly after sentencing, those individuals will likely be incarcerated at multiple federal correctional facilities in different cities. Interviewing these individuals will require in-person visits, which has been delayed by the COVID-19 pandemic. Additionally, sentencing of the former insiders has been delayed several times. Most recently, sentencing for former insider Ryan Guidry was delayed until August 24, 2021.[19] Additionally, the Trustee has been advised that sentencing for Jeff Carpoff, currently set for June 29, 2021, will be postponed to a later date.

18. Further, the Trustee has faced challenges in obtaining a complete set of the Debtors' records (those in the USA's possession). While the Trustee has made significant progress on this

---

[17] ECF No. 106-2, ¶22.
[18] *See e.g., U.S.A. v. J. Carpoff*, 20-00017 (E.D. Ca.); *U.S.A. v. P. Carpoff*, 20-00018 (E.D. Ca.).
[19] *U.S.A. v. Guidry*, 20-00003 (E.D. Ca.) [ECF No. 34].

5

issue, there is a significant amount of information that requires extensive time and resources to review.

19. While the Trustee appreciates the role of criminal law enforcement, the ongoing criminal investigation has materially stymied the Trustee's investigation.

### COVID-19

20. The Trustee has faced extraordinary challenges by virtue of the global COVID-19 pandemic.[20]  Certain items have become impossible to accomplish and others have simply taken more time and effort to accomplish.

21. For example, the Trustee, in most instances, cannot meet in-person with: (1) her professionals; (2) litigation targets and their counsel; and (3) witnesses and their counsel.  Multiple of the Trustee's professionals were infected with COVID-19 and sidelined for a material period of time, resulting in significant challenges and delays.

22. Notably, the Trustee has utilized technological means (such as zoom) to attempt to mitigate these challenges, as appropriate.  The Trustee has remotely: (1) taken R. 2004 examinations; (2) interviewed certain witnesses; and (3) conducted multiple settlement negotiations (including mediations).

23. Further, third parties have delayed producing documents and appearing for examination citing reasons related to COVID-19.  While the Trustee has dealt with these situations, professional courtesy plus the reality of life in the COVID-world have made delay and associated challenges un-avoidable.

### The Debtors' Complex Pre-Petition Business

24. The Debtors' pre-petition business was complex.[21]  In a typical (purported) transaction: (1) Solutions manufactured and sold mobile solar generators (*"MSGs"*) to financial investors in exchange for a down-payment and a promissory note; (2) the financial investors

---

[20] This Court may take judicial notice of COVID-19 and facts that illustrate its effect on certain matters.  *See George v. Diaz*, 2020 WL 2542020, *2 (N.D. Cal. May 19, 2020)
[21] *U.S.A. v. J. Carpoff*, 20-00017 (E.D. Ca.) [ECF No. 10, pg. 18 et seq.].

6

purchased the MSGs through a tax equity fund (*"Fund"*), owned by an investor and a managing member; (3) the Fund leased the MSGs to Distribution; (4) Distribution sub-leased the MSGs to a third-party.

25. The typical (purported) money flow was (post-closing): (1) from sub-lessee/third-party; (2) to Distribution; (3) to the Fund; (4) to Solutions.

26. These transactions were "tax advantaged," *i.e.,* the investor and the Fund sought a return through a tax benefit rather than wholly through cash-profit from the transaction. Therefore, multiple sophisticated professionals were involved in the complicated structuring and documenting (among other things) of the transactions.

27. Additionally, the Debtors and the Carpoffs engaged in several international transactions, including the transfer of assets to other countries including Nevis and Mexico, the formation of a Hong Kong entity to assist with offshore transactions, and the creation of captive insurance companies in the Bahamas.

28. And the MSG itself was an innovative (and not run-of-the-mill) product without an established and mature secondary marketplace.

### The Carpoffs' Fraud

29. Notwithstanding that the Debtors had certain legitimate business, Jeff and Paulette Carpoff and certain other former insiders of the Debtors perpetrated a multi-year fraud and Ponzi scheme through and upon the Debtors.[22]

30. Among other things, the Carpoffs misrepresented: (1) the number of MSGs manufactured; and (2) the scope and extent of the relationship with the end-users / sub-lessees.[23]

31. The Carpoffs' co-conspirators included certain of the Debtors' former in-house and outside accountants.[24]

---

[22] *See e.g., U.S.A. v. J. Carpoff*, 20-00017 (E.D. Ca.); Main Case, ECF No. 106-2.
[23] *See e.g., U.S.A. v. J. Carpoff*, 20-00017 (E.D. Ca.); Main Case, ECF No. 106-2.
[24] *U.S.A. v. Roach*, 19-00182 (E.D. Ca.); *U.S.A. v. Karmann*, 19-00222 (E.D.Ca.).

7

32. The Carpoffs caused monies to be transferred in furtherance of their fraud to purchase real estate, personal property and for other purposes, to fund their lavish lifestyle.[25]

33. The Carpoffs caused monies to be transferred offshore (in multiple jurisdictions outside of the United States). As noted above, there were significant international aspects of the fraud.

34. Additionally, as part of the Carpoff Ponzi Scheme, the Carpoffs looted the Debtors by causing them to overpay purported vendors. These purported vendors would then kickback a portion of this money to entities controlled by the Carpoffs. The Trustee is investigating similar schemes whereby the Carpoffs caused the Debtors to make seemingly legitimate transactions in an attempt to loot the Debtors.

### III.    Further Context for the Requested Relief

35. The Trustee's requested relief is intended to cover those parties as to which the Trustee requires more time to either identify those parties and their roles or to develop the factual underpinnings to support a meritorious claim.

36. The Trustee has identified specific situations where documentation reflects a legitimate transaction, but additional information not available within the Debtors' books and records indicates a wrongful intent or purpose.

### IV.    Basis for Requested Relief

37. The Trustee has satisfied the standard for the requested relief. The Court has previously recognized it has the authority to provide the relief sought by the Trustee.[26]

38. Bankruptcy courts have the authority to enlarge the time period to bring avoidance actions set forth in § 546(a) of the Code.[27] This authority arises from, among other places,

---

[25] *See e.g., U.S.A. v. J. Carpoff*, 20-00017 (E.D. Ca.); Main Case, ECF No. 106-2.
[26] ECF No. 2613
[27] See Fed. R. Bank. P. 9006(b); *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689 (11th Cir. 2005); *In re S & B Surgery Ctr.*, 2014 WL 10755272, *6 (C.D. Cal. Jan. 21, 2014) ("The Ninth Circuit has held that 11 U.S.C. § 546(a) is not a jurisdictional bar, but a statute of limitations, which may be extended.") (citing cases).

8

Fed.R.Bank.P. 9006(b), which gives the Court the authority to extend deadlines in its discretion "for cause shown."

39. In *Int'l Admin. Servs.,* relied upon by the district court in *S&B Surgery*, the Eleventh Circuit Court of Appeals reasoned that § 546's statutory deadline is subject to enlargement since Rule 9006 encompasses the bankruptcy rules, which include Rule 7001 (defining an adversary proceeding as one "to recover money or property") and Rule 7003 (governing the commencement of adversary proceedings). Because § 546(a) sets a deadline for commencing avoidance actions (adversary proceedings) to recover money or property, Rule 9006 authorizes a bankruptcy court to enlarge this time period.

40. The same rationale applies to the time periods set forth in § 108(a) of the Code. Because Rule 9006 incorporates all the Bankruptcy Rules (including 7001 & 7003), and § 108 extends the statute of limitations and deadlines for the commencement of non-bankruptcy causes of action—which also may be brought by adversary proceeding—the § 108(a) time-period is similarly subject to extension via Rule 9006. Certain bankruptcy courts have ruled, or indicated, accordingly.[28]

41. "The standard 'for cause shown' is determined on a case-by-case basis, and courts generally grant such motions absent a showing of bad faith or prejudice to the nonmoving party."[29]

---

[28] *In re Fundamental Long Term Care*, *Inc.,* 501 B.R. 784, 792 (Bankr. M.D. Fla. 2013) ("[T]he Court concludes it is appropriate to enlarge the two-year limitations period under § 546 (and § 108) to allow the Trustee to continue her investigation through the close of fact discovery in the adversary proceedings."); *see also In re Campbellton-Graceville Hosp. Corp.*, 616 B.R. 177, 188-89 (Bankr. N.D. Fla. 2019); *In re Providence Financial Investments, Inc.*, Case No. 16-20516-AJC [ECF No. 192 & 198] (Bankr. S.D. Fla. May 25, 2018); *see also, generally, Linares v. CitiMortgage, Inc.*, 2015 WL 2088705, *4 (N.D. Cal. May 5, 2015) (Section 108 is essentially a "tolling provision" which extends a statute of limitations).

[29] Bankruptcy Rule 9006—Enlargement, 1 Bankruptcy Litigation § 5:34; *see also In re Ray,* 2016 WL 6699315, *4 (B.A.P. 9th Cir. Nov. 14, 2016), aff'd, 703 F. App'x 601 (9th Cir. 2017); *In re Arronsakool*, 2014 WL 1273696, *6 (B.A.P. 9th Cir. March 28, 2014).

42. And for similar reasons, the doctrine of equitable tolling provides this Court the authority to extend the deadlines under §§ 108 and 546 of the Code.[30] As discussed in *Campbellton-Graceville Hospital*, equitable tolling "pauses the running of, or 'tolls' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."[31]

43. The doctrine of equitable tolling is read into every federal statute of limitations.[32]

44. A party seeking application of equitable tolling bears the burden of establishing two elements: (1) that she has been pursuing her rights diligently, and (2) that some extraordinary circumstance stood in her way and prevented timely filing.[33] The Trustee satisfies this test.

45. <u>First</u>, the Trustee has diligently been pursuing her rights since her appointment. The record, as well as the docket in these cases, evidences the Trustee's diligence, efforts and actions in these complex bankruptcy cases.

46. <u>Second</u>, extraordinary circumstances have occurred which prevent timely filing by the deadlines. Among other things:

---

[30] *In re Milby*, 875 F.3d 1229, 1232 (9th Cir. 2017) ("The doctrine of equitable tolling is read into every federal statute of limitation," … "we have previously applied equitable tolling to § 546(a)(1).") (notations omitted).

[31] 616 B.R. at 184 *quoting CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014); *see also Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1298 (S.D. Cal. 2011) ("Equitable tolling focuses on whether there was excusable delay by the plaintiff, and does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing.") (internal notations omitted). California and Nevada state law apply similar principles of equitable tolling, were either to apply. *See Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 719 (2020) ("Equitable tolling is a "judicially created, nonstatutory doctrine that suspends or extends a statute of limitations as necessary to ensure fundamental practicality and fairness. The doctrine applies occasionally and in special situations to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.") (internal notations omitted); *Worsnop v. Karam*, 458 P.3d 353, *3 (Nev. 2020) ("Equitable tolling may be appropriate when the danger of prejudice to the defendant is absent and the interests of justice so require.") (citation omitted).

[32] *In re Milby*, 875 F.3d 1229, 1232 (9th Cir. 2017) (citation omitted).

[33] *Id.*

- The ongoing and significant criminal investigation (simultaneous with the Trustee's investigation) by the USA into the Debtors' former insiders (and perhaps others), has caused persons to be unavailable to the Trustee.

- COVID-19, and its effect on the Trustee as well as other persons and entities, is a once-a-century event which has caused the Trustee's investigation challenges, difficulties and delays.

- The complexity of the Debtors' pre-petition business caused the Trustee challenges in understanding different parties' roles and responsibilities, especially where the Debtors' former insiders were (in material part) unavailable.

- The complexity of the Carpoffs' and their co-conspirators' 8+ year fraud caused the Trustee challenges in understanding different parties' roles and responsibilities, especially where the Debtors' former insiders were (in material part) unavailable.

- The complexity of the Debtors' and the Carpoffs' international dealings, including the formation of a Hong Kong entity and the creation of captive insurance companies in the Bahamas.

47. Moreover, a modest 90-day extension will not cause prejudice to any litigation target of the Trustee.

**WHEREFORE**, the Trustee seeks entry of an order, (1) granting the Motion; (2) extending the deadline imposed by 11 U.S.C. § 546(a) through and including the New Proposed Deadline (October 28, 2021) for each of the Debtors' Estates; (3) extending the deadline imposed by 11 U.S.C. § 108(a) through and including the New Proposed Deadline (October 28, 2021) for each of the Debtors' Estates; and (4) awarding such other relief the Court deems just and proper.

DATED: June 16, 2021.

**HARTMAN & HARTMAN**

/s/ Jeffrey L. Hartman
Jeffrey L. Hartman, Esq.

**MELAND BUDWICK, P.A.**

/s/ Michael S. Budwick
Michael S. Budwick, Esq., (Admitted Pro Hac Vice)
Attorneys for Christina Lovato, Trustee

11