Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*
Kevin Paule, Esq. #125276 – Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
gbenezra@melandbudwick.com
kpaule@melandbudwick.com

Attorneys for Christina W. Lovato, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re

DOUBLE JUMP, INC.

     Debtor.

Affects:
☒ DC Solar Solutions, Inc.
☒ DC Solar Distribution, Inc.
☒ DC Solar Freedom, Inc.
☒ Double Jump, Inc.

Lead Case No.: BK-19-50102-gs
(Chapter 7)

Substantively consolidated with:

| 19-50130-gs | DC Solar Solutions, Inc. |
| 19-50131-gs | DC Solar Distribution, Inc. |
| 19-50135-gs | DC Solar Freedom, Inc. |

**MOTION TO ESTABLISH PROTOCOL FOR PRODUCTION OF DOCUMENTS**

**Hearing Date: October 26, 2021**
**Hearing Time: 9:30 a.m.**

     Christina W. Lovato, in her capacity as the chapter 7 trustee ("***Trustee***") for the substantively-consolidated estates of DC Solar Solutions, Inc., DC Solar Distribution, Inc., DC Solar Freedom, Inc., and Double Jump, Inc. ("***Debtors***" or "***DC Solar Estate***"), files this *Motion to Establish Protocol for Production of Documents* ("***Motion***") pursuant to F.R.C.P 26 and 34,[1] the Court's authority under 11 U.S.C. § 105, this Court's inherent authority, and this Court's

---

[1] Applicable through Bankruptcy Rules 7026 and 7034, as appropriate.

authority and power to manage its own docket and affairs. This Motion is supported by the separately filed Declaration of Seth Freeman.

## INTRODUCTION

The Federal Rules direct that discovery be conducted in a manner that secures "the just, speedy, and inexpensive determination of every action and proceeding." F.R.C.P. 1.

Here, the Trustee has commenced dozens of adversary proceedings. Many remain pending, and the Trustee expects that more will follow. In addition, there are numerous state and federal litigation matters related to the Ponzi scheme committed by Jeff and Paulette Carpoff ("***Carpoff Ponzi Scheme***") progressing across the country. Accordingly, the Trustee anticipates that requesting parties ("***Requesting Parties***"), both adversary defendants and third parties, will serve her with numerous, and redundant or overlapping, requests for production.

Through this Motion, the Trustee seeks imposition of a uniform protocol ("***Production Protocol***") governing the Trustee's response to requests for production, the Trustee's production, and the Requesting Parties' accompanying obligations to maintain documents produced by the Trustee in a secure fashion. A copy of the Trustee's proposed Production Protocol is attached as **Exhibit A**. The Trustee's requested relief is in the best interests of the DC Solar Estate and all parties, including the Requesting Parties, complies with Rule 26's proportionality directive, and furthers efficiency through consistency of production and the elimination, or at least the material limitation, of wasteful discovery disputes.

First, the Trustee has custody, possession, and control over a large amount of the Debtors' pre-petition books and records—totaling many millions of documents that span almost a decade; these records were turned over to, and the Trustee maintains, those records in various physical and electronic formats. Pursuant to Rule 34, the Trustee is entitled to respond to requests for production by producing these items in the manner which she received them, which is what she intends to do.

Second, however, is that the Debtors' books and records contain a significant amount of personal identifiable information ("***PII***"), which the Trustee intends to protect in connection with her production. Because reviewing each item for PII would cause the DC Solar Estate to incur

enormous costs, plus dramatically lengthen and cause difficulty in the discovery process, and since the Debtors are no longer in business, the Trustee seeks authority to perform certain PII review and due diligence (which has already meaningfully occurred) and impose security procedures to simultaneously ensure a timely production and minimize any delay to the efficient administration of this Bankruptcy Case.

Third, requests for production are expected to seek documents that third parties have produced to the Trustee, a large number of which have been produced pursuant to confidentiality stipulations ("***Designated Documents***"). Through the Trustee's proposed Production Protocol, the Trustee will identify the parties that have provided her with documents, but a Requesting Party must seek to obtain any documents from their source. This would protect the Trustee from involvement (and accompanying costs, time, and effort) in any objections or litigation regarding the scope, breadth, and appropriateness of those discovery requests, responses, or confidentiality designations.

Thus, the Trustee respectfully requests that the Court adopt the proposed Production Protocol, which would: (1) require Requesting Parties to seek production of third-parties' documents from their source; (2) implement a procedure for the Trustee's production of the Debtors' books and records as allowed by Rule 34; and (3) protect PII by: (i) establishing a mechanism for the Trustee to screen categories of PII that she has identified pre-production; (ii) prohibiting, as explained below, the Requesting Parties from disclosing PII contained in documents received from the Trustee to third-parties; and (iii) requiring that Requesting Parties maintain the documents and items received from the Trustee securely.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Background

**A.  The Pre-Petition Debtors**

1. From calendar years 2010 through 2018, DC Solar was engaged in a business related to manufacturing, marketing, selling, and leasing mobile solar generators ("***MSGs***").

2. Over the years, DC Solar closed over two dozen transactions, purportedly selling over 15,000 MSGs and generating hundreds of millions of dollars of revenue.

3.    However, certain of DC Solar's insiders were also perpetrating a massive Ponzi scheme ("***Carpoff Ponzi Scheme***") through DC Solar and other entities.

4.    Certain of DC Solar's former insiders have now (after the Raid, defined below) pled guilty to crimes, and certain of their plea agreements contain a "Factual Basis for Plea" describing their pre-petition wrongdoing.[2]

5.    The Trustee has brought certain adversary proceedings[3] and intends to bring certain other adversary proceedings in the future.

**B.    The Debtors Books And Records**

6.    On December 18, 2018, federal agencies ("***U.S.A.***") raided ("***Raid***"), *inter alia*, the Debtors' corporate headquarters ("***Headquarters***") and seized much of the Debtors' books and records, including:

  a.    The Debtors' file server and email server. The U.S.A. preserved both servers in their state as of the date of the Raid by making image copies of each (together, "***Preserved Servers***");

  b.    Nine electronic devices, including computers, tablets, and hard drives of certain employees ("***Seized Devices***"); and

  c.    Over 500 boxes worth of physical documents ("***Seized Physical Documents***"). *See* Declaration of Seth Freeman dated July 15, 2021 ("***Freeman Dec.***"), at ¶ 6.

7.    The government did not seize 58 electronic devices, including laptops, tablets, and computers ("***Remaining Devices***").  *See* Freeman Dec. at ¶ 9.

8.    On January 25, 2019, GlassRatner Advisory Capital Group, LLC, which now dba B. Riley Advisory Services ("***B. Riley Advisory***"), was engaged to provide its Managing Director, Seth R. Freeman, as the Debtors' Chief Restructuring Officer ("***CRO***") and to act as financial advisor to the Debtors. *See* Freeman Dec. at ¶¶ 1,3.

---

[2] *See e.g., U.S.A. v. Jeff Carpoff*, Case No. 20-00017-JAM (E.D. Ca.) [ECF No. 10]; *see also* Declaration of Special Agent Christopher Phillips [Main Bankruptcy Case, ECF No. 106-2].
[3] *See generally*, dockets.

9.      In late January and early February 2019, the Debtors filed for chapter 11 relief before this Court, commencing these bankruptcy cases ("***Bankruptcy Case(s)***").[4]

10.      On March 22, 2019, the Court converted the Bankruptcy Cases to cases under chapter 7 and appointed the Trustee as chapter 7 trustee of the Debtors' estates.[5]  The Bankruptcy Cases have been substantively consolidated.[6]

11.      Certain physical documents not seized by the U.S.A. were retained. ("***Remaining Physical Documents***").   Freeman Decl. at ¶ 8.

12.      The Trustee has obtained the Debtors' pre-Raid books and records in the following formats:[7]

    a.  Electronically Stored Information ("***ESI***"):

        i.  A hard drive containing an image copy of each of the Preserved Servers;

        ii.  A hard drive containing scanned copies of approximately 350 of the over 500 boxes of the Seized Physical Documents ("***Scanned Physical Documents***"); and

        iii.  Certain documents in the U.S.A's possession that were scanned by the B. Riley Advisory and provided electronically to the Trustee ("***Additional Scanned Documents***").

*See* Freeman Dec. at ¶¶ 13-15.

    b.  Physical documents:

        i.  The Remaining Physical Documents were provided to the Trustee in 34 boxes and remain in hard-copy form; and

        ii.  Additional hard copy documents that the Trustee received from the CRO.

*See* Freeman Dec. at ¶¶ 11-12.

    c.  Electronic Devices: The Remaining Devices were physically provided to the Trustee and remain in her possession.

*See* Freeman Dec. at ¶¶ 16-17.

---

[4] *See generally*, dockets.

[5] ECF Nos. 439-40.

[6] ECF No. 2613.

[7] The Trustee received other documents and items, in physical and electronic form, which are redundant or duplicative of the items listed below and therefore are not addressed.

Collectively, the Debtors' books and records contain many millions of documents—amounting to (at least) tens of millions of pages—relating to the Debtors' operations from inception. The Trustee is unable, in any reasonable manner, to conduct a complete search and review of each document in a time-period appropriate to respond to requests for production in a categorical manner and effectively move litigation forward. Moreover, the Trustee has determined that the mere cost of uploading the entirety of the Debtors' books and records to a review platform would burden the estate with the expense in the hundreds of thousands of dollars.

**C.  The Trustee's Confidentiality Obligations**

13.     The Trustee, in furtherance of her investigation and her charge, sought and obtained the production of documents from third parties under R. 2004. To promote efficiency in that process (among other reasons), the Trustee agreed to approximately two dozen confidentiality stipulations with producing parties in connection with the production of the Designated Documents and sought and obtained Orders of this Court approving those stipulations.[8] In many cases, most (if not all) of the documents produced to the Trustee by a third party were designated as confidential. The confidentiality stipulations have similarities but also material differences, and the Trustee can only make production of the Designated Documents in compliance with the Court-ordered restrictions.

14.     The Trustee expects to seek documents from additional parties, both in the Main Case and in adversary proceedings, and to enter additional confidentiality stipulations as necessary or appropriate.

15.     Because many of the adversary proceedings, as well as the third-party litigation, relate to overlapping facts as the documents sought and obtained (and are expected to be sought and obtained) by the Trustee in this Bankruptcy Case, parties in interest to *those* litigations may seek to obtain the Designated Documents from the Trustee rather than from their source. The Trustee expects to receive multiple subpoenas arising from multiple litigations seeking documents originating from a third party.

**D.  The Trustee's Efforts To Identify And Protect PII**

---

[8] *See e.g.,* ECF Nos. 1957 & 1968 and 2301 & 2312.

16.    The Trustee is endeavoring to protect PII contained within the Debtors' books and records.[9] The Trustee requires and seeks a protective order through this Motion and the requested Production Protocol to, among other things, satisfy these responsibilities.

17.    For example, the Preserved Servers contain, *inter alia*, email files belonging to approximately 179 email addresses or accounts. The email data belonging to only 31 of those email addresses or accounts comprises of approximately 2 million pages; an unknown amount of that data contains financial and personal information of the type that may qualify as PII. Further, much of that data will relate to DC Solar's former employees that the Trustee seeks to protect from extended dissemination.

18.    Because the Debtors have no current employees who were "there" pre-petition and that would, therefore, have knowledge of the PII contained within the Debtors' books and records, the Trustee (through her Information Technology vendor) has used specialized software tailored to identifying patterns within e-discovery to identify at least some categories of PII—such as bank accounts, credit card numbers, tax identification numbers, and social security numbers—contained within the ESI on the hard drives storing the Preserved Servers and the Scanned Physical Documents. Through this process, the Trustee has identified thousands of documents that contain potential PII.

---

[9] Different sources define PII differently. The Office of the United States Trustee ("**UST**") has adopted the White House Office of Management And Budget's broad definition of PII that information such as names, email accounts, etc. *See* Handbook for Chapter 7 Trustees at p. 5-22, 5-23; OFF. OF MGMT. & BUDGET, EXEC. OFF. OF THE PRESIDENT, M-17-12, MEMORANDUM FOR HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES 8 (2017), https://www.whitehouse.gov/sites/whitehouse.gov/files/omb/memoranda/2017/m-17-12_0.pdf ("[I]nformation that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual"). The Bankruptcy Code (albeit in the context of debtors' sales of consumers' PII), defines "PII" to include names, residential addresses, electronic addresses (including emails), telephone numbers tied to a physical residence, social security numbers, credit card account numbers, and other information that, when linked with these categories, could lead to a person's identification. *See* 11 U.S.C. § 101(41A). By contrast, the F.R.C.P. and the F.R.B.P.—which govern which documents and what information can be filed on a public docket—define the categories of PII that must be excluded from public filings more narrowly to include only birth dates, financial account numbers, taxpayer identification and social security numbers, and minors' names.

19.      However, while helpful, the forensic software was not a cure-all.  For example, the software does not detect PII recorded in an uncommon manner, nor can it detect forms unique to the Debtors on which sensitive information may be stored. Similarly, the forensic software cannot distinguish between PII that may be relevant, and PII that is not. The search results generated by the software can also be either over inclusive or under inclusive depending on the parameters used.[10]  Thus, while the Trustee's use of the forensic software has been very helpful to better understand the documents in her possession, the Trustee would still need to conduct a manual review of each document—a task which the Trustee estimates would entail significant costs and take many thousands of attorney hours.

20.      Finally, documents contained within the Remaining Physical Documents and the Remaining Devices, which have not been imaged or copied by the Trustee, cannot be scanned with forensic software (without significant additional cost).

**E.  The Trustee's Requested Relief**

21.      Accordingly, the Trustee requests that the Court adopt the Production Protocol, which provides that (as more fully stated therein):[11]

    a.  Upon receiving a document request seeking the Debtors' books and records, the Trustee shall:

        i.  Provide a response to that discovery request;

        ii.  Comply with that request within the applicable time-period and produce to the Requesting Party the Debtors' books and records in the manner in which the Trustee received them after having taken the following steps to protect PII:

---

[10] For example, former DC Solar employees' dates of birth may qualify as PII.  However, searching for and identifying a universe of dates of births within the Debtors' books and records is difficult. A search for every document bearing a date would obviously yield over-inclusive results (*e.g.,* virtually every email). By contrast, searching for documents that contain a date and a common reference to birthdays (such as "date of birth" or "DOB") would likely yield under inclusive results.
[11] Nothing in the Production Protocol shall limit or otherwise modify the Trustee's rights under the Federal Rules or Bankruptcy Rules, as applicable, unless explicitly stated therein.

1.  The Trustee shall remove documents that she has identified to potentially contain the potential PII from: (A) the Additional Scanned Documents, and (B) a copy of the hard drive on which the Preserved Servers are stored;

2.  The Trustee shall then produce: (A) those copies of the Additional Scanned Documents and the hard drive containing a copy of the Preserved Servers from which documents containing potential PII have been removed, and (B) a log identifying the metadata of each document that has been removed ("**_Potential PII Log_**"), and (C) a hard drive containing the Scanned Physical Documents to the Requesting Party;[12]

3.  The Trustee shall make the Remaining Physical Documents and the Remaining Devices available for the Requesting Party's inspection and copying in the location where they are currently stored and on a mutually agreeable date and time reached through a meet-and-confer process; and

4.  The Requesting Party shall be able to make reasonable requests for production of specific documents identified in the Potential PII log, provided that the request otherwise complies with the Federal Rules of Civil Procedure.

b.  Before receiving any production from the Trustee, the Requesting Party will execute the form attached as **Exhibit B**, titled Agreement to Comply With Order Establishing Protocol For Production of Documents, agreeing, pursuant to which the Requesting Party shall comply with the Proposed Protocol's requirements, including among other things, that the Requesting Party:

---

[12] The Scanned Physical Documents are PDFs created after the Raid and, therefore, lack sufficient metadata to compile a meaningful log.

i.  Maintain the Trustee-produced documents in a secure manner, including at least by: (1) storing physical documents in a secure physical location, such as a locked office where visitors are not left unescorted, (2) storing electronic documents on an encryption-protected medium, with encryption keys stored securely. and (3) in all cases, storing a copy of the Proposed Protocol with the documents produced by the Trustee;

ii.  Not disseminate any PII it receives from the Trustee without the Trustee's written consent;

iii.  Comply with all applicable rules, regulations, and statutes regarding the protection and non-dissemination of PII, including but not limited to F.R.C.P. 5.2 and F.R.B.P. 9037; and

iv.  In the event the Requesting Party receives a third-party's request for production that seeks documents that had previously been produced to the Requesting Party by the Trustee, the Requesting Party shall (1) notify the Trustee in writing within 3 business days of receiving such a request, and (2) object to said request for production, including (if necessary) by moving for a protective order, unless the third-party agrees to be bound by this Production Protocol by executing a copy of **Exhibit B** and providing that signed copy to the Trustee;

c.  The Trustee shall not be required to produce documents provided to her by third parties, but shall identify, timely as required under the Rules and upon proper discovery request, those parties that produced documents pursuant to a formal discovery; and

d.  A Requesting Party may, following a good faith conference with the Trustee's counsel, seek relief from the Production Protocol for good cause shown.

## Legal Discussion and Application

22.    The Federal Rules direct that discovery be conducted in a manner that secures the "just, speedy, and inexpensive determination of every action and proceeding." *See* F.R.C.P. 1.

Section 105 of the Bankruptcy Code authorizes the Court to issue "any order…necessary or appropriate to carry out" the Code's provisions in administering the Debtor's estate. And the Court's inherent power to control its docket empowers it to use substantial discretion to manage its cases so that they are resolved in an "orderly and expeditious" manner.[13] Indeed:

> Courts are invested with inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. This principle is well established and allows judges to exercise substantial discretion in controlling their dockets and to manage their cases and courtrooms effectively.[14]

23.     The Court's authority extends to matters involving discovery.  For example, albeit in a somewhat different context, the Nevada District Court adopted protocols to ensure that discovery proceeded in an efficient and appropriate manner under the circumstances.[15]

24.     And in this Bankruptcy Case, this Court implemented a discovery protocol to ensure the smooth function of the Trustee's Rule 2004 oral examination process due to the COVID-19 Pandemic.[16] The Trustee submits that this Court's R. 2004 protocol has been key to the Trustee's fulfillment (past and continuing) of her investigatory charge.

25.     Here, the Production Protocol will similarly allow the Court to ensure that the discovery process in each of the adversary proceedings, and the Trustee's responses to discovery requests from third parties, occurs smoothly, expeditiously, and in a manner that benefits the Trustee and the Requesting Parties, while conserving the Court's resources and protecting the confidentiality expectations of parties that have produced Designated Documents to the Trustee, and protecting PII.[17]

---

[13] *See In re First Magnus Fin. Corp.*, 403 B.R. 659, 663 (D.Ariz. 2009); *see also In re Willey*, 900 F.2d 263 (9th Cir. 1990); *Bote v. Derham-Burk*, 2018 WL 5454150, *2 (N.D. Cal. Oct. 29, 2018), aff'd, 2020 WL 1056217 (9th Cir. Mar. 4, 2020).

[14] *First Magnus,* 403 B.R. at 663 (notations and quotations omitted).

[15] *See In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614 (D. Nev. 1988).

[16] *See* Main Case, ECF Nos. 1734 & 1831.

[17] Federal courts seeking to protect PII—including as required by California law—have approved of responding parties making document production pursuant to a protective order.  *See e.g.*, *Kaupelis v. Harbor Freight Tools USA, Inc.*, Case No. SACV 19-1203 JVS(DFMX), ECF No. 139 (C.D. Cal. September 28, 2020) *citing Austin v. Foodliner*, *Inc.* 2018 WL 1168694, *2 (N.D. Cal. Mar. 6, 2018) ("[T]he predominant practice among courts in the Northern District of California is

26.     As it relates to the Designated Documents, Rule 26(b)(2)(C)(i) provides that the Court "must limit the frequency or extent of [otherwise permitted] discovery…if it determines that: the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Thus, courts often require parties seeking documents to obtain them from their source, rather than from a party that obtained those documents subject to confidentiality restrictions.[18] The Trustee requests the identical directive here.

27.     The Trustee submits that it is far more appropriate and efficient for parties to seek documents from their source, rather than a second-hand holder (*i.e.,* the Trustee). This would alleviate the need for the Trustee to litigate or be involved in litigating (likely more than once) the scope of the request or the production, the relevant confidentiality stipulations and designations, and any objections. The Trustee, parties to the adversary proceedings, the Court, third parties, and the third parties whose confidentiality interests are at stake, would all be better served by the Requesting Party seeking discovery of those documents from their source.

28.     As it relates to the Debtors' books and records, the Trustee has the choice of producing documents to the requesting party "as they are kept in the usual course of business" or of "organiz[ing] and label[ing] them to correspond with the categories in the request."[19] The Rule explicitly permits these requirements to be modified by Court Order, which complements this Court's broad authority to control the method of discovery (per this Court's inherent authority and authority to manage its own docket, F.R.C.P. 26, and 11 U.S.C. §105).

---

to allow pre-certification discovery of putative class members' confidential [contact] information subject to a protective order….") *quoting Salazar v. McDonald's Corp.*, 2016 WL 736213, *5 (N.D. Cal. Feb. 25, 2016).

[18] *See Giuffre v. Dershowitz*, 2021 WL 289366, *7 (S.D.N.Y. Jan. 28, 2021) (holding that defendant was required to seek discovery from their source, even though the materials were within the plaintiff's possession, where the materials were obtained by the plaintiff subject to a protective order); *see also Coffeyville Res. Refin. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 2008 WL 4853620, *2 (E.D. Ark. Nov. 6, 2008) ("[T]here is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party.").

[19] F.R.C.P. 34(b)(2)(E)(i); *see also Murphy v. Am. Gen. Life Ins. Co.*, 2014 WL 12564111, *2 (C.D. Cal. Sept. 12, 2014) ("Thus, Rule 34 gives the producing party a choice.").

29.     As an after-the-fact fiduciary, the Trustee satisfies her duty to produce documents "as they are kept in the usual course of business" by producing the Debtors' books and records in the manner which she received them.[20] The Trustee intends to proceed in this manner.

30.     Indeed, if the Trustee is required to engage in the vast effort of searching through the Debtors' books and records to, *inter alia*, identify and redact or otherwise protect all PII prior to being able to respond to a request pursuant to Rule 34, discovery and the applicable litigation progress would grind to a halt. Accomplishing that goal, even if it were possible, would take an enormous quantity of time and resources. Moreover, the Trustee would be well within her rights to object, pursuant to Rule 26, to any such request as disproportionate to the immense cost and effort she would incur to meet that burden.[21]

### Conclusion

31.     Thus, the Trustee seeks this Court's establishment of the Production Protocol. Through the Production Protocol:

---

[20] *See In re Dozier Fin., Inc.,* C/A No.: 4:18-1888-MGL-SVH, 3 (D.S.C. Apr. 23, 2019) ("[T]he [t]rustee may produce the material as it was provided and in the manner, it was kept in the ordinary course of business"); *In re Adelphia Commc'ns Corp.*, 338 B.R. 546, 552 (Bankr. S.D.N.Y. 2005) ("There is on-point authority for permitting access to warehoused documents of a bankruptcy debtor as being stored in the 'usual conduct of business.'"); *Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*, 222 F.R.D. 594 (E.D.Wis. 2004) (finding that the defendant corporation granted plaintiff access to the storage facility where the defendant's documents had been kept since having been placed there by a bankruptcy trustee, the defendant had satisfied its obligations to produce its records as kept in the usual course of business); *cf. Am. Gen. Life Ins. Co. v. Vistana Condo. Owners Ass'n*, 2014 WL 2041950 (D. Nev. May 16, 2014) (under Rule 34, a party could "produce documents as they were kept in the usual course of business, which . . . mean[t] producing the documents in exactly the manner in which they were produced to [the party] by third-parties").

[21] Rule 26 was amended to prevent disproportionate discovery obligations from frustrating the Federal Rules' goal of efficient and just resolution of litigants' claims. Rule 26 requires courts to consider, *inter alia*, the parties' relative access to relevant information and resources as well as whether the discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive…." F.R.C.P. 26(b)(1), (b)(2)(C).  Courts must also consider the burden that would be imposed by reviewing for relevance and confidentiality, privilege, and privacy concerns. *See* The Sedona Conference, The Sedona Principles, *Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Production*, 19 Sedona Conf. J. 1, 68 (2018).

- The Trustee complies with her Rule 34 obligation by producing materials in her possession, custody, and control as they were provided to the Trustee and thus as are kept in the usual course of business.

- PII is protected, both by the Trustee's diligence and screening and the Receiving Party's agreement to **Exhibit B**.

- A party is directed to seek discovery from the original source, even if the Trustee has already received those documents and items, so as not to implicate the Trustee's obligations of confidentiality to that third party and otherwise to maintain efficiency in the process. The Trustee will provide, upon proper request, a list of parties from whom she has received a production which is subject to confidentiality restriction, thus assisting any requesting party in an appropriate scope and manner.

- The Trustee's burden, and the Estate's cost and time, will be reduced without any meaningful sacrifice of another party's right to obtain documents and items.

- Judicial efficiency will be promoted, by limiting disputes before this Court through the proactive establishment of a fair process in line with the Rules.

- The Trustee "[a]dvance[s] the swift and efficient administration of the estate," an important public policy interest in bankruptcy cases.[22]

- The Trustee maintains the confidentiality, including privacy, interests of third parties.

### Notice

32.    The Trustee is filing this Motion in the Main Bankruptcy Case but recognizes the Motion and its requested relief's potential effect on a range of other parties. Thus, the Trustee will provide notice of this Motion and any notice of hearing to: (1) all parties on the service list; (2) all adversary defendants in pending adversary proceedings; (3) all parties in any of the following litigation: (i) *Solarmore Mgmt. Servs., Inc. v. Bankr. Est. of DC Solar Sols., Inc.*, No. 2:19-cv-02544-JAM-DB (E.D. Cal. filed Dec. 17, 2019); (ii) *Solar Eclipse Inv. Fund III, LLC v. CohnReznick LLP*, No. 19STCV45775 (Cal. Super. Ct. L.A. Cnty. filed Dec. 17, 2019).; (iii)

---

[22] *See In re Anderson*, 811 F.3d 166, 172 (4th Cir. 2016).

*Solar Eclipse Inv. Fund III, LLC v. Heritage Bank of Com.*, No. FCS 055801 (Cal. Super. Ct. Solano Cnty. filed Dec. 15, 2020); (iv) *Luria v. T-Mobile USA, Inc.*, No. 2020-019995-CA-01 (Fla. Cir. Ct. 11th Int'l Com. Arb. Ct. filed Sept. 1, 2020); (v) *Solar Eclipse Inv. Fund III, LLC v. CohnReznick, LLP*, No. 2020-027111-CA-01 (Fla. Cir. Ct. 11th Int'l Com. Arb. Ct. filed Dec. 16, 2020); (vi) *Alvarez & Marsal Valuation Servs., LLC v. Solar Eclipse Inv. Fund III, LLC,* No. 653123 / 2021 (Sup. Ct. N.Y. Cnty. 2020); (vii) *Solar Eclipse Inv. Fund VII, LLC v. T-Mobile USA, Inc.*, No. 2020-27234-CA-01 (Fla. Cir. Ct. 11th Int'l Com. Arb. Ct. filed Dec. 17, 2020); (viii) *Geico Corp. v. Solar Eclipse Inv. Fund III, LLC*, No. 2020-014247-CA-01 (Fla. Cir. Ct. 11th Int'l Com. Arb. Ct. filed July 6, 2020); (ix) *SunTrust Equip. Fin. & Leasing Corp. v. Int'l Speedway Corp.*, No. 6:19-cv-01624-CEM-LRH (M.D. Fla. filed Aug. 22, 2019); (4) other parties which the Trustee reasonably believes may be involved in litigation with the Trustee in the future; and (5) former employees of the Debtors, upon the Trustee's diligent search.

33.    The Trustee seeks an Order from the Court that this notice was proper.

**WHEREFORE**, the Trustee respectfully requests an Order (1) granting the Motion; (2) establishing the Production Protocol in substantially the form attached hereto as **Exhibit A;** (3) finding that notice was proper; and (4) granting all other relief this Court deems just and proper.

DATED: July 21, 2021.

**HARTMAN & HARTMAN**

/s/ *Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq.,
*Attorney for Trustee Christina W. Lovato*

**MELAND BUDWICK, P.A.**

/s/ *Michael S. Budwick*
Michael S. Budwick, Esq.
Solomon B. Genet, Esq.
James C. Moon, Esq.
Gil Ben-Ezra, Esq.
Kevin Paule, Esq.
*Attorneys for Trustee Christina W. Lovato*
*(All admitted pro hac vice)*

{02655778.DOCX.}15