| | |
|---|---|
| Rick R. Hsu (NV Bar No. 5374)<br>Maupin Cox LeGoy<br>4785 Caughlin Parkway<br>Reno, Nevada 89519<br>Tel.: (775) 827-2000<br>Fax: (775) 827-2185<br>Email: rhsu@mcllawfirm.com | Mark R. Owens (admitted *pro hac vice*)<br>Barnes & Thornburg LLP<br>11 South Meridian Street<br>Indianapolis, Indiana 46204<br>Tel.: (317) 236-1313<br>Fax: (317) 231-7433<br>Email: mark.owens@btlaw.com |

*Attorneys for Chip Ganassi Racing with Felix Sabates, Inc. and Chip Ganassi Racing LLC*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>DOUBLE JUMP, INC.,<br>　　　　　　　　　　Debtors.<br>■ Affects All Debtors<br>☐ Affects Double Jump, Inc.<br>☐ Affects DC Solar Solutions, Inc.<br>☐ Affects DC Solar Distribution, Inc.<br>☐ Affects DC Solar Freedom, Inc. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantively Consolidated with:<br><br>\| 19-50130-gs \| DC Solar Solutions, Inc. \|<br>\| 19-50131-gs \| DC Solar Distribution, Inc. \|<br>\| 19-50135-gs \| DC Solar Freedom, Inc. \|<br><br>**RESPONSE TO TRUSTEE'S STATUS REPORT [ECF NO. 2941]**<br><br>**Hearing Date: November 15, 2021**<br><br>**Hearing Time: 9:30 a.m.** |

　　　　Chip Ganassi Racing with Felix Sabates, Inc. and Chip Ganassi Racing LLC (collectively "CGR"), through undersigned counsel, pursuant to the Court's Order Setting Case Status Conference, ECF No. 2843 (the "Status Conference Order") and in advance of the November 15, 2021 status conference, file this response to the Trustee's Status Report, ECF No. 2941 (the "Status Report"). CGR files this response to address three issues referenced in the Status Report: (1) conduct of depositions in adversary cases; (2) the determination of the application of the Ponzi scheme presumption; and (3) ensuring protection of confidential information held by the Trustee. CGR recognizes that these matters will not be finally determined at the upcoming status

conference, but raises these issues now so that the Court can begin to consider them and establish an appropriate process by which to determine them.

    I.        Conducting Depositions in Adversary Cases

In the Status Report, the Trustee states she, within 45 days of the Status Conference or by December 30, 2021, "intends to file a motion to establish a protocol to safely, fairly, and efficiently, conduct remote depositions, as appropriate." Status Report, at 12-13. The Trustee also suggests that, as part of this protocol, for avoidance actions, "[t]he Trustee and a lead defendant would each question the witness, followed by non-lead defendant(s) with more limited time for follow-up questions." *Id.* at 13. For such actions, the Trustee will seek to "modify existing scheduling orders with the goal of maintaining as many as possible (if not all) on an identical track." *Id.*

The Trustee has been filing adversary complaints for more than two years, but only filed the adversary complaint against CGR[1] on November 2, 2021. *See generally* Adversary Complaint, ECF No. 2942. CGR recognizes the need to safely conduct depositions, and that depositions may need to be conducted remotely. CGR also recognizes that coordination will be required to arrange and conduct depositions. CGR is optimistic this can be achieved through cooperation of all interested parties. However, at this point, the adversary case against CGR is, quite literally, in its infancy. CGR cannot at this point determine what depositions will be necessary in its case, let alone how much time it would need to participate in any deposition, and whether "limited time for follow-up questions" would be a sufficient opportunity to participate in such a deposition. Nor will CGR be able to make such determinations before the Trustee files the deposition protocol on or before December 30, 2021. The same is true for all of the other 16-22

---

[1] The adversary complaint was filed against Chip Ganassi Racing with Felix Sabates, Inc.

2

additional adversary proceedings the Trustee anticipates filing between the filing of the Status Report and the end of Q1 2022.

For all these reasons, the understandable desire for efficiency in taking depositions must be balanced against the right of each party to have a full and fair opportunity to conduct and meaningfully participate in all depositions necessary in each case. As a result, the Court should wait to establish any deposition protocol until after all adversary proceedings are filed and all parties have had the opportunity to evaluate and determine the discovery necessary in each case, such that it is clear how a protocol would apply to each case. Furthermore, the Court should ensure that any protocol does not unduly limit the right of any party to take or participate in depositions.

II.     Determination of Application of Ponzi Scheme Presumption

This Court has previously recognized that "[a] finding that a debtor has operated a Ponzi scheme has consequences in bankruptcy cases." Order Regarding Proposed Order for Substantive Consolidation, ECF No. 2611, at 2. The Court was right, and the procedure for determining if and how the so-called Ponzi scheme presumption applies to Debtors or any specific adversary case should account for this.

The Trustee indicates that she intends to file "a motion for partial summary judgment in connection with the Ponzi Presumptions, likely on an omnibus basis in all avoidance adversaries." Status Report, at 14. In addition, she expects to utilize an expert witness regarding the "Ponzi Presumptions" and "intends to propose a uniform and consolidated process for deposition of the Trustee's expert(s) in support of the omnibus motion, with: (1) one defendant acting as a lead examiner; and (2) other defendants having an opportunity to examine. The Trustee will propose reasonable time limitations for questioning." *Id.* Very broadly, the Ponzi

scheme presumption, when it applies, allows actual intent to defraud to be presumed without requiring the traditional proof of actual intent to defraud. The determination and application of this presumption will be an important issue in every avoidance case and should be addressed in a way that reflects that importance to each and every case.

This can be done through a multi-step process determining first whether the presumption applies and then the extent to which it applies based on the facts of each case. Recently, courts have questioned the viability of the Ponzi scheme presumption. *See In re Bernard L. Madoff Investment Securities LLC*, 12 F.4th 171, 201-02 (2d Cir. 2021) (Menashi, J. concurring) (citing case law rejecting the Ponzi scheme presumption entirely and noting that it "obscures the essential distinction between fraudulent transfers and preferences."). The Court must determine both whether the Ponzi scheme presumption applies to Debtors at all, and then, whether it applies to specific transfers made by the Debtors. *In re DBSI, Inc.*, 593 B.R. 795, 821 (Bankr. D. Idaho 2018) ("the presumption does not relieve Trustee of the burden to show that the Transfers at issue were made in furtherance of the Ponzi scheme. […] the court must focus precisely on the specific transaction or transfer sought to be avoided in order to determine whether that transaction falls within the statutory parameters of an actually fraudulent transfer.") (internal citations omitted). Not all transfers are the same. While transfers to investors may be in furtherance of a Ponzi scheme such that the presumption applies, transfers pursuant to sponsorship agreements, such as the purported transfers to CGR alleged by the Trustee, are not in furtherance of the Ponzi scheme. *See generally* Adversary Complaint, ECF No. 2942.

The determination of whether, and to what extent, the Ponzi scheme presumption applies is a multi-step inquiry. Any omnibus motion regarding the presumption should only be brought after all adversary claims have been asserted and there has been sufficient time to conduct

necessary discovery in each adversary case. Furthermore, regardless of the Court's determination of the general applicability of the presumption based on an omnibus motion, the determination of whether any particular transfer(s) was actually fraudulent should still be made case-by-case, with each party able to fully develop and address the relevant facts in that case.

   III.   Document Production Protocol

The Status Report references the Trustee's Motion to Establish Protocol for Production of Documents, ECF Nos. 2796 and 2797, which seeks an order that the Trustee need not produce third-party confidential documents which she holds. CGR recognizes that it has a protective order in place with the Trustee which requires the Trustee to provide notice of an intended production of CGR's confidential information. However, notice, without a guarantee of a full opportunity for CGR to assert and be heard on its right to prevent the disclosure of its confidential information is insufficient to protect CGR's rights. CGR is optimistic that a protocol can be created which will allow all parties to engage in necessary discovery while providing the necessary protections for confidential information, but such protections should be included in the protocol itself to ensure the right to protect confidential information from disclosure.

   IV.   Conclusion

CGR looks forward to addressing the issues raised herein with the Court at the November 15, 2021 Status Conference, and thereafter as the Court deems appropriate.

Respectfully Submitted By:

*/s/ Rick R. Hsu*

Rick R. Hsu (NV Bar No. 5374)
Maupin Cox LeGoy
4785 Caughlin Parkway
Reno, Nevada 89519
Tel.: (775) 827-2000
Fax: (775) 827-2185
Email: rhsu@mcllawfirm.com

Mark R. Owens (admitted *pro hac vice*)
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Tel.: (317) 236-1313
Fax: (317) 231-7433
Email: mark.owens@btlaw.com

*Attorneys for Chip Ganassi Racing with Felix Sabates, Inc. and Chip Ganassi Racing LLC*

CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Maupin, Cox & LeGoy and that on the 8th day of <u>November, 2021</u>, I caused to be served a true and correct copy of the within document in the following manner:

    X  (ELECTRONIC SERVICE) Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

    ☐  (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

    ☐  (OVERNIGHT COURIER) By depositing a true and correct copy of the above referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

    ☐  (FACSIMILE) That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

                                                      <u>/s/Heather Motta</u>
                                                      Employee