Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. Bar No. 938777
mbudwick@melandbudwick.com
Solomon B. Genet, Esq. Bar No. 617911
sgenet@melandbudwick.com
Gil Ben-Ezra, Esq. Bar No. 118089
gbenezra@melandbudwick.com
Alexander E. Brody, Esq. Bar No. 1025332
abrody@melandbudwick.com
(all admitted pro hac vice)
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221

*Attorneys for Christina Lovato, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| In re<br><br>DOUBLE JUMP, INC.<br><br>Debtor. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Substantively Consolidated with:<br><br>| 19-50130-gs | DC Solar Solutions, Inc. |<br>\| 19-50131-gs \| DC Solar Distribution, Inc. \|<br>\| 19-50135-gs \| DC Solar Freedom, Inc. \|<br><br>**TRUSTEE'S *EX PARTE* APPLICATION TO EMPLOY MELISSA DAVIS AND KAPILAMUKAMAL, LLP AS EXPERT**<br><br>Hearing Date:  N/A<br>Hearing Time:  N/A |

Christina Lovato, chapter 7 trustee ("***Trustee***") for the substantively consolidated debtor estates of Double Jump, Inc., DC Solar Solutions, Inc., DC Solar Distribution, Inc., and DC Solar Freedom, Inc. (together, "***DC Solar***" or the "***Debtors***"), pursuant to 11 U.S.C. § 327(a) and F.R.B.P. 2014(a), respectfully requests that this Court enter an Order authorizing the employment of Melissa Davis and the firm of KapilaMukamal, LLP (together, the "***Applicant***") as a consulting expert who may be a testifying expert in the future if / when the Trustee decides it necessary and

1

appropriate. This Application is supported by the separately filed Declaration of Melissa Davis, and as permitted by F.R.E. 201, the Trustee also requests that the Court take judicial notice of the papers and pleadings on file in these consolidated cases.

## BACKGROUND

1. In late January and early February 2019, the Debtors filed their respective chapter 11 petitions. On March 22, 2019, each of the chapter 11 cases were converted to chapter 7 and the Trustee was appointed chapter 7 trustee for the (then) jointly administered estates. [ECF Nos. 439 and 440].

2. In accordance with her duties under 11 U.S.C. § 704, during the first two years of her appointment, Trustee Lovato worked extensively toward liquidating the tangible assets of the Debtors' estates. In addition, as part of her efforts to investigate the financial affairs of the Debtors, in late 2019 the Trustee sought and then obtained approval to employ the law firm of Meland, Russin & Budwick, now known as Meland Budwick, P.A. ("**MB**"), as special litigation counsel. [ECF No. 1502].

3. Following multiple Rule 2004 examinations, informal interviews of potential witnesses, and the review of many thousands of documents, the Trustee filed over 40 adversary proceedings seeking recovery of monies or property for the benefit of the Estates. Many of those adversary proceedings have been resolved, but some remain pending, and the Trustee intends to file additional adversary proceedings.[1]

4. On February 3, 2021 and July 20, 2021, the Court entered Orders extending the deadlines under 11 U.S.C. §§ 108 and 546. [ECF Nos. 2527 & 2786].

5. On March 1, 2021, the Court entered its Order for Substantive Consolidation Of The Chapter 7 Estates Of Double Jump, Inc., DC Solar Solutions, Inc., DC Solar Distribution, Inc., and DC Solar Freedom, Inc. [ECF No. 2613].

6. On November 15, 2021, this Court conducted a status conference on the pending adversary proceedings and matters related to Estate litigation. This Court has scheduled a further status conference on February 18, 2021; however, the Trustee intends to request that the Court

---

[1] The Trustee has entered into tolling agreements with a number of potential litigation targets.

2

continue the February status conference for one month and a time convenient for the Court for reasons which include challenges that have arisen from the COVID-19 pandemic as well as the practical need to allow the Applicant an opportunity to be retained and move forward performing its services.[2]

**Estate Litigation Targets**

7. As part of her duties, the Trustee has investigated potential Estate claims against a number of litigation targets sounding in avoidance and tort ("**Litigation Targets**").

8. Of these Litigation Targets, (1) many received pre-petition transfers of property of the Debtors; (2) some provided pre-petition professional and/or financial services for one or more of the Debtors; and (3) some fall into both categories.

9. As part of her investigation into each of the Litigation Targets, the Trustee has: (1) taken examinations pursuant to R. 2004; (2) reviewed documents provided pursuant to R. 2004; (3) reviewed documents obtained otherwise; and/or (4) interviewed witnesses informally.

10. The Trustee has had good faith settlement dialogue with nearly all the Litigation Targets. The Trustee has consensually resolved claims against many Litigation Targets, with Court approval for the benefit of creditors.[3]

**Retention of the Applicant**

11. In connection with the Trustee's claims against the Litigation Targets, and upon the recommendation of her professionals, the Trustee believes it is necessary and appropriate to engage the services of the Applicant as a consulting expert who may be a testifying expert in the future if / when the Trustee decides it necessary and appropriate, related to the forensic accounting and financial review of the fraud perpetrated by Jeff Carpoff through the Debtors,[4] the financial

---

[2] This Court can take judicial notice of COVID-19 and its effect on matters. *See George v. Diaz*, 2020 WL 2542020, *2 (N.D. Cal. May 19, 2020); *see also Herrera v. Aramark Servs., Inc.*, 2021 WL 304554, *2 (D. Nev. Jan. 29, 2021) ("[M]oving the discovery deadlines back as requested herein is a reasonable request as COVID-19 is continuing to slow down and/or impact almost every aspect of life and it has delayed completion of discovery on the current schedule despite the recent relaxing of certain restrictions and practices by both the Courts and state government.").
[3] *See generally*, docket.
[4] *See e.g., U.S.A. v. Carpoff*, 20-00017 (E.D.Ca.).

3

status of the Debtors at various points in time, and other services as the Trustee may reasonably request on related issues.

12. Ms. Davis is a Certified Public Accountant, a Certified Fraud Examiner, and a Certified Insolvency and Restructuring Advisor. Ms. Davis has significant expertise and experience in investigating, identifying, and opining on matters related to the attributes of Ponzi schemes and other fraudulent schemes. Ms. Davis also has significant expertise opining on matters related to an entity's value, loss of value, indebtedness, and damages.

13. For example, in January 2021 Ms. Davis was a panelist in a speaking engagement titled "*Distressed Valuation and Solvency Analysis*" for the FICPA 2021 Valuation, Forensic Accounting & Litigation Services Conference. And in October 2016, Ms. Davis was a panelist at the IWIRC 23rd Annual Fall Conference and spoke on "*The Dissection of a Ponzi Scheme*."

14. Further, Ms. Davis' publications include "*Fraudulent Transfer Claims in Claw Back Litigation*," published in the Law Journal Newsletters (The Bankruptcy Strategist) in May 2021 and "*An Insolvency Primer*" for the American Bankruptcy Institute, Commercial Fraud Committee in March 2021.

15. Further, Ms. Davis was the Co-Chair of the Commercial Fraud Committee for the American Bankruptcy Institute from 2016-2019 and on the Advisory Board for the Caribbean Insolvency Symposium from 2016-2021.

16. Generally:

> A Ponzi scheme is an arrangement whereby an enterprise makes payments to investors from the proceeds of a later investment rather than from profits of the underlying business venture, as the investors expected. The fraud consists of transferring proceeds received from the new investors to previous investors, thereby giving other investors the impression that a legitimate profit making business opportunity exists, where in fact no such opportunity exists.[5]

---

[5] *In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d 528, 531 (9th Cir. 1990).

17. Further, although Ponzi schemes are revealed by certain characteristics, such as payment of earlier investors with funds from later investors, "*the manner in which such schemes are conducted is limited only by the imagination of the perpetrator.*"[6]

18. Whether a fraudulent scheme is a Ponzi scheme is significant because of, among other things, the "*Ponzi Presumption*" of actual intent and insolvency.[7]

19. The Trustee intends to file a motion seeking to establish that Jeff Carpoff (possibly with others) perpetrated a Ponzi scheme through the Debtors. This may take the form of a motion for partial summary judgment in certain of the Trustee's adversary proceedings. Bankruptcy trustees often utilize expert witnesses to opine that a Ponzi scheme was perpetrated through an entity in support of a dispositive motion (and/or at trial). The Trustee anticipates that Ms. Davis may render an opinion informing whether a Ponzi scheme was perpetrated through the Debtors.

**Application To Employ**

20. Ms. Davis is a Partner at KapilaMukamal, LLP and her hourly rate for this engagement is $530. As appropriate, Ms. Davis uses other persons at her firm at an hourly rate in the range of $150-600. Out-of-pocket expenditures will be charged separately.

21. If the Applicant's retention is approved by this Court, the Trustee intends to file a motion seeking to establish monthly compensation procedures pursuant to 11 U.S.C. §§ 105 and 331 as has been implemented for certain other Estate professionals.[8] However, unless and until those procedures are approved, the Applicant will apply for compensation for professional services rendered and reimbursement of expenses incurred in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, guidelines established by the Office of the U.S. Trustee for Region 17 which includes the District of Nevada and any other applicable procedures and orders of the Court.

---

[6] *In re LLS Am., LLC*, 2013 WL 3305393, *7 (Bankr. E.D. Wash. July 1, 2013) (internal citation omitted), R&R adopted as modified, 2013 WL 4480667 (E.D. Wash. Aug. 19, 2013); *see also Hayes v. FPI Nursery Partners 1984-I*, 922 F.2d 844 (9th Cir. 1991) ("As this case shows, Ponzi schemes are protean, for the inventiveness of the human mind makes permutations in their form virtually infinite."); *In re Singh*, 2019 WL 1231146, *7-8 (B.A.P. 9th Cir. Mar. 14, 2019).
[7] *In re Nat'l Consumer Mortg., LLC*, 2013 WL 164247, *11 (D. Nev. Jan. 14, 2013).
[8] *See* ECF No. 2754.

5

22. The Trustee believes that the Applicant is well qualified to be retained for this specific engagement. Ms. Davis *curriculum vitae* is attached as **Exhibit 1**.

23. To the best of the Trustee's knowledge, Applicant does not (i) have any connection with the Debtors or the Estate, or (ii) represent any interest adverse to the Debtors or the Estate.

24. Ms. Davis separately filed declaration demonstrates that she and KapilaMukamal, LLP are disinterested as required by 11 U.S.C. § 327(a) and F.R.B.P. 2014.

25. The Trustee believes that the Applicant's retention is in the best interests of the Estate and its creditors.

26. The Trustee has previously retained GlassRatner Advisory & Capital Group, LLC dba B.Riley Advisory Services ("***B.Riley***") as an estate professional.[9] Since 2019, B.Riley has performed necessary and important consulting, advisory, and forensic services on a wide range of issues and matters for the benefit of the estate. While B.Riley certainly is qualified to effectively perform the services that will be performed by Ms. Davis, the Trustee in her business judgment believes it is prudent to retain Ms. Davis for, among other reasons, the need to avoid potentially protracted disputes and litigation with adversary defendants as to the scope and protection of confidential and privileged communications that the Trustee and her team have had with B.Riley professionals. The Trustee does not believe those communications are discoverable, but wishes to avoid any delay, expense, and distraction that may be created by one or more defendants for tactical reasons.

---

[9] ECF No. 611.

**WHEREFORE**, the Trustee respectfully requests the Court enter an Order authorizing the retention of the Applicant as of the date this Application is filed, and for all other relief this Court deems just and proper.

Dated: January 5, 2022

        **HARTMAN & HARTMAN**

        */s/ Jeffrey L. Hartman*
        Jeffrey L. Hartman, Esq.
        *Attorney for Trustee Christina W. Lovato*

        **MELAND BUDWICK, P.A.**

        */s/ Solomon B. Genet*
        Michael S. Budwick, Esq.
        Solomon B. Genet. Esq.
        Gil Ben-Ezra, Esq.
        Alexander E. Brody, Esq.
        *Attorney for Trustee Christina W. Lovato*
        *(All admitted pro hac vice)*