1   Jeffrey L. Hartman, Esq.                Michael S. Budwick, Esq. #938777 – *Admitted Pro Hac Vice*
2   Nevada Bar No. 1607                     Solomon B. Genet, Esq. # 617911 – *Admitted Pro Hac Vice*
    **HARTMAN & HARTMAN**          Gil Ben-Ezra, Esq. # 118089 - – *Admitted Pro Hac Vice*
3   510 W. Plumb Lane, Suite B             mbudwick@melandbudwick.com
    Reno, NV 89509                         sgenet@melandbudwick.com
4   T: (775) 324-2800                      gbenezra@melandbudwick.com
    F: (775) 324-1818                      **MELAND BUDWICK, P.A.**
5   notices@bankruptcyreno.com  3200 Southeast Financial Center
6                                          200 South Biscayne Boulevard
                                           Miami, Florida 33131
7                                          T: (305) 358-6363
                                           F: (305) 358-1221
8
9   Attorneys for Christina W. Lovato, Chapter 7 Trustee

10                    **UNITED STATES BANKRUPTCY COURT**
11                              **DISTRICT OF NEVADA**

12   In re                                  | Lead Case No.: BK-19-50102-gs
13   DOUBLE JUMP, INC.                      | (Chapter 7)
14              Debtor.                     | Substantively consolidated with:
15
16   _X_ Affects DC Solar Solutions, Inc.

| 19-50130-gs | DC Solar Solutions, Inc. |
| 19-50131-gs | DC Solar Distribution, Inc. |
| 19-50135-gs | DC Solar Freedom, Inc. |

     _X_ Affects DC Solar Distribution, Inc.
17   _X_ Affects DC Solar Freedom, Inc.
18   _X_ Affects Double Jump, Inc.

     **TRUSTEE'S RESPONSE IN OPPOSITION**
19   **TO NIXON'S MOTION TO WITHDRAW**
     **ITS PROOF OF CLAIM [ECF No. 2985]**
20

21          Cristina Lovato, chapter 7 Trustee ("***Trustee***") for the above captioned debtors ("***Debtors***"
22   or "***DC Solar***") in the above captioned bankruptcy cases ("***Bankruptcy Cases***"), files her response
23   ("***Response***") to Nixon Peabody LLP's ("***Nixon***") Motion for Leave to Withdraw Proof of Claim
24   34 ("***Motion***") [ECF No. 2985].  In support, the Trustee states as follows.
25
26
27
28

## I.    **Introduction**

On March 4, 2019, Nixon – a sophisticated law firm employing over 600 attorneys (28 specializing in bankruptcy) and represented by sophisticated bankruptcy counsel[1] – filed proof of claim 34-1 ("***Nixon POC***") in these Bankruptcy Cases. Nixon attached its account statement ("***Account Statement***") evidencing its attorney-client relationship with DC Solar and its alleged right to recover estate assets. For nearly three years, through its POC, Nixon has demanded an affirmative recovery of $111,223.95 from the DC Solar bankruptcy estate for the value of its unpaid pre-petition "legal services."

Nixon selected its forum and adjudicator. By filing its POC and seeking to obtain a recovery from the bankruptcy estate, Nixon submitted and consented to the Bankruptcy Court's equitable jurisdiction for adjudication of matters related to Nixon's legal services for its client (DC Solar).[2] Nixon also converted its claim, and related disputes, from legal to equitable, as part of the bankruptcy claims allowance process.

Nixon has long-known it was a litigation target of the Trustee. In December 2019, a group of creditors of the DC Solar estate (many of the Funds and their financial investors) sued Nixon for breach of fiduciary duty in Los Angeles state court.[3] In January 2020, the Trustee subpoenaed Nixon for R. 2004 examination and conducted the examination in September 2020.[4]

Yet all along, Nixon pursued its POC which demanded payment from the bankruptcy estate. While Nixon has contended for nearly three years through its POC that its legal services were valuable and that it deserves a recovery *from* the DC Solar estate, the Trustee disagrees. The truth is Nixon failed its attorney-client duties and performed its legal services poorly thereby warranting disallowance of the Nixon POC and liability *to* the DC Solar estate.

---

[1] *See* Nixon POC, Part 3 – identifying Robert Christmas, Esq. as Nixon's counsel. https://www.nixonpeabody.com/en/team/christmas-robert-n-h. *See also* www.NixonPeabody.com

[2] In the Motion, Nixon states that "DC Solar retained Nixon." Motion, pg. 2:17. Nixon required no engagement agreements with its Carpoff-related clients, and specificity of the actual identity of Nixon's Carpoff-affiliated clients is a key item in the Trustee's Complaint and will be the subject of discovery. Solely for purposes of this Response, the Trustee uses Nixon's nomenclature.

[3] *Solar Eclipse Inv. Fund III, LLC et al., v. CohnReznick LLP and Nixon Peabody, LLP, et al.*, Case No. 19STCV45775 (Ca. Sup. Ct.).

[4] ECF Nos. 1598, 2012, & 2136.

As a result, the Trustee responded to the Nixon POC by commencing an adversary proceeding ("***Nixon AP***") against Nixon (in effect, a counterclaim) ("***Nixon Complaint***").[5] The Trustee seeks disallowance of the Nixon POC, recovery of fraudulent transfers, and damages in tort. The Nixon POC and Complaint are each premised upon and center on Nixon's attorney-client relationship with and legal services provided to DC Solar.

After seeing the Trustee's Nixon Complaint – which details Nixon's knowledge of and participation in the Carpoff Ponzi Scheme – Nixon now seeks to withdraw its POC, demand a jury trial, withdraw the reference, and transfer this litigation to the Eastern District of California. Nixon regrets filing its POC, submitting to this Bankruptcy Court's equitable jurisdiction, and asking this Court to adjudicate the propriety of its attorney-client relationship with DC Solar including the value and quality of its "legal services." Nixon is forum shopping.

While Nixon concedes it is entitled to nothing from the DC Solar bankruptcy estate, it may not flee this Bankruptcy Court's jurisdiction. This Bankruptcy Court is precisely where Nixon voluntarily submitted the matter in the first place.

Nixon's Motion should be denied, or in the alternative granted with the proper "terms and conditions" per F.R.B.P. 3006, including this Court's retention of jurisdiction over the Nixon AP.

## II.    Nixon Asks for One Thing But Seeks Another

Nixon states that no matter how this Court rules on its Motion, Nixon will not seek a recovery from the DC Solar estates.[6] So why did Nixon file its Motion?

Nixon vaguely suggests that it wants to avoid "*obscuring the proper factfinder and forum.*"[7] But via a flurry of filings (the Motion, Demand for Jury Trial, Motion to Withdraw the Reference, and Motion to Transfer Venue),[8] Nixon makes clear the true relief it seeks: escape this Bankruptcy Court serving as factfinder and adjudicator over the matter.

But years after asking this Bankruptcy Court to adjudicate the value and propriety of its legal services to DC Solar to gain a recovery from the DC Solar bankruptcy estates, Nixon cannot

---

[5] Adv. Case No. 21-5072 (Bankr. D. Nev.). The Trustee's Nixon Complaint is ECF No. 1.
[6] Adv. ECF No. 18, ¶4.
[7] Motion, pg. 2:6.
[8] Adv. ECF Nos. 10, 14, 16, 17, 18; Main Case ECF No. 2985.

do this. *See Katchen v. Landy*, 382 U.S. 323, n.9 ("[H]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure.") (notations omitted); *In re Levoy*, 182 B.R. 827, 832 (B.A.P. 9th Cir. 1995) ("A creditor who offers proof of his claim, and demands its allowance, subjects himself to the dominion of the court, and must abide the consequences."); *In re PNP Holdings Corp.*, 184 B.R. 805, 806 (B.A.P. 9th Cir. 1995), aff'd, 99 F.3d 910 (9th Cir. 1996) ("A creditor cannot reasonably expect to invoke those portions of the bankruptcy code that allow it to recover on its claims and yet avoid the legal effect of other sections that do not work in its favor.").

In near-identical situations, courts instruct that the focus should be on the effect of Nixon's requested withdrawal of its Nixon POC, *e.g.,* the Court's equitable jurisdiction, entry of final judgments, and any jury trial right. *See In re GYPC, Inc.*, 2021 WL 5016129, *2 (Bankr. S.D. Ohio Oct. 25, 2021); *In re EXDS, Inc.*, 301 B.R. 436, 443 (Bankr. D. De. 2003); *In re The Academy, Inc.*, 289 B.R. 230, 232 (Bankr. M.D. Fla. 2003); *see also S.I.P.C. v. Bernard L. Madoff Inv. Sec. LLC*, 597 B.R. 466, 484 (Bankr. S.D.N.Y. 2019), leave to appeal denied sub nom. 612 B.R. 257 (S.D.N.Y. 2020) (titled as "*Memorandum Decision and Order Upholding Court's Equitable Jurisdiction*" and discussing the interplay of F.R.B.P. 3006, withdrawal of a proof of claim, and the bankruptcy court's equitable jurisdiction).[9]

Here, Nixon's requested withdrawal of its Nixon POC should not impact anything other than whether Nixon may receive a distribution from the bankruptcy estate. In *GYPC* and *EXDS*, the bankruptcy court so concluded and denied the motion to withdraw the claims. In *Academy*, the bankruptcy court so concluded and allowed withdrawal of the claim but retained jurisdiction. *Madoff* reasoned identically. This same should occur here.

---

[9] *See also In re Manchester, Inc.,* 2008 WL 5273289, n.12 (Bankr. N.D. Tex. Dec. 19, 2008) (allowing the movant to withdraw its proof of claim, but ruling that "the withdrawal of the Proofs of Claim does not restore any right to a jury trial the [the movant] may have otherwise enjoyed with respect to the claims pled in the Adversary Complaint."); *In re Barrett Ref. Corp.*, 221 B.R. 795, 814 (Bankr. W.D. Okla. 1998) (denying motion to withdraw proof of claim to reinstate creditor's rights that had been waived, ruling that withdrawal would serve no purpose since the waiver cannot be undone) (citing cases).

### III.  **Preliminary Points**

The Trustee makes a few preliminary points.

#### a.  The Trustee's Motion to Strike Nixon's Jury Trial Demand

Contemporaneous with this Response, the Trustee is filing her Motion to Strike Nixon's Jury Trial Demand ("***Motion to Strike***") in the Nixon AP. The Trustee will seek a hearing on her Motion to Strike on February 18, 2021, along with: (1) the Motion; (2) Nixon's Motion to Withdraw the Reference; and (3) and Nixon's Motion to Transfer; in each, the Trustee will also file responses. Some arguments in this Response are also contained in the Motion to Strike.

#### b.  Nixon's Motion Contains Misleading and Deceptive Statements

Nixon's Motion to Withdraw contains misleading and deceptive statements. While it would not be productive for the Trustee to correct them all, she notes the following:

- Nixon misleading cites F.R.B.P. 3006. The Rule states in relevant part as follows:

    A creditor can withdraw a claim as of right by filing a notice of withdrawal, except as provided by this rule. If after a creditor has filed a proof of claim … a complaint is filed against that creditor in an adversary proceeding, … the creditor may not withdraw the claim except on order of the court after a hearing … **The order of the court shall contain such terms and conditions as the court deems proper**. …

Nixon quotes some of F.R.B.P. 3006, and then omits the final sentence (bolded for emphasis). Motion, pg. 3:11-15. This sentence was key to the bankruptcy court's ruling in *Academy*.[10]

- Nixon claims at pg. 1:22-23 that "no discovery has taken place regarding the [Nixon POC]" and at pg. 3:1 & n.1 that the Trustee's R. 2004 examination of Nixon was "unrelated to [the Nixon POC]."[11]

Both statements are untrue. The Trustee obtained thousands of Nixon documents regarding

---

[10] *See Academy*, 289 B.R. at 234 ("In applying these principles to the facts of this dispute, it appears that the defendants should be permitted to withdraw their proofs of claim. For reasons known to them but unknown to the court, they no longer contend that the plaintiff owes them money. The court can see no benefit to anyone in preventing the defendants from withdrawing their proofs of claim and in somehow forcing them to continue with litigation to establish their rights to payment from the plaintiff when they no longer assert any rights to payment. **The real issue for the court, therefore, involves the terms and conditions upon which the court should condition the defendants' withdrawal of their proofs of claim [per F.R.B.P. 3006.]"**) (emphasis added).

[11] *See also* ECF No. 18, ¶3 ("The [Trustee's R. 2004] examination [of Nixon] did not involve any questions related to [the Nixon POC].

DC Solar.[12] The Trustee reviewed those and many other documents and examined Nixon's corporate representative under R. 2004. The Trustee identified Nixon's "professional services" for DC Solar as a topic in her R. 2004 notice. [ECF No. 2136, pg. 4.] The Trustee's examination and discovery focused on Nixon's professional services.[13] The Nixon POC seeks payment for those services. The Trustee and her professional team have invested enormous resources investigating Nixon's legal services. This led to the Trustee's filing of her Nixon Complaint.

- Nixon claims at pg. 2:17-18: "DC Solar retained Nixon … for the limited purpose of providing an opinion explaining the tax consequences of its investment funds," citing to the Trustee's Nixon Complaint at ¶ 50.

Nixon may try to assert this at trial (even though it is untrue). But to cite the Trustee's Nixon Complaint as support for a "limited purpose" representation is deceptive. The Nixon Complaint details the broad scope of Nixon's representation. *See e.g.,* Section V.E, titled "Nixon Undertook a Very Broad Scope of Representation of Solutions and Distribution" which runs from ¶¶ 73-124; *see also* ¶¶ 252, 264 & 278. And Nixon relies on ¶ 50 of the Complaint in support, even though it says nothing about a "limited purpose" of the engagement.

- Nixon claims at pg. 2:25-3:1: "no one has objected to or otherwise responded to [the Nixon POC]." *See also* pg. 1:22, 4:3-4.

This statement is untrue. The Trustee's Nixon Complaint objects to and seeks disallowance of the Nixon POC as directed by F.R.B.P. 3007(b).[14]

- Nixon claims at pg. 3:7-9: "The trustee's remaining claims – disallowance, fraudulent transfer and avoidance - … do not rely on the allegations otherwise made in the Trustee's … complaint.

---

[12] Nixon states it provided the Trustee with its "entire" file. Motion, pg. 3, n.1. The Trustee does not believe this is true, but the matter will be determined through discovery.

[13] The Trustee can submit the entire R. 2004 transcript with the Court. Rather than do so at this stage, the Trustee identifies the following questions, as examples, which she asked of Nixon: (1) "Was there ever an executed engagement letter between Nixon Peabody and Solutions?" Tr., pg. 38:16-17; (2) "What was the scope of Nixon's representation in connection with the Sherwin audit of Solutions?" Tr. Pg. 213:15-17; (2) "At any point, did Solarmore or Solutions communicate with a Nixon Peabody lawyer that dealt with tax court matters? Tr. Pg. 246:4-6; (3) "Have you ever seen a document that is a rerent agreement between DC Solar Distribution and DC Solar Solutions?" Tr. Pg. 219:1-3.

[14] See Nixon Complaint at ¶¶ 323-328; *see Academy*, 289 B.R. at 232 & 233–34.

This statement is untrue. The Trustee explicitly relies on her underlying allegations in these Counts, including those related to Nixon's wrongdoing as part of its legal services. *See* Nixon Complaint, ¶¶ 306-312, 313-319, 320-21, 323-328.

- At pg. 5:16-6:10, Nixon makes an argument based on a certain stipulation filed with this Court at ECF No. 1487. Nixon claims the Trustee *is* a defendant to an "*adversary proceeding*" in the Eastern District of California and *has consented* to a jury trial in District Court.

There was never an "adversary proceeding" in the E.D. of California. The Trustee is not a defendant to any action in the E.D. of California. And the Trustee did not consent to a jury trial (and even if she did consent, that would not entitle Nixon to one here).[15] Nixon fails to disclose that the stipulation at ECF No. 1487 was soon "*superseded and replaced*" by this Court's Order at ECF No. 1628, which reinstated the automatic stay *nunc pro tunc* to December 16, 2019. Nixon omits this Court's second Order, presumably because it undermines its arguments.[16]

**IV.    Time of Filing Rule - Nothing Changes if Nixon Withdraws its Proof of Claim**

The "time of filing" rule provides that a bankruptcy court's jurisdiction is determined as of the commencement of the adversary proceeding.[17] Nixon's Motion to withdraw its POC has no bearing on anything other than Nixon's ability to recover from the DC Solar bankruptcy estate. Nixon's consent and submission to this Court's equitable jurisdiction, including to this Court serving as the factfinder and entering final orders, along with the forfeiture of any jury trial right, became fixed on October 25, 2021 when the Trustee commenced the Nixon AP.

In *GYPC*, *EXDC*, and *Academy,* each defendant-claimant sought to withdraw its proof of claim to eliminate (actually or presumably) bankruptcy court jurisdiction, claiming that F.R.B.P.

---

[15] *Maring v. PG Alaska Crab Inv. Co., LLC*, 2007 WL 9775428, *5 (W.D. Wash. Oct. 2, 2007).

[16] In any event, that the Trustee permitted the estate to be sued nominally, *i.e.,* "in name only," in a suit having nothing to do with Nixon and that will have no effect on the estate, has no bearing on whether Nixon can withdraw its Nixon POC.

[17] *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004); *In re Crystal Cascades Civ., LLC*, 415 B.R. 403, n.8 (B.A.P. 9th Cir. 2009) ("Subject matter jurisdiction is determined as of the date the complaint is filed.") *citing In re Fietz*, 852 F.2d 455, n.2 (9th Cir. 1988); *see also Double Eagle Energy Servs., LLC v. MarkWest Utica EMG, LLC*, 936 F.3d 260, 263 (5th Cir. 2019) ("Although courts have not often considered the time-of-filing rule for cases related to bankruptcy, it applies to bankruptcy jurisdiction no less than it applies to diversity or federal question jurisdiction.") (citing cases).

3006 directed the outcome.[18]

Each court rejected the defendant-claimants' approach and arguments. *GYPC* and *EXDC*: (1) focused on the true matter at issue, *i.e.,* would anything change if the proofs of claim were withdrawn; (2) answered "no"; and (3) ruled that – since nothing would change – the motions to withdraw the proofs of claim would be denied since the defendant-claimants gain nothing by doing so. Both *GYPC* and *EXDC* relied on the "time of filing" rule in their analyses.[19]

*Academy* permitted withdrawal of the defendants' proofs of claim but held that the defendant had consented to bankruptcy jurisdiction by filing the claim. Therefore, withdrawal did not prevent the bankruptcy court from adjudicating the debtor's counterclaims.[20]

*Madoff* applied the time of filing rule in the context of a motion to withdraw the reference, rejecting that a bankruptcy court loses its equitable jurisdiction if the claim is withdrawn.[21]

Nixon states that it is "incorrect" that "withdrawal of the [Nixon POC] would impact Nixon Peabody's right to a jury trial." Motion, pg. 5:6-7. Thus, Nixon seemingly concedes that its effort to withdraw its Nixon POC changes nothing, suggesting Nixon is under the incorrect impression that it did not forfeit any right to a jury trial by filing its POC.

**V.    Nixon's Submission and Consent to the Bankruptcy Court's Equitable Jurisdiction and Core Jurisdiction, and Conversion of Claims from Legal to Equitable, Was Fixed When the Trustee Commenced the Nixon AP**

By filing its sworn POC with documentary support (the Account Statement), Nixon converted its claims from legal to equitable and consented and submitted to the Bankruptcy Court's equitable jurisdiction to consider, measure, and finally adjudicate the value and propriety of Nixon's attorney-client relationship with and legal services for DC Solar. The Trustee's Nixon Complaint centers on the same subject matter.

---

[18] *GYPC*, 2021 WL 5016129; *EXDS*, 301 B.R. 436; *Academy*, 289 B.R. 230.

[19] *GYPC*, 2021 WL 5016129, *3 & 4; *EXDS*, 301 B.R. at 440-41.

[20] *Academy*, 289 B.R. at 234-35.

[21] *Madoff*, 597 B.R. at 482 ("This case concerns the Court's equitable rather than its subject matter jurisdiction, but the same time-of-filing rule should apply.") & 485 ("However, the withdrawal of their claims did not negate the submission to the Court's jurisdiction by virtue of their filing the statements of claim which were met with the Trustee's adversary proceeding.").

1    The Trustee's claims are statutorily core.[22] In *Wellness*, the Supreme Court ruled that

2 litigants may consent to bankruptcy court jurisdiction and final orders on *Stern*-claims.[23] In *EPD*,

3 the Ninth Circuit, relying on *Wellness* and following long-standing Ninth Circuit law, ruled that

4 the filing of a proof of claim constitutes that consent.[24]

5    And Nixon's consent-to-jurisdiction includes its POC's subject matter and the supporting

6 evidence submitted. Relying on the Supreme Court ruling in *Langenkamp*, and its earlier decision

7 in *G.I. Indus.*, in 2010 the Ninth Circuit stated: "[i]f the creditor submits an agreement with its

8 proof of claim to provide evidentiary support of the claim, then that agreement is subject to the

9 bankruptcy court's jurisdiction."[25] Indeed, the bankruptcy court necessarily must inquire into that

10 agreement in order to adjudicate the claim, which is a core duty. Moreover, where a party consents

11 to the Court's equitable jurisdiction by filing a proof of claim, that jurisdiction is exclusive.[26]

12    The Nevada Bankruptcy Court, quoting the Ninth Circuit and citing to the Supreme Court,

13 stated the well-established rule as follows:

14    **When a creditor submits to bankruptcy court jurisdiction by filing a proof of claim in order to collect all or a portion of a debt, it assumes certain risks**. For

15    example, the creditor loses the right to a jury trial on any counter-claims filed by the debtor or the trustee. *See Langenkamp*, 498 U.S. at 44–45 []. In addition, the

16    creditor loses previously-held rights to assert "legal claims" against the debtor and his estate; bankruptcy "converts the creditor's legal claim into an equitable claim

17    to a pro rata share of the res." *Katchen*, 382 U.S. at 336 [].[27]

18

19 ---

[22] 28 U.S.C. §157(b)(2)(A), (B), (C), (H), and (O).

20 [23] *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015).

[24] *In re EPD Inv. Co., LLC*, 821 F.3d 1146, n.2 (9th Cir. 2016) ("Poshow filed a proof of claim on

21 behalf of the trust and has, accordingly, consented to bankruptcy court jurisdiction."); *see also In re PNP Holdings Corp.*, 184 B.R. 805, 806 (B.A.P. 9th Cir. 1995), aff'd, 99 F.3d 910 (9th Cir.

22 1996) ("It is well settled that a creditor consents to jurisdiction over related counterclaims by filing a proof of claim.") (citing cases); *Cf. Bertran v. Compton*, 2017 WL 1051185, *5 (D. Alaska Mar.

23 20, 2017) (applying *Wellness* & *EPD* to affirm bankruptcy court's ruling that debtor consented to

24 the bankruptcy court's jurisdiction when filing a voluntary petition in the bankruptcy court).

[25] *Ta Chong Bank Ltd. v. Hitachi High Techs. Am., Inc.*, 610 F.3d 1063, 1068 (9th Cir. 2010); *see

25 also Maring v. PG Alaska Crab Inv. Co.*, 2007 WL 9775428, *2 (W.D. Wash. Oct. 2, 2007).

[26] *Zinnerman v. Taylor-Wharton Cryogenics, LLC*, 2017 WL 5178795, *4 (S.D. Ala. Nov. 8, 2017)

26 ("The Supreme Court's holdings in *Granfinanciera* and *Langenkamp* leave no doubt that the

27 equitable jurisdiction of the bankruptcy court is exclusive when its jurisdiction has been invoked by the filing of a claim.") (citations omitted).

28 [27] *In re Smith*, 389 B.R. 902, 916 (Bankr. D. Nev. 2008) (emphasis added) *quoting Hong Kong and Shanghai Banking Corp., Ltd. v. Simon*, 153 F.3d 991, 997 (9th Cir.1998).

And finally, courts examining the near-identical fact pattern, *i.e.,* where a debtor's pre-petition professional files a proof of claim seeking unpaid fees from the debtor's estate and the estate responds with a suit to disallow the claim and seek damages in tort, equitable jurisdiction is properly in the bankruptcy court.[28]

The relevant jurisprudence is clear. This Bankruptcy Court has the exclusive equitable jurisdiction and authority to hear, consider, fact-find, and adjudicate the Nixon AP.

**VI.    F.R.C.P. 41(a)(2) Made Applicable By F.R.B.P. 7041**

F.R.B.P. 7041 makes applicable F.R.C.P. 41(a)(2) and states in relevant part that:

> [A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. **If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication**. …

(emphasis added).

By filing its POC, Nixon is the "plaintiff" and the Trustee is the "defendant" who brought counterclaims, *i.e.,* her Nixon Complaint.[29] In *Academy*, the bankruptcy court held that Rule 7041's plain language directs that an adversary-defendant that filed a proof of claim may withdraw its proof of claim only if the bankruptcy court maintains jurisdiction over the trustee's adversary proceeding seeking claim disallowance and other relief.[30]

Just like in *Academy*, Nixon may not withdraw its POC (*i.e.,* dismiss its claim) if it would eliminate this Court's jurisdiction and prevent this Court from adjudicating the Nixon Complaint (*i.e.,* the Trustee's counterclaim). For the avoidance of doubt, this Bankruptcy Court has exclusive jurisdiction over the Nixon AP regardless of whether Nixon withdraws its Nixon POC. But if Nixon asserts otherwise, Rule 7041 prevents Nixon from eliminating this Court's jurisdiction over

---

[28] *See e.g., In re CBI Holding Co., Inc*., 529 F.3d 432 (2d Cir. 2008); *In re McClelland*, 332 B.R. 90 (Bankr. S.D.N.Y. 2005); *In re Frost, Inc.*, 145 B.R. 878 (Bankr. W.D. Mich. 1992); *see also Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3d Cir.1994) (citing *Frost* for the proposition that "[a]n attorney's claim for pre-petition fees and the debtor's objections and counterclaims based on negligence and breach of contract clearly arise out of the claims allowance process.") (notations omitted).

[29] *In re Brosio*, 505 B.R. 903, 912 (B.A.P. 9th Cir. 2014) (citing cases); *Academy*, 289 B.R. at 233.

[30] *Academy*, 289 B.R. at 234.

the Nixon AP through withdrawal of its Nixon POC.

In fact, the Ninth Circuit has ruled that a party may not voluntarily dismiss its complaint and manipulate court filings to revive a lost jury trial right.[31] Here, too, Nixon cannot withdraw its Nixon POC, akin to a complaint, to revive a jury trial right or otherwise change the state-of-affairs that Nixon created when Nixon filed its Nixon POC in this Bankruptcy Court.

## VII. Nixon's Requested Relief Should Be Denied or Granted with Proper Terms and Conditions Attached

Nixon's Motion should be denied or granted with the proper terms and conditions.

F.R.B.P. 3006 "vests discretion in the court to grant, deny, or condition the request of a creditor to withdraw." *Smith & Smith v. Bowsmith, Inc*., 976 F.2d 737 (9th Cir. 1992). As to whether to grant or deny the motion, the issue centers on whether the Trustee will suffer legal prejudice, *i.e.,* "prejudice to some legal interest, some legal claim, or some legal argument."[32]

Legal prejudice is considered "on a case by case basis" and "the court should be sensitive to other considerations unique to the circumstances of each case."[33] Indeed, the Ninth Circuit in *Lowenschuss* instructs that in determining "legal prejudice," the court is to consider what interests are truly at stake.[34] And the Ninth Circuit has imposed an exception: that a party may not voluntarily dismiss an action (here, Nixon's requested withdrawal of its POC) to manipulate the situation and revive a forfeited jury trial right.[35]

As to the second part of Rule 3006 (*i.e.,* conditioning the creditor's request on "proper" terms and conditions), the standard is whether there is "actual prejudice or harm."[36]

The Trustee will suffer prejudice (legal and/or actual) if Nixon's withdrawal of its POC

---

[31] *Koerner v. Aetna U.S. Healthcare, Inc*., 92 F. App'x 394, 396 (9th Cir. 2003) *citing Russ v. Standard Ins. Co.*, 120 F.3d 988, 990 (9th Cir.1997).

[32] *In re Lowenschuss*, 67 F.3d 1394, 1399 (9th Cir. 1995); *Westlands Water Dist. v. U.S.*, 100 F.3d 94, 97 (9th Cir. 1996).

[33] *In re Varona*, 388 B.R. 705, 727 (Bankr. E.D. Va. 2008) (quotations omitted).

[34] 67 F.3d at 1400.

[35] *Koerner v. Aetna U.S. Healthcare, Inc*., 92 F. App'x 394, 396 (9th Cir. 2003) ("The district court found that the purpose of [plaintiff]'s motion to dismiss was to negate a magistrate's prior order denying his untimely demand for a jury trial by refiling his claim in state court. The court did not abuse its discretion in denying [plaintiff]'s motion.").

[36] *In re Kaiser Grp. Int'l, Inc*., 272 B.R. 852, 856 (Bankr. D. Del. 2002) (citing cases).

alters the jurisdictional landscape, any jury trial right, this Court's fact-finding authority, or this forum. This Court should either deny the Motion or impose the condition that nothing changes other than Nixon will not recover from the DC Solar estate.

### A.  Nixon's Claimed Reason for its Motion

One factor in this Court's F.R.B.P. 3006 discretionary analysis is the adequacy of the movant's explanation for seeking withdrawal.[37] In its Motion, Nixon states that it seeks withdrawal of its Nixon POC because:

> Nixon Peabody has no expectation that it will ever recover on its claim. Nor does Nixon Peabody believe it would be an efficient use of the parties' or the Court's time and resources to litigate over the unpaid fees out of which the proof of claim arose. And inclusion of such claims in the adversary case **risks clouding the issues and obscuring the proper factfinder and forum.** Nixon Peabody thus moves to withdraw its claim against the Estate.

Motion, pg. 2:2-7 (emphasis added). But there are no "risks" of issues being clouded or the factfinder/forum being obscured: this Bankruptcy Court is the factfinder and forum. Nixon's withdrawal of its POC will not create meaningful efficiencies, as the thrust of the Trustee's Nixon Complaint (whereby the Trustee seeks a recovery from Nixon related to its poorly performed services) is identical to the thrust of the Nixon POC (whereby Nixon seeks a recovery from the estate related to its alleged quality services). At center in each is Nixon's attorney-client relationship with and legal services provided to DC Solar.

Nixon's vague references to "*clouding*" and "*obscuring*" are misdirection – and itself an effort to cloud and obscure - that favor denying or conditioning withdrawal. Nixon fails to state its true goal: escape from the Bankruptcy Court.

### B.  If the Nixon POC is Withdrawn, it Should be With Prejudice

If the Nixon POC is withdrawn, it should be with prejudice. After all, Nixon has changed its mind and no longer wishes to pursue a recovery from the DC Solar bankruptcy estates or has otherwise concluded and conceded that it is entitled to none.[38]

---

[37] *EXDS,* 301 B.R. at 438 *citing Kaiser*, 272 B.R. at 855.
[38] ECF No. 17 & 18; *Academy*, 289 B.R. at 234.

12

### C. Nixon Waived its Attorney-Client and Work-Product Privileges – If Anything Changes by Withdrawal of the Nixon POC, the Trustee Suffers Prejudice

Attorney Christmas – a senior partner in Nixon's bankruptcy department – represented Nixon in the filing of its Nixon POC and asserted under oath his personal knowledge of the facts alleged in the Nixon POC. To have done so, Attorney Christmas was required to perform due diligence. Attorney Christmas is a fact witness and any "work product and attorney client privileges [are] waived as to the facts alleged in the proof of claim." *See In re Rodriguez*, 2013 WL 2450925, *6 (Bankr. S.D. Tex. June 5, 2013).

This is meaningful. For example, Attorney Christmas identified in the Nixon POC that Nixon categorized DC Solar as "*Client No: 059202*." Nixon POC, pg. 4. However, Nixon lumped in this same client-category other entities (non-debtors) with interests adverse or potentially adverse to DC Solar. *See e.g.,* **Composite Exhibit 1.**[39] These conflicts relate to Nixon's breach of duties and failure to comply with the Rules of Professional Conduct. These matters also relate to the scope and breadth of Nixon's retention of DC Solar, a matter disputed by Nixon and which will be a focal point of discovery and this litigation. The Trustee also intends to take discovery regarding which of Nixon's clients – with differing interests – owed which monies and paid which bills, and how Nixon tracked these obligations and payments.

Because Attorney Christmas is a fact witness, the Trustee will depose him. Further, Nixon's filing of the Nixon POC is a "subject matter waiver," *i.e.,* a waiver of the subject matter contained in the Nixon POC.[40] If Nixon's withdrawal of its POC affects its waiver of privilege, the Trustee would suffer legal prejudice and actual prejudice.[41]

### D. Nixon is Forum Shopping

Nearly three years ago Nixon asked this Bankruptcy Court to decide the value and propriety

---

[39] *See also* Nixon Complaint, ¶¶ 56 & 58.

[40] *See generally Samsung SDI Co. v. Matsushita Elec., Ind.,* 2007 WL 4302707 (C.D. Cal. Jan. 24, 2007) (where a party submits a legal document to the U.S. Patent and Trademark Office to support its claim for affirmative relief, the waiver of privilege is for "the scope of the subject matter contained" in the submission) (citing cases).

[41] *See In re Sizzler Restaurants Int'l, Inc*., 262 B.R. 811, 822-23 (Bankr. C.D. Cal. 2000) (refusing to allow dismissal of the plaintiff's complaint finding the defendant would suffer legal prejudice because any future malicious prosecution claim would be undermined).

of its legal services to and attorney-client relationship with DC Solar and award it a recovery from the DC Solar bankruptcy estate. Nixon submitted evidentiary support and swore to the truth of its right to recover and the basis for that recovery. The Trustee met Nixon's request with her Nixon Complaint (a counterclaim), agreeing that this Bankruptcy Court has core jurisdiction and is the adjudicator, factfinder, and forum.

Now, Nixon seeks to manipulate the forum for this dispute by seeking to withdraw its POC to support its motions to withdraw the reference and transfer. This is improper,[42] and, if granted, actually and legally prejudices the Trustee.

Strong bankruptcy policy favors centralization of disputes before the Bankruptcy Court to ensure an orderly and expeditious administration of the estate.[43] The estate will suffer actual prejudice from the added expense if Nixon may forum-shop and move the Nixon AP to California. For example, the Trustee is in Nevada, her general counsel is in Nevada, and the Trustee would require additional professionals (such as California local counsel) to litigate in California. And "having the same judge preside over both adversary proceeding and the main bankruptcy will result in a more efficient administration of the bankruptcy case."[44]

This Bankruptcy Court has been presiding over these Bankruptcy Cases and adversary proceedings for years, addressing overlapping factual and legal issues. A transfer to another court will "undermine the uniform administration of bankruptcy proceedings."[45] This comes with delay and expense, which is actual prejudice to the Trustee and the estate.

E.  Nixon Should Not be Shielded from This Court's Role, Expertise, and Rulings

This Court has presided over these Bankruptcy Cases for years, ruling on facts and law on a wide range of issues such as: (1) substantive consolidation; (2) claims allowance; (3) review over

---

[42] *Cf. Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) (Courts "can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case," and "[i]f the plaintiff has attempted to manipulate the forum, the court should take this behavior into account.").

[43] *In re Eber*, 687 F.3d 1123, 1131 (9th Cir. 2012); *see also Katchen v. Landy*, 382 U.S. 323 (1966) ("[A] chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period ...") (citations omitted).

[44] *Vlastelica v. Novoselsky*, 2015 WL 6393968, *3 (E.D. Wis. Oct. 21, 2015).

[45] *In re Know Weigh, LLC*, 2015 WL 13917268, *5 (C.D. Cal. Aug. 14, 2015) (citing cases).

the resolution of complex causes of action including tort claims against financial institutions and professionals; (4) discovery disputes; (5) competing interests in thousands of MSGs; and (6) other interactions between and among parties in interest.[46] This Court has developed an expertise in these matters and an advanced understanding of these Bankruptcy Cases.[47] For this Court to be supplanted as the adjudicator would constitute legal and actual prejudice.

F.  The Nixon AP Is a Core Proceeding For Which This Bankruptcy Court Can Enter Final Orders

This Nixon AP is a statutorily core proceeding for which Nixon has consented to final orders by this Bankruptcy Court (as has the Trustee).[48] If Nixon were permitted to alter that and manipulate jurisdiction for this Nixon AP by withdrawing its POC, the Trustee would suffer legal and actual prejudice.[49] For example, this Bankruptcy Court may now issue final judgments. *De novo* review would cause the Trustee to incur additional costs and delay. Accordingly, the Motion should be denied, or approval conditioned on the retention of jurisdiction and core status.

G.  This Court Should Retain Its Jurisdiction

Nixon claims in its Motion that it is "incorrect" that "withdrawal of the [Nixon POC] would impact Nixon Peabody's right to a jury trial." Motion, pg. 5:6-7. As set forth above, jurisdiction over the Nixon AP is determined as of the time of filing the Nixon Complaint.

If this Court does not deny the Motion, the Court can and should condition withdrawal of the Nixon POC on the retention of this Court's jurisdiction, as in *Academy*.[50] Also, in *Kaiser*, the debtor sued parties that had filed proofs of claim, and the defendant-claimants responded by moving to withdraw their claims under F.R.B.P. 3006.[51] Citing the Supreme Court in *Langenkamp*,

---

[46] *See generally* docket; *see also, e.g.,* Main Case ECF Nos. 773, 930, 1391, 1471, 1933, 1958, 2019, 2020, 2181, 2217, 2222, 2313, 2444, 2481, 2613, 2790, 2961, 3040 & 3054.

[47] *See* docket; *see also Picard v. Greiff*, 617 B.R. 198, 207 (S.D.N.Y. 2020) (denying motion to withdraw reference, in part, because the bankruptcy court had developed significant expertise).

[48] 28 U.S.C. § 157(b).

[49] *Madoff*, 597 B.R. at 483-84 (noting the dangers of manipulating jurisdiction); *see also Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 757 (9th Cir. 1999) ("The integrity of the judicial process is undermined if a party, unhappy with the trial court's rulings or anticipating defeat, can unilaterally void the entire proceeding and begin anew in a different forum.").

[50] 289 B.R. at 234-35.

[51] 272 B.R. at 856.

and reasoning that the defendant-claimants "voluntarily subjected themselves to the jurisdiction of the Court through the filing of their claims," the *Kaiser* bankruptcy court found it proper to maintain its jurisdiction while allowing the claims to be withdrawn.

F.R.B.P. 3006 is guided by Rule 41, and as stated above: (1) Rule 41(a)(2)'s plain language directs that the Court maintain jurisdiction; (2) the Ninth Circuit in *Koerner* refused to allow Rule 41 to revive a forfeited jury trial right; (3) the Trustee has invested enormous resources investigating the subject matter of the Nixon POC; (4) Nixon's "*clouding*" and "*obscuring*" explanation is vague and not credible; and (5) the Trustee would be prejudiced.[52] These factors direct denial of the Motion, or the proper terms and conditions that nothing changes other than Nixon is entitled to no recovery on account of its Nixon POC.

## CONCLUSION

For the foregoing reasons the Court should deny Nixon's Motion or condition it on the retention of jurisdiction over the Nixon AP as a core matter over which this Court may enter final orders and serve as factfinder.

DATED: January 14, 2022.

**HARTMAN & HARTMAN**

*/s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq.
*Attorney for Plaintiff Christina W. Lovato*


**MELAND BUDWICK, P.A.**

*/s/ Michael S. Budwick*
Michael S. Budwick, Esq.
Solomon B. Genet, Esq.
Gil Ben-Ezra, Esq.
*Attorneys for Plaintiff Christina W. Lovato*

---

[52] *EXDS*, 301 B.R. at 438.

16

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

I certify that on January 14, 2022, I caused to be served the above-named document as indicated below:

a.  Via ECF upon the parties listed on the attached <u>Exhibit 2;</u>

4

b.      Via Direct Email to  Louis M. Bubala, Esq., at lbubala@kcnvlaw.com;

5

Eric  Macmichael,  Esq.  at  emacmichael@keker.com;  Elliot  R.  Peters,  Esq.  at epeters@keker.com  and:

6

7

mara@bayareadrainage.com;
taxinfo@tax.cccounty.us;

8

deboltcivil@earthlink.net;
jqyu1089@yahoo.com;

9

lesterray420@gmail.com;
rbpainting66@yahoo.com;

10

cromero@sfandb.com;
21techlife@gmail.com;

11

waterbilling@cityofmartinez.org;
fredsfloorcovering@gmail.com;

12

ctrent@msconstruction.com;
taxcollector@countyofnapa.org;

13

mail@nativesonslandscaping.com;
shaunrang@sbcglobal.net;

14

ttccc@solanocounty.com;
pacific_coast_wp@att.net;

15

ar@alpinepowersystems.com;
billing@kmhsystems.com;

16

ca@ahern.com;
jansen.carl9@gmail.com;

17

pmaddox@iscmotorsports.com;
erossi@cedantioch.com;

18

rachel.larrenaga@chargepoint.com;
jworthen@ganassi.com;

19

dcook@kansasspeedway.com;
jfarris@ejmjets.com;

20

troyv@pacificmetalfab.net;
erivera@talladegasuperspeedway.com;

21

mquall@quallcardot.com;
ben.nelson@wexinc.com;

22

23

I declare under penalty of perjury that the foregoing is true and correct.

24

DATED: January 14, 2022.

25

/s/ Michael S. Budwick

26

Michael S. Budwick, Esq.

27

28



NIXON PEABODY LLP
ATTORNEYS AT LAW

100 Summer Street
Boston, Massachusetts 02110-2131
(617) 345-1000
FAX: (617) 345-1300

December 21, 2012

Solarmore Investments, Inc.
395 Central Avenue
Pittsburg, CA  94565

Attention:  Mr. Jeff Carpoff

      Re:   <u>Legal Advice</u>

FOR FEES FOR PROFESSIONAL SERVICES
RENDERED through December 21, 2012 relating to
USB DC Solar Fund II, LLC Solar Transaction:         <u>$50,000.00</u>

## NIXON PEABODY LLP

### WIRE TRANSFER INSTRUCTIONS

| | |
|---|---|
| **Bank Name:** | JPMorgan Chase Bank |
| | Rochester, NY 14643 |
| **ABA Routing #:** | 021 000 021 |
| **Account Number:** | 938761475 |
| **SWIFT Code** | CHASUS33 |
| **Acct. Name:** | Nixon Peabody LLP |
| **Client Matter:** | 059202-3 (DC Solar) |

14260648.2

059202-3

**COMPOSITE EXHIBIT 1** NP0017216

Nixon Peabody LLP
100 Summer Street
Boston, MA 02110-2131
617-345-1000

March 10, 2015

Solarmore Management Services, Inc.
135 Mason Circle
Concord, CA 94520

Attention: Mr. Carl Jansen

Re: <u>Legal Advice</u>

FOR FEES FOR PROFESSIONAL SERVICES
RENDERED through March 10, 2015 relating
to Solar Eclipse Investment Fund XIV, LLC Solar
Transaction:                                                          $55,000.00

## NIXON PEABODY LLP

### WIRE TRANSFER INSTRUCTIONS

### <u>DOMESTIC WIRES</u>

| | |
|---|---|
| BANK: | JPMorgan Chase Bank |
| BANK ADDRESS: | One Chase Square, Rochester, New York 14643 |
| ABA NUMBER: | 021 000 021 |
| ACCOUNT NUMBER: | 938761475 |
| CLIENT MATTER: | 059202-5 (DC Solar/East West II) |

4832-1157-0466.1

NP0064859

Nixon Peabody LLP
100 Summer Street
Boston, MA  02110-2131
617-345-1000

December 28, 2016

Solar Eclipse Investment Fund XXVII, LLC
c/o Halo Management Services LLC
2905 Lake East Drive, Suite 150
Las Vegas, NV 89117

Attention:  Mr. Rosselli

Re:    Legal Advice

FOR FEES FOR PROFESSIONAL SERVICES
RENDERED through December 28, 2016 relating
to Solar Eclipse Investment Fund XXVII, LLC (Armstrong) Solar
Transaction:                                    $70,000.00

## NIXON PEABODY LLP

### WIRE TRANSFER INSTRUCTIONS

### DOMESTIC WIRES

BANK:                     JPMorgan Chase Bank

BANK ADDRESS:             One Chase Square, Rochester, New York 14643

ABA NUMBER:               021 000 021

ACCOUNT NUMBER:           938761475

CLIENT MATTER:            059202-19( (DC Solar/Fund XXVI I(Armstrong))

4821-1348-0255.1

NP0109341

Nixon Peabody LLP
100 Summer Street
Boston, MA  02110-2131
617-345-1000

May 1, 2017

Halo Management Services LLC
2905 Lake East Drive, Suite 150
Las Vegas, NV  89107

Attention:  Mr. Peter Roselli

Re:    <u>Legal Advice</u>

FOR FEES FOR PROFESSIONAL SERVICES
RENDERED through May 1, 2017 relating
to Solar Eclipse Investment Fund XXIX, LLC
(Geico III) Solar Transaction:                    <u>$67,500</u>

## NIXON PEABODY LLP

## WIRE TRANSFER INSTRUCTIONS

## <u>DOMESTIC WIRES</u>

| | |
|---|---|
| BANK: | JPMorgan Chase Bank |
| BANK ADDRESS: | One Chase Square, Rochester, New York 14643 |
| ABA NUMBER: | 021 000 021 |
| ACCOUNT NUMBER: | 938761475 |
| CLIENT MATTER: | 059202-20 (DC Solar XXIX/Geico III) |

059202-12

4850-7843-7447.1

NP0117968

**Mailing Information for Case 19-50102-gs**

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **SETH J. ADAMS**    sadams@woodburnandwedge.com, mlopez@woodburnandwedge.com
- **GREG ADDINGTON**    greg.addington@usdoj.gov, christi.dyer@usdoj.gov;danielle.bleecker@usdoj.gov
- **MEGAN M. ADEYEMO**    madeyemo@gordonrees.com, asoto@grsm.com
- **SALLIE B ARMSTRONG**    sarmstrong@mcdonaldcarano.com, mhale@mcdonaldcarano.com
- **SIMON ARON**    saron@wrslawyers.com
- **BRETT A. AXELROD**    baxelrod@foxrothschild.com, pchlum@foxrothschild.com;mwilson@foxrothschild.com
- **GIL BEN-EZRA**    gbenezra@melandbudwick.com, ltannenbaum@melandbudwick.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **ALEXANDER E. BRODY**    abrody@melandbudwick.com, ltannenbaum@melandbudwick.com;ltannenbaum@ecf.courtdrive.com;mrbnefs@yahoo.com
- **OGONNA M. BROWN**    OBrown@lrrc.com, nlord@lewisroca.com,ogonna-brown-4984@ecf.pacerpro.com,dberhanu@lewisroca.com,ombcalendar@lewisroca.com,jhess@lewisroca.com,klopez@lewisroca.com
- **LOUIS M. BUBALA**    lbubala@kcnvlaw.com, cdroessler@kcnvlaw.com;bsheehan@kcnvlaw.com
- **MICHAEL S. BUDWICK**    mbudwick@melandbudwick.com, ltannenbaum@melandbudwick.com;ltannenbaum@ecf.courtdrive.com
- **CHRISTOPHER PATRICK BURKE**    attycburke@charter.net
- **CANDACE C CARLYON**    ccarlyon@carlyoncica.com, CRobertson@carlyoncica.com;nrodriguez@carlyoncica.com;9232006420@filings.docketbird.com;Dcica@carlyoncica.com
- **JEFFREY D. CAWDREY**    jcawdrey@gordonrees.com
- **ROBERT M. CHARLES**    rcharles@lewisroca.com, BankruptcyNotices@lewisroca.com,robert-charles-1072@ecf.pacerpro.com
- **DAVID ERNESTO CHAVEZ**    chavezd@ballardspahr.com, LitDocket_West@ballardspahr.com
- **DAWN M. CICA**    dcica@carlyoncica.com, nrodriguez@carlyoncica.com;crobertson@carlyoncica.com;dmcica@gmail.com;dcica@carlyoncica.com;tosteen@carlyoncica.com;3342887420@filings.docketbird.c
- **WILLIAM D COPE**    william@copebklaw.com, r64042@notify.bestcase.com
- **EDWARD A. CORMA**    ecorma@cooperlevenson.com
- **TIMOTHY S. CORY**    tcory@crdslaw.com, creade@crdslaw.com
- **TRICIA M. DARBY**    tricia@darbylawpractice.com, kad@darbylawpractice.com
- **MICHAEL A DIGIACOMO**    saltlakedocketclerk@ballardspahr.com;paredesr@ballardspahr.com;hartt@ballardspahr.com
- **JAMIE P. DREHER**    jdreher@downeybrand.com, mfrazier@downeybrand.com;reno@downeybrand.com
- **VAN C. DURRER**    van.durrer@skadden.com
- **RICHARD W. ESTERKIN**    resterkin@morganlewis.com
- **LARS EVENSEN**    lkevensen@hollandhart.com, vlarsen@hollandhart.com;blschroeder@hollandhart.com;intaketeam@hollandhart.com
- **THOMAS H. FELL**    tfell@fclaw.com, clandis@fclaw.com;CourtFilings@fennemorelaw.com
- **ASHLEY N. FELLONA**    ashley.fellona@saul.com, Janice.Mast@saul.com
- **MARTIN L FINEMAN**    martinfineman@dwt.com, ExternalForwardUSBC_NEVADA@dwt.com
- **ELIZABETH A. FLETCHER**    efletcher@fletcherlawgroup.com, edendary@fletcherlawgroup.com
- **ROBERT C. FOLLAND**    rob.folland@btlaw.com
- **KIAH T. FORD**    chipford@parkerpoe.com
- **FRANCHISE TAX BOARD (cc)**    BKClaimConfirmation@ftb.ca.gov, kevin.hutty@ftb.ca.gov
- **DONALD L. GAFFNEY**    dgaffney@swlaw.com
- **SOLOMON B. GENET**    sgenet@melandbudwick.com, ltannenbaum@melandbudwick.com;ltannenbaum@ecf.courtdrive.com
- **FRANK C. GILMORE**    fgilmore@rssblaw.com, mdavis@rssblaw.com
- **MICHAEL J GOMEZ**    mgomez@frandzel.com, dmoore@frandzel.com
- **REW R. GOODENOW**    ecf@parsonsbehle.com, rgoodenow@parsonsbehle.com
- **TALITHA B. GRAY KOZLOWSKI**    tgray@brg.legal, bknotices@gtg.legal
- **ELIZABETH A. GREEN**    egreen@bakerlaw.com, orlbankruptcy@bakerlaw.com
- **JAMES D. GREENE**    jgreene@greeneinfusolaw.com, fritchie@greeneinfusolaw.com;kfarney@greeneinfusolaw.com;cwalton@greeneinfusolaw.com
- **ALLEN J. GUON**    aguon@cozen.com, allen-guon-6333@ecf.pacerpro.com;cknez@cozen.com
- **STEPHEN R HARRIS**    steve@harrislawreno.com, hannah@harrislawreno.com;norma@harrislawreno.com
- **JEFFREY L HARTMAN**    notices@bankruptcyreno.com, abg@bankruptcyreno.com
- **PAYMON HIFAI**    phifai@hornerlawgroup.com
- **RICHARD F. HOLLEY**    rholley@nevadafirm.com, oswibies@nevadafirm.com;agandara@nevadafirm.com;mlangsner@nevadafirm.com;dhigh@nevadafirm.com
- **RICK R. HSU**    rhsu@mclrenolaw.com, hmotta@mcllawfirm.com
- **CHRISTOPHER D. HUGHES**    chughes@nossaman.com
- **BRIAN R. IRVINE**    birvine@dickinsonwright.com, mreel@dickinsonwright.com;cgrinstead@dickinsonwright.com;RN_litdocket@dickinsonwright.com
- **NEAL R. JACOBSON**    jacobsonn@sec.gov
- **MATTHEW L. JOHNSON**    annabelle@mjohnsonlaw.com, mjohnson@mjohnsonlaw.com;kelcie@mjohnsonlaw.com
- **PAUL J. JOHNSON**    pjohnson@diemerwei.com
- **NATHAN G. KANUTE**    nkanute@swlaw.com, mfull@swlaw.com;jmath@swlaw.com;docket_las@swlaw.com;sdugan@swlaw.com;ljtaylor@swlaw.com;credd@swlaw.com
- **GREGORY ALAN KRAEMER**    GKRAEMER@COOPERLEVENSON.COM, gdillingham@cooperlevenson.com
- **BORIS KUKSO**    boris.kukso@usdoj.gov, western.taxcivil@usdoj.gov
- **MARY LANGSNER**    mlangsner@nevadafirm.com, oswibies@nevadafirm.com;rholley@nevadafirm.com;dhigh@nevadafirm.com
- **BART K. LARSEN**    BLARSEN@SHEA.LAW, 3542839420@filings.docketbird.com
- **ROBERT S. LARSEN**    rlarsen@grsm.com, gangulo@grsm.com;wwong@grsm.com;WL_LVSupport@grsm.com;sowens@grsm.com;kkao@grsm.com;jschneringer@grsm.com
- **ANDREW V. LAYDEN**    alayden@bakerlaw.com, orlbankruptcy@bakerlaw.com
- **CECILIA LEE**    efletcher@fletcherlawgroup.com, edendary@fletcherlawgroup.com
- **ALEXANDER J. LEWICKI**    alewicki@diemerwei.com
- **CHRISTINA W. LOVATO**    trusteelovato@att.net, NV26@ecfcbis.com
- **TIMOTHY A LUKAS**    ecflukast@hollandhart.com
- **EDWARD M. MCDONALD**    edward.m.mcdonald@usdoj.gov
- **JEANETTE E. MCPHERSON**    bkfilings@s-mlaw.com
- **EDMOND BUDDY MILLER**    bmiller@buddymillerlaw.com, jepker@buddymillerlaw.com
- **ALI M. M. MOJDEHI**    amojdehi@btlaw.com, jgertz@btlaw.com;arego@btlaw.com
- **JAMES C. MOON**    jmoon@melandbudwick.com, ltannenbaum@melandbudwick.com;ltannenbaum@ecf.courtdrive.com

**EXHIBIT 2**

- **MELANIE D MORGAN**    Melanie.morgan@akerman.com, akermanlas@akerman.com
- **ASHLEY C NIKKEL**    anikkel@parsonsbehle.com, rshaffer@parsonsbehle.com
- **WILLIAM M. NOALL**    bknotices@gtg.legal, wnoall@gtg.legal
- **TRACY M. O'STEEN**    tosteen@carlyoncica.com, crobertson@carlyoncica.com;nrodriguez@carlyoncica.com;ccarlyon@carlyoncica.com
- **RICHARD A. OSHINSKI**    Rick@OshinskiForsberg.com, Linda@OshinskiForsberg.com
- **DONNA T PARKINSON**    donna@parkinsonphinney.com
- **PAUL J PASCUZZI**    ppascuzzi@ffwplaw.com, docket@ffwplaw.com
- **KEVIN C. PAULE**    kpaule@melandbudwick.com, ltannenbaum@melandbudwick.com;ltannenbaum@ecf.courtdrive.com
- **MICHAEL RYAN PINKSTON**    rpinkston@seyfarth.com, jmcdermott@seyfarth.com;sfocalendar@seyfarth.com
- **MATTHEW W. QUALL**    mquall@quallcardot.com
- **JACK A. RAISNER**    jar@outtengolden.com
- **DONALD A. REA**    don.rea@saul.com
- **R. CHRISTOPHER READE**    creade@crdslaw.com, agilbreath@crdslaw.com;earthur@crdslaw.com;jshafer@crdslaw.com
- **JULIE HOPE ROME-BANKS**    Julie@bindermalter.com
- **RENE' S ROUPINIAN**    rsr@raisnerroupinian.com, Jar@raisnerroupinian.com;warnlawyers@raisnerroupinian.com;rrllp@ecf.courtdrive.com
- **JOHN M. SAMBERG**    jsamberg@wrslawyers.com, efilingjms@wrslawyers.com
- **THERESE SCHEUER**    scheuert@sec.gov
- **MICHAEL L. SCHUSTER**    schusterm@ballardspahr.com
- **SAMUEL A. SCHWARTZ**    saschwartz@nvfirm.com, ecf@nvfirm.com;schwartzsr45599@notify.bestcase.com;eanderson@nvfirm.com;samid@nvfirm.com
- **BRIAN D. SHAFFER**    brian.shaffer@msrlegal.com, karen.wigylus@msrlegal.com
- **CONNOR H. SHEA**    cshea@bhfs.com, wcosby@bhfs.com
- **JAMES PATRICK SHEA**    jshea@shea.law, blarsen@shea.law;support@shea.law
- **PATRICK J SHEEHAN**    psheehan@fclaw.com, tday@fclaw.com
- **PAUL STEVEN SINGERMAN**    singerman@bergersingerman.com
- **DANIEL H. SLATE**    dslate@buchalter.com, smartin@buchalter.com
- **PETER J. SMITH**    peterjsmith@att.net
- **STEPHEN PAUL SORENSEN**    ssorensen@tafsattorneys.com
- **HOLLY S STOBERSKI**    hstoberski@duanemorris.com, AutoDocketLV@duanemorris.com;jldailey@duanemorris.com
- **KEVIN M. SUTEHALL**    ksutehall@foxrothschild.com, dloffredo@foxrothschild.com
- **T-MOBILE USA, INC. (sb)**    BankruptcyGroup@T-Mobile.com
- **AMY N. TIRRE**    amy@amytirrelaw.com, admin@amytirrelaw.com
- **U.S. TRUSTEE - RN - 7**    USTPRegion17.RE.ECF@usdoj.gov
- **DAVID F. WAGUESPACK**    Waguespack@carverdarden.com, plaisance@carverdarden.com
- **MARTIN L. WELSH**    mwelsh@lvlaw.com, k.bratton@hayesandwelsh.onmicrosoft.com;nv.ecf@aislegaltrac.com
- **HANNAH E. WINSTON**    hwinston@rssblaw.com, cobrien@rssblaw.com
- **RYAN A. WITTHANS**    rwitthans@fhlawllp.com
- **CONSTANCE L. YOUNG**    clyoung2014@gmail.com
- **MATTHEW C. ZIRZOW**    mzirzow@lzlawnv.com,
  carey@lzlawnv.com;trish@lzlawnv.com;jennifer@lzlawnv.com;zirzow.matthewc.r99681@notify.bestcase.com